No. 21-1832

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

MADISON LARA, et al.,

Plaintiffs-Appellants,

v.

COMMISSIONER OF THE
PENNSYLVANIA STATE POLICE,

Defendant-Appellee.

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania

No. 2:20-cv-01582-WSS
The Honorable William S. Stickman

## BRIEF OF AMICI CURIAE ILLINOIS, CALIFORNIA, CONNECTICUT, DELAWARE, THE DISTRICT OF COLUMBIA, HAWAII, MARYLAND, MASSACHUSETTS, MICHIGAN, MINNESOTA, NEVADA, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA, OREGON, RHODE ISLAND, VERMONT, VIRGINIA, AND WASHINGTON IN SUPPORT OF DEFENDANT-APPELLEE AND AFFIRMANCE

KWAME RAOUL
Attorney General
State of Illinois

ALEX HEMMER
Deputy Solicitor General
100 West Randolph Street
Chicago, Illinois 60601
(312) 814-5526
alex.hemmer@ilag.gov

JANE ELINOR NOTZ
Solicitor General

Attorneys for Amici States

*(Additional counsel on signature page)*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...........................................................................ii

IDENTITY AND INTEREST OF AMICI STATES ...................................1

SUMMARY OF ARGUMENT .....................................................................2

I.    The Second Amendment Allows States To Enact Varied Measures To Promote Gun Safety And Protect Against Gun Violence. ............................................................................................4

II.   Pennsylvania's Age-Based Regulations Are Consistent With Measures Taken By Other States And Upheld By Courts Across The Country. ....................................................................................10

III.  Pennsylvania's Age-Based Regulations Promote Public Safety And Prevent Gun Violence. ............................................................16

CONCLUSION ...........................................................................................22

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Brown v. City of Pittsburgh,*
  586 F.3d 263 (3d Cir. 2009) .............................................................. 20

*District of Columbia v. Heller,*
  554 U.S. 570 (2008) .......................................................................... 5, 6

*Drake v. Filko,*
  724 F.3d 426 (3d Cir. 2013) ...................................................... *passim*

*Drummond v. Robinson Township,*
  9 F.4th 217 (3d Cir. 2021) .................................................................. 19

*Friedman v. City of Highland Park,*
  784 F.3d 406 (7th Cir. 2015) ................................................................ 8

*Fyock v. City of Sunnyvale,*
  779 F.3d 991 (9th Cir. 2015) .............................................................. 19

*Harley v. Wilkinson,*
  988 F.3d 766 (4th Cir. 2021) .............................................................. 17

*Hirschfeld v. ATF,*
  5 F.4th 407 (4th Cir. 2021) ................................................................. 14

*Horsley v. Trame,*
  808 F.3d 1126 (7th Cir. 2015) ................................................ 14, 15, 21

*In re Jordan G.,*
  33 N.E.3d 162 (Ill. 2015) .................................................................... 14

*Interstate Outdoor Advertising, L.P. v. Zoning Bd. of Mount Laurel,*
  706 F.3d 527 (3d Cir. 2013) ............................................................... 19

*Jones v. Becerra,*
  498 F. Supp. 3d 1317 (S.D. Cal. 2020) .............................................. 14

*Kolbe v. Hogan,*
   849 F.3d 114 (4th Cir. 2017) (en banc) .............................................. 5, 9

*McDonald v. City of Chicago,*
   561 U.S. 742 (2010) ................................................................. 5, 6, 18

*Medtronic, Inc. v. Lohr,*
   518 U.S. 470 (1996) .......................................................................... 4

*Mitchell v. Atkins,*
   483 F. Supp. 3d 985 (W.D. Wash. 2020) .............................................. 14

*Nat'l Rifle Ass'n v. ATF,*
   700 F.3d 185 (5th Cir. 2012) ..................................................... 15, 17, 21

*Nat'l Rifle Ass'n v. McCraw,*
   719 F.3d 338 (5th Cir. 2013) .............................................................. 15

*Pena v. Lindley,*
   898 F.3d 969 (9th Cir. 2018) ................................................................ 8

*Peruta v. Cnty. of San Diego,*
   824 F.3d 919 (9th Cir. 2016) (en banc) ................................................ 16

*Powell v. Tompkins,*
   926 F. Supp. 2d 367 (D. Mass. 2013) .................................................. 15

*Turner Broadcasting Systems, Inc. v. FCC,*
   512 U.S. 622 (1994) ........................................................................ 19

*United States v. Lopez,*
   514 U.S. 549 (1995) .......................................................................... 4

*United States v. Marzzarella,*
   614 F.3d 85 (3d Cir. 2010) ................................................................. 6

*United States v. Morrison,*
   529 U.S. 598 (2000) .......................................................................... 5

*Young v. Hawaii,*
992 F.3d 765 (9th Cir. 2021) (en banc) ................................................ 16

## STATUES AND RULES

Alaska Stat.
§ 11.61.220 .............................................................................................. 11
§ 18.65.705 .............................................................................................. 11

Ariz. Rev. Stat.
§ 13-3102 ................................................................................................. 11
§ 13-3112 ................................................................................................. 11

Ark. Code § 5-73-309 ................................................................................ 11

Cal. Penal Code
§ 27505 ................................................................................................... 13
§ 27510 ................................................................................................... 13

Colo. Rev. Stat. § 18-12-203 ................................................................... 11

Conn. Gen. Stat.
§ 29-28 .................................................................................................... 12
§ 29-34 .................................................................................................... 13
§ 29-36f .................................................................................................. 13

D.C. Code
§ 7-2502.03 ............................................................................................ 13
§ 7-2509.02 ............................................................................................ 12
§ 22-4507 ............................................................................................... 13

Del. Code Ann. tit. 24, § 903 .................................................................. 13

Fla. Stat.
§ 790.06 .................................................................................................. 12
§ 790.065 ................................................................................................ 13

Ga. Code § 16-11-129 ......................................................................... 11, 12

Haw. Rev. Stat. Ann.
    § 134-2 ........................................................................... 13
    § 134-4 ........................................................................... 13
    § 134-5 ........................................................................... 13
    § 134-9 ........................................................................... 12

430 Ill. Comp. Stat.
    65/2 ............................................................................... 13
    65/3 ............................................................................... 13
    65/4 ............................................................................... 13
    66/25 ............................................................................. 12

Iowa Code § 724.22 ................................................................. 13

Ky. Rev. Stat. § 237.110 ....................................................... 11

La. Rev. Stat. § 40:1379.3 .................................................... 11

Mass. Gen. Laws ch. 140
    § 130 .............................................................................. 13
    § 131 ........................................................................ 12, 14
    § 131E ........................................................................... 13

Md. Code Ann., Pub. Safety
    § 5-133 ........................................................................... 13
    § 5-134 ........................................................................... 13

Mich. Comp. Laws
    § 28.422 ......................................................................... 13
    § 28.425b ....................................................................... 12

Minn. Stat. § 624.714 ....................................................... 11, 12

Mo. Rev. Stat. § 571.080 ....................................................... 13

Neb. Rev. Stat.
    § 69-2403 ...................................................................... 13

§ 69-2404 ...................................................................... 13

§ 69-2433 ...................................................................... 12

Nev. Rev. Stat. § 202.3657 ....................................................... 11

N.C. Gen. Stat. § 14-415.12 ...................................................... 11

N.J. Stat. Ann.

§ 2C:58-3 ...................................................................... 13

§ 2C:58-3.3 .................................................................... 13

§ 2C:58-6.1 ......................................................... 12, 13, 14

N.M. Stat. § 29-19-4 ............................................................. 11

N.Y. Penal Law § 400.00 ............................................... 12, 13, 14

Ohio Rev. Code Ann.

§ 2923.21 ...................................................................... 13

§ 2923.125 ..................................................................... 12

Okla. Stat. tit. 21, § 1272 ......................................................... 11

Or. Rev. Stat. § 166.291 ........................................................... 11

18 Pa. Cons. Stat.

§ 6101 .......................................................................... 2

§ 6106 .......................................................................... 2

§ 6109 .......................................................................... 2

R.I. Gen. Laws

§ 11-47-11 ..................................................................... 12

§ 11-47-18 ..................................................................... 12

§ 11-47-35 ..................................................................... 13

§ 11-47-37 ..................................................................... 13

S.C. Code § 23-31-215 ............................................................ 11

Tenn. Code
 § 39-17-1307 .................................................................. 11, 12
 § 39-17-1351 .................................................................. 11, 12

Tex. Gov. Code § 411.172 ................................................... 11

Tex. Penal Code § 46.02 ..................................................... 11

Va. Code § 18.2-308.02 ....................................................... 11

Vt. Stat. Ann. tit. 13, § 4020 ............................................... 13

Wash. Rev. Code
 § 9.41.070 .......................................................................... 12
 § 9.41.240 .................................................................... 13, 14

Wis. Stat. § 175.60 ............................................................. 11

W. Va. Code § 61-7-10 ........................................................ 13

Wyo. Stat. § 6-8-104 ........................................................... 11

Federal Rule of Appellate Procedure 29 ................................... 1

## OTHER AUTHORITIES

Fed. Bureau of Investigation, *Murder: Crime in the United States 2019*, https://ucr.fbi.gov/crime-in-the-u.s/2019/crime-in-the-u.s.-2019/topic-pages/tables/table-20 ......................................... 7

Fed. Bureau of Investigation, *Uniform Crime Reporting Statistics: Their Proper Use* (May 2017), https://ucr.fbi.gov/ucr-statistics-their-proper-use ................................................................... 7

Giffords Law Center, *Minimum Age to Purchase and Possess*, https://giffords.org/lawcenter/gun-laws/policy-areas/who-can-have-a-gun/minimum-age/ .............................................................. 10

## IDENTITY AND INTEREST OF AMICI STATES

The amici States of Illinois, California, Connecticut, Delaware, the District of Columbia, Hawaii, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New Mexico, New York, North Carolina, Oregon, Rhode Island, Vermont, Virginia, and Washington submit this brief in support of Defendant-Appellee Colonel Robert Evanchick, the Pennsylvania State Police Commissioner, pursuant to Federal Rule of Appellate Procedure 29(a)(2). The amici States have a substantial interest in the public health, safety, and welfare of their communities, which includes protecting their residents from the harmful effects of gun violence and promoting the safe use of firearms. *See Drake v. Filko*, 724 F.3d 426, 437 (3d Cir. 2013) (States have, "undoubtedly, a significant, substantial and important interest in protecting [their] citizens' safety.").

To serve this compelling interest, States have long exercised their governmental prerogative to implement measures that regulate the access to and use of firearms by individuals under the age of 21. Although the States have reached different conclusions on how best to regulate in this area, they largely agree that prohibiting young adults

from carrying concealed firearms in public is an effective means of preventing gun violence in their communities: Over 30 States and the District of Columbia, in addition to Pennsylvania, prohibit people under the age of 21 from carrying concealed firearms in public. And more generally, all States share an interest in protecting their right to address the problem of gun violence in a way that is tailored to the specific circumstances in each of their States. Enjoining Pennsylvania's sensible regulation limiting concealed carry licenses to individuals age 21 and over would interfere with this interest. Accordingly, the amici States urge this Court to affirm the judgment below.

## SUMMARY OF ARGUMENT

The Pennsylvania Uniform Firearms Act of 1995, 18 Pa. Cons. Stat. § 6101 *et seq.*, regulates Pennsylvania residents' ability to carry firearms in public. Section 6106(a) of the Act requires residents to obtain a permit to carry a concealed firearm unless they fall into one of the statute's enumerated exceptions. 18 Pa. Cons. Stat. § 6106(a). And section 6109(b) of the Act limits the issuance of permits to people age 21 and older. *Id.* § 6109(b).

Plaintiffs challenge the Act—and, in particular, section 6109(b)—on the ground that it violates the Second Amendment rights of people between the ages of 18 and 20. But as the district court correctly held, laws regulating the sale of firearms to young people are longstanding and presumptively lawful. JA5. And section 6109(b) would not violate the Second Amendment even if it did burden conduct within that Amendment's scope because there is a reasonable fit between the Commonwealth's age-based restrictions on the issuance of concealed-carry permits and its substantial interest in public safety.

As the amici States explain below, the Second Amendment reserves to the States the ability to exercise their police powers by enacting sensible and varied regulations designed to protect the public. In fact, all States and the District of Columbia have imposed age-based regulations on the sale and use of, and access to, firearms within their borders. Although these regulations differ based on each jurisdiction's needs, over 30 States and the District of Columbia have enacted statutes similar to Pennsylvania's, under which people under the age of 21 cannot generally carry concealed firearms in public.

Furthermore, the evidence presented by Pennsylvania showed that there is a reasonable fit between section 6109(b) and the Commonwealth's substantial state interests. Plaintiffs' arguments to the contrary are based on an unduly heightened burden that, if applied, would restrict the States' ability to devise local solutions to difficult and evolving problems. For these reasons, as well as those articulated by Pennsylvania, this Court should affirm the judgment of the district court.

## ARGUMENT

### I. The Second Amendment Allows States To Enact Varied Measures To Promote Gun Safety And Protect Against Gun Violence.

The amici States have long exercised their police power to protect the health, safety, and welfare of their residents. In fact, "the States possess primary authority for defining and enforcing the criminal law," *United States v. Lopez*, 514 U.S. 549, 561 n.3 (1995) (internal quotations omitted), and have "great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons," *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996) (internal quotations omitted). These responsibilities include enacting measures

to promote safety, prevent crime, and minimize gun violence within their borders. *See, e.g.*, *United States v. Morrison*, 529 U.S. 598, 618 (2000) ("Indeed, we can think of no better example of the police power, which the Founders denied the National Government and reposed in the States, than the suppression of violent crime and vindication of its victims.").

These responsibilities are not diminished by the recognition of Second Amendment rights for law-abiding citizens. Indeed, as Judge Wilkinson explained in a case addressing Maryland's ban on assault weapons and large-capacity magazines, the Supreme Court's recognition of "the 'right of law-abiding, responsible citizens to use arms in defense of hearth and home,'" did not "abrogate" the States' "core responsibility" of "[p]roviding for the safety of citizens within their borders." *Kolbe v. Hogan*, 849 F.3d 114, 150 (4th Cir. 2017) (en banc) (Wilkinson, J., concurring) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008)). On the contrary, the Supreme Court in *Heller*— and then again in *McDonald v. City of Chicago*, 561 U.S. 742 (2010)— expressly acknowledged the important role that States play in protecting their residents from the harms of gun violence.

To begin, *Heller* made clear that the Second Amendment right to keep and bear arms is "not unlimited." 554 U.S. at 595; *see also McDonald*, 561 U.S. at 802 ("No fundamental right—not even the First Amendment—is absolute."). Although government entities may not ban handgun possession by responsible, law-abiding individuals in the home or impose similarly severe burdens on the Second Amendment right, States still possess "a variety of tools" to combat the problem of gun violence. *Heller*, 554 U.S. at 636. The States may, for example, implement measures prohibiting certain groups of individuals from possessing firearms, such as "felons and the mentally ill," or "imposing conditions and qualifications on the commercial sale of arms." *Id.* at 626-27; *see also United States v. Marzzarella*, 614 F.3d 85, 90 (3d Cir. 2010) ("[T]he right protected by the Second Amendment is not unlimited.").

In *McDonald*, the Court reiterated that the Second Amendment "by no means eliminates" the States' "ability to devise solutions to social problems that suit local needs and values." 561 U.S. at 785. Rather, it recognized "that conditions and problems differ from locality to locality." *Id.* at 783. Indeed, according to the Federal Bureau of Investigation, a

wide variety of factors "affect the volume and type of crime occurring from place to place," including population density, variations in the youth concentration in the composition of the population, poverty level, job availability, available modes of transportation, climate, criminal justice system policies, and educational and recreational characteristics.[1] These factors, which vary from State to State, produce disparities in the number and characteristics of firearm-related murders and other crimes.[2] Given these unique conditions and needs, States must be able to implement varied measures to address gun violence and protect the health and safety of their residents, as both *Heller* and *McDonald* acknowledged.

Multiple circuits have applied these principles to confirm the constitutionality of state and local regulations addressing the purchase and possession of firearms. Most notably, in *Drake*, this Court upheld New Jersey's permitting scheme for public carriage of handguns on the

---

[1] Fed. Bureau of Investigation, *Uniform Crime Reporting Statistics: Their Proper Use* (May 2017), https://ucr.fbi.gov/ucr-statistics-their-proper-use. All websites were last visited on September 29, 2021.

[2] *See, e.g.*, Fed. Bureau of Investigation, *Murder: Crime in the United States 2019* tbl. 20, https://ucr.fbi.gov/crime-in-the.u.s/2019/crime-in-the.u.s.-2019/topic-pages/tables/table-20.

ground that the State had shown a "reasonable fit" between its interest in "protecting its citizens' safety" and the statutory scheme at issue. 724 F.3d at 436-37. It explained that New Jersey had "made a policy judgment" about how "the state [could] best protect public safety." *Id.* at 439. And it rejected the plaintiffs' "invitation to intrude upon the sound judgment and discretion" of that State. *Id.* at 440.

Other courts have reached similar conclusions. In *Friedman v. City of Highland Park*, for instance, the Seventh Circuit upheld a local government's ban on assault weapons and large-capacity magazines, noting that although "*Heller* and *McDonald* set limits on the regulation of firearms," they did not "take all questions about which weapons are appropriate for self-defense out of the people's hands." 784 F.3d 406, 412 (7th Cir. 2015). As the court explained, "the Constitution establishes a federal republic where local differences are cherished as elements of liberty, rather than eliminated in a search for national uniformity." *Id. Accord, e.g.*, *Pena v. Lindley*, 898 F.3d 969, 979 (9th Cir. 2018) (upholding California's "decision to require new semiautomatic gun models manufactured in-state to incorporate new technology" because "the state must be allowed a reasonable

opportunity to experiment with solutions to admittedly serious problems").

Likewise, in *Kolbe*, the Fourth Circuit rejected a challenge to Maryland's ban on assault weapons and large-capacity magazines.  849 F.3d at 121.  In concurrence, Judge Wilkinson highlighted the need for courts to refrain from relying on *Heller*'s analysis of a handgun ban to "disable[] legislatures from addressing the wholly separate subject of assault weapons suitable for use by military forces around the globe." *Id.* at 150 (Wilkinson, J., concurring).  In other words, he did not draw from *Heller* or "the profound ambiguities of the Second Amendment an invitation to courts to preempt this most volatile of political subjects and arrogate to themselves decisions that have been historically assigned to other, more democratic, actors."  *Id.*

This Court should apply these same principles—which build on the States' responsibility to protect the health and safety of their residents and their ability to utilize innovative measures when doing so—to the age restrictions at issue in this case.

**II.  Pennsylvania's Age-Based Regulations Are Consistent With Measures Taken By Other States And Upheld By Courts Across The Country.**

Pennsylvania's decision to regulate the issuance of concealed-carry licenses to young people is well within the parameters just discussed. As Pennsylvania explains, the challenged statutory provisions were enacted to promote public safety and reduce gun violence by preventing those in a high-risk group—people under the age of 21—from carrying a concealed firearm in public.  *See* Pa. Br. 12.

Furthermore, the regulatory mechanisms chosen by Pennsylvania to achieve its public safety goals are consistent with those implemented across the country and consistently upheld by the courts.  Although States have reached different conclusions on how best to regulate the sale of, use of, and access to, firearms—as they are permitted to do, *see supra* Section I—virtually every State and the District of Columbia has determined that imposing *some* age-based restrictions on the sale or use of firearms is necessary to promote public safety and curb gun violence within its borders.[3]

---

[3]  Giffords Law Center, *Minimum Age to Purchase and Possess*, https://giffords.org/lawcenter/gun-laws/policy-areas/who-can-have-a-

Indeed, a substantial majority of States have, like Pennsylvania, determined that limiting concealed-carry licenses to those 21 and over serves important state interests. At least 19 States—Alaska, Arizona, Arkansas, Colorado, Georgia, Kentucky, Louisiana, Minnesota, Nevada, New Mexico, North Carolina, Oklahoma, Oregon, South Carolina, Tennessee, Texas, Virginia, Wisconsin, and Wyoming—have enacted statutory regimes under which people between the ages of 18 and 20 can generally purchase and possess firearms, but cannot carry some or all of those firearms in public in a concealed manner (subject, in some States, to exceptions).[4] Many of these States permit people under the age of 21 to carry some or all firearms openly, but the same is true of Pennsylvania, which permits open carry by persons in that age range

---

gun/minimum-age/ (collecting state laws that impose a minimum age for purchasing and/or possessing handguns and/or long guns).

[4] Alaska Stat. §§ 11.61.220(a)(6), 18.65.705(1); Ariz. Rev. Stat. §§ 13-3102(A)(2), 13-3112(E); Ark. Code § 5-73-309; Colo. Rev. Stat. § 18-12-203(1)(b); Ga. Code § 16-11-129(b)(2)(A); Ky. Rev. Stat. § 237.110; La. Rev. Stat. § 40:1379.3(C)(4); Minn. Stat. § 624.714, subd. 2(b)(2); Nev. Rev. Stat. § 202.3657(3)(a)(1); N.C. Gen. Stat. § 14-415.12(a)(2); N.M. Stat. § 29-19-4(A)(3); Okla. Stat. tit. 21, § 1272(A)(6); Or. Rev. Stat. § 166.291(1)(b); S.C. Code § 23-31-215(A); Tenn. Code §§ 39-17-1307(g)(1), 39-17-1351(b)(1); Tex. Gov. Code § 411.172(a)(2); Tex. Penal Code § 46.02(a)(2)(A); Va. Code § 18.2-308.02; Wis. Stat. § 175.60(3)(a); Wyo. Stat. § 6-8-104(a)(iv), (b)(ii).

when there is no declared state of emergency. By contrast, several of these States—for instance, Georgia, Minnesota, and Tennessee—generally do not permit public carry by young people at all.[5] An additional 12 States and the District of Columbia have enacted more stringent age-based regulatory regimes with respect to purchase and possession, but likewise generally permit only people 21 and over to carry concealed weapons in public.[6] The regime plaintiffs challenge, in other words, is hardly an outlier; it is consistent with the way many other jurisdictions have chosen to handle this issue.

And, of course, age restrictions are common in other aspects of firearms regulation, too, including the sale and possession of firearms. Many States have established minimum-age qualifications of 21 at the point of sale or possession. For instance, 19 States and the District of Columbia generally prohibit the sale of some or all firearms—handguns,

---

[5] Ga. Code § 16-11-129(b)(2)(A); Minn. Stat. § 624.714, subd. 2(b)(2); Tenn. Code §§ 39-17-1307(g)(1)(A), 39-17-1351(b)(1).

[6] Conn. Gen. Stat. § 29-28(b); D.C. Code § 7-2509.02(a)(1); Fla. Stat. § 790.06(2); Haw. Rev. Stat. Ann. § 134-9(a); 430 Ill. Comp. Stat. 66/25(1); Mass. Gen. Laws ch. 140, § 131(d)(iv); Mich. Comp. Laws § 28.425b(7)(a); Neb. Rev. Stat. § 69-2433; N.J. Stat. Ann. § 2C:58-6.1(b); N.Y. Penal Law § 400.00(1); Ohio Rev. Code Ann. § 2923.125(D); R.I. Gen. Laws §§ 11-47-11, 11-47-18; Wash. Rev. Code § 9.41.070.

long guns, or both—to those under 21, subject in some cases to exceptions.[7]  And ten States and the District of Columbia have set a minimum age of 21 to possess firearms, also subject in some cases to exceptions.  Specifically, Connecticut, the District of Columbia, Hawaii, Illinois, Iowa, Maryland, Massachusetts, New Jersey, New York, and Washington generally restrict possession of handguns by those under 21 (subject, in some cases, to exceptions), and some of those jurisdictions likewise extend those limitations to the possession of long guns or (in some States) weapons those States judge to be particularly dangerous, like assault weapons and semi-automatic rifles (subject again, in some cases, to exceptions).[8]

---

[7]  Cal. Penal Code §§ 27505(a), 27510; Conn. Gen. Stat. § 29-34(b); D.C. Code Ann. § 22-4507; Del. Code Ann. tit. 24, § 903; Fla. Stat. § 790.065(13); Haw. Rev. Stat. Ann. § 134-2(a), (d), (h); 430 Ill. Comp. Stat. 65/3(a), 65/4(a)(2); Iowa Code § 724.22(2); Mass. Gen. Laws ch. 140, §§ 130, 131E(b); Md. Code Ann., Pub. Safety § 5-134(b); Mich. Comp. Laws § 28.422(3)(b), (12); Mo. Rev. Stat. § 571.080; Neb. Rev. Stat. §§ 69-2403, 69-2404; N.J. Stat. Ann. §§ 2C:58-3(c)(4), 3.3(c), 6.1(a); N.Y. Penal Law § 400.00(1)(a), (12); Ohio Rev. Code Ann. § 2923.21(A)(2); R.I. Gen. Laws §§ 11-47-35(a)(1), 11-47-37; Vt. Stat. Ann. tit. 13, § 4020; Wash. Rev. Code Ann. § 9.41.240; W. Va. Code § 61-7-10(d).

[8]  Conn. Gen. Stat. § 29-36f; D.C. Code Ann. § 7-2502.03(a)(1); Haw. Rev. Stat. Ann. §§ 134-2(a), 134-2(d), 134-4, 134-5; 430 Ill. Comp. Stat. 65/2(a)(1), 65/4(a)(2)(i); Iowa Code § 724.22; Md. Code Ann., Pub. Safety

Courts across the country have uniformly upheld regulations enacted by States that limit firearm access to people under the age of 21, as the district court recognized. *See* JA15-20 (canvassing cases); *Mitchell v. Atkins*, 483 F. Supp. 3d 985, 993 (W.D. Wash. 2020) (same), *appeal docketed*, No. 20-35827 (9th Cir.); *Jones v. Becerra*, 498 F. Supp. 3d 1317, 1326 (S.D. Cal. 2020) (same), *appeal docketed*, No. 20-56174 (9th Cir.).[9] For instance, both federal and state courts have affirmed the constitutionality of an Illinois statutory scheme that requires parental consent for individuals under 21 to obtain a license to possess firearms. *See Horsley v. Trame*, 808 F.3d 1126, 1134 (7th Cir. 2015) (upholding consent requirement for young adults between the ages of 18 and 20); *In re Jordan G.*, 33 N.E.3d 162, 168-69 (Ill. 2015) (upholding portions of aggravated unlawful use of a weapon statute that apply to persons under the age of 21 without the requisite license). Illinois

---

§ 5-133(d); Mass. Gen. Laws ch. 140, § 131(d)(iv); N.J. Stat. Ann. § 2C:58-6.1(b); N.Y. Penal Law § 400.00(1)(a); Wash. Rev. Code Ann. § 9.41.240.

[9] The Fourth Circuit issued an opinion in July reaching a contrary conclusion with respect to federal restrictions on handgun purchase, but subsequently vacated that opinion as moot. *See Hirschfeld v. ATF*, 5 F.4th 407 (4th Cir. 2021), *vacated as moot*, No. 19-2250, 2021 U.S. App. LEXIS 28725 (4th Cir. Sept. 22, 2021).

enacted these measures, the Seventh Circuit explained, to promote its longstanding interest in public safety and, more specifically, in protecting residents from firearms violence. *Horsley*, 808 F.3d at 1132.

The Fifth Circuit has similarly rejected a constitutional challenge to Texas statutes that prohibit persons aged 18 to 20 from carrying handguns in public. *Nat'l Rifle Ass'n v. McCraw*, 719 F.3d 338, 347 (5th Cir. 2013). In reaching this conclusion, the court relied on a decision upholding the federal ban on commercial handgun sales to individuals under 21, noting that the goal of both regulations was to restrict the use of and access to firearms by young adults to deter crime and promote public safety. *Id.* (citing *Nat'l Rifle Ass'n v. ATF*, 700 F.3d 185 (5th Cir. 2012)); *see also Powell v. Tompkins*, 926 F. Supp. 2d 367, 378-80 (D. Mass. 2013) (rejecting Second Amendment challenge to Massachusetts minimum-age requirement for public carriage), *aff'd*, 783 F.3d 332 (1st Cir. 2015).

In short, Pennsylvania's decision to restrict the issuance of concealed-carry licenses to those age 21 or older is consistent with the approach taken by a significant majority of States and does not place it outside of the constitutional range.

### III. Pennsylvania's Age-Based Regulations Promote Public Safety And Prevent Gun Violence.

In addition to being consistent with regulations imposed by numerous other States, and upheld by the courts, section 6109(b) is reasonably fitted to Pennsylvania's compelling interests in promoting public safety and preventing gun violence. The district court correctly reasoned that the statutory scheme does not burden conduct protected by the Second Amendment because it is a longstanding, presumptively lawful regulatory measure. JA5.[10] Plaintiffs nonetheless urge the Court to apply intermediate scrutiny and strike down the statute. Pls' Br. 44-49.[11] Plaintiffs argue, among other things, that Pennsylvania's restrictions do not meaningfully advance public safety and that any benefits they provide are outweighed by their costs. *Id.* As Pennsylvania suggests, Pa. Br. 51, if the Court concludes that the

---

[10] In addition, some other courts have concluded, "based on the overwhelming consensus of historical sources," that the Second Amendment "does not extend to the carrying of concealed firearms in public by members of the general public." *Peruta v. Cnty. of San Diego*, 824 F.3d 919, 927 (9th Cir. 2016) (en banc); *see also, e.g.*, *Young v. Hawaii*, 992 F.3d 765 (9th Cir. 2021) (en banc).

[11] Plaintiffs briefly suggest that strict scrutiny should apply, Pls.' Br. 43, but do not meaningfully press that argument, presumably because *Drake* flatly forecloses it. *See* 724 F.3d at 436 (applying intermediate scrutiny to New Jersey's concealed-carry license regime).

statutory scheme implicates the Second Amendment, it would be appropriate to remand for further development of the record on the application of intermediate scrutiny to the challenged scheme. If, however, the Court reaches plaintiffs' arguments on that point, it should reject them.

Indeed, plaintiffs' argument fails on several levels. At the threshold, plaintiffs' argument rests on a mistaken view of the Commonwealth's burden under intermediate scrutiny. Plaintiffs' argument, in essence, is that the Pennsylvania General Assembly misjudged the relative costs and benefits of limiting concealed-carry licenses to those 21 and older. Plaintiffs cite data that they suggest establish that the "public-safety *costs*" of such a limitation outweigh the "public-safety *benefits*." Pls.' Br. 47 (emphasis in original). Under intermediate scrutiny, however, the question is not whether the policy judgment made by the Pennsylvania legislature is "perfect," but simply whether there is a "reasonable" fit between its means and ends. *Drake*, 724 F.3d at 436; *accord, e.g.*, *Harley v. Wilkinson*, 988 F.3d 766, 768 (4th Cir. 2021) (same); *Nat'l Rifle Ass'n v. ATF*, 700 F.3d at 205 (same). As this Court explained in *Drake*, the existence of "conflicting empirical

evidence" as to the subject of the challenged law "does not suggest, let alone compel, a conclusion that the 'fit' between" section 6109(b) "and public safety is not 'reasonable.'"  724 F.3d at 439.

This approach to intermediate scrutiny makes practical sense. Indeed, requiring States to make a case for the validity of their regulations as tailored as plaintiffs urge would place them in the difficult position of showing that a yet-to-be-enacted measure would definitively resolve the problem that the legislature seeks to address. In other words, States would be rendered unable to innovate, or even tweak past legislative models, when faced with difficult and evolving problems like gun violence and mass shootings.  Such a rule would thus directly interfere with the States' right to exercise their police power "to devise solutions to social problems that suit local needs and values." *McDonald*, 561 U.S. at 785.  As discussed, *see supra* pp. TK, retaining state variation on measures addressing gun violence was a central component of *Heller* and *McDonald*.

Moreover, imposing such a requirement would nullify state legislatures' ability to make predictive judgments, which are an important component of lawmaking.  In fact, courts have held that they

"must accord substantial deference to the predictive judgments of the legislature." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 666 (1994). Whereas the legislature is responsible for "weigh[ing] conflicting evidence and mak[ing] policy judgments," the courts' "obligation is simply to assure that, in formulating its judgments, the legislature has drawn reasonable inferences based on substantial evidence." *Id.* (cleaned up); *accord, e.g.*, *Drummond v. Robinson Twp.*, 9 F.4th 217, 234 (3d Cir. 2021) (explaining that while the government must show the requisite fit with more than "just assertions," it is not required to show that the challenged regulation is "'the least restrictive or least intrusive means of serving its interest'" (citation omitted)).

When the correct legal and evidentiary framework is applied, Pennsylvania has met its burden. To satisfy intermediate scrutiny, States are entitled to rely on any evidence "'reasonably believed to be relevant'" to substantiate their important interests. *Interstate Outdoor Advert., L.P. v. Zoning Bd. of Mount Laurel*, 706 F.3d 527, 533 (3d Cir. 2013) (quoting *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 52 (1986)); *see also Fyock v. City of Sunnyvale*, 779 F.3d 991, 1000 (9th Cir. 2015) (applying this rule in Second Amendment context). This evidence

may include "studies produced by[] other cities and states, as well as . . .

court opinions from other jurisdictions." *Brown v. City of Pittsburgh*,

586 F.3d 263, 279 n.17 (3d Cir. 2009); *see Drake*, 724 F.3d at 438

(looking to experiences of other States to support New Jersey's

legislative judgment).  Here, the Commonwealth pointed to evidence

introduced in other jurisdictions—and found sufficient to satisfy

intermediate scrutiny by other courts—to meet its burden, as it was

entitled to do.  *See* Dist. Ct. Doc. 24 at 30-33; *see also* Dist. Ct. Doc. 32

(brief of amici curiae Giffords Law Center and Ceasefire Pennsylvania

Education Fund).

That evidence demonstrated that section 6109(b), and the Act

more generally, reasonably fit Pennsylvania's interests in public safety

and crime prevention.  The evidence showed that, among other things,

the human brain does not finish developing until the mid-to-late 20s,

meaning that young people between the ages of 18 and 20 are more

likely to "make more impulsive decisions."  Dist. Ct. Doc. 32 at 11; *see*

*also* Dist. Ct. Doc. 24 at 31-32 (similar).  For that reason, as the

evidence before the district court established, young people between the

ages of 18 and 20 are disproportionately likely to commit violent gun

crimes such as homicide.  Dist. Ct. Doc. 32 at 14-15, 18; *accord* Dist. Ct.

Doc. 24 at 31.  The evidence also included studies showing that there is

a connection between minimum age restrictions and "a decline in

firearm-related adolescent deaths."  Dist. Ct. Doc. 32 at 22.

This evidence more than suffices to show the requisite reasonable

fit between limiting the issuance of concealed-carry permits to people

over 21 and protecting public safety.  In fact, numerous courts across

the country have relied on similar evidence in upholding age-based

restrictions on the sale and use of, or access to, firearms.  *See, e.g.*,

*Horsley*, 808 F.3d at 1133 (citing studies and data on "persons under 21

and violent and gun crimes," as well as scholarly research on

development through early adulthood); *McCraw*, 719 F.3d at 348 ("the

record in this case emphasize[s] that those under 21 years of age are

more likely to commit violent crimes with handguns than other

groups"); *Nat'l Rifle Ass'n v. ATF*, 700 F.3d at 206 ("Congress found that

persons under 21 tend to be relatively irresponsible and can be prone to

violent crime, especially when they have easy access to handguns.").  If

the Court reaches the question, then, it should reject plaintiffs'

invitation to apply a more heightened standard than intermediate

scrutiny, and, applying the correct legal standard, should uphold the age limitation imposed by section 6109(b).

## CONCLUSION

For these reasons, this Court should affirm the judgment below.

Respectfully submitted,

KWAME RAOUL
Attorney General
State of Illinois

JANE ELINOR NOTZ
Solicitor General

/s/ Alex Hemmer
ALEX HEMMER
Deputy Solicitor General
100 West Randolph Street
Chicago, Illinois 60601
(312) 725-3834
alex.hemmer@ilag.gov

ROB BONTA
*Attorney General*
*State of California*
300 South Spring St., Suite 1702
Los Angeles, CA 90013

KATHLEEN JENNINGS
*Attorney General*
*State of Delaware*
820 N. French Street
Wilmington, DE 19801

WILLIAM TONG
*Attorney General*
*State of Connecticut*
165 Capitol Avenue
Hartford, CT 06106

KARL A. RACINE
*Attorney General*
*District of Columbia*
400 6th Street NW, Suite 8100
Washington, DC 20001

CLARE E. CONNORS
*Attorney General*
*State of Hawaii*
425 Queen Street
Honolulu, HI 96813

MAURA HEALEY
*Attorney General*
*Commonwealth of Massachusetts*
One Ashburton Place
Boston, MA 02108

KEITH ELLISON
*Attorney General*
*State of Minnesota*
102 State Capitol
75 MLK Blvd.
St. Paul, MN 55155

ANDREW J. BRUCK
*Acting Attorney General*
*State of New Jersey*
25 Market Street
Trenton, NJ 08625

LETITIA JAMES
*Attorney General*
*State of New York*
The Capitol
Albany, NY 12224

ELLEN F. ROSENBLUM
*Attorney General*
*State of Oregon*
1162 Court Street NE
Salem, OR 97301

BRIAN E. FROSH
*Attorney General*
*State of Maryland*
200 Saint Paul Place
Baltimore, MD 21202

DANA NESSEL
*Attorney General*
*State of Michigan*
P.O. Box 30212
Lansing, MI 48909

AARON D. FORD
*Attorney General*
*State of Nevada*
100 North Carson Street
Carson City, NV 89701

HECTOR BALDERAS
*Attorney General*
*State of New Mexico*
Post Office Drawer 1508
Santa Fe, NM 87504

JOSHUA H. STEIN
*Attorney General*
*State of North Carolina*
114 W. Edenton Street
Raleigh, NC 27603

PETER F. NERONHA
*Attorney General*
*State of Rhode Island*
150 South Main Street
Providence, RI 02903

THOMAS J. DONOVAN, JR.
*Attorney General*
*State of Vermont*
109 State Street
Montpelier, VT 05609

ROBERT W. FERGUSON
*Attorney General*
*State of Washington*
1125 Washington St. SE
Olympia, WA 98504

MARK R. HERRING
*Attorney General*
*Commonwealth of Virginia*
202 North 9th Street
Richmond, VA 23219

September 29, 2021

# CERTIFICATE OF COMPLIANCE

1.     Pursuant to Third Circuit Local Appellate Rule 46.1(d), I certify that I am a member of the bar of this Court.

2.     I certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) because it contains 4,274 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii).  This brief complies with the typeface requirement of Rule 32(a)(5) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word.

3.     Pursuant to Third Circuit Local Appellate Rule 31.1(c), I certify that the text of the electronic copy of this brief is identical to the text in the paper copies of the brief.

4.     Pursuant to Third Circuit Local Appellate Rule 31.1(c), I certify that a virus detection program was performed on this electronic brief and that no virus was detected.


/s/ Alex Hemmer
ALEX HEMMER

September 29, 2021

**CERTIFICATE OF SERVICE**

I hereby certify that on September 29, 2021, I electronically filed the foregoing Brief of Amici Curiae Illinois et al. with the Clerk of the Court for the United States Court of Appeals for the Third Circuit using the CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Alex Hemmer
ALEX HEMMER