**21-1832**

IN THE

# United States Court of Appeals

## FOR THE THIRD CIRCUIT

◆◆

MADISON M. LARA; SOPHIA KNEPLEY; LOGAN D. MILLER;
SECOND AMENDMENT FOUNDATION, INC.; FIREARMS POLICY COALITION,

*Plaintiffs-Appellants,*

—v.—

COMMISSIONER PENNSYLVANIA STATE POLICE,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

## ADDENDUM TO BRIEF OF EVERYTOWN FOR GUN SAFETY AS *AMICUS CURIAE* IN SUPPORT OF DEFENDANT-APPELLEE

Janet Carter
EVERYTOWN LAW
450 Lexington Avenue
P.O. Box 4184
New York, New York 10017
(646) 324-8215

Lisa M. Ebersole
EVERYTOWN LAW
P.O. Box 14780
Washington, DC 20044
(646) 324-8215
lebersole@everytown.org

*Counsel for Amicus Curiae*
*Everytown for Gun Safety*

# **TABLE OF CONTENTS**

| **Description** | **Page No.** |
|---|---|
| Excerpt from 1 William Blackstone, *Commentaries On the Laws of England* (1st ed. 1765) | ADD0001-0007 |
| Excerpt from *Black's Law Dictionary* (1st ed. 1891) | ADD0008-0010 |
| T.E. James, *The Age of Majority*, 4 Am. J. Legal Hist. 22 (1960) | ADD0011-0023 |
| Excerpt from 2 James Kent, *Commentaries on American Law* (1827) | ADD0024-0038 |
| Chart compiling the earliest known nineteenth century state laws restricting the purchase of firearms by, and transfer of firearms to, minors, as well as true and correct copies of the referenced laws | ADD0039-0099 |
| 1925 W.Va. Acts 25-30, ch. 3, § 7(a). | ADD0100-0109 |
| 1895 Neb. Laws 237-38, Laws of Nebraska Relating to the City of Lincoln, Art. XXVI, §§ 2, 5 | ADD0110-0112 |
| Chart compiling nineteenth century state analogues to the Second Amendment, as well as true and correct copies of the referenced laws | ADD0113-0170 |
| Excerpt from Thomas M. Cooley, *A Treatise on Constitutional Limitation*s (5th ed. 1883) | ADD071-0185 |
| Excerpt from 2 *Annals of Congress, The Debates and Proceedings in the Congress of the United States* (1834) | ADD0187-0188 |
| Chart compiling examples of state laws requiring parents to furnish or provide arms to minors in the militia, as well as true and correct copies of the referenced laws | ADD189-0228 |
| Chart compiling examples of state laws providing for distribution of public arms to militia members, as well as true and correct copies of the referenced laws | ADD0229-0255 |

| United States Selective Service System, *Military Obligation: The American Tradition*, v. 2, pt. 11 (1947) (republishing *An Act to Regulate the Militia of the Common-Wealth of Pennsylvania*, Mar. 17, 1777) | ADD0256-0265 |



Content downloaded/printed from                     *HeinOnline*

Tue Dec 31 13:54:07 2019

Citations:

Bluebook 20th ed.
William Blackstone. Commentaries on the Laws of England (1992).

ALWD 6th ed.
William Blackstone. Commentaries on the Ls of Engl& (1992).

APA 6th ed.
Blackstone, W. (1992). Commentaries on the Laws of England. Buffalo, N.Y. William S.
Hein Co, 1992. Originally published: Oxford, Clarendon Press.

Chicago 7th ed.
Blackstone William. Commentaries on the Laws of England. Buffalo, N.Y. : William S.
Hein & Co, 1992. Originally published: Oxford, Clarendon Press.

McGill Guide 9th ed.
William Blackstone, Commentaries on the Laws of England (Buffalo, N.Y. : William S.
Hein & Co, 1992. Originally published: Oxford: Clarendon Press., 1992)

MLA 8th ed.
Blackstone, William. Commentaries on the Laws of England. Buffalo, N.Y. : William S.
Hein & Co, 1992. Originally published: Oxford, Clarendon Press. HeinOnline.

OSCOLA 4th ed.
Blackstone, William. Commentaries on the Laws of England. Buffalo, N.Y. : William S.
Hein & Co, 1992. Originally published: Oxford, Clarendon Press.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
    Conditions of the license agreement available at
    *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



# COMMENTARIES

## ON THE

# L A W S

### OF

# E N G L A N D.

## BOOK THE FIRST.

BY

WILLIAM B·LACKSTONE, Esq.

VINERIAN PROFESSOR OF LAW,

AND

SOLICITOR GENERAL TO HER MAJESTY.

O X F O R D,

PRINTED AT THE CLARENDON PRESS.

M. DCC. LXV.

ADD0002

# CONTENTS.

## INTRODUCTION.

### SECT. I.

*On the* STUDY *of the* LAW.        Page 3.

### SECT. II.

*Of the* NATURE *of* LAWS *in general.*        38.

### SECT. III.

*Of the* LAWS *of* ENGLAND.        63.

### SECT. IV.

*Of the* COUNTRIES *ſubject to the* LAWS *of* ENGLAND. 93.

## BOOK I.
## *Of the* RIGHTS *of* PERSONS.

### CHAP. I.

*Of the abſolute* RIGHTS *of* INDIVIDUALS. 117.

# C O N T E N T S.

### C H A P. II.

*Of the* P A R L I A M E N T.    142.

### C H A P. III.

*Of the* K I N G, *and his* T I T L E.    183.

### C H A P. IV.

*Of the* K I N G's *royal* F A M I L Y.    212.

### C H A P. V.

*Of the* C O U N C I L S *belonging to the* K I N G.    220.

### C H A P. VI.

*Of the* K I N G's D U T I E S.    226.

### C H A P. VII.

*Of the* K I N G's P R E R O G A T I V E.    230.

### C H A P. VIII.

*Of the* K I N G's R E V E N U E.    271.

### C H A P. IX.

*Of ſubordinate* M A G I S T R A T E S.    327.

### C H A P. X.

*Of the* P E O P L E, *whether* A L I E N S, D E N I Z E N S, *or* N A T I V E S.    354.

C H A P.

# CONTENTS.

### CHAP. XI.

*Of the* CLERGY.    364.

### CHAP. XII.

*Of the* CIVIL STATE.    384.

### CHAP. XIII.

*Of the* MILITARY *and* MARITIME STATES.    395.

### CHAP. XIV.

*Of* MASTER *and* SERVANT.    410.

### CHAP. XV.

*Of* HUSBAND *and* WIFE.    421.

### CHAP. XVI.

*Of* PARENT *and* CHILD.    434.

### CHAP. XVII.

*Of* GUARDIAN *and* WARD.    448.

### CHAP. XVIII.

*Of* CORPORATIONS.    455.

ADD0005

of all that he has tranſacted on his behalf, and muſt anſwer for all loſſes by his wilful default or negligence. In order therefore to prevent diſagreeable conteſts with young gentlemen, it has become a practice for many guardians, of large eſtates eſpecially, to indemnify themſelves by applying to the court of chancery, acting under it's direction, and accounting annually before the officers of that court. For the lord chancellor is, by right derived from the crown, the general and ſupreme guardian of all infants, as well as idiots and lunatics; that is, of all ſuch perſons as have not diſcretion enough to manage their own concerns. In caſe therefore any guardian abuſes his truſt, the court will check and puniſh him; nay ſometimes proceed to the removal of him, and appoint another in his ſtead[p].

2. Let us next conſider the ward, or perſon within age, for whoſe aſſiſtance and ſupport theſe guardians are conſtituted by law; or who it is, that is ſaid to be within age. The ages of male and female are different for different purpoſes. A male at *twelve* years old may take the oath of allegiance; at *fourteen* is at years of diſcretion, and therefore may conſent or diſagree to marriage, may chooſe his guardian, and, if his diſcretion be actually proved, may make his teſtament of his perſonal eſtate; at *ſeventeen* may be an executor; and at *twenty one* is at his own diſpoſal, and may aliene his lands, goods, and chattels. A female alſo at *ſeven* years of age may be betrothed or given in marriage; at *nine* is entitled to dower; at *twelve* is at years of maturity, and therefore may conſent or diſagree to marriage, and, if proved to have ſufficient diſcretion, may bequeath her perſonal eſtate; at *fourteen* is at years of legal diſcretion, and may chooſe a guardian; at *ſeventeen* may be executrix; and at *twenty one* may diſpoſe of herſelf and her lands. So that full age in male or female, is twenty one years, which age is completed on the day preceding the anniverſary of a perſon's birth[q]; who till that time is an infant, and ſo ſtiled in law. Among the antient Greeks and Romans *women*

ᴾ 1 Sid. 424.  1 P. Will. 703.                 ᑫ Salk. 44. 625.

ADD0006

452 *The* RIGHTS BOOK I.

were never of age, but subject to perpetual guardianship [r], unless when married, "*nisi convenissent in manum viri:*" and, when that perpetual tutelage wore away in procefs of time, we find that, in females as well as males, full age was not till twenty five years [s]. Thus, by the conftitutions of different kingdoms, this period, which is merely arbitrary, and *juris pofitivi*, is fixed at different times. Scotland agrees with England in this point; (both probably copying from the old Saxon conftitutions on the continent, which extended the age of minority "*ad annum vigefimum primum,* " *et eo ufque juvenes fub tutelam reponunt* [t]") but in Naples they are of full age at *eighteen*; in France, with regard to marriage, not till *thirty*; and in Holland at *twenty five*.

3. INFANTS have various privileges, and various difabilities: but their very difabilities are privileges; in order to fecure them from hurting themfelves by their own improvident acts. An infant cannot be fued but under the protection, and joining the name, of his guardian; for he is to defend him againft all attacks as well by law as otherwife [u]: but he may fue either by his guardian, or *prochein amy*, his next friend who is not his guardian. This *prochein amy* may be any perfon who will undertake the infant's caufe; and it frequently happens, that an infant, by his *prochein amy*, inftitutes a fuit in equity againft a fraudulent guardian. In criminal cafes, an infant of the age of *fourteen* years may be capitally punifhed for any capital offence [w]: but under the age of *feven* he cannot. The period between *feven* and *fourteen* is fubject to much incertainty: for the infant fhall, generally fpeaking, be judged *prima facie* innocent; yet if he was *doli capax*, and could difcern between good and evil at the time of the offence committed, he may be convicted and undergo judgment and execution of death, though he hath not attained to years of puberty

[r] Pott. Antiq I. 4. c. 11. Cic. *pro Muren.* 12.

[s] *Inft.* 1. 23. 1.

[t] Stiernhook *de jure Sueonum. l. 2. c. 2.* This is alfo the period when the king, as well as the fubject, arrives at full age in modern Sweden. Mod. Un. Hift. xxxiii. 220.

[u] Co. Litt. 135.

[w] 1 Hal. P. C. 25.

or

ADD0007

A

# DICTIONARY OF LAW

CONTAINING

DEFINITIONS OF THE TERMS AND PHRASES OF AMER-
ICAN AND ENGLISH JURISPRUDENCE,
ANCIENT AND MODERN

INCLUDING

THE PRINCIPAL TERMS OF INTERNATIONAL, CONSTITUTIONAL, AND COM-
MERCIAL LAW; WITH A COLLECTION OF LEGAL MAXIMS AND
NUMEROUS SELECT TITLES FROM THE CIVIL LAW
AND OTHER FOREIGN SYSTEMS

By HENRY CAMPBELL BLACK, M. A.

Author of Treatises on "JUDGMENTS," "TAX-TITLES," "CONSTITUTIONAL PROHIBITIONS," etc.

ST. PAUL, MINN.
WEST PUBLISHING CO.
1891

ADD0008

KF
Bla
A d

COPYRIGHT, 1891,
BY
WEST PUBLISHING COMPANY.

THE dictionary now
to prepare a concise a
and maxims used in
the working lawyer
history or comparativ
pilation of the body
nor attempt to super
field of the English
construed by the cou
cyclopædic in its cha
comprehensive.   Its
sought between its co
(within the compass
to the true function o
tain nothing but the
the necessary terms.
tion of the present w
will be found to con
other.   None is quit
include *all* these term

For the convenie
ment, as well as in i
found for numerous
and feudal law, and
of the modern inter
seemed necessary to i
Spanish, Scotch, and
adapt the work to the
of political or public
ing, and commerce, a
law and forensic med
from the vernacular,
in statutes, have acqu
in laws or private do
But the main body o
phrases used in mode

In searching for d
has carefully examine
ous states, and from
definitions thus enact
thoritative.   Most; if
will be found under t
to definitions formula

ADD0009

by human skill or fore-
om natural causes, such
ns, perils of the sea, in-
juakes, or sudden death
istible force is meant an
uan agency, from its nat-
utely uncontrollable.  11
used in the civil law, this
iymous with "fortuitous

s where a vessel is pursuing
a lawful manner, using the
ainst danger, and an acci-
hest degree of caution that
ured.  It is enough that it is
circumstances; such as is
and has been found by long
cient to answer the end in
life and property.  7 Wall.

is only when the disaster
causes, without negligence
and when both parties have
means in their power, with
and with a proper display of
ent the occurrence of the ac-

A guard; a watchman.

**IS.**  In old English law.
sands, or sea-shore.  A
ent mentioned in Heng-

t.  Infamy; ignominy or

s meant infamy established
nce of crime; *infamia facti*
.upposed to be guilty of such
been judicially proved.  17

:.  In Roman law.  A per-
eputation was diminished
of some of the rights of
n account of his infamous
e of conviction for crime.
v, § 135.

RIME.  A crime which
1 one who has committed

1s"—*i. e.*, without fame or
plied at common law to cer-
conviction of which a person
o testify as a witness, upon
on would not commit so hein-
was so depraved as to be un-
.ese crimes are treason, fel-
*alsi.* Abbott.

ible by imprisonment in
r penitentiary, with or
r, is an infamous crime,
n of the fifth amendment

of the constitution that "no person shall be
held to answer for a capital or otherwise in-
famous crime unless on a presentment or in-
dictment of a grand jury."  117 U. S. 348,
6 Sup. Ct. Rep. 777.

"Infamous," as used in the fifth amendment to
the United States constitution, in reference to
crimes, includes those only of the class called
"*crimen falsi*," which both involve the charge of
falsehood, and may also injuriously affect the pub-
lic administration of justice by introducing false-
hood and fraud.  15 N. B. R. 335.

By the Revised Statutes of New York the term
"infamous crime," when used in any statute, is
directed to be construed as including every offense
punishable with death or by imprisonment in a
state-prison, and no other.  2 Rev. St. (p. 702, § 31,)
p. 587, § 32.

**INFAMY.**  A qualification of a man's
legal *status* produced by his conviction of an
infamous crime and the consequent loss of
honor and credit, which, at common law,
rendered him incompetent as a witness, and
by statute in some jurisdictions entails other
disabilities.

**INFANCY.**  Minority; the state of a
person who is under the age of legal majority,
—at common law, twenty-one years.  Ac-
cording to the sense in which this term is
used, it may denote the condition of the per-
son merely with reference to his years, or
the contractual disabilities which non-age en-
tails, or his *status* with regard to other pow-
ers or relations.

**INFANGENTHEF.**  In old English law.
A privilege of lords of certain manors to judge
any thief taken within their fee.

**INFANS.**  In the civil law.  A child un-
der the age of seven years; so called "*quasi
impos fandi,*" (as not having the faculty of
speech.)  Cod. Theodos. 8, 18, 8.

Infans non multum a furioso distat.
An infant does not differ much from a luna-
tic.  Bract. 1. 3, c. 2, § 8; Dig. 50, 17, 5, 40;
1 Story, Eq. Jur. §§ 223, 224, 242.

**INFANT.**  A person within age, not of
age, or not of full age; a person under the
age of twenty-one years; a minor.  Co. Litt.
171*b*; 1 Bl. Comm. 463–466; 2 Kent, Comm.
233.

**INFANTIA.**  In the civil law.  The pe-
riod of infancy between birth and the age of
seven years.  Calvin.

**INFANTICIDE.**  The murder or killing
of an infant soon after its birth.  The fact
of the birth distinguishes this act from "fœti-
cide" or "procuring abortion," which terms

denote the destruction of the *fœtus* in the
womb.

**INFANTS' MARRIAGE ACT.**  The
statute 18 & 19 Vict. c. 43.  By virtue of
this act every infant, (if a male, of twenty, or,
if a female, of seventeen, years,—section 4,)
upon or in contemplation of marriage, may,
with the sanction of the chancery division of
the high court, make a valid settlement or
contract for a settlement of property.  Whar-
ton.

**INFANZON.**  In Spanish law.  A per-
son of noble birth, who exercises within his
domains and inheritance no other rights and
privileges than those conceded to him.  Es-
criche.

**INFEFT.**  In Scotch law.  To give seisin
or possession of lands; to invest or enfeoff.
1 Kames, Eq. 215.

**INFEFTMENT.**  In old Scotch law.
Investiture or infeudation, including both
charter and seisin.  1 Forb. Inst. pt. 2, p.
110.

In later law.  *Saisine,* or the instrument
of possession.  Bell.

**INFENSARE CURIAM.**  An expres-
sion applied to a court when it suggested to
an advocate something which he had omitted
through mistake or ignorance.  Spelman.

**INFEOFFMENT.**  The act or instru-
ment of feoffment.  In Scotland it is synony-
mous with "*saisine,*" meaning the instru-
ment of possession.  Formerly it was synon-
ymous with "investiture."  Bell.

**INFERENCE.**  In the law of evidence.
A truth or proposition drawn from another
which is supposed or admitted to be true.  A
process of reasoning by which a fact or prop-
osition sought to be established is deduced as
a logical consequence from other facts, or a
state of facts, already proved or admitted.

An inference is a deduction which the rea-
son of the jury makes from the facts proved,
without an express direction of law to that
effect.  Code Civil Proc. Cal. § 1958.

**INFERENTIAL.**  In the law of evi-
dence.  Operating in the way of inference;
argumentative.  Presumptive evidence is
sometimes termed "inferential."  4 Pa. St.
272.

**INFERIOR.**  One who, in relation to an-
other, has less power and is below him; one
who is bound to obey another.  He who
makes the law is the superior; he who is

J

K

L

M

ADD0010



Content downloaded/printed from                    *HeinOnline*

Fri Nov  1 13:57:38 2019

Citations:

Bluebook 20th ed.
T. E. James, The Age of Majority, 4 Am. J. Legal Hist. 22 (1960).

ALWD 6th ed.
T. E. James, The Age of Majority, 4 Am. J. Legal Hist. 22 (1960).

APA 6th ed.
James, T. T. (1960). The age of majority. American Journal of Legal History, 4(1),
22-33.

Chicago 7th ed.
T. E. James, "The Age of Majority," American Journal of Legal History 4, no. 1
(January 1960): 22-33

McGill Guide 9th ed.
T E James, "The Age of Majority" (1960) 4:1 Am J Leg Hist 22.

MLA 8th ed.
James, T. E. "The Age of Majority." American Journal of Legal History, vol. 4, no. 1,
January 1960, p. 22-33. HeinOnline.

OSCOLA 4th ed.
T E James, 'The Age of Majority' (1960) 4 Am J Legal Hist 22

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.
-- To obtain permission to use this article beyond the scope of your  license, please use:
   *Copyright Information*

Use QR Code reader to send PDF to your smartphone or tablet device



22        THE AMERICAN JOURNAL OF LEGAL HISTORY    Vol. 4

# The Age of Majority

*By* T. E. JAMES*

A CHILD IS REGARDED, in common parlance, as a person under the age of twenty-one years. In the eyes of the common law, all persons were esteemed infants until they attained this age,[1] except for the sovereign, who attained majority at eighteen, though, for legislative purposes, he was never in minority.[2]

Variations in the age of the sovereign's majority could be found as in the case of the majority of others. The King of Denmark came of age at fourteen, according to Lacombe in his history of the ancient kings of the northern European countries. This custom would be referable to a period prior to the tenth century. "At that age the King would declare publicly that he wished no longer to have the services of a tutor."[3] Gothic kings seem frequently to have come of age at fifteen, for example Childebert II in 585 A.D.[4] The aristocracy would have been influenced by the royal example; but, inevitably, the qualifications for majority were different. Thus, in his *Memoirs of Ancient Chivalry*, St. Palaye records that the minority of the nobles in France ended at seventeen, "because they were then judged strong enough and sufficiently qualified for the culture of their lands, the mechanic arts and commerce in which they were all employed." St. Palaye referred to a period before training in arms was developed in the tenth and eleventh centuries, the age of chivalry, for he continued: "yet the profession of arms demanded an ability and strength not to be acquired til twenty-one, and this ex-

---

* Reader in Law, King's College, London, England.

[1] *Co. Litt.* 78.b; BACON *Abridgement* (1832), vol. 4, Infancy and Age, A.

[2] BLACKSTONE, *Commentaries*, vol. 1, p. 248.

[3] LACOMBE, *Abrégé chronologique de l'Histoire du Nord,* (1763), vol. 1. Remarques particuliers sur le Dannemarc, pp. 386-7.

[4] See *Theodorici Regis Italiae Epistolae*, Bk. 1, letter 38.

ADD0012

tended to those nobles whose only profession was a military life." [5]

The profession followed, or the function played in society, must have considerably influenced the choice of majority age. In this connection the legal capacity to do certain acts and the majority age were subject to the same test. For example, borough customs which developed in England throw some light on varying ages selected for capacity: "The years of discretion, which brought to a child independent responsibility for crime and trespass, were in some boroughs chosen to give the child full legal capacity; in other cases there was a tendency to vary the age of majority needed according to the particular act which had to be made valid." [6] An anomalous case is recorded where it was pleaded that a child was of age at birth.[7] Apparently, in London, children under age were formerly allowed to devise land, though by 1419 the contrary was stated to be the custom. Municipal guardianship grew, no doubt, alongside the seignorial guardianship and eventually developed into an elaborate system. "The borough court, with orphans under its own wardship, could test for itself the reality of the discretion of the ward before the full legal capacity was granted and the terms of wardship ended." [8] Counting and yard measure tests and whether a child knew a good penny from a bad one were methods employed to ascertain the age of discretion. In some boroughs, for example at London, the rules of socage wardship were adopted under certain circumstances.

The reason why twenty-one was selected as the crucial age for majority appeared to depend upon the ancient rules of tenure. The explanation was based upon good authority; but to understand the background of thought on this subject it is necessary to go back to earlier times, namely to the Roman Law as embodied in the works of Justinian.

In Roman Law, two systems were evolved of protecting a

---

[5] St. PALAYE, *Memoirs of Ancient Chivalry* (1759); transl. 1784, p. 42. This passage is quoted more fully below.

[6] *Borough Customs*, edited by Mary Bateson (1906), vol. 21, Selden Society. The introduction to this work is relied upon here.

[7] The same suggestion is mentioned by BEAUMANOIR, though he considers it unreasonable. See *Les Coutumes de Beauvoisis*, para. 536.

[8] *Borough Customs*, above p. cxxviii.

child, or, perhaps to be more accurate, of protecting its interests. These were the institutions of *tutela* and *cura*. By the time of Justinian three age groups were recognised as carrying legal incapacities. Firstly, "infantia," which existed when the child was incapable of speech. But, about A.D. 407, this was fixed at below seven years of age. Secondly, "tutela impuberes" ceased at puberty, a tutor no longer being required when the child might have children, since the interest of his relatives in the property then ceased. Puberty was in later law fixed "post quartum decimum annum completum" for males[9] and at the completion of twelve years for females.[10] Thirdly, "cura minoris," was of later development and continued for males from the closing of *tutela* "ad vicesimum quintum annum completum."[11] This was subject to "venia aetatis," that is, the privilege of full age could be granted by imperial decree before it was actually attained. In this connection, Constantine provided that "venia aetatis" might be applied for by a man "cum vicesimi anni metas empleverint" or a woman "cum octavum et decimum annum egressae fuerint."[12]

Amongst the barbarian tribes, infancy could be terminated at fifteen[13] and it would seem that this became established as the vital age both for combat and majority. "We find in the Ripuarian laws that the age of fifteen, the ability to bear arms and majority went together."[14] As regards judicial combat, in France fifteen years was essential, for if either the challenger or the challenged were below that age, there could be no combat.[15] Many other countries required a higher age and Beaumanoir expressed the view that in France it should be twenty.

In the northern parts of Europe, between the ninth and

[9] *Inst.* 1.22.

[10] C.5.60.3 and *Inst.* 1.22.

[11] *Inst.* 1.23.

[12] C.2.44.2.

[13] TACITUS, *De Moribus Germ.*, c.13; CAESAR, *De Bello Gall.* Bk.6, c.15; and see SELDEN, *Titles of Honor* (1672), Bk.2, c.1, note 6. Originally as in Germany, in all the European States every person who wore a sword had a title to go to the National Assembly.

[14] MONTESQUIEU, *The Spirit of Laws*, Bk.18., c.26.

[15] PH.DE BEAUMANOIR, *Les Coutumes de Beauvoisis*, para. 1810, written in the thirteenth century.

ADD0014

eleventh centuries, fifteen seems to have been the age of majority; but the test was quite a different one from that applied in the more stable society governed by Roman Law. In Rome, the question was: had the male "pupil" both under-standing and judgment as to acts in law, in particular in relation to property rights? These capacities he was presumed to have at puberty, later fixed at fourteen years. No doubt the principles of Roman Law would have influenced all people within the Empire and the age of fourteen may have been generally accepted, as a result, as the age of maturity for males. However, there is a curious tendency to add a year to ages for capacity, as will appear below, and is noticeable for example, in relation to socage tenure. The explanations given are various, such as an additional year for the handing over of the property or livery of seisin, somewhat similar to the executors' year, or for better certainty. Gilbert[16] allows a certain latitude in calculation, for example, when the law required a year, it added a day for better certainty, as in the case of murder, when death must occur within a year and a day. On the other hand, barbarian peoples may have concluded that fifteen was the age of maturity for males without Roman influence and for needs of their own. Whatever the reason may have been, fifteen is the age that appears to have been adopted in the northern parts of Europe as the age of majority for males; and it was accepted in States far removed from the supposed scenes of feudalism. The test applied in selecting this age seems to have been different from that applied in Rome, namely, the capacity to bear arms. In this connection in Ancient Rome, before the Empire was founded, no citizen was liable to military service before completing his seventeenth year. Later, this age was changed to the sixteenth year.[17] Sir Henry Spelman, writing at the end of the seventeenth century, has a relevant passage, which is to be found in *Reliquiae Spelmannianae*, "De Aetate Militaris," to the same effect though with some variant examples accumulated over a thousand years.[18]

In England the posse comitatus included every freeman

---

[16] GILBERT, LORD CHIEF BARON, *On Tenures* (1796), Preface.

[17] MOMMSEN, *The History of Rome*, 1854-56, pp. 346-7.

[18] *Reliquiae Spelmannianae* (1689), p. 173 et seq.

ADD0015

capable of bearing arms. The Assize of Arms, enforced by a proclamation of 1195, provided for all subjects of the age of fifteen or up to be sworn to keep the peace. However, the later *Statutum de Militibus* (1307), provided that none was to be distrained *ad arma militaria suscipienda* till the age of twenty-one.[19]

In the absence of any clear authority, it may be assumed that at one time between the ninth and tenth century, fifteen was also the age of majority in England; but, by the time of the Magna Carta, this age had been raised to twenty-one, at least so far as men holding in knight service were concerned. For it was provided that on a ward coming of age, that is on attaining twenty-one years, he should have his inheritance without relief and without fine. Nevertheless, the lord might claim his aid *pur fair fitz chevaler* as soon as the age of fifteen was attained.[20]

The raising of the age has been attributed to various causes. Some writers have alleged that it was due to the increase in the weight of arms.[21] There are some grounds for this assertion, particularly in Normandy and England in the ninth and tenth centuries, where the need had arisen for society to protect itself. The Franks dominated the situation; and the needs of the time resulted in a military revolution involving the mounted knight.[22] In the late eleventh century, knighthood became a social distinction. The reception of a young man of an age to bear arms was marked with a ceremony and armour became more elaborate, although it was not until about the middle of the thirteenth century that armour increased considerably in weight. The new feature introduced in the late eleventh and in the twelfth centuries related especially to the more elaborate defensive armour. The knee-

---

[19] 1 Ed.2, St.1.

[20] 1225, 9 Hen. *111*, c.3. This confirmed the common law rule as stated by Glanville, Lib.7, c.9; St. of Westm.1., 3 Edw.1., c.36; Co.Litt.78,.b.

[21] GILBERT, *On Tenure* (1796), in the Preface; GILBERT STUART, *Society in Europe* (1778), p. 56; MONTESQUIEU, *op. cit.*, Bk. 18.c.26.

[22] LACOMBE, *Arms and Armour*, trans. Ch. Boutall (1869). It has been suggested that the practical value of cavalry was first appreciated in the West in warfare against the Saracens in the eighth century. See also LAKING, *A Record of Armour and Arms through Seven Centuries* (1920), vol. 1, p. 61.

length mail shirt was developed to give protection to the extremities of the man who wore it, the sleeves and skirt were lengthened and narrowed, until forearms, wrists, hands, legs and feet were all covered. In addition, a mail coif guarded the neck and most of the face.[23] "From the Conquest onward the history of arms and armour is, in the main, a history of fashions of knights who will fight on horseback whenever they dare risk the skin of the costly beast, the destrier or great horse." [24] At the time of the Conquest, the English were accustomed to ride to the battlefield but dismounted to fight.

Apart from the development in defensive armour in the eleventh and twelfth centuries, contributing factors to the raising of the age from fifteen would have been the use of horses in battle by the knight and the added skill required in combat. These would give rise to the need for the more thorough training of the young potential warrior.

It must be remembered that there were two classes of knights in feudal institutions: the one of great antiquity, the other evolving from the invention of a fee, that is the knight who was a receiver of a feudal grant.[25] The former class of knight signified, before the Conquest, a military dependent of a great landholder. Indeed, in Norman times, the knight and squire were the lowest in the scale of nobility to possess the privilege of wearing a sword. Knight service was of Norman introduction to England and did not, it seems, arise out of old English customs. This system would have been similar to that known throughout France. There is some evidence, moreover, that the importance of the institution of this second class of knighthood was still not developed in the late eleventh century.[26]

In about 1070, William the Conqueror reorganized the professional army, placing the emphasis on the mounted knight

---

[23] DEMAY, *Le Costume au Moyen Age d'après les Sceaux* (1880); LAKING, *A Record of Armour and Arms through Seven Centuries* (1920), vol. 1; SMAIL, *Crusading Warfare* (1956).

[24] LAKING, *op. cit.,* vol. 1, p. 32.

[25] LAKING, *op. cit.,* vol. 1, p. 61.

[26] J. SELDEN, *Titles of Honor,* Bk.2.c.1, sect. 2; J. H. ROUND, *The Introduction of Knight Service into England,* 1891.

This is born out, for example, by a document, commented upon by C. H. Haskins, from Normandy between 1070 and 1081 which related

who had to serve a military apprenticeship to achieve the requisite skill.[27] The training of the knight seems to have become formalised in the age of chivalry. St. Palaye gives a detailed account of the training for knighthood, from birth till the age of twenty-one, when the youth "after so many proofs of valour might be admitted to the honour." [28]

It was at this age of twenty-one that the squire might become a knight. Particular merit might gain him the honour before that age, as is illustrated by dramatists and writers. Sovereigns in particular were regarded automatically as possessing superior genius. The regular age was, however, twenty-one for those who were destined to follow the profession of arms and this became the age also for the acceptance of a duel. St. Palaye makes the point that, though the French nobles attained their majority at seventeen, being then strong enough and sufficiently qualified to cultivate their lands and to indulge in commerce, still "the profession of arms demanded an ability and strength not to be acquired till the age of twenty-one." [29]

It follows that the study of military skill and the laborious training in the customs of chivalry would have been an added factor, if not a cause, for raising the age of majority.

The ultimate selection of the age of twenty-one, as the age at which knighthood was attained in the age of chivalry, was probably connected with the age at which infants come out of ward. So far as wardship was concerned, the Duke of Normandy had the guardianship of all orphans within age bound by homage in connection with a fief. Within age is specifically defined, in this connection, as those who have not

---

to the disposal by the Conqueror of an heiress, her husband to receive certain specifically defined aids, which did not include the aid for knighting the eldest son. Doc. No. 714 from the Cartulary of Mont-St. Michel: *English Historical Review* (1907), vol. 22, p. 647.

[27] G. O. SAYLES, *The Medieval Foundations of England* (1948); C. STEPHENSON, *Medieval Feudalism* (1942).

[28] ST. PALAYE, *Mémoires sur L'Ancienne Chevalerie* (1759) trans. 1784, p. 39.

[29] See, for example, SHAKESPEARE, *Henry VI*, Part III, Act 2, Scene 2, where Henry VI knights his own Edward, Prince of Wales; ST. PALAYE, *Mémoires sur L'Ancienne Chevalerie* (1759), trans. 1784, pp. 3-42.

ADD0018

completed their twentieth year "and for these one allows another year, according to the customs of Normandy, in which they may apply to the Court and claim the property of their ancestors." [30] Why twenty was selected as the age of emancipation is a question to which there seems to be no answer. It is suggested that the choice is related to the development of the age of chivalry, in the eleventh and twelfth centuries, which required a period of training, for the attainment of the honour of knighthood, not only in the military arts but also in the principles of chivalry.[31]

Although the age of knighthood in England at the time of Coke had been fixed for several centuries at twenty-one,[32] the lord might have claimed his aid *pur faire fitz chevaler* as soon as the age of fifteen was attained.[33] This was a relic of ancient usage and follows the very early fixing of the age of majority on the completion of fourteen, later extended to twenty-one years, suggested for northern countries. Moreover, an Act of Parliament might declare a person of full age before he was twenty-one though, it is to be observed, the honour of knighthood does not appear to have been eagerly sought on all occasions.[34] With respect to military tenures, wardship was terminated at twenty-one, "at which age the law presumed he was qualified both by skill and strength of body to perform the part of a soldier." [35]

---

[30] *L'Ancienne Coutume de Normandie*, edited by Wm. Lawrence de Gruchy, 1881, c.33. Though the date of the Coutume is uncertain, commentators are almost generally agreed in placing the final composition at the end of the thirteenth century.

[31] It may be related to the rule established by Constantine that male minors might apply for *venia aetatis* at that age.

[32] *Co. Litt*, 78.b, 88b; BLACKSTONE, Commentaries, vol. 1, p. 463.

[33] St. of West. 1, 3 Edw. I., c.36; *Co.Litt.* 78b. Moreover the lord might terminate lordship by knighting the heir.

[34] 4 *Co. Inst.* 36; BLACKSTONE, *Commentaries*, vol. 2, p. 87; St. of Knights (1307), 1 Edw. II, which provided that "none shall be distrained to take upon him the order of a knight before he come to the age of one and twenty."

[35] F. S. SULLIVAN, *An Historical Treatise on the Federal Law*, 1772, Lect. 12, p. 136 etc. The above reasoning is substantiated by Sullivan, in this lecture: the lord was obliged to answer to the king, or other superior lord, for all military duties and he, therefore, took the profits of the land during the ward's minority; the lord instructed the heir meanwhile in the art of war.

This reasoning would not apply to tenants in socage, where the relations of the heir, to whom the wardship appertained, were accountable for the profits of the tenancy and therefore, on the tenant attaining majority, the reason for the continuance of the wardship ceased. These tenants were not interested immediately in the change in the nature of armour and the increased skill in military arts. In socage tenure, which was essentially agricultural, the heir came of majority, or out of ward, as soon as he became capable of attaining to husbandry and "of conducting his rustic employs." Fifteen seems to have been the recognized age of majority for socage tenants, which age was later reduced to fourteen; but a certain evolution is observable as regards this age. Glanville states the age to be fifteen; Bracton refers to fifteen and fourteen; Fleta mentions no specific years but says that the heir who held by socage tenure became of age when marriageable and then states that the age of marriage was fixed at fourteen.[36] The adoption of the age of fourteen in Fleta's time may have been no more than a return to an old practice, this age being originally the age of majority in socage, which tenure some authorities suggest had an origin previous to the Norman Conquest. However, by local customs the age of majority was generally at fifteen. One of the best known examples is that of Gavelkind accepted in the County of Kent. By this custom the additional year was added, for the heir at majority was obliged to appear in the court of the lord and demand his inheritance, which the Lord was accordingly obliged to deliver.[37]

It would seem, therefore, that the present age of majority at twenty-one was early established at common law. The choice of this age evolved perhaps from the system of judicial combat and knight service, the age of knighthood being increased from fourteen or fifteen to the completion of twenty years, owing to the weight of the arms and the greater skill required in warfare. The added year may be accountable to the need for the suing of livery. For, at the conclusion of wardship, the guardian was bound to restore to the heir his

---

[36] *Gl.Lib.* 8,cap.9; *Br. Lib.*2, c.37, f.86b; *Lib.*5, c.21, f.422a. *Fleta Lib.* 1.c.9.f.5; *Lib.* 1, c.13.

[37] ROBINSON, *Gavelkind,* Bk.2. c.2, pp. 185-222.

inheritance in good condition and freed from debts, this obligation being measured by the duration of the wardship and the amount of the inheritance. The heir would therefore require time to enter upon his lands to enquire into the state of his property. It may well be that when the age of fifteen was fixed for the purpose of military tenure, the test being the ability to bear arms, socage tenure followed the élite in accepting this age likewise. Since only military tenure was affected immediately by the bearing-of-arms test, on the development of armour and the art of combat the age was increased to twenty-one. Meanwhile the rule in socage tenure remained unchanged except for the variation described above, reducing the age of majority to fourteen.

It is of interest in considering the age of majority to refer to the age of marriage. Depending on the age of puberty, the age of fourteen for males fixed by Justinian was generally followed throughout Western Europe, subject of course to the requisite consents by guardians and parents. The authority of the guardian was an essential control of the ward. As the result of the abolition of military tenure in 1660 and the turning of all lands so held into socage, wardship would then have ended in all cases at the age of fourteen when the tenant would choose his own guardian.[38] There was therefore a grave disadvantage in this early cessation from the danger of an improvident choice of a guardian being made. Accordingly, the statute of Charles II provided that the father could in all cases appoint a guardian by deed or by will until his child attained twenty-one. Subsequently, if no such appointment were made, the Court of Chancery often intervened and appointed a guardian to prevent the infant squandering his patrimony.

Nevertheless, thereafter at fourteen an infant might dispose of himself or herself in marriage without the consent of the guardian and this was so until the Marriage Act of 1753, which rendered marriages of persons under twenty-one years,

---

[38] For at this age, the law supposed a tenant in socage to be capable of choosing a guardian for himself: BLACKSTONE, *Commentaries*, vol, 2, p. 97. See also, 12 Car. 2, c.24.

even of socage tenure, in which marriage was not any per-
quisite or advantage.[39] A statute of Philip and Mary had the
effect of enlarging the duration of legal control of a father
over his daughter from fourteen to sixteen, at least insofar
as it can be enforced by habeas corpus. The direct object of
this Act was to prevent the taking and marrying of girls under
sixteen without the consent of their parents.[40] This would
seem to be the reason today for fixing the woman's age of
consent to sexual intercourse at sixteen. There is no apparent
reason, unless by analogy to the age of consent for females,
why the age at which males may marry has presently been
fixed in England at sixteen years.[41] However, the age at which
the parties to a marriage could give consent was formerly
fixed in accordance with the rules of Roman Law. Swinburne,
writing at the end of the sixteenth century, on "Spousals,"
states that under seven all espousals are void. From seven to
fourteen for males and twelve for females they are voidable.
Coke allowed a girl to be dowable once she had attained the
age of nine. Clearly, at one time marriages took place at very
early ages on occasions and could be consummated as soon
as the onset of puberty. The age of consent to sexual relations
would seem to have been of later development. No doubt, the
fixing of the age of consent for marriage in the case of males
is the origin of the common law rule that males under fourteen
are presumed to be impotent.[42]

---

[39] However, as regards the eldest son, in socage tenure in respect
to matters other than marriage "with respect to the custody of the
body alone," the guardianship of the father, which is a guardianship
by nature, continued until the son and heir apparent attain the age
of 21 years," per Holt C. J. in *King v. Thorp*, Carthew, p. 386.

Lord Hardwicke's Act, 26, Geo. 2.c.33, enacted to prevent clandes-
tine marriages. See in respect of consents ss. 3 and 11. This is no longer
the law today, see the Marriage Act, 1949.

[40] 4 and 5 Ph. & M.c.8. This statute is now repealed but its direct
object is embodied in Sexual Offenses Act 1956, s.20.

[41] See Marriage Act, 1949, s.2. and Sexual Offences Act, 1956, s.6.
for the age of consent by girls.

[42] *Co. Litt.* 78b; see also 1 BLACKSTONE, *Commentaries*, vol. 1, p. 463.

No evidence in such a case is admissible to show, when rape is
charged, that the defendant had in fact arrived at the full state of
puberty and could commit the offence; *R. v. Phillips*, 8C & P. 736; *R. v.
Waite* (1892) 2 Q.B. 600.

It would seem that the age of majority, fixed at twenty-one, is a curious development from the older systems requiring military service. Having upon it the mark of usage by the élite, it became generally accepted when those services finally disappeared.[43] It is possible that the choice of twenty with the subsequent addition of a year, was influenced by *venia aetatis* for male minors of that age, allowed by Constantine.

The Roman Law rule, fixing the age of *plenam maturitatem* at twenty-five, seems nowhere in the common law to have been accepted. In ecclesiastical law, twenty-five appears as the age fixed for admission to any benefice with cure by the Lateran Council.[44] This age is familiar to conveyancers in England, as is evidenced by the cases. Since the postponement of the vesting of a gift in favour of children until twenty-five occurred so frequently in wills and settlements, it is evidence that the donors considered that the beneficiaries would attain a true sense of discretion at that age.[45]

---

[43] This is indicated in the Introduction to vol. 38, (1921) of the Selden Society, edited by Vinogradoff and Ehrlich.

[44] *Gibs. Cod.*848. By 13 Eliz.c.12,s.3, no person was to be admitted to any benefice with cure till he was at least twenty-three. Subsequently, twenty-four was fixed as the lowest age for admittance to the priesthood, which was a necessary condition to being admitted to any ecclesiastical benefice: 44 Geo.3.c.23 and *Gibs.Cod.*848.

[45] Indeed, so frequently have testators and settlors in the past used ages above twenty-one for the vesting of a gift (in fact, the age of twenty-five is most commonly to be found in the cases) that the legislature has intervened to prevent the rule against perpetuities rendering such delayed gifts void: Law of Property Act, 1925, s.163.

ADD0023

# COMMENTARIES

ON

# AMERICAN LAW.

## BY JAMES KENT.

VOLUME II.

*NEW-YORK:*

PUBLISHED BY O. HALSTED.

1827.

ADD0024

# CONTENTS.

## PART IV.

### OF THE LAW CONCERNING THE RIGHTS OF PERSONS.

Page

LECTURE XXIV.—*Of the Absolute Rights of Persons*, - - - -   1
  1. The history and character of bills of rights,   *ib.*
  2. The right of personal security, - - - - -   9
  3. The law concerning slander and libels,   12
  4. The right of personal liberty, and the writ of *habeas corpus*, - - - - - - - -   22

LECTURE XXV.—*Of Aliens and Natives*, - - - - - - - - - - -   33
  1. Of natives, - - - - - - - - - - - - - - - -   *ib.*
  2. The doctrine of allegiance and expatriation, - - - - - - - - - - - - - - - - - - -   36
  3. Of aliens, - - - - - - - - - - - - - - - -   43

LECTURE XXVI.—*Of the Law concerning Marriage*, - - - - -   65
  1. Marriages, when void for lunacy or fraud,   *ib.*
  2. The age of consent, - - - - - - - - - - -   67.
  3. Bigamy, - - - - - - - - - - - - - - - - -   68
  4. Marriage between near relations, - - - -   70
  5. The consent of parents, - - - - - - - -   73
  6. The forms of marriage, - - - - - - - - -   75
  7. Foreign marriages, - - - - - - - - - - -   78

LECTURE XXVII.—*Of the Law concerning Divorce*, - - - - -   81
  1 Divorce *a vinculo*, - - - - - - - - - - - - -   *ib.*
  2. Foreign divorces, - - - - - - - - - - - -   89
  3. Effect of foreign judgments, - - - - - -   101
  4. Divorce *a mensa et thoro*, - - - - - - - -   104

LECTURE XXVIII.—*Of Husband and Wife*, - - - - - - - - -   109
  1. The husband's right by marriage in the property of the wife, - - - - - - - - - - -   110
  2. The duties of the husband, - - - - - - - -   121

ADD0025

v:                            CONTENTS.

                                                              Page
          3. The wife's power at law to act as a *feme
              sole*, - - - - - - - - - - - - - - - - - - 127
          4. Her capacity in equity, - - - - - - - - - - - 136
          5. Other rights and disabilities incident to
              the marriage union, - - - - - - - - - - - 149

LECTURE XXIX.—*Of Parent and Child*, - - - - - - - - - - - - 159
          1. The duties of parents, - - - - - - - - - - - *ib.*
          2. The rights of parents, - - - - - - - - - - - 169
          3. Of illegitimate children, - - - - - - - - - 173

LECTURE XXX.—*Of Guardian and Ward*, - - - - - - - - - - - - 181
          1. Guardian by nature, - - - - - - - - - - - - *ib.*
          2. Guardian by nurture, - - - - - - - - - - - 182
          3. Guardian in *socage*, - - - - - - - - - - - - *ib.*
          4. Testamentary guardians, - - - - - - - - - 184
          5. Guardians judicially appointed, - - - - - 185
          6. The duty and responsibility of guardians, 187

LECTURE XXXI.—*Of Infants.*—And herein of their acts,
              when void, when voidable, and when valid, 191

LECTURE XXXII.—*Of Master and Servant*, - - - - - - - - - - 201
          1. Slaves, domestic slavery, and its extinc-
              tion in this state, - - - - - - - - - - - - - *ib.*
          2. Hired servants, - - - - - - - - - - - - - - 209
          3. Apprentices, - - - - - - - - - - - - - - - - 211

LECTURE XXXIII.—*Of Corporations*, - - - - - - - - - - - - - 215
          1. The history of corporations, - - - - - - - 216
          2. The various kinds of corporations, - - - 220
          3. Their powers and capacities, - - - - - - - 224
          4. The visitation of them, - - - - - - - - - - 240
          5. Their dissolution, - - - - - - - - - - - - - 245

                        ─────────────

                        PART V.

             OF THE LAW CONCERNING PERSONAL PROPERTY.

LECTURE XXXIV.—*Of the History, Progress, and Absolute
                  Rights of Property*, - - - - - - - - - - - 255
          1. Of title by occupancy, - - - - - - - - - - 256
              Of wrecks, - - - - - - - - - - - - - - - - 259

ADD0026

CONTENTS.                                              vii

                                                                Page
            2. Of markets overt, - - - - - - - - - - - - - 261
            3. The right of alienation, - - - - - - - - - - 264
            4. Of sumptuary laws, - - - - - - - - - - - - 266
            5. Of taxation, - - - - - - - - - - - - - - - - 268
            6. Of the claim for improvements on land, 271
            7. The right of government to assume pro-
                 perty, and control its use, - - - - - - - - 274

LECTURE XXXV.—*Of the Nature, and various Kinds of Per-*
                 *sonal Property,* - - - - - - - - - - - - - - 277
            1. Chattels real, and fixtures, - - - - - - - - 278
            2. Qualified property in chattels personal, 281
            3. Joint tenancy in chattels, - - - - - - - - - 283
            4. Chattel interests in remainder, - - - - - 285

LECTURE XXXVI.—*Of Title to Personal Property by original*
                 *acquisition,* - - - - - - - - - - - - - - - - 289
            1. Of original acquisition by occupancy, - *ib.*
            2. ——————— by accession, - - - - - 293
            3. ——————— by intellectual labour, 293
                 (1.) Of patent rights for inventions, - 299
                 (2.) Of copyrights of authors, - - - - - 306

LECTURE XXXVII.—*Of Title to Personal Property by trans-*
                 *fer by act of law,* - - - - - - - - - - - - - 317
            1. By forfeiture, - - - - - - - - - - - - - - - - *ib.*
            2. By judgment, - - - - - - - - - - - - - - - 319
            3. By insolvency, - - - - - - - - - - - - - - - 321
            4. By intestacy, - - - - - - - - - - - - - - - - 332

LECTURE XXXVIII.—*Of Title to Personal Property by Gift,* 353
            1. Gifts *inter vivos,* - - - - - - - - - - - - - - 354
            2. Gifts *causâ mortis,* - - - - - - - - - - - - - 358

LECTURE XXXIX.—*Of the Contract of Sale,* - - - - - - - - - 363
            1. Of the different kinds of contracts, - - - *ib.*
            2. Of the consideration, - - - - - - - - - - - 364
            3 Of the subject matter of the contract, - 367
            4. Of the implied warranty of the articles
                 sold, - - - - - - - - - - - - - - - - - - - - 374
            5. Of the duty of mutual disclosure of ma-
                 terial facts, - - - - - - - - - - - - - - - - 377
            6. Of passing the title by delivery, - - - - - 387

ADD0027

viii                         CONTENTS.

                                                          Page
        7. Of the memorandum required by the sta-
            tute of frauds, - - - - - - - - - - - - - - - 402
        8. Of sales of goods as affected by fraud, - 403
        9. Of sales at auction, - - - - - - - - - - - - 423
        10. Of the vendor's right of stoppage *in tran-
            situ,* - - - - - - - - - - - - - - - - - - - - 427

LECTURE XL.—*Of Bailment,* - - - - - - - - - - - - - - - - - 437
        1. Of *depositum,* - - - - - - - - - - - - - - - - *ib.*
        2. Of *mandatum,* - - - - - - - - - - - - - - - 443
        3. Of *commodatum,* - - - - - - - - - - - - - 446
        4. Of pledging, - - - - - - - - - - - - - - - - 449
        5. Of *locatum,* or hiring for a reward.—And
            herein of the law concerning innkeep-
            ers and common carriers, - - - - - - - - 456

LECTURE XLI.—*Of Principal and Agent,* - - - - - - - - - - - 477
        1. Agency, how constituted, - - - - - - - - - *ib.*
        2. Of the power and duty of agents, - - - - 481
        3. Of the agent's right of lien, - - - - - - - 495
        4. Of the termination of agency, - - - - - - 504

LECTURE XLII.—*Of the History of Maritime Law,* - - - - - - 509
        1. Of the maritime legislation of the an-
            cients, - - - - - - - - - - - - - - - - - - - - 510
        2. Of the maritime legislation of the mid-
            dle ages, - - - - - - - - - - - - - - - - - - - 515
        3. Of the maritime legislation of the mo-
            derns, - - - - - - - - - - - - - - - - - - - - - 522

---

### ERRATA.

Page   2, l.  1, for has read have.
       29,    18, for for read of.
       65, last line, for *ver.* read *rer.*
      112, l. 18, dele that.
      387,    20, for of read at.
      398,    26, for beauty read brevity.
      401,    17, for was read is.
      —,      18, for passed read passes.

ADD0028

# LECTURE XXXI.

## OF INFANTS.

THE necessity of guardians results from the inability of infants to take care of themselves; and this inability continues, in contemplation of law, until the infant has attained the age of twenty-one years. Within that period, minors cannot, except in a few specified cases, make a binding contract, unless it be for necessaries, or in marriage. Nor can they do any act to the injury of their property, which they may not avoid, or rescind, when they arrive at full age. The responsibility of infants for crimes by them committed, depends less on their age, than on the extent of their discretion and capacity to discern right and wrong.

Most of the acts of infants are voidable only, and not absolutely void; and it is deemed sufficient, if the infant be allowed, when he attains maturity, the privilege to affirm or avoid, in his discretion, his acts done, and contracts made in infancy. But when we attempt to ascertain from the books, the precise line of distinction between void and voidable acts, and between the cases which require some act to affirm a contract, in order to make it good, and some act to disaffirm it, in order to get rid of its operation, we meet with much contradiction and confusion. A late writer, who has compiled a professed treatise on the law of infancy, concludes, from a review of the cases, that the only safe criterion by which we can ascertain, whether the act of an infant be void or voidable, is, "that acts which are capable of being legally ratified are voidable only; and acts which are incapable of being legally ratified are absolutely void.[a] But, the

---

a *Bingham on Infancy,* 88.

criterion here given, does not appear to free the question from its embarrassment, or afford a clear and definite test. All the books are said to agree in one result, that whenever the act done *may be* for the benefit of the infant, it shall not be considered void, but he shall have his election when he comes of age, to affirm or avoid it; and this, says Ch. J. Parker,[a] is the only clear and definite proposition, which can be extracted from the authorities. But we are involved in difficulty, as that learned judge admits, when we come also to the application of this principle. In *Zouch* v. *Parsons*,[b] it was held by the K. B., after a full discussion and great consideration of the case, that an infant's conveyance by lease and release, was voidable only; and yet Mr. Preston[c] condemns that decision in the most peremptory terms, as confounding all distinctions and authorities on the point; and he says, that Lord Eldon repeatedly questioned its accuracy On the other hand, Mr. Bingham[d] undertakes to show, from reason and authority, that the decision in Burrows is well founded; and he insists[e] that all the deeds, and acts, and contracts of an infant, except an account stated, a warrant of attorney, a will of lands, a release as executor, and a conveyance to his guardian, are, in judgment of law, voidable only, and not absolutely void. But the modern as well as ancient cases, are much broader in their exception. Thus it is held, that a negotiable note, given by an infant, even for necessaries, is void;[f] and his acceptance of a bill of exchange is void;[g] and his contract as security for another, is absolutely void;[h] and a bond, with a penalty, though given for

---

a Whitney v. Dutch, 14 *Mass. Rep.* 457.

b 3 *Burr.* 1794.

c *Treatise on Conveyancing*, vol. ii. 249.

d *Law of Infancy*, ch. 2.

e See his work, p. 34, and also his preface.

f Swasey v. Administrator of Vanderheyden, 10 *Johns. Rep.* 33.

g Williamson v. Watts, 1 *Campb. N. P.* 552.

h Curtin v. Patton, 11 *Serg. & Rawle.* 305.

ADD0030

necessaries, is void.[e]  It must be admitted, however, that the
tendency of the modern decisions is in favour of the reason-
ableness and policy of a very liberal extension of the rule,
that the acts and contracts of infants should be deemed void-
able only, and subject to their election when they became
of age, either to affirm or disallow them.   If their contracts
were absolutely void, it would follow as a consequence, that
the contract could have no effect, and the party contracting
with the infant, would be equally discharged.[b]   The doctrine
of the case of *Zouch* v. *Parsons*, has been recognised as law
in this country, and it is not now to be shaken.   On the au-
thority of that case, even the bond of an infant has been held
to be voidable only at his election.[c]   It is an equitable rule,
and most for the infant's benefit, that his conveyances to and
from himself, and his contracts, in most cases, should be con-
sidered to be voidable only.[d]   Lord Ch. J. Eyre, in *Keane*
v. *Boycott*,[e] undertook to reconcile the doctrine of void and
voidable contracts, on the ground, that when the court could
pronounce the contract to be to the infant's prejudice, it was
void, and when to his benefit, as for necessaries, it was good ;
and when the contract was of an uncertain nature as to be-
nefit or prejudice, it was voidable only at the election of the
infant.   Judge Story declared these distinctions to be founded
in solid reason,[f] and they are considered to be so, and the
point is not susceptible of greater precision.

If the deed or contract of an infant be voidable only, it is
nevertheless binding on the adult with whom he dealt, so
long as it remains executory, and is not rescinded by the in-

---

*a* *Co. Litt.* 172  a. recognised as being still the law by *Bayley, J.*
in 3 *Maul. & Selw.* 482.

*b*  1 *Fonb. Tr. of Eq.* 74.

*c*  Conroe v. Birdsall, 1 *Johns. Cas.* 127.

*d*  Jackson v. Carpenter, 11 *Johns. Rep.* 539.   Oliver v. Houdlet,
13 *Mass. Rep.* 237.   Roberts v. Wiggin, 1 *N. H. Rep.* 73.   Wright v.
Steele, 2 *N. H. Rep.* 55.

*e*  2 *H. Blacks.* 511.

*f*  1 *Mason's Rep.* 82.

fant.[a] It is also a general rule, that no one but the infant himself, or his legal representatives, can avoid his voidable deed or contract; for while living, he ought to be the exclusive judge of the propriety of the exercise of a personal privilege intended for his benefit; and when dead, those alone should interfere who legally represent him.[b] The infant's privilege of avoiding acts which are matters of record, as fines, recoveries, and recognizances, is much more limited than his privilege of avoiding matters *en pais.* The former must be avoided by him by writ of error, or *audita querela,* during his minority; but deeds, writings, and parol contracts, may be avoided during infancy, or after he is of age, by his dissent, entry, suit, or plea, as the case may require.[c] If any act of confirmation be requisite after he comes of age, to give binding force to a voidable act of his infancy, slight acts and circumstances will be a ground from which to infer the assent; but the books appear to leave the question in some obscurity, when and to what extent a positive act of confirmation on the part of the infant is requisite. In *Holmes* v. *Blogg,*[d] the Ch. Justice observed, that in every instance of a contract, voidable only by an infant on coming of age, he was bound to give notice of disaffirmance of the contract in a reasonable time. The inference from that doctrine is, that without some act of dissent, all the voidable contracts of the infant would become binding. But there are other cases which assume that a voidable contract becomes binding upon an infant after he comes of age, only by reason of acts or circumstances, amounting to an affirmance of the con-

---

a Smith v. Bowin, 1 *Mod.* 25. Holt v. Ward, *Str.* 937. Warwick v. Bruce, 2 *Maul. & Selw.* 205. Brown v. Caldwell, 10 *Serg. & Rawle,* 114.

b 8 *Co.* 42. b. Keane v. Boycott, 2 *H. Blacks.* 511. Van Bramer v. Cooper, 2 *Johns. Rep.* 279. Jackson v. Todd, 6 *ibid.* 257. Oliver v. Houdlet, 13 *Mass. Rep.* 237. Roberts v. Wiggin, 1 *N. H. Rep.* 73.

c *Co. Litt.* 380. b.

d 3 *Taunton,* 35.

ADD0032

tract.[a]  In the cases of *Jackson* v. *Carpenter*, and *Jackson* v.
*Burchin*,[b] the infant had disaffirmed the voidable deed of
his infancy, by an act equally solemn, after he became of
age.   This is the usual and the suitable course, when the
infant does not mean to stand by his contract ; and his con-
firmation of the act or deed of his infancy, may be justly in-
ferred against him after he has been of age for a reasonable
time, either from his positive acts in favour of the contract,
or from his tacit assent under circumstances not to excuse
his silence.   In *Curtin* v. *Patton*,[c] the court required some
distinct act, by which the infant either received a benefit
from the contract after he arrived at full age, or did some
act of express and direct assent and ratification ; but that
was the case of a contract considered to be absolutely void.
In the case of voidable contracts, it will depend upon cir-
cumstances, such as the nature of the contract, and the si-
tuation of the infant, whether any overt act of assent or dis-
sent on his part be requisite to determine the fact of his
future responsibility.

Infants are capable, for their own benefit, and for the
safety of the public, of doing many binding acts.   Con-
tracts for necessaries are binding upon an infant, and he
may be sued and charged in execution on such a contract,
provided the articles were necessary for him under the cir-

---

a Evelyn v. Chichester, 3 *Burr.* 1717.  1 *Rol. Abr.* tit. *Enfants.* k.
*Co. Litt* 51. b.  Hubbard v. Cummings, 1 *Greenleaf*, 11.  In Holmes
v. Blogg, 8 *Taunton*, 508., it is remarkable that the distinguished
counsel in that case, one of whom is now Lord Chancellor, and the
other Ch. J. of the C. B., treat this as an open and debateable point.
Serjeant *Copley* insisted, that the infant's contract was binding on
him when he became adult, because there had been no disaffirm-
ance of it ; and Sergeant *Best* contended, that disaffirmance was
not necessary, and that infants were not bound by any contract, un-
less the same was affirmed by them after coming to full age.

b 11 *Johns. Rep.* 539.  14 *ibid.* 124.

c 11 *Serg. & Rawle*, 305.

ADD0033

cumstances and condition in which he was placed.[a]    The
question of necessaries is governed by the real circumstances
of the infant, and not by his ostensible situation ; and, there-
fore, the tradesman who trusts him is bound to make due in-
quiry.[b]    Lord Coke considers the necessaries of the infant
to include victuals, clothing, medical aid, and " good teach-
ing or instruction, whereby he may profit himself after-
wards."[c]    If the infant lives with his father or guardian,
and their care and protection are duly exercised, he cannot
bind himself even for necessaries.[d]    It is also understood,
that necessaries for the infant's wife and children, are ne-
cessaries for him ;[e] and in all cases of contracts for neces-
saries, the real consideration may be inquired into.    The
infant is not bound to pay for the articles furnished, more
than they were really worth to him as articles of necessity,
and, consequently, he may not be bound to the extent of
his contract ; nor can he be precluded, by the form of the
contract, from inquiring into the real value of the necessa-
ries furnished.[f]

    Infancy is not permitted to protect fraudulent acts ; and,
therefore, if an infant takes an estate, and agrees to pay
rent, he cannot protect himself from the rent, after enjoying
the estate, by pretence of infancy.    If he pays money with
his own hand, without a valuable consideration for it, he
cannot get it back again.    If he receives rents, he cannot de-

a  Ive v. Chester, *Cro. Jam.* 560.    Clarke v. Leslie, 5 *Esp. N. P.*
28.    Coates v. Wilson, *ibid.* 152.    Berolles v. Ramsay, 1 *Holt's N.
P.* 77.

  b  Ford v. Fothergill, *Peake's N. P.* 229.

  c  *Co. Litt.* 172 a.

  d  Bainbridge v Pickering, 2 *Blacks. Rep.* 1325.    Wailing v. Toll,
9 *Johns. Rep.* 141.

  e  Turner v Trisby, *Str.* 168.

  f Makarell v. Bachelor, *Cro. Eliz.* 583.

ADD0034

mand them again when of age.[a]  There are, however, many
hard cases in which the infant cannot be held bound by his
contracts, though made in fraud ; for infants would lose all
protection if they were to be bound by their contracts made
by improper artifices, in the heedlessness of youth, before
they had learned the value of character, and the just obli-
gation of moral duties.  Where an infant had fraudulently
represented himself to be of age when he gave a bond, it
was held that the bond was void at law.[b]  But where he
obtained goods upon his false and fraudulent affirmation
that he was of age, though he avoided payment of the price
of the goods, on the plea of infancy, the vendor was held
entitled to reclaim the goods, as having never parted with
his property in them ;[c] and it has been suggested, in a re-
cent case,[d] that there might be an instance of such gross
and palpable fraud, committed by an infant arrived at the
age of discretion, as would render a release of his right to
land binding upon him.  Infants are liable in actions arising
*ex delicto*, whether founded on positive wrongs, or construc-
tive torts, or frauds.  But the fraudulent act, to charge
him, must be wholly tortious ; and a matter arising *ex con-
tractu*, though infected with fraud, cannot be changed into
a tort, in order to charge the infant in trover, or case, by a
change in the form of the action.[e]  He is liable in trover
for tortiously converting goods intrusted to him ;[f] and in
detinue, for goods delivered upon a special contract for a
specific purpose ;[g] and in *assumpsit*, for money which he
has fraudulently embezzled.[h]

---

a Kirton v. Elliott, 2 *Bulst.* 69.  Lord Mansfield, in 2 *Eden*, 72.
Holmes v. Blogg, 8 *Taunton*, 508.

b Conroe v. Birdsall, 1 *Johns Cas.* 127.

c Badger v. Phinney, 15 *Mass. Rep.* 359.

d Stoolfoos v. Jenkins, 12 *Serg. & Rawle*, 399.

e Jennings v. Rundall, 8 *Term Rep.* 335.   Johnson v. Pie, 1 *Lev.*
169.

f Homer v. Thwing, 3 *Pickering*, 492.

g Mills v. Graham, 4 *Bos. & Pull.* 140.

h Bristow v. Eastman, 1 *Esp Rep.* 172.

ADD0035

An infant has a capacity to do many other acts valid in law. He may bind himself as an apprentice, it being an act manifestly for his benefit ; but, when bound, he cannot dissolve the relation.*a*    The weight of opinion is, that he may make a testament of chattels, if a male, at the age of fourteen, and if a female, at the age of twelve years.*b*  He may convey real estate, held as a naked trustee, under an order in chancery.  The equity jurisdiction in this case, is grounded on the statute of 7 Ann, c. 19. which has been re-enacted in this state, and extends only to plain and express trusts.    Whatever an infant is bound to do by law, the general rule is, that the same will bind him, if he does it without suit at law.*d*    If, therefore, he be a tenant in common, he may make a reasonable partition.    He may discharge a mortgage on due payment of the mortgage debt. His acts as executor, at the age of seventeen, will bind him, unless they be acts which would amount to a *devastavit.* There was no occasion, said Lord Mansfield,*e* to enumerate instances.  The authorities are express, that if an infant does a right act, which he ought to do, and which he was compellable to do, it shall bind him.    We have already seen, that an infant of fourteen, if a male, and twelve if a female, may enter into a valid contract of marriage; but he is not liable to an action, on his executory contract, to marry, though the infant may sue an adult on such a promise.*f*

In consequence of the capacity of infants, at the age

---

*a 3 Barn. & Cress.* 484.

*b Harg.* n. 83. to lib. 2. *Co. Litt.* Mr. Hargrave has collected all the contradictory opinions on this point. The civil law gave this power to the infant at the age of seventeen years, and this period has been adopted by statute in Connecticut.

*c* Sess. 24. ch. 30.

*d Co. Litt.* 172. a.

*e 3 Burr.* 1801.

*f* Hunt v. Peake, 5 *Cowen.* 475.

ADD0036

of consent, to contract marriage, their marriage settle-
ments, when reasonable, have been held valid in chancery ;
but it has long been an unsettled question, whether a fe-
male infant could bind her real estate by a settlement upon
marriage.    In *Drury* v. *Drury*,[a] Lord Ch. Northington de-
cided, that the statute of 27 Hen. VIII. which introduced
jointures, extended to adult women only, and that, notwith-
standing a jointure on an infant, she might waive the join-
ture, and elect to take her dower ; and that a female infant
could not, by any contract previous to her marriage, bar
herself of a distributive share of her husband's personal
estate, in case of his dying intestate.    This decree was re-
versed in the House of Lords, upon the strength of the opi-
nions of Lord Hardwicke, Lord Mansfield, and the majority
of the judges ;[b] and the great question finally settled in fa-
vour of the capacity of the female infant, to bar herself by
her contract before marriage, of her right of dower in her
husband's lands, and to her distributive share of her hus-
band's personal estate.    The question still remained, whe-
ther she had the capacity to bind *her own real estate* by a
marriage settlement.    Mr. Atherley,[c] after reviewing the
cases, concludes, that the weight of the conflicting authori-
ties was in favour of her capacity so to bind herself.    But
it seems he did not draw the correct conclusion ; for, in *Mil-
ner* v. *Lord Harewood*,[d] Lord Eldon has subsequently held,
that a female infant was not bound by agreement to settle
her real estate upon marriage, if she did not, when of age,
choose to ratify it ; and that nothing but her own act, after
the period of majority, could fetter or affect it.    The case
of *Slocombe* v. *Glubb*,[e] admits, that a male infant may bar

---

a  1 *Eden*, 39.

b  1 *Eden*, 60—75.

c  *Treatise on Marriage Settlements*, p. 28—41.

d  18 *Vesey*, 259.

e  2 *Bro.* 545.

ADD0037

himself by agreement before marriage, either of his estate by the curtesy, or of his right to his wife's personal property ; and both the male and female infant can settle their *personal* estate upon marriage. The cases of *Strickland* v. *Croker,*[a] and *Warburton* v. *Lytton,*[b] are considered by Mr. Atherley[c] as favourable to the power of a male infant to settle his real estate upon marriage, and that seems to be decidedly his opinion. But since the decision of Lord Eldon, in *Milner* v. *Lord Harewood,* this conclusion becomes questionable ; for if a female infant cannot settle her real estate without leaving with her the option, when twenty-one, to revoke it, why should not the male infant have the same option ?

---

a  *2 Cas. in Ch.* 211.
b  Cited in 4 *Bro.* 440.
c  *Treatise on Marriage Settlements,* p. 42—45.

ADD0038

**Earliest Known Nineteenth Century Restrictions on the Purchase and Transfer of Firearms by Minors**

| State | Year[1] | Statutory Text | Source[2] |
|---|---|---|---|
| Alabama | 1856 | "That any one who shall sell or give or lend, to any male minor, a . . . air gun or pistol, shall, on conviction be fined not less than three hundred, nor more than one thousand dollars." | An Act to Amend the Criminal Law, No. 26, § 1, 1856 Ala. Acts 17. |
| Delaware | 1881 | "That if any person shall carry concealed a deadly weapon upon or about his person other than an ordinary pocket knife, or shall knowingly sell a deadly weapon to a minor other than an ordinary pocket knife, such person shall, upon conviction thereof, be fined . . . ." | An Act providing for the punishment of persons carrying concealed deadly weapons, ch. 548, § 1, 16 Del. Laws 716 (1881). |
| District of Columbia | 1892 | "That it shall not be lawful for any person or persons within the District of Columbia, to have concealed about their person any deadly or dangerous weapons, such as daggers, air-guns, pistols . . . . That any person or persons who shall, within the District of Columbia, sell, barter, hire, lend or give to any minor under the age of twenty-one years any such weapon as hereinbefore described shall be deemed guilty of a misdemeanor . . . ." | An Act to punish the carrying or selling of deadly or dangerous weapons within the District of Columbia, and for other purposes, ch. 159, §5, 27 Stat. 116-17 (1892). |

---

[1] Year of enactment.

[2] Where the relevant law was published in a larger compendium source, the source date often postdates the year of enactment.

| State | Year[1] | Statutory Text | Source[2] |
|-------|---------|----------------|-----------|
| Georgia | 1876 | "[I]t shall not be lawful for any person or persons knowingly to sell, give, lend or furnish any minor or minors any pistol, dirk, bowie knife or sword cane. . . *Provided*, that nothing herein contained shall be construed as forbidding the furnishing of such weapons under circumstances justifying their use in defending life, limb or property." | An Act to punish any person or persons who shall sell, give, lend or furnish any minor or minors with deadly weapons herein mentioned and for other purposes, No. CXXVIIII (O. No. 63.), § 1, 1876 Ga. Acts And Resolutions 112. |
| Illinois | 1881 | "Whoever, not being the father, guardian or employer of the minor herein named, by himself or agent, shall sell, give, loan, hire or barter, or shall offer to sell, give, loan, hire or barter to any minor within this state, any pistol, revolver, derringer, bowie knife, dirk or other deadly weapon of like character, capable of being secreted upon the person, shall be guilty of a misdemeanor . . . ." | An Act to regulate the traffic in deadly weapons and to prevent the sale of them to minors, § 2, 1881 Ill. Laws 73. |
| Indiana | 1875 | "[I]t shall be unlawful for any person to sell, barter, or give to any other person under the age of twenty-one years any pistol . . . or other deadly weapon that can be worn, or carried, concealed upon or about the person, or to sell, barter, or give to any person, under the age of twenty-one years, any cartridges manufactured and designed for use in a pistol." | An Act to prohibit the sale, gift, or bartering of deadly weapons or ammunition therfor, to minors, ch. XL, § 1, 1875 Ind. Laws 59. |
| Iowa | 1884 | "That it shall be unlawful for any person to knowingly sell, present or give any pistol, revolver or toy pistol to any minor." | An Act to Prohibit the Selling or Giving of Fire Arms to Minors, ch. 78, § 1, 1884 Iowa Acts And Resolutions 86 |

| State | Year[1] | Statutory Text | Source[2] |
|---|---|---|---|
| Kansas | 1883 | "Any person who shall sell, trade, give, loan or otherwise furnish any pistol, revolver or toy pistol, by which cartridges or caps may be exploded, . . . or other dangerous weapons to any minor . . . shall be deemed guilty of a misdemeanor . . . . Any minor who shall have in his possession any pistol, revolver or toy pistol, by which cartridges may be exploded, . . . or other dangerous weapon, shall be deemed guilty of a misdemeanor . . . ." | An Act to prevent selling, trading or giving of deadly weapons or toy pistols to minors, and to provide punishment therefor, ch. CV, §§ 1-2, 1883 Kan. Sess. Laws 159. |
| Kentucky | 1873 | "If any person shall carry concealed a deadly weapon upon or about his person other than an ordinary pocket knife, or shall sell a deadly weapon to a minor other than an ordinary pocket knife, such person shall, upon indictment and conviction, be fined . . . ." | Edward I. Bullock & William Johnson, Eds., The General Statutes Of The Commonwealth Of Kentucky, Ky. Gen. Stat. ch. 29, art. 29, § 1, at 359 (1873). |
| Louisiana | 1890 | "[I]t shall be unlawful, for any person to sell, or lease or give through himself or any other person, any pistol, dirk, bowie-knife or any other dangerous weapon, which may be carried concealed to any person under the age of twenty-one years." | An Act Making it a misdemeanor for any person to sell, give or lease, to any minor, any pistol, bowie-knife, dirk or any weapon, intended to be carried or used as a concealed weapon, No. 46, § 1, 1890 La. Acts 39, 39. |
| Maryland | 1882 | "[I]t shall be unlawful for any person, be he or she licensed dealer or not, to sell, barter or give away any firearm whatsoever or other deadly weapons, except shot guns, fowling pieces and rifles, to any person who is a minor under the age of twenty-one years." | An Act to prohibit the sale of "Deadly Weapons to Minors," ch. 424, § 2, 1882 Md. Laws 656. |

| State | Year[1] | Statutory Text | Source[2] |
|---|---|---|---|
| Mississippi | 1878 | "[A]ny person not being threatened with, or having good and sufficient reason to apprehend an attack, or traveling (not being a tramp) or setting out on a journey, or peace officers, or deputies in discharge of their duties, who carries concealed, in whole or in part, any bowie knife, pistol, . . . or other deadly weapon of like kind or description, shall be deemed guilty of a misdemeanor . . . . [I]t shall not be lawful for any person to sell to any minor . . . knowing him to be a minor . . . any weapon of the kind or description in the first section of this Act described, or any pistol cartridge . . . ." | An Act to prevent the carrying of concealed weapons, and for other purposes, ch. 66, §§ 1-2, 1878 Miss. Laws 175. |
| Missouri | 1879 | "If any person shall carry concealed, upon or about his person, any deadly or dangerous weapon, . . . having upon or about his person any kind of firearms, bowie-knife, dirk, dagger, slung-shot, or other deadly weapon . . . or shall, directly or indirectly, sell or deliver, loan or barter to any minor any such weapon, without the consent of the parent or guardian of such minor . . . ." | Carrying deadly weapons, etc., Mo. Rev. Stat. § 1274 (1879). |

| State | Year[1] | Statutory Text | Source[2] |
|---|---|---|---|
| Nevada | 1885 | "Every person under the age of twenty-one (21) years who shall wear or carry any dirk, pistol, sword in case, slung shot, or other dangerous and deadly weapon concealed upon his person shall be deemed guilty of a misdemeanor, and shall, upon conviction thereof, be fined not less than twenty nor more than two hundred ($200) dollars, or by imprisonment in the County Jail not less than thirty days nor more than six months, or by both such fine and imprisonment." | An Act to amend an Act entitled "An Act to prohibit the carrying of concealed weapons by minors, ch. 51, § 1, 1885 Nev. Stat. 51; *see* An Act to Prohibit the Carrying of Concealed Weapons by Minors, ch. 104, § 1, 1881 Nev. Stat. 143-44 (statute that was amended in 1885 to increase the age from eighteen to twenty-one). |
| North Carolina | 1893 | "[I]t shall be unlawful for any person, corporation or firm knowingly to sell or offer for sale, give or in any way dispose of to a minor any pistol or pistol cartridge, brass knucks, bowie-knife, dirk, loaded cane, or sling-shot." | An act to prevent the sale of deadly weapons to minors, ch. 514, § 1, 1893 N.C. Pub. L. & Res. 468. |
| Tennessee | 1856 | "[I]t shall be unlawful for any person to sell, loan, or give, to any minor a pistol . . . *Provided*, that this act shall not be construed so as to prevent the sale, loan, or gift, to any minor of a gun for hunting." | An Act to amend the Criminal Laws of this State, ch. 81, § 2, 1856 Tenn. Acts 92. |
| Texas | 1897 | "[I]f any person in this State shall knowingly sell, give or barter, or cause to be sold, given or bartered to any minor, any pistol . . . without the written consent of the parent or guardian of such minor, or of some one standing in lieu thereof, he shall be punished by fine . . . ." | An Act to prevent the barter, sale and gift of any pistol, dirk, dagger, slung shot, sword-cane, spear, or knuckles made of any metal or hard substance to any minor without the written consent of the parent or guardian of such minor, or of some one standing in lieu thereof, and providing a penalty for the violation, ch. 155, § 1, 1897 Tex. Gen. Laws 221-22. |

| State | Year[1] | Statutory Text | Source[2] |
|-------|---------|----------------|-----------|
| West Virginia | 1882 | "If a person carry about his person any revolver or other pistol . . . or any other dangerous or deadly weapon of like kind or character, he shall be guilty of a misdemeanor . . . and if any person shall sell or furnish any such weapon as is hereinbefore mentioned to a person whom he knows, or has reason, from his appearance or otherwise, to believe to be under the age of twenty-one years, he shall be punished as hereinbefore provided; but nothing herein contained shall be so construed as to prevent any person from keeping or carrying about his dwelling house or premises any such revolver or other pistol, or from carrying same from the place of purchase to his dwelling house, or from his dwelling house to any place where repairing is done, to have it repaired, and back again." | An Act amending and re-enacting section seven of chapter one hundred and forty-eight of the code of West Virginia, and adding sections thereto for the punishment of unlawful combinations and conspiracies to injury persons or property, ch. 135, § 1, 1882 W. Va. Acts 421-22. |
| Wisconsin | 1883 | "It shall be unlawful for any minor, within this state, to go armed with any pistol or revolver, and it shall be the duty of all sheriffs, constables, or other public police officers, to take from any minor any pistol or revolver, found in his possession. . . . It shall be unlawful for any dealer in pistols or revolvers, or any other person, to sell, loan, or give any pistol or revolver to any minor in this state." | An Act to prohibit the use and sale of pistols and revolvers, ch. 329, §§ 1-2, 1883 Wis. Laws 290. |

| State | Year[1] | Statutory Text | Source[2] |
|-------|---------|----------------|-----------|
| Wyoming | 1890 | "It shall be unlawful for any person to sell, barter or give to any other person under the age of twenty-one years any pistol . . . or other deadly weapon that can be worn or carried concealed upon or about the person, or to sell, barter or give to any person under the age of sixteen years any cartridges manufactured and designed for use in a pistol; and any person who shall violate any of the provisions of this section shall be fined in any sum not more than fifty dollars." | Wyo. Rev. Stat. § 5052 (1899). |



Content downloaded/printed from                    *HeinOnline*

Thu Nov  7 14:23:30 2019

Citations:

Bluebook 20th ed.
1855 3 .

ALWD 6th ed.
1855 3 .

Chicago 7th ed.
, "," Alabama - General Assembly, 5th Biennial Session : 3-368

OSCOLA 4th ed.
, '' 1855 3

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
    Conditions of the license agreement available at
    *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



ADD0046

manner of apportioning the road hands in the county of St. Clair," be, and the same is hereby repealed. *Repealed.*

SEC. 2. *Be it further enacted,* That from and after the passage of this act, the Judge of Probate and Sheriff of St. Clair county, for services required of them in Article 1. Part 1. Title 13, Chapter 14, Code of Alabama, shall each receive annually fifty dollars, instead of ninety dollars as authorized by Section 1186, Code of Alabama.

APPROVED, Feb. 2, 1856.

———

[No. 26.]        AN ACT

To amend the criminal law.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That any one who shall sell or give or lend, to any male minor, a bowie knife, or knife or instument of the like kind or description, by whatever name called, or air gun or pistol, shall, on conviction be fined not less than three hundred, nor more than one thousand dollars. *Penalty.*

APPROVED, Feb. 2, 1856.

———

[No. 27.]        AN ACT

To declare Luxapalila Creek in Fayette county a public highway.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That from and after the passage of this act, Luxapalila Creek in Fayette county, from the State line up to Wood's Mill on said stream, be, and the same is hereby, declared a public highway.

APPROVED, February 15, 1856.

ADD0047



Content downloaded/printed from                          *HeinOnline*

Thu Nov  7 14:47:57 2019

Citations:

Bluebook 20th ed.
1881 289 .

ALWD 6th ed.
1881 289 .

Chicago 7th ed.
, "," Delaware - General Assembly, Regular Session : 289-[iv]

OSCOLA 4th ed.
, '' 1881 289

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
    Conditions of the license agreement available at
    *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



716                                                LAWS OF DELAWARE.

### OF CRIMES AND PUNISHMENTS.

Penalty.

be found the court shall impose a fine on the person so found guilty of the breaking and entering. not exceeding three hundred dollars, or shall imprison him for a term not exceeding three years, or both, at the discretion of the court.

*Passed at Dover, February* 24, 1881.

---

## CHAPTER 548.

#### OF OFFENSES AGAINST PUBLIC JUSTICE.

Title.

AN ACT providing for the punishment of persons carrying concealed deadly weapons.

*Be it enacted by the Senate and House of Representatives of the State of Delaware, in General Assembly met:*

Unlawful to carry concealed deadly weapons.

Punishment.

SECTION 1.  That if any person shall carry concealed a deadly weapon upon or about his person other than an ordinary pocket knife, or shall knowingly sell a deadly weapon to a minor other than an ordinary pocket knife, such person shall, upon conviction thereof, be fined not less than twenty-five nor more than one hundred dollars or imprisoned in the county jail for not less than ten nor more than thirty days, or both at the discretion of the court: *Provided,* that the provisions of this section shall not apply to the carrying of the usual weapons by policemen and other peace officers.

Discharging fire-arms in any public road, a misdemeanor.

Penalty.

SECTION 2.  That if any person shall, except in lawful self-defence discharge any fire-arm in any public road in this State, shall be deemed guilty of a misdemeanor and upon conviction thereof shall be punished by fine not exceeding fifty dollars or by imprisonment not exceeding one month, or both at the discretion of the court.

Unlawful to point a gun or pistol at another.

SECTION 3.  That it shall be unlawful for any person, either in jest or otherwise, intentionally to point a gun, pistol or other fire-arms at or towards any other person at any time or place. Any person violating any provision of this section shall, upon conviction thereof, pay a fine of not less than ten dollars nor more than one hundred dollars and the cost of prosecution, and should

ADD0049

OF CRIMES AND PUNISHMENTS. ·

·death result to any person by the discharge of such gun, pistol or other fire-arm while so pointed, the person pointing the same Penalty. shall be guilty of manslaughter when such killing shall. not .amount to murder, and shall be punished accordingly.

*Passed at Dover, April 8, 1881.*

---

## CHAPTER 519.

### GENERAL PROVISIONS CONCERNING CRIMES AND PUNISHMENTS.

AN ACT to amend Chapter 133 of the Revised Code, (General Provisions Title. Concerning Crimes, &c.)

*Be it enacted by the Senate and House of Representatives of the .State of Delaware, in General Assembly met:*

SECTION 1.    That Section 10 of Chapter 133 of the Revised Section 10, ·Code, be amended by adding thereto as follows:  If no order R. Code. has been made by the court at the term when the sentence was amended. made, or at a succeeding term, the resident judge of the county, .shall have power to make such order upon petition and proof of inability; and the said order when made and filed with the ·Clerk of the Peace, shall be sufficient authority for the discharge of the prisoner.  It shall be the duty of the Clerk of the Peace ·to furnish the sheriff at once with a certified copy of said order.

*Passed at Dover, January 26, 1881.*



Content downloaded/printed from                                         *HeinOnline*

Thu Nov  7 15:07:40 2019

Citations:

Bluebook 20th ed.
To punish the carrying or selling of deadly or dangerous weapons within the District
of Columbia, and for other purposes., Chapter 159, 52 Congress, Public Law 52-159. 27
Stat. 116 (1892).

ALWD 6th ed.
To punish the carrying or selling of deadly or dangerous weapons within the District
of Columbia, and for other purposes., Chapter 159, 52 Congress, Public Law 52-159. 27
Stat. 116 (1892).

APA 6th ed.
To punish the carrying or selling of deadly or dangerous weapons within the District
of Columbia, and for other purposes., Chapter 159, 52 Congress, Public Law 52-159. 27
Stat. 116 (1892).

Chicago 7th ed.
, "Chapter 159, 52 Congress, Session 1, An Act: To punish the carrying or selling of
deadly or dangerous weapons within the District of Columbia, and for other
purposes.," U.S. Statutes at Large 27, no. Main Section (1892): 116-118

McGill Guide 9th ed.
To punish the carrying or selling of deadly or dangerous weapons within the District
of Columbia, and for other purposes., Chapter 159, 52 Congress, Public Law 52-159. 27
Stat. 116 (1892).

MLA 8th ed.
To punish the carrying or selling of deadly or dangerous weapons within the District
of Columbia, and for other purposes., Chapter 159, 52 Congress, Public Law 52-159. 27
Stat. 116 (1892). HeinOnline.

OSCOLA 4th ed.
To punish the carrying or selling of deadly or dangerous weapons within the District
of Columbia, and for other purposes., Chapter 159, 52 Congress, Public Law 52-159. 27
Stat. 116 (1892).

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



116                    FIFTY-SECOND CONGRESS. SESS. I. CHS. 158, 159. 1892.

submitting plan and estimate for its improvement; and the Chief of Engineers shall submit to the Secretary of War the reports of the local and division engineers, with his views thereon and his opinion of the public necessity or convenience to be subserved by the proposed improvement;

*Reports to be sent to House of Representatives and printed.* and all such reports of preliminary examinations with such recommendations as he may see proper to make, shall be transmitted by the Secretary of War to the House of Representatives, and are hereby ordered to be printed when so made.

*Appropriation for examinations, etc.* SEC. 8. For preliminary examinations, contingencies, expenses connected with inspection of bridges, the service of notice required in such cases, the examination of bridge sites and reports thereon, and for incidental repairs for which there is no special appropriation for rivers and harbors, one hundred and twenty-five thousand dollars:

*Provisos.*
*No survey, etc., unless provided for.* *Provided,* That no preliminary examination, survey, project, or estimate for new works other than those designated in this act shall be made: *And provided further,* That after the regular or formal report on any examination, survey, project, or work under way or proposed is

*No supplemental reports, etc., to be made.* submitted, no supplemental or additional report or estimate, for the same fiscal year, shall be made unless ordered by a resolution of Congress. The Government shall not be deemed to have entered upon any project for the improvement of any water way or harbor mentioned in

*No project authorized until appropriation made.* this act until funds for the commencement of the proposed work shall have been actually appropriated by law.

Approved, July 13, 1892.

---

July 13, 1892. **CHAP. 159.—**An Act to punish the carrying or selling of deadly or dangerous weapons within the District of Columbia, and for other purposes.

*Be it enacted by the Senate and House of Representatives of the United*
*District of Columbia.* *States of America in Congress assembled,* That it shall not be lawful for any person or persons within the District of Columbia, to have concealed

*Carrying concealed weapons forbidden.* about their person any deadly or dangerous weapons, such as daggers, air-guns, pistols, bowie-knives, dirk knives or dirks, blackjacks, razors, razor blades, sword canes, slung shot, brass or other metal knuckles.

*Openly carrying weapons with unlawful intent forbidden.* SEC. 2. That it shall not be lawful for any person or persons within the District of Columbia to carry openly any such weapons as hereinbefore described with intent to unlawfully use the same, and any person or persons violating either of these sections shall be deemed guilty of

*Punishment, first offense.* a misdemeanor, and upon conviction thereof shall, for the first offense, forfeit and pay a fine or penalty of not less than fifty dollars nor more than five hundred dollars, of which one half shall be paid to any one giving information leading to such conviction, or be imprisoned in the jail of the District of Columbia not exceeding six months, or both such

*Provisos.*
*Exceptions.* fine and imprisonment, in the discretion of the court: *Provided,* That the officers, non-commissioned officers, and privates of the United States Army, Navy, or Marine Corps, or of any regularly organized Militia Company, police officers, officers guarding prisoners, officials of the United States or the District of Columbia engaged in the execution of the laws for the protection of persons or property, when any of such persons are on duty, shall not be liable for carrying necessary arms for use in performance of their duty: *Provided, further,* that nothing

*Lawful use of weapons.* contained in the first or second sections of this act shall be so construed as to prevent any person from keeping or carrying about his place of business, dwelling house, or premises any such dangerous or deadly weapons, or from carrying the same from place of purchase to his dwelling house or place of business or from his dwelling house or place of business to any place where repairing is done, to have the same repaired, and back again: *Provided further,* That nothing contained in

*Permits.* the first or second sections of this act shall be so construed as to apply to any person who shall have been granted a written permit to carry such weapon or weapons by any judge of the police court of the District

Case: 21-1832     Document: 31-2     Page: 56     Date Filed: 09/29/2021

FIFTY-SECOND CONGRESS. Sess. I. Ch. 159. 1892.                117

of Columbia, and authority is hereby given to any such judge to grant such permit for a period of not more than one month at any one time, upon satisfactory proof to him of the necessity for the granting thereof; and further, upon the filing with such judge of a bond, with sureties to be approved by said judge, by the applicant for such permit, conditioned to the United States in such penal sum as said judge shall require for the keeping of the peace, save in the case of necessary self-defense by such applicant during the continuance of said permit, which bond shall be put in suit by the United States for its benefit upon any breach of such condition.

SEC. 3. That for the second violation of the provisions of either of the preceding sections the person or persons offending shall be proceeded against by indictment in the supreme court of the District of Columbia, and upon conviction thereof shall be imprisoned in the penitentiary for not more than three years. *Punishment, second offense.*

SEC. 4. That all such weapons as hereinbefore described which may be taken from any person offending against any of the provisions of this act shall, upon conviction of such person, be disposed of as may be ordered by the judge trying the case, and the record shall show any and all such orders relating thereto as a part of the judgment in the case. *Disposition of weapons taken from offenders.*

SEC. 5. That any person or persons who shall, within the District of Columbia, sell, barter, hire, lend or give to any minor under the age of twenty-one years any such weapon as hereinbefore described shall be deemed guilty of a misdemeanor, and shall, upon conviction thereof, pay a fine or penalty of not less than twenty dollars nor more than one hundred dollars, or be imprisoned in the jail of the District of Columbia not more than three months. No person shall engage in or conduct the business of selling, bartering, hiring, lending, or giving any weapon or weapons of the kind hereinbefore named without having previously obtained from the Commissioners of the District of Columbia a special license authorizing the conduct of such business by such person, and the said Commissioners are hereby authorized to grant such license, without fee therefor, upon the filing with them by the applicant therefor of a bond with sureties to be by them approved, conditioned in such penal sum as they shall fix to the United States for the compliance by said applicant with all the provisions of this section; and upon any breach or breaches of said condition said bond shall be put in suit by said United States for its benefit, and said Commissioners may revoke said license. Any person engaging in said business without having previously obtained said special license shall be guilty of a misdemeanor, and upon conviction thereof shall be sentenced to pay a fine of not less than one hundred dollars nor more than five hundred dollars, of which one half shall be paid to the informer, if any, whose information shall lead to the conviction of the person paying said fine. All persons whose business it is to sell barter, hire, lend or give any such weapon or weapons shall be and they hereby, are, required to keep a written register of the name and residence of every purchaser, barterer, hirer, borrower, or donee of any such weapon or weapons, which register shall be subject to the inspection of the major and superintendent of Metropolitan Police of the District of Columbia, and further to make a weekly report, under oath to said major, and superintendent of all such sales, barterings, hirings, lendings or gifts. And one half of every fine imposed under this section shall be paid to the informer, if any, whose information shall have led to the conviction of the person paying said fine. Any police officer failing to arrest any person guilty in his sight or presence and knowledge of any violation of any section of this act shall be fined not less than fifty nor more than five hundred dollars *Punishment for sale of weapons to minors.*  *Special license for dealers in weapons.*  *Penalty for dealing without license.*  *Register of sales, etc.*  *Half of fine to informer.*  *Penalty for failure to arrest by officers.*

SEC 6. That all acts or parts of acts inconsistent with the provisions of this act be, and the same hereby are, repealed. *Repeal.*

Approved, July 13, 1892.



Content downloaded/printed from                    *HeinOnline*

Thu Nov  7 14:39:41 2019

Citations:

Bluebook 20th ed.
1876 112 .

ALWD 6th ed.
1876 112 .

Chicago 7th ed.
, "," Georgia - Regular Session : 112-113

OSCOLA 4th ed.
, '' 1876 112

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
     Conditions of the license agreement available at
     *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



**112**                  PART I.—TIT. 12.—PENAL CODE.

## No. CXXVII.—(O. No. 230.)

SECTION 1.   Punishment for cruelty to animals.

*An Act to alter and amend an Act entitled an Act for the prevention of cruelty to animals, approved March 1, 1875.*

Punishment
for cruelty
to animals

SECTION I.   *Be it enacted, etc.,* That from and after the passage of this Act, that the Act entitled an Act for the prevention of cruelty to animals be altered and amended by striking out the words, in the last line of said Act, "be fined in a sum not to exceed fifty dollars," and insert in lieu thereof the words "be punished as prescribed in section 4310 of the Code of 1873."

SEC. II.   Repeals conflicting laws.

Approved February 23, 1876.

## No. CXXVIII.—(O. No. 63.)

SECTION 1.   Furnishing deadly weapons to minors prohibited.

*An Act to punish any person or persons who shall sell, give, lend or furnish any minor or minors with deadly weapons herein mentioned, and for other purposes.*

Furnishing
deadly
weapons
to minors
prohibited

Penalty for
violation

Proviso

SECTION I.   *Be it enacted, etc.,* That from and after the passage of this Act it shall not be lawful for any person or persons knowingly to sell, give, lend or furnish any minor or minors any pistol, dirk, bowie knife or sword cane.   Any person found guilty of a violation of this Act shall be guilty of a misdemeanor, and punished as prescribed in section 4310 of the Code of 1873 : *Provided,* that nothing herein contained shall be construed as forbidding the furnishing of such weapons under circumstances justifying their use in defending life, limb or property.

SEC. II.   Repeals conflicting laws.

Approved February 17, 1876.

## No. CXXIX.—(O. No. 184.)

SECTION.
1.   Penalty for escapes.

SECTION.
2.   *Particeps criminis.*

*An Act to provide a penalty for escapes from the "chain gang," and for other purposes.*

Penalty for
escapes

SECTION I.   *Be it enacted, etc.,* That from and after the passage of this Act, if any person or persons shall be convicted of any offense below the grade of felony, and such person or persons shall escape from the "chain gang," or from any other place of

ADD0055



Content downloaded/printed from                    *HeinOnline*

Thu Nov  7 14:49:35 2019

Citations:

Bluebook 20th ed.
1881 1 .

ALWD 6th ed.
1881 1 .

Chicago 7th ed.
, "," Illinois - 32nd General Assembly, 1st Session : 1-158

OSCOLA 4th ed.
, '' 1881 1

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
     Conditions of the license agreement available at
     *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



# CRIMINAL CODE.

### DEADLY WEAPONS.

#### REGULATES TRAFFIC AND PREVENTS SALE TO MINORS.

§ 1. Forbids possession or sale of slung-shots or knuckles—penalty.

§ 2. Forbids sale, loan or gift to minors, of fire-arms or other deadly weapons—penalty.

§ 3. Provides for registry of sales by dealers in deadly weapons—Form of register—penalty for failure to keep ame.

§ 4. Penalty for carrying deadly weapons or display of same.

§ 5. Fines and penalties—how recovered - Increased penalty for second offense.

§ 6. Exempts sheriffs, coroners, constables, policemen or peace officers from provisions of thi act.

§ 7. Repealing clause for acts in conflict.

In force July 1, 1881.

AN ACT to regulate the traffic in deadly weapons, and to prevent the sale of them to minors.

SECTION 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly,* That whoever shall have in his possession, or sell, give or loan, hire or barter, or whoever shall offer to sell, give, loan, hire or barter, to any person within this state, any slung-shot or metallic knuckles, or other deadly weapon of like character, or any person in whose possession such weapons shall be found, shall be guilty of a misdemeanor, and upon conviction shall be fined in any sum not less than ten dollars ($10) nor more than two hundred dollars ($200).

§ 2. Whoever, not being the father, guardian or employer of the minor herein named, by himself or agent, shall sell, give, loan, hire or barter, or shall offer to sell, give, loan, hire or barter to any minor within this state, any pistol, revolver, derringer, bowie knife, dirk or other deadly weapon of like character, capable of being sec ted upon the person, shall be guilty of a misdemeanor, and shall be fined in any sum not less than twenty-five dollars ($25) nor more than two hundred dollars ($200).

§ 3. All persons dealing in deadly weapons, hereinbefore mentioned, at retail within this state shall keep a register of all such weapons sold or given away by them. Such register shall contain the date of the sale or gift, the name and age of the person to whom the weapon is sold or given, the price of the said weapon, and the purpose for which it is purchased or obtained. The said register shall be in the following form:

| No. of weapon. | To whom sold or given. | Age of purchaser. | Kind and description of weapon. | For what purpose purchased or obtained. | Price of weapon. |
| --- | --- | --- | --- | --- | --- |
| | | | | | |

Said register shall be kept open for the inspection of the public, and all persons who may wish to examine the same may do so at all reasonable times during business hours. A failure to keep such register, or to allow an examination of the same, or to record

ADD0057

therein any sale or gift of a deadly weapon, or the keeping of a false register, shall be a misdemeanor, and shall subject the offender to a fine of not less than twenty-five dollars ($25) nor more than two hundred dollars ($200).

§ 4. Whoever shall carry a concealed weapon upon or about his person of the character in this act specified, or razor as a weapon, or whoever, in a threatening or boisterous manner, shall display or flourish any deadly weapon, shall be guilty of a misdemeanor, and shall be fined in any sum not less than twenty-five dollars ($25) nor more than two hundred dollars ($200).

§ 5. All fines and penalties specified in this act may be recovered by information, complaint or indictment, or other appropriate remedy, in any court of competent jurisdiction; and, when recovered, shall be paid into the county treasury of the county where the conviction is had, and become a part of the current revenue of the county; or the said fines and penalties may be recovered by *qui tam* action, one-half to be paid to the informer, and the other half to be paid into the county treasury, as aforesaid. For a second violation of any of the provisions of this act the offender shall be fined in double the amount herein specified, or may be committed to the county jail for any term not exceeding twenty days, in the discretion of the court.

§ 6. Section four (4) of this act shall not apply to sheriffs, coroners, constables, policemen or other peace officers, while engaged in the discharge of their official duties, or to any person summoned by any of such officers to assist in making arrest, or preserving the peace, while such person so summoned is engaged in assisting such officer.

§ 7. All acts and parts of acts in conflict with this act are hereby repealed.

Approved April 16, 1881.

---

### PENALTY FOR ADULTERATION OF BUTTER AND CHEESE.

§ 1. Manufacture of imitations or adulteration of butter and cheese prohibited—Penalty.

§ 2. Repealing clause.
In force July 1, 1881.

An Act *to prevent the adulteration of butter and cheese, or the sale or disposal of the same, or the manufacture or sale of any article as a substitute for butter or cheese, or any article to be used as butter and cheese.*

Section 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly,* That whoever manufactures out of any oleaginous substances, or any compound of the same other than that produced from unadulterated milk, or cream from the same,



Content downloaded/printed from                    *HeinOnline*

Thu Nov  7 14:38:14 2019

Citations:

Bluebook 20th ed.
1875 59 .

ALWD 6th ed.
1875 59 .

Chicago 7th ed.
, "," Indiana - 49th Regular Session : 59-60

OSCOLA 4th ed.
, " 1875 59

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
    Conditions of the license agreement available at
    *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



# CHAPTER XL.

AN ACT to prohibit the sale, gift, or bartering of deadly weapons or ammunition therefor, to minors.

## [APPROVED FEBRUARY 27, 1875.]

SECTION 1. *Be it enacted by the General Assembly of the State of Indiana,* That it shall be unlawful for any person to sell, barter, or give to any other person, under the age of twenty-one years, any pistol, dirk, or bowie-knife, slung-shot, knucks, or other deadly weapon that can be worn, or carried, concealed upon or about the person, or to sell, barter, or give to any person, under the age of twenty-one years, any cartridges manufactured and designed for use in a pistol. *Unlawful to sell, barter or give to minors deadly weapons or cartridges for pistol.*

SEC. 2. *Be it further enacted,* That any person who shall violate any of the provisions of the foregoing section shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be fined in any sum not less than five dollars, nor more than fifty dollars. *Penalty.*

---

# CHAPTER XLI.

AN ACT in relation to the settlement of claims against decedents' estates.

## [APPROVED MARCH 11, 1875.]

SEC. 1. *Be it enacted by the General Assembly of the State of Indiana,* That whenever a claim shall exist in favor of an executor or administrator against the estate he represents, which accrued before the death of such decedent, the same shall be filed against said estate, with the affidavit of the claimant attached, to the effect that the same is justly due and wholly unpaid, and placed upon the dockets of the court having jurisdiction of the estate against which said claim is filed, thirty days before the commencement of the term of said court, during which said claim is to be presented for allowance. ·And the Judge of said court shall represent said estate, and shall examine into the nature of *Claims against decedent's estate, filing examination, allowance, and payment of same.* *Judge shall represent estate.*



Content downloaded/printed from          *HeinOnline*

Thu Nov  7 14:58:01 2019

Citations:

Bluebook 20th ed.
1884 1 .

ALWD 6th ed.
1884 1 .

Chicago 7th ed.
, "," Iowa - 20th General Assembly, Regular Session : 1-248

OSCOLA 4th ed.
, '' 1884 1

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
    Conditions of the license agreement available at
    *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



ADD0061

## CHAPTER 78.

### RELATING TO SALE OF FIRE ARMS TO MINORS.

H. F. 104.    AN ACT to Prohibit the Selling or Giving of Fire Arms to Minors.

*Be it enacted by the General Assembly of the State of Iowa:*

Unlawful to sell or give to minors fire arms or toy pistols.

SECTION 1. That it shall be unlawful for any person to knowingly sell, present or give any pistol, revolver or toy pistol to any minor.

Fine or imprisonment.

SEC. 2. Any violation of this act shall be punishable by a fine of not less than twenty-five nor more than one hundred dollars or by imprisonment in the county jail of not less than ten nor more than thirty days.

Publication.

SEC. 3. This act being deemed of immediate importance shall be in full force and take effect from and after its publication in the Iowa State Leader and Iowa State Register, newspapers published at Des Moines, Iowa.

Approved, March 29, 1884.

I hereby certify that the foregoing act was published in the *Iowa State Leader* April 2, and *Iowa State Register* April 3, 1884.

J. A. T. HULL, *Secretary of State.*

## CHAPTER 79.

### CITIES AND TOWNS.

S. F. 380.    AN ACT to Amend Chapter ninety-five (95) of Laws of Sixteenth General Assembly.

*Be it enacted by the General Assembly of the State of Iowa:*

Chap. 95, 16th G. A., amended.

SECTION 1. That chapter ninety-five (95) of the laws of the sixteenth general assembly be amended by striking out the number "4,500" in the fifth line of section one of said chapter and inserting the number "3,500" in lieu thereof.

Loans.

Publication.

SEC. 2. This act being deemed of immediate importance the same shall take effect from and after its publication in the Iowa State Register and Iowa State Leader, newspapers published in Des Moines, Iowa.

Approved, March 29, 1884.

I hereby certify that the foregoing act was published in the *Iowa State Register* April 3, and in the *Iowa State Leader* April 2, 1884.

J. A. T. HULL, *Secretary of State.*

ADD0062



Content downloaded/printed from _HeinOnline_

Thu Nov 7 14:55:45 2019

Citations:

Bluebook 20th ed.
1883 1 .

ALWD 6th ed.
1883 1 .

Chicago 7th ed.
, "," Kansas - 20th Legislature, Regular Session : 1-268

OSCOLA 4th ed.
, " 1883 1

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
    Conditions of the license agreement available at
    _https://heinonline.org/HOL/License_
-- The search text of this PDF is generated from uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



within thirty days after the said misdemeanor is alleged to have been committed.

SEC. 3. This act shall take effect and be in force from and after its publication in the official state paper.

Approved March 5, 1883.

I hereby certify that the foregoing is a true and correct copy of the original enrolled bill now on file in my office, and that the same was published in the official state paper, March 6, 1883.                        JAMES SMITH, *Secretary of State.*

---

## CHAPTER CV.

CRIMES AND PUNISHMENTS — RELATING TO MINORS AND DEADLY WEAPONS OR TOY PISTOLS.

[House Bill No. 99.]

AN ACT to prevent selling, trading or giving deadly weapons or toy pistols to minors, and to provide punishment therefor.

*Be it enacted by the Legislature of the State of Kansas:*

SECTION 1. Any person who shall sell, trade, give, loan or otherwise furnish any pistol, revolver or toy pistol, by which cartridges or caps may be exploded, or any dirk, bowie-knife, brass knuckles, slung shot, or other dangerous weapons to any minor, or to any person of notoriously unsound mind, shall be deemed guilty of a misdemeanor, and shall, upon conviction before any court of competent jurisdiction, be fined not less than five nor more than one hundred dollars.

SEC. 2. Any minor who shall have in his possession any pistol, revolver or toy pistol, by which cartridges may be exploded, or any dirk, bowie-knife, brass knuckles, slung shot or other dangerous weapon, shall be deemed guilty of a misdemeanor, and upon conviction before any court of competent jurisdiction shall be fined not less than one nor more than ten dollars.

SEC. 3. This act to take effect and be in force from and after its publication in the official state paper.

Approved March 5, 1883.



Content downloaded/printed from                    [HeinOnline](HeinOnline)

Thu Nov  7 14:37:01 2019

Citations:

Bluebook 20th ed.
Edward I. Bullock, Editor; William Johnson, Editor. General Statutes of the
Commonwealth of Kentucky (1873).

ALWD 6th ed.
Edward I. Bullock, Editor; William Johnson, Editor. General Statutes of the
Commonwealth of Kentucky (1873).

APA 6th ed.
Bullock, E. (1873). General Statutes of the Commonwealth of Kentucky. Frankfort, KY,
Printed at the Kentucky Yeoman Office.

Chicago 7th ed.
Bullock Edward I., Editor; William Johnson, Editor. General Statutes of the
Commonwealth of Kentucky. Frankfort, KY, Printed at the Kentucky Yeoman Office.

McGill Guide 9th ed.
Edward I. Bullock, Editor; William Johnson, Editor, General Statutes of the
Commonwealth of Kentucky (Frankfort, KY: Printed at the Kentucky Yeoman Office.,
1873)

MLA 8th ed.
Bullock, Edward I., Editor, and Editor William Johnson. General Statutes of the
Commonwealth of Kentucky. Frankfort, KY, Printed at the Kentucky Yeoman Office.
HeinOnline.

OSCOLA 4th ed.
Bullock, Edward I., Editor; William Johnson, Editor. General Statutes of the
Commonwealth of Kentucky. Frankfort, KY, Printed at the Kentucky Yeoman Office.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
    Conditions of the license agreement available at
    [https://heinonline.org/HOL/License](https://heinonline.org/HOL/License)
-- The search text of this PDF is generated from  uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



ADD0065

§ 7. If any person unlawfully, but not with felonious intention, take, carry away, deface, destroy, or injure any property, real or personal, or other thing of value not his own, or willfully and knowingly, without a felonious intention, break down, destroy, injure, or remove any monument erected to designate the boundaries of this State, or any county, city, or town thereof, or the boundaries of any tract or lot of land, or any tree marked, or post or stone planted for that purpose, he shall be fined not less than ten nor more than two thousand dollars.

*Carrying away or injuring property unlawfully, but not with felonious intent.*

§ 8. If any person shall willfully and unlawfully cut down or destroy, by belting, topping, or otherwise, any fruit or shade tree of another, or quarry stone on the land, pull down or open the fence or gate, destroy or injure the vegetables, trees, or shrubbery of any other person, he shall be fined not less than five nor more than five hundred dollars.

*Destroying or injuring fruit trees, quarrying stone, injuring gates, fences, vegetables, etc.*

§ 9. If any person willfully and unlawfully pull down or injure a church, court-house, school-house, or other public building, he shall be fined not less than five nor more than five thousand dollars.

*Injuring church, court-house, etc.*

### ARTICLE XXIX.
#### *Deadly Weapons.*

§ 1. If any person shall carry concealed a deadly weapon upon or about his person other than an ordinary pocket knife, or shall sell a deadly weapon to a minor other than an ordinary pocket knife, such person shall, upon indictment and conviction, be fined not less than twenty-five nor more than one hundred dollars, and imprisoned in the county jail for not less than ten nor more than thirty days, in the discretion of the court or jury trying the case.

*Carrying concealed deadly weapons.*

§ 2. That it shall be the duty of all ministerial officers in this State to apprehend such violator within their knowledge of this act, and to take such persons before a magistrate of the county in which said offense was committed; and if said magistrate shall, upon hearing the evidence, believe such accused person guilty of the offense charged, he shall require such accused person to give such bail as will insure his or her appearance at the next term of the circuit court for said county, to answer any indictment found against him or her in said court for said offense.

*Duty of ministerial officers.*

§ 3. If any such officer shall knowingly and willfully fail or refuse to discharge the duties imposed and required of him under this act, he shall, upon indictment found by the grand jury of his county, and on conviction, be fined in a sum of not less than one hundred nor more than five hundred dollars.

*Officer failing or refusing to discharge his duty.*

§ 4. That if judgment shall be confessed under this article, the penalty shall be the highest punishment imposed herein.

*If judgment confessed, shall be for highest amount.*

§ 5. Carrying concealed deadly weapons shall be lawful in the following cases: 1st. When the person has reasonable grounds to believe his person or the person of some of his family, or his property is in immediate danger from violence or crime; 2d. By sheriffs, constables, marshals, policemen, and other ministerial officers, when necessary for their protection in the discharge of their official duties.

*Lawful in the following cases.*

### ARTICLE XXX.
#### *Pardon Brokerage and Lobbying.*

§ 1. If any person other than an officer of this Commonwealth, for fee or reward, or the promise thereof, shall engage, or assist in procuring the passage of any bill or act, or the rejection thereof, by the General Assembly, not being a member thereof, or the granting or refusing of a pardon, or remission or respite of any punishment or fine, by the Governor, he shall be fined not less than twenty nor more than five hundred dollars; but this section shall not apply to an attorney at law, or other person who may orally, or in writing, appear before any committee of the General Assembly, or either House thereof, in advocacy of the passage of a bill or act, or the rejection thereof by the General Assembly or any such committee.

*Unlawful for certain persons for fee or reward to procure the passage or rejection of a bill.*

§ 2. If any officer of this State, or a member of the General Assembly, or officer thereof, shall, for fee, reward, or promise thereof, engage or assist in the prosecution, or in procuring the allowance or payment of any claim against this State, or in procuring the passage or rejection of a bill or act by the General Assembly, or in procuring a pardon or remission of a fine, or the refusal of either by the Governor, he shall be fined not less than twenty dollars, forfeit his office and right to hold office. The proper courts of Franklin county, or of the residence of the offender, shall have jurisdiction under this and the next preceding section.

*Unlawful for officer or member of the General Assembly to procure the allowance of a claim or the passage or rejection of a bill.*



Content downloaded/printed from                    *HeinOnline*

Thu Nov  7 14:59:08 2019

Citations:

Bluebook 20th ed.
1890 39 .

ALWD 6th ed.
1890 39 .

Chicago 7th ed.
, "," Louisiana - General Assembly, Regular Session : 39-39

OSCOLA 4th ed.
, '' 1890 39

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



[ 39 ]

filed by the defendant, or by his counsel, the party cast in the suit, shall be considered duly notified of the judgment by the fact of its being signed by the judge;

*Provided*, that in the country parishes no execution shall issue in cases where an appeal lies, until ten days after the adjournment of the court by which the judgment was rendered, within which delay a party may take a suspensive appeal on filing petition and appeal bond as now provided by law. *Relative to appeals in the country parishes.*

<div align="center">

S. P. HENRY,

Speaker of the House of Representatives.

JAMES JEFFRIES.

Lieut.-Governor and President of the Senate.

</div>

Approved July 1st, 1890.

<div align="center">

FRANCIS T. NICHOLLS,

Governor of the State of Louisiana.

</div>

A true copy from the original:

L. F. MASON
Secretary of State.

---

No. 46.]                    **AN ACT**

Making it a misdemeanor for any person to sell, give or lease, to any minor, any pistol, bowie-knife, dirk or any weapon, intended to be carried or used as a concealed weapon.

SECTION 1. *Be it enacted by the General Assembly of the State of Louisiana*, That, hereafter, it shall be unlawful, for any person to sell, or lease or give through himself or any other person, any pistol, dirk, bowie-knife or any other dangerous weapon, which may be carried concealed to any person under the age of twenty-one years. *Making it a misdemeanor to sell to any minor any pistol, bowie-knife, dirk or other weapon.*

SECTION 2. *Be it further enacted, etc* , That any person violating the provisions of this act shall be deemed guilty of a misdemeanor and upon conviction thereof, shall pay a fine of not less than twenty-five dollars nor more than one hundred dollars, and in default of the payment of said fine, by imprisonment not exceeding twenty days. *Penalty.*

SEC. 3. *Be it further enacted, etc.*, That all laws or parts of laws in conflict with this act be and the same are hereby repealed, and that this act take effect from and after its passage. *Repealing clause.*

<div align="center">

S. P. HENRY,

Speaker of the House of Representatives.

JAMES JEFFRIES,

Lieut.-Governor and President of the Senate.

</div>

Approved July 1, 1890.

<div align="center">

FRANCIS T. NICHOLLS,

Governor of the State of Louisiana.

</div>

A true copy from the original:

L. F. MASON,
Secretary of State.

ADD0069



Content downloaded/printed from                    *HeinOnline*

Thu Nov  7 14:52:01 2019

Citations:

Bluebook 20th ed.
1882 656 .

ALWD 6th ed.
1882 656 .

Chicago 7th ed.
, "," Maryland - General Assembly, January Session : 656-657

OSCOLA 4th ed.
, " 1882 656

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
    Conditions of the license agreement available at
    *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



656                    LAWS OF MARYLAND

## Chapter 424.

AN ACT to prohibit the sale of " Deadly Weapons to Minors."

Cartridge toy pistol.

SECTION 1. *Be it enacted by the General Assembly of Maryland*, That it shall be unlawful for any person or persons within the State of Maryland to manufacture or to sell, barter or give away the cartridge toy pistol to any one whomsoever.

Prohibiting selling to minors.

SEC. 2. *Be it enacted*, That it shall be unlawful for any person, be he or she licensed dealer or not, to sell, barter or give away any firearm whatsoever or other deadly weapons, except shot gun, fowling pieces and rifles, to any person who is a minor under the age of twenty-one years. Any person or persons violating any of the provisions of this act shall, on conviction thereof, pay a fine of not less than fifty nor more than two hundred dollars, together with the cost of prosecution, and upon failure to pay said fine and cost, be committed to jail and confined therein until such fine and costs are paid, or for the period of sixty days, whichever shall first occur.

Effective.

SEC. 3. *And be it enacted*, That this act shall take effect from the date of its passage.

Approved May 3, 1882.

———————•••———————

## Chapter 425.

AN ACT to authorize the Commissioners of Talbot county to open water courses through private property in said county to secure the proper drainage of the public roads therein.

Open water course.

SECTION 1. *Be it enacted by the General Assembly of Maryland*, That whenever any supervisor or contractor of the public roads in Talbot county shall find it necessary to open a water course through private property in said county, to secure the proper drainage of any public road therein, he shall forthwith so inform the County Commissioners of Talbot county, and if the owner or owners of said

property consent to the opening of such water course, or if such owner or owners and the said county commissioners shall agree upon the value and price to be paid for the same, then such consent and agreement shall be entered on the books of the said county commissioners, and such water course shall be opened; but if they cannot agree, and the said county commissioners decide that the opening of such water course is necessary to drain said road, they shall authorize the said supervisor or contractor to summon a jury of twelve men to value and condemn the said water course, deducting from their estimate the value, if any, that such water course will be to the owner or owners of said property through which it shall pass, and as soon as the money for such water course is tendered to the owner or owners of said private property, the said supervisor or contractor shall immediately cause such water course to be opened.

*Disagreement —how settled.*

Sec. 2. *And be it enacted,* That this act shall take effect from the date of its passage.

*Effective.*

Approved May 3, 1882.

————•◦•————

### Chapter 127.

AN ACT to repeal and re-enact with amendments section one of chapter three hundred and eighteen of the acts of the General Assembly of eighteen hundred and eighty, entitled "An act to fix the compensation of the sheriff of Montgomery county for keeping and boarding prisoners committed to the jail of said county."

Section 1. *Be it enacted by the General Assembly of Maryland,* That section one of chapter three hundred and eighteen of the acts of the General Assembly of eighteen hundred and eighty, entitled "An act to fix the compensation of the sheriff of Montgomery county for keeping and boarding prisoners committed to the jail of said county," be and the same is hereby repealed and re-enacted so as to read as follows:

*Repealed and re-enacted.*

42



Content downloaded/printed from         *HeinOnline*

Thu Nov 7 14:41:07 2019

Citations:

Bluebook 20th ed.
1878 175 .

ALWD 6th ed.
1878 175 .

Chicago 7th ed.
, "," Mississippi - Regular Session : 175-176

OSCOLA 4th ed.
, '' 1878 175

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
    Conditions of the license agreement available at
    *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



STATE OF MISSISSIPPI.                    175

## CHAPTER XLVI.

AN ACT to prevent the carrying of concealed weapons, and for other purposes.

SECTION 1. *Be it enacted by the Legislature of the State of Mississippi,* That any person, not being threatened with, or having good and sufficient reason to apprehend an attack, or traveling (not being a tramp) or setting out on a journey, or peace officers, or deputies in discharge of their duties, who carries concealed, in whole or in part, any bowie knife, pistol, brass knuckles, slung shot or other deadly weapon of like kind or description, shall be deemed guilty of a misdemeanor, and on conviction, shall be punished for the first offence by a fine of not less than five dollars nor more than one hundred dollars, and in the event the fine and cost are not paid shall be required to work at hard labor under the direction of the board of supervisors or of the court, not exceeding two months, and for the second or any subsequent offence, shall, on conviction, be fined not less than fifty nor more than two hundred dollars, and if the fine and costs are not paid, be condemned to hard labor not exceeding six months under the direction of the board of supervisors, or of the court. That in any proceeding under this section, it shall not be necessary for the State to allege or prove any of the exceptions herein contained, but the burden of proving such exception shall be on the accused. *(When concealed weapons may be carried. Penalty for carrying weapons. Burden of proof on accused.)*

SEC. 2. *Be it further enacted,* That it shall not be lawful for any person to sell to any minor or person intoxicated, knowing him to be a minor or in a state of intoxication, any weapon of the kind or description in the first section of this Act described, or any pistol cartridge, and on conviction shall be punished by a fine not exceeding two hundred dollars, and if the fine and costs are not paid, be condemned to hard labor under the direction of the board of supervisors or of the court, not exceeding six months. *(Minors, or persons intoxicated.)*

176                        LAWS OF THE

SEC. 3. *Be it further enacted*, That any father, who shall knowingly suffer or permit **Minor under 16 years.** any minor son under the age of sixteen years to carry concealed, in whole or in part, any weapon of the kind or description in the first section of this Act described, shall be deemed guilty of a misdemeanor, and on conviction, shall be fined not less than twenty dollars, nor more than two hundred dollars, and if the fine and costs are not paid, shall be condemned to hard labor under the direction of the board of supervisors or of the court.

SEC. 4. *Be it further enacted*, That any student of any university, college or school, who shall carry concealed, in whole or in part, **Students.** any weapon of the kind or description in the first section of this Act described, or any teacher, instructor, or professor who shall, knowingly, suffer or permit any such weapon to be carried by any student or pupil, shall be deemed guilty of a misdemeanor, and, on conviction, be fined not exceeding three hundred dollars, and if the fine and costs are not paid, condemned to hard labor under the direction of the board of supervisors or of the court.

SEC. 5. *Be it further enacted*, That each **Tax fee of justice.** justice of the peace before whom a conviction is had, shall, in addition to the costs now allowed by law, be entitled to a tax fee of two dollars and a half.

SEC. 6. *Be it further enacted*, That immediately after the passage of this Act, the Sec- **Act to be read in courts** retary of State shall transmit a copy to each circuit judge in the State, who shall cause the same to be read in open court on the day for the calling of the State docket of the court.

SEC. 7. *Be it further enacted*, That this Act take effect from and after its passage.

APPROVED, February 28, 1878.

Case: 21-1832    Document: 31-2    Page: 79    Date Filed: 09/29/2021



Content downloaded/printed from                    *HeinOnline*

Thu Nov  7 14:45:42 2019

Citations:

Bluebook 20th ed.
John A.; et al. Hockaday, Compilers %26 Annotators. Revised Statutes of the State of
Missouri 1879 (1879).

ALWD 6th ed.
John A.; et al. Hockaday, Compilers %26 Annotators. Revised Statutes of the State of
Missouri 1879 (1879).

APA 6th ed.
Hockaday, J. (1879). Revised Statutes of the State of Missouri 1879. Jefferson City,
Carter Regan, State printers and binders.

Chicago 7th ed.
Hockaday John A.; et al., Compilers %26 Annotators. Revised Statutes of the State of
Missouri 1879. Jefferson City, Carter & Regan, State printers and binders.

McGill Guide 9th ed.
John A.; et al. Hockaday, Compilers %26 Annotators, Revised Statutes of the State of
Missouri 1879 (Jefferson City: Carter & Regan, State printers and binders., 1879)

MLA 8th ed.
Hockaday, John A., and Compilers & Annotators et al. Revised Statutes of the State of
Missouri 1879. Jefferson City, Carter & Regan, State printers and binders.
HeinOnline.

OSCOLA 4th ed.
Hockaday, John A.; et al., Compilers & Annotators. Revised Statutes of the State of
Missouri 1879. Jefferson City, Carter & Regan, State printers and binders.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
    Conditions of the license agreement available at
    *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



ADD0076

SEC. 1271. *Abandonment of children.*—If any father or mother of any child under the age of six years, or any other person to whom such child shall have been confided, shall expose such child in a street, field or other place, with intent wholly to abandon it, he or she shall, upon conviction, be punished by imprisonment in the penitentiary not exceeding five years, or in the county jail not less than six months.  (G. S. 781, § 39.)

SEC. 1272. *Mistreatment of apprentices.*—If any master or mistress of an apprentice or other person having the legal care and control of any infant, shall, without lawful excuse, refuse or neglect to provide for such apprentice or infant, necessary food, clothing or lodging, or shall unlawfully and purposely assault such apprentice or infant, whereby his life shall be endangered, or his health shall have been or shall be likely to be permanently injured, the person so offending shall, upon conviction, be punished by imprisonment in the penitentiary not exceeding three years, or by imprisonment in the county jail not exceeding one year, or by a fine of not more than one thousand dollars, or by both such fine and imprisonment. (New section.)

SEC. 1273. *Abandonment of wife or child.*—If any man shall, without good cause, abandon or desert his wife, or abandon his child or children under the age of twelve years born in lawful wedlock, and shall fail, neglect or refuse to maintain and provide for such wife, child or children, he shall, upon conviction, be punished by imprisonment in the county jail not more than one year, or by a fine of not less than fifty, nor more than one thousand dollars, or by both such fine and imprisonment.  No other evidence shall be required to prove that such husband was married to such wife, or is the father of such child or children, than would be necessary to prove such fact or facts in a civil action. (Laws 1867, p. 112, amended—*m.*)

SEC. 1274. *Carrying deadly weapons, etc.*—If any person shall carry concealed, upon or about his person, any deadly or dangerous weapon, or shall go into any church or place where people have assembled for religious worship, or into any school room or place where people are assembled for educational, literary or social purposes, or to any election precinct, on any election day, or into any court room during the sitting of court, or into any other public assemblage of persons met for any lawful purpose, other than for militia drill or meetings called under the militia law of this state, having upon or about his person any kind of firearms, bowie-knife, dirk, dagger, slung-shot, or other deadly weapon, or shall, in the presence of one or more persons, exhibit any such weapon in a rude, angry or threatening manner, or shall have or carry any such weapon upon or about his person when intoxicated or under the influence of intoxicating drinks, or shall, directly or indirectly, sell or deliver, loan or barter to any minor, any such weapon, without the consent of the parent or guardian of such minor, he shall, upon conviction, be punished by a fine of not less than five nor more than one hundred dollars, or by imprisonment in the county jail not exceeding three months, or by both such fine and imprisonment.  (Laws 1874, p. 43; laws 1875, p. 50, and laws 1877, p. 240, amended.)

SEC. 1275. *Above section not to apply to certain officers.*—The next preceding section shall not apply to police officers, nor to any officer or person whose duty it is to execute process or warrants, or to suppress breaches of the peace, or make arrests, nor to persons moving or traveling peaceably through this state, and it shall a good defense to the charge of carrying such weapon, if the defendant shall show that he has been threatened with great bodily harm, or had good reason to carry the same in the necessary defense of his person, home or property.  (New section.)

SEC. 1276. *Fire arms not to be discharged near court house.*—Hereafter it shall be unlawful for any person in this state, to discharge or fire off any

---

(*m*)  Wife held to be a competent witness to prove fact of abandonment.   43 Mo. 429.   The fact that the defendant has brought suit for divorce is no defense.  52 Mo. 172.



Content downloaded/printed from _HeinOnline_

Thu Jan  2 18:27:31 2020

Citations:

Bluebook 20th ed.
1881 9 .

ALWD 6th ed.
1881 9 .

Chicago 7th ed.
, "," Nevada - 10th Session : 9-2

OSCOLA 4th ed.
, " 1881 9

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
    Conditions of the license agreement available at
    _https://heinonline.org/HOL/License_
-- The search text of this PDF is generated from  uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



SEC. 8.    The Board of County Commissioners of said *Commissioners empowered to grant additional rights.* county are hereby authorized and empowered to grant to the said parties, named in Section One of this Act, their associates or assigns, such additional rights, privileges and grants as said parties, their associates and assigns, may desire or deem necessary for the full and complete enjoyment of the franchise and privileges created and granted by this Act.

SEC. 9.    The Board of County Commissioners shall *License required.* require of said railroad company the payment of a quarterly license for each and every car run on said railroad; also regulate the charge for fare and freights thereon; and do such other matters and things relating to said railroad as they may deem just and proper.

----

CHAP. CIII.—*An Act to Repeal an Act entitled "An Act to Authorize the Publication of the Laws Enacted in the Legislature of the State of Nevada," approved March 2, 1877.*

[Approved March 4, 1881.]

*The People of the State of Nevada, represented in Senate and Assembly, do enact as follows:*

SECTION 1.    An Act entitled "An Act to Authorize the *Publication of Statutes, law repealed.* Publication of the Laws Enacted by the Legislature of the State of Nevada," approved the second day of March, A. D. one thousand eight hundred and seventy-seven, is hereby repealed.

----

CHAP. CIV.—*An Act to Prohibit the Carrying of Concealed Weapons by Minors.*

[ Approved March 4, 1881.]

*The People of the State of Nevada, represented in Senate and Assembly, do enact as follows:*

SECTION 1.—Every person under the age of eighteen (18) *Minors prohibited from carrying concealed weapons, penalty, etc.* years who shall wear or carry any dirk, pistol, sword in case, slung shot, or other dangerous and deadly weapon concealed upon his person shall be deemed guilty of a misdemeanor, and shall, upon conviction thereof, be fined not less than twenty nor more than two hundred ($200) dollars, or by

144 LAWS OF NEVADA,

imprisonment in the County Jail not less than thirty days nor more than six months, or by both such fine and imprisonment.

SEC. 2. All Acts and parts of Acts in conflict with the provisions of this Act are hereby repealed.

SEC. 3. This Act shall take effect and be in force from and after its passage.

---

CHAP. CV.—*An Act Fixing the Salaries of the District Judges in the Several Judicial Districts and Matters Relating Thereto.*

[Approved March 4, 1881.]

*The People of the State of Nevada, represented in Senate and Assembly, do enact as follows:*

District Judges' salaries prescribed, to take effect in 1883.

SECTION 1. The annual salaries of the Judges of the several Judicial Districts shall be as follows:

Of the First District—Six thousand ($6,000) dollars.

Of the Second District—Four thousand ($4,000) dollars; of which sum the county of Ormsby shall pay twenty-eight hundred ($2,800) dollars and the county of Douglas shall pay twelve hundred ($1,200) dollars.

Of the Third District—Five thousand ($5,000) dollars; the county of Lyon shall pay twenty-five hundred ($2,500) dollars and the county of Esmeralda shall pay twenty-five hundred ($2,500) dollars.

Of the Fourth District—Forty-five hundred ($4,500) dollars; of which sum the county of Humboldt shall pay eighteen hundred ($1,800) dollars and the county of Elko shall pay twenty-seven hundred ($2,700) dollars.

Of the Fifth District—Five thousand ($5,000) dollars; of which sum the county of Lander shall pay twenty-two hundred and fifty ($2,250) dollars, the county of Nye shall pay nineteen hundred ($1,900) dollars, and the county of Churchill eight hundred and fifty ($850) dollars.

Of the Sixth District—Six thousand five hundred ($6,500) dollars; of which sum the county of Eureka shall pay thirty-five hundred ($3,500) dollars, the county of White Pine shall pay eighteen hundred ($1,800) dollars, and the county of Lincoln shall pay twelve hundred ($1,200) dollars.

Of the Seventh Judicial District—Thirty-six hundred ($3,600) dollars.

SEC. 2. This Act shall take effect and be in force on the first Monday in January, eighteen hundred and eighty-three, and all Acts heretofore passed and in conflict with this Act are hereby repealed.

ADD0080



Content downloaded/printed from                    *HeinOnline*

Thu Jan  2 10:56:52 2020

Citations:

Bluebook 20th ed.
1885 11 .

ALWD 6th ed.
1885 11 .

Chicago 7th ed.
, "," Nevada - 12th Session : 11-2

OSCOLA 4th ed.
, '' 1885 11

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
    Conditions of the license agreement available at
    *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



ADD0081

not, such person or persons, owner or owners, shall be subject to such damages as shall be equal to twice the value of the property broken into, eaten up or destroyed.

SEC. 3.    All actions for damages arising under the provisions of this Act shall be tried and determined in the court having jurisdiction thereof, as in other cases made and provided. *Damages.*

SEC. 4.    All Acts and parts of Acts, in conflict with the provisions of this Act, are hereby repealed.

SEC. 5.    This Act shall take effect and be in force from and after thirty days after its approval.

———

CHAP. LI.—*An Act to amend an Act entitled "An Act to prohibit the carrying of concealed weapons by minors," approved March 4, 1881.*

[Approved March 2, 1885.]

*The People of the State of Nevada, represented in Senate and Assembly, do enact as follows :*

SECTION 1.    Section one of said Act is hereby amended so as to read as follows :

Section one.    Every person under the age of twenty-one (21) years who shall wear or carry any dirk, pistol, sword in case, slung shot, or other dangerous or deadly weapon concealed upon his person, shall be deemed guilty of a misdemeanor, and shall, upon conviction thereof, be fined not less than twenty nor more than two hundred ($200) dollars, or by imprisonment in the county jail not less than thirty days nor more than six months, or by both such fine and imprisonment. *Minors not to carry concealed weapons.* *Penalty.*

———

CHAP. LII.—*An Act for the relief of William C. Ross.*

[Approved March 2, 1885.]

*The People of the State of Nevada, represented in Senate and Assembly, do enact as follows :*

SECTION 1.    The State Land Register is hereby authorized to enter into contract with William C. Ross, on land applied for by said William C. Ross, February twenty-eighth, eighteen hundred and eighty-one, and described as follows : Lots one, two and three, and the southwest quarter of the northeast quarter of section five, in township number eleven, north of range number twenty-six east. *State Land Register to contract.*



Content downloaded/printed from                    *HeinOnline*

Thu Nov  7 15:09:18 2019

Citations:

Bluebook 20th ed.
1893 35 .

ALWD 6th ed.
1893 35 .

Chicago 7th ed.
, "," North Carolina - Public Laws and Resolutions, General Assembly : 35-500

OSCOLA 4th ed.
, '' 1893 35

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
    Conditions of the license agreement available at
    *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



ADD0083

## CHAPTER 512.

### An act to amend section thirteen, chapter three hundred and twenty, acts eighteen hundred and ninety-one.

*The General Assembly of North Carolina do enact :*

Chapter 320, laws 1891 (railroad commission act) amended. Telephone companies included.

SECTION 1. That chapter three hundred and twenty, section thirteen, laws eighteen hundred and ninety-one, be amended by adding after the word "telegraph" in line five, section thirteen, the words "and telephone."

To make rates for telephone lines.

SEC. 2. That section twenty-six be amended by inserting after the word "telegraph" in line seven the words "or telephone."

SEC. 3. That this act shall be in force from and after its ratification. Ratified the 6th day of March, A. D. 1893.

## CHAPTER 513.

### An act to amend chapter five hundred and thirty, laws of one thousand eight hundred and ninety-one.

*The General Assembly of North Carolina do enact :*

Chapter 530, laws 1891, amended. Appropriation for colored orphan asylum at Oxford, N. C.

SECTION 1. That chapter five hundred and thirty of the laws of one thousand eight hundred and ninety-one be and the same is hereby amended by striking out all after the word "asylum" in line two section one of said chapter down to and including the word "orphanage" in line three of said section and inserting in lieu thereof the words "located at Oxford, North Carolina," and by striking out "one thousand dollars" and inserting the words "fifteen hundred dollars," the latter sum being the entire amount of the annual appropriation to said orphanage.

SEC. 2. That this act shall be in force from and after its ratification. Ratified the 6th day of March, A. D. 1893.

## CHAPTER 514.

### An act to prevent the sale of deadly weapons to minors.

*The General Assembly of North Carolina do enact :*

Unlawful to knowingly sell, &c., to minor certain deadly weapons.

SECTION 1. That it shall be unlawful for any person, corporation or firm knowingly to sell or offer for sale, give or in any way dispose of to a minor any pistol or pistol cartridge, brass knucks, bowie-knife, dirk, loaded cane, or sling-shot.

ADD0084

SEC. 2. That any person, corporation or firm violating this act shall <span style="float:right">Misdemeanor.</span> be guilty of a misdemeanor, and upon conviction for each and every offence shall be fined or imprisoned, one or both, in the discretion of the court.

SEC. 3. That this act shall be in force from and after its ratification.

Ratified the 6th day of March, A. D. 1893.

CHAPTER 515.

## An act to amend chapter sixty, section three, of the laws of eighteen hundred and eighty-nine.

*The General Assembly of North Carolina do enact:*

SECTION 1. That section three, chapter sixty of the laws of one <span style="float:right">Section 3, chapter</span> thousand eight hundred and eighty-nine be and the same is hereby <span style="float:right">60, laws 1889,<br>(reducing school</span> repealed. <span style="float:right">age of Croatan<br>Indians to ten</span>

SEC. 2. That persons of the Croatan race of either sex who are not <span style="float:right">years) repealed.</span> under thirteen years of age may attend the normal school for the <span style="float:right">School age for<br>Croatan Indian</span> Croatans: *Provided,* that children not under eleven years of age may <span style="float:right">children.</span> be admitted who can stand an approved examination in spelling, reading, writing, primary geography and the fundamental rules of arithmetic.

SEC. 3. That this act shall be in force from and after its ratification.

Ratified the 6th day of March, A. D. 1893.

CHAPTER 516.

## An act to provide for the working of convicts on the public roads of Wayne county.

*The General Assembly of North Carolina do enact:*

SECTION 1. It shall be the duty of the county commissioners of <span style="float:right">Commissioners of</span> Wayne county immediately after the passage of this act to provide <span style="float:right">Wayne county<br>to provide means,</span> means and make all necessary arrangements and rules for the work- <span style="float:right">&c., for working</span> ing on the public roads of said county of the convicts which shall <span style="float:right">convicts on roads.</span> hereafter be sentenced to work thereon under the provisions of this act; and to that end it shall be lawful for the said county commis-



Content downloaded/printed from                    _HeinOnline_

Thu Nov  7 14:30:50 2019

Citations:

Bluebook 20th ed.
1855-1856 92 .

ALWD 6th ed.
1855-1856 92 .

Chicago 7th ed.
, "," Tennessee - 31st General Assembly, 1st Session : 92-93

OSCOLA 4th ed.
, " 1855-1856 92

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
    Conditions of the license agreement available at
    _https://heinonline.org/HOL/License_
-- The search text of this PDF is generated from  uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



ADD0086

92

## CHAPTER 81.

AN ACT to amend the Criminal Laws of this State.

SECTION 1. *Be it enacted by the General Assembly of the State of Tennessee,* That when any person shall be indicted in the Circuit Courts, or any other court having criminal jurisdiction, for malicious shooting, and the jury trying the cause, after having all the evidence, shall be of the opinion that the defendant is not guilty of the malice, they shall have the power to find the defendant guilty of an assault, or an assault and battery, and judgment shall be given accordingly.

SEC. 2. *Be it enacted,* That, hereafter, it shall be unlawful for any person to sell, loan, or give, to any minor a pistol, bowie-knife, dirk, or Arkansas tooth-pick, or hunter's knife ; and whoever shall so sell, loan, or give, to any minor any such weapon, on conviction thereof, upon indictment or presentment, shall be fined not less than twenty-five dollars, and be liable to imprisonment, at the discretion of the Court : *Provided,* that this act shall not be construed so as to prevent the sale, loan, or gift, to any minor of a gun for hunting.

SEC. 3. *Be it enacted,* That it shall be the duty of the Circuit Judges and the Judges of the Criminal Courts to give this act in charge to the Grand Juries : *Provided,* said minor be travelling on a journey, he shall be exempted.

SEC. 3. *Be it enacted,* That this act shall be in force from and after its passage.

NEILL S. BROWN,
*Speaker of the House of Representatives.*
EDWARD S. CHEATHAM,
*Speaker of the Senate.*

Passed February 26, 1856.

———

## CHAPTER 82.

AN ACT to amend the Internal Improvement acts of 1852 and 1854.

*Be it enacted by the General Assembly of the State of Tennessee,* That, hereafter, it shall not be necessary for the Engineer in Chief to swear to the subscription list, solvency, and condition of any Railroad Company applying for State aid, but the oath required of the Engineer shall be taken by the President and Treasurer of the Com-



Content downloaded/printed from                           [HeinOnline](https://heinonline.org)

Thu Nov  7 15:11:01 2019

Citations:

Bluebook 20th ed.
1897 221 .

ALWD 6th ed.
1897 221 .

Chicago 7th ed.
, "," Texas - 25th Legislature, Regular Session, General Laws : 221-222

OSCOLA 4th ed.
, '' 1897 221

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
     Conditions of the license agreement available at
     *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



yeas 86, nays 1; and passed the Senate by a two-thirds vote, yeas 21, nays 6.]

[NOTE.—The foregoing act was presented to the Governor of Texas for his approval, on Friday, the twenty-first day of May, A. D. 1897, but was not signed by him nor returned to the house in which it originated with his objections thereto within the time prescribed by the Constitution, and thereupon became a law without his signature.—JNO. H. CULLOM, Acting Secretary of State.]

H. B. No. 263.]          CHAPTER 154.

An Act to prohibit persons, firms or corporations engaged in running pool or billiard tables in a public place, or for profit, knowingly permitting minors in their places of business without the written consent of their parents or guardians, and to provide a penalty therefor.

SECTION 1.  *Be it enacted by the Legislature of the State of Texas:* That any person, firm, or corporation engaged in running any pool or billiard table or tables, in a public place, or for profit, or agent of such person, firm, or corporation, who shall knowingly permit any minor, without the written consent of such minor's parent or guardian, in such place of business, shall be fined not exceeding two hundred dollars.

[NOTE.—The foregoing act was presented to the Governor of Texas for his approval, on Friday, the fourteenth day of May, A. D. 1897, but was not signed by him nor returned to the house in which it originated with his objections thereto within the time prescribed by the Constitution, and thereupon became a law without his signature.—J. W. MADDEN, Secretary of State.]

Takes effect 90 days after adjournment.

H. B. No. 264.]          CHAPTER 155.

An Act to prevent the barter, sale and gift of any pistol, dirk, dagger, slung shot, sword-cane, spear, or knuckles made of any metal or hard substance to any minor without the written consent of the parent or guardian of such minor, or of some one standing in lieu thereof, and providing a penalty for the violation.

SECTION 1.  *Be it enacted by the Legislature of the State of Texas:* That if any person in this State shall knowingly sell, give or barter, or cause to be sold, given or bartered to any minor, any pistol, dirk, dagger, slung shot, sword-cane, spear, or knuckles made of any metal or hard substance, bowie knife or any other knife manufactured or sold for the purpose of offense or defense, without the written consent of the parent or guardian of such minor, or of some one standing in lieu thereof, he shall be punished by fine of not less than twenty-five dollars nor more than two hundred dollars, or by imprisonment in the county jail not less than ten nor more than thirty days, or by both such fine and imprisonment. And during the time of such imprisonment such offender may be put to

work upon any public work in the county in which such offense is committed.

[NOTE.—The foregoing act was presented to the Governor of Texas for his approval, on Friday, the fourteenth day of May, A. D. 1897, but was not signed by him nor returned to the house in which it originated with his objections thereto within the time prescribed by the Constitution, and thereupon became a law without his signature.—J. W. MADDEN, Secretary of State.]

Takes effect 90 days after adjournment.

---

H. B. No. 391.] CHAPTER 156.

An Act to relinquish the title and confirm the patents to certain lands herein named.

SECTION 1. *Be it enacted by the Legislature of the State of Texas:* That the land patents numbered three hundred and eighty-eight (388), five hundred and eighty-three (583) and five hundred and eighty-four (584), Vol. No. Four (4) (of the records of the general land office of the State of Texas), and issued to Thomas M. Joseph and Henry M. Truehart on the 20th day of December, A. D. 1859, and the 23rd day of August, A. D. 1860, covering certain lands in Galveston County, State of Texas, be, and the same are hereby confirmed, and that all right and title of the State of Texas to the lands therein named, be, and the same are hereby relinquished to the parties to whom the said patents were issued, and sale made in accordance with an act approved on the 20th day of February, A. D. 1858, and an act amendatory of the same, approved on the 1st day of February, A. D. 1860, as also by a special act of the legislature of the State of Texas, approved July 29th, A. D. 1870.

[NOTE.—The foregoing act was presented to the Governor of Texas for his approval, on Wednesday, the twelfth day of May, A. D. 1897, but was not signed by him nor returned to the house in which it originated with his objections thereto within the time prescribed by the Constitution, and thereupon became a law without his signature.—J. W. MADDEN, Secretary of State.]

Takes effect 90 days after adjournment.

---

S. S. B. No. 320.] CHAPTER 157.

An Act to amend Title XXIII, Chapter 4, of the Revised Civil Statutes of the State of Texas, relating to county lines, by adding thereto Article 808a.

SECTION 1. *Be it enacted by the Legislature of the State of Texas:* That Chapter 4, Title XXIII, of the Revised Civil Statutes of the State of Texas, be amended by adding thereto an Article to be known as 808a, which shall read as follows:

Article 808a. Notwithstanding the preceding articles of this chapter, any county in this State may bring suit against any adjoining coun-

ADD0090



Content downloaded/printed from             *HeinOnline*

Thu Nov  7 14:54:23 2019

Citations:

Bluebook 20th ed.
1882 3 .

ALWD 6th ed.
1882 3 .

Chicago 7th ed.
, "," West Virginia - 15th Legislature, Adjourned Session : 3-ii

OSCOLA 4th ed.
, '' 1882 3

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
    Conditions of the license agreement available at
    *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



of his duty as such, or by any means obstruct or impede, or attempt to obstruct or impede the administration of justice in any court, he shall be guilty of a misdemeanor, and unless otherwise provided by law he shall be fined not less than twenty-five nor more than two hundred dollars, and be imprisoned in the county jail not exceeding six months. *Punishment prescribed.*

[Approved March 29, 1882.]

[NOTE BY THE CLERK OF THE HOUSE OF DELEGATES.]

The foregoing act takes effect at the expiration of ninety days after its passage.

---

## CHAPTER CXXXV.

AN ACT amending and re-enacting section seven of chapter one hundred and forty-eight of the code of West Virginia, and adding additional sections thereto for the punishment of unlawful combinations and conspiracies to injure persons or property.

[Passed March 24, 1882.]

Be it enacted by the Legislature of West Virginia:

1. That section seven of chapter one hundred and forty-eight of the code of West Virginia be, and the same is hereby, amended and re-enacted so as to read as follows: *Code amended; section 7 of chapter 148 of.*

7. If a person carry about his person any revolver or other pistol, dirk, bowie knife, razor, slung shot, billy, metalic or other false knuckles, or any other dangerous or deadly weapon of like kind or character, he shall be guilty of a misdemeanor, and fined not less than twenty-five nor more than two hundred dollars, and may, at the discretion of the court, be confined in jail not less than one, nor more than twelve months; and if any person shall sell or furnish any such weapon as is hereinbefore mentioned to a person whom he knows, or has reason, from his appearance or otherwise, to believe to be under the age of twenty-one years, he shall be punished as hereinbefore provided; but nothing herein contained shall be so construed as to prevent any person from keeping or carrying about his dwelling house or premises any such revolver or other pistol, or from carrying the same from the place of purchase to his dwelling house, or from his dwelling house to any place where repairing is done, to have it repaired, and back again. And if upon the trial of an indictment for carrying any such pistol, dirk, razor or bowie knife, the *Deadly weapons; penalty for carrying.* *Selling certain weapons to minors; penalty.* *Acts of persons to which sections do not apply.* *Upon trial of indictment for carrying deadly*

ADD0092

Digitized from Best Copy Available

cealed weapons, when jury to find accused not guilty. defendant shall prove to the satisfaction of the jury that he is a quiet and peaceable citizen, of good character and standing in the community in which he lives, and at the time he was found with such pistol, dirk, razor or bowie knife, as charged in the indictment, he had good cause to believe and did believe that he was in danger of death or great bodily harm at the hands of another person, and that he was, in good faith, carrying such weapon for self defense and for no other purpose, the jury shall find him not guilty. But nothing in this section contained shall be so construed as to prevent any officer charged with the execution of the laws of the state from carrying a revolver or other pistol, dirk or bowie knife.

*Provisions of section not to apply to officers of the law.*

2. That the said chapter be and the same is hereby amended by adding thereto the following additional sections, as parts thereof, to-wit:

*Additional sections added.*

9. If two or more persons under the name of "Red Men," "Regulators," "Vigilance Committee," or any other name or without a name, combine or conspire together for the purpose of inflicting any punishment, or bodily injury upon any other person, or persons, or for the purpose of destroying, injuring, or taking and carrying away any property, real or personal, not their own, every such person, whether he has done any act in pursuance of such combination or conspiracy or not, shall be guilty of a misdemeanor and fined not less than fifty, nor more than five hundred dollars, and may, at the discretion of the court, be confined in jail not less than one, nor more than twelve months.

*Combinations or conspiracies to injure etc, persons and property, deemed a misdemeanor.*

*Penalty.*

10. If any person, in pursuance of such combination or conspiracy as is mentioned in the next preceding section, shall inflict any punishment or bodily injury upon another person, or shall destroy, injure, or take and carry away, any property, real or personal, not his own, he shall be guilty of a felony, and confined in the penitentiary not less than two nor more than ten years. And if, on the trial of an indictment under this section it be proved that two or more persons, the defendant being one, were present, aiding and abetting in the commission of the offense charged therein, it shall be presumed that such offense was committed in pursuance of such combination or conspiracy, in the absence of satisfactory proof to the contrary. And all persons who shall be present, aiding and abetting, at the commission of any offense mentioned in this section shall be deemed conspirators within the meaning of this, and the next preceding section.

*Injury, etc, inflicted by such combination, etc, upon any person or property, deemed a felony Punishment. When such combination or conspiracy to be presumed.*

*Aiders and abettors deemed conspirators.*

11. No person called as a witness for the state on the trial of any person for an offense mentioned in either of the two next preceding sections, shall be excused from answering any question which may be asked him as such

*No witness excused from answering, because such answers would,*

ADD0093

Digitized from Best Copy Available

witness, and which would be otherwise legal and proper, *etc., degrade him or expose him to punishment.* on the ground that the answer to such question would or might degrade him, or expose him to punishment; but no such witness, who shall fully and truly answer all such *Such witness answering truly and fully exempted from prosecution, etc., for same offense, etc.* questions as may be asked him touching his connection with, or knowledge of such combination or conspiracy, or of the commission of the offense charged in the indictment, in pursuance of such combination or conspiracy, shall thereafter be prosecuted or punished for the same offense mentioned in the indictment upon which the accused is being tried,

12. Persons offending against any of the provisions of *May be indicted jointly or separately.* the ninth and tenth sections of this chapter, may be indicted therefor, either jointly or separately.

13. If the death of any person shall result from the *If person die conspirators guilty of murder of first degree.* commission of any offense mentioned in the tenth section of this chapter, every person engaged in the commission of such offense shall be guilty of murder of the first degree, and punished as in other cases of murder of the first degree.

14. If any person by force, or other unlawful means, *To release or rescue, or attempt to release, etc., person charged, etc., with an offense under sections 9 and 10 a felony. Punishment.* shall release or rescue, or attempt to release or rescue a person in prison or other custody, charged with, or convicted of an offense under the provisions of the ninth or tenth section of this chapter, he shall be guilty of felony and confined in the penitentiary as provided in said tenth section.

15. If any person shall, by threats, menaces, or other- *Intimidating, etc., witness, a felony.* wise, intimidate, or attempt to intimidate, a witness for the state in any prosecution under the ninth, or any succeeding section of this chapter, for the purpose of preventing the attendance of such witness at the trial of such case, or shall in any way or manner prevent, or attempt to prevent, the attendance of any such witness at such trial, he shall be guilty of felony and confined in the *Punishment.* penitentiary not less than one, nor more than ten years, or he may, at the discretion of the court, be confined in the jail of the county not less than three, nor more than twelve months, and fined not less than one hundred, nor more than five thousand dollars.

16. The governor is hereby authorized, whenever in *Governor to employ any and all means, etc., to secure arrest of persons belonging to such unlawful combinations, etc.* his opinion it is proper to do so, to offer rewards, and employ special policemen and detectives, and to employ any and all means in his power, including the employment of any portion of the military forces of the state, to secure the apprehension of any and all persons belonging to any such unlawful combination, or who shall be charged with the commission of any offense mentioned in the tenth, or any succeeding section of this chapter.

[Approved March 29, 1882.]

ADD0094

Digitized from Best Copy Available

[NOTE BY THE CLERK OF THE HOUSE OF DELEGATES.]

The foregoing act takes effect from its passage, two-thirds of the members elected to each House, by a vote taken by yeas and nays, having so directed.

---

## CHAPTER CXXXVI.

AN ACT amending and re-enacting chapter one hundred and fifty-four of the code of West Virginia, concerning inquests on dead bodies.

[Passed March 24, 1882.]

Be it enacted by the Legislature of West Virginia:

1. That chapter one hundred and fifty-four of the code of West Virginia, be and the same is hereby amended and re-enacted so as to read as follows :

*Code amended; chapter 154 of.*

### CHAPTER CLIV.

*Of Inquest Upon Dead Bodies—Coroner; When and by Whom Appointed, &c.*

1. It shall be the duty of the county court of every county, from time to time, to appoint a coroner for such county, who shall hold his office during the pleasure of said court, and shall take the oath of office prescribed for other county officers. It shall be his duty, or if he be absent, or unable to act, or the office be vacant, the duty of any justice of the peace, upon being notified the dead body of a person, whose death is supposed to have been caused by violence or other unlawful act, and not by casualty, is within his county, to forthwith issue his warrant directed to a constable thereof who shall proceed to execute and make return of the same, commanding such constable to summon twelve suitable residents of the county to be in attendance on such coroner or justice, as jurors, at a place and on a day and hour to be designated in the warrant, to make inquisition, upon the view of the body of the person named therein, or of a person unknown, as the case may be, how such person came to his death ; and may, by indorsement on such warrant, or by subpœna, command the officer to whom the same is delivered, to summon such witnesses as the coroner or justice may designate, or as the constable may be informed, or have reason to believe, have knowledge of the circumstances attending such death, to be in attendance upon the said inquest at such time as may be designated in such indorsement or subpœna. In case of the inability or failure of

*Coroner; when and how appointed.*
*Term of office and oath.*
*Duty of coroner or justice upon being notified of death by violence, etc.*

*Warrant to issue; to whom directed and what to command.*

*Witnesses to be summoned.*

1

ADD0095

Digitized from Best Copy Available



Content downloaded/printed from                    [HeinOnline](HeinOnline)

Thu Nov  7 14:57:01 2019

Citations:

Bluebook 20th ed.
1883 vol. I 3 .

ALWD 6th ed.
1883 vol. I 3 .

Chicago 7th ed.
, "," Wisconsin - Biennial Session, Index 1879-1883 : 3-342

OSCOLA 4th ed.
, '' 1883 vol I 3

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
    Conditions of the license agreement available at
    *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



ADD0096

290          LAWS OF WISCONSIN.—Ch. 329 -330.

[No. 5, S.]                    [Published April 7, 1883.]
### CHAPTER 329.

AN ACT to prohibit the use and sale of pistols and revolvers.

*The people of the state of Wisconsin, represented in senate and assembly, do enact as follows:*

**Relating to the sale of pistols.** SECTION 1.  It shall be unlawful for any minor, within this state, to go armed with any pistol or revolver, and it shall be the duty of all sheriffs, constables, or other public police officers, to take from any minor, any pistol or revolver, found in his possession.

SECTION 2.  It shall be unlawful for any dealer in pistols or revolvers, or any other person, to sell, loan, or give any pistol or revolver to any minor in this state.

SECTION 3.  It shall be unlawful for any person in a state of intoxication, to go armed with any pistol or revolver.  Any person violating the provisions of this act, shall be punished by imprisonment in the county jail not exceeding six months, or by fine not exceeding one hundred dollars ($100).

SECTION 4.  This act shall take effect and be in force from and after its passage and publication.

Approved April 3, 1883.

---

[No. 38, S.]                  [Published April 13, 1883.]
### CHAPTER 330.

AN ACT to provide for the punishment of attempts to commit felonies or other crimes, and amendatory of section 4385, revised statutes.

*The people of the state of Wisconsin, represented in senate and assembly, do enact as follows:*

**Relating to punishment for attempt to commit felonies and other crimes.** SECTION 1.  Section 4385 of the revised statutes, is hereby amended so as to read as follows;  Section 4385.  Any person who shall assault another with intent to commit any burglary, robbery, rape or mayhem, or who shall advise or attempt to commit any arson, or any other felony, that shall fail in being committed, the punishment for which such assault, advice or attempt is not herein prescribed, shall be punished by imprisonment in the state prison not more than three years nor less than one year, or by fine, not exceeding one

ADD0097

Digitized from Best Copy Available



Content downloaded/printed from                    [HeinOnline](https://heinonline.org)

Thu Nov  7 15:00:46 2019

Citations:

Bluebook 20th ed.
J.A. Van Orsdel, Compiler and Editor; Chatterton, Fenimore, Compiler and Editor.
Revised Statutes of Wyoming in Force December 1, 1899 (1899).

ALWD 6th ed.
J.A. Van Orsdel, Compiler and Editor; Chatterton, Fenimore, Compiler and Editor.
Revised Statutes of Wyoming in Force December 1, 1899 (1899).

APA 6th ed.
Van Orsdel, J. (1899). Revised Statutes of Wyoming in Force December 1, 1899.
Laramie, Wyo, Chaplin, Spafford Mathison.

Chicago 7th ed.
Van Orsdel J.A., Compiler and Editor; Chatterton, Fenimore, Compiler and Editor.
Revised Statutes of Wyoming in Force December 1, 1899. Laramie, Wyo, Chaplin,
Spafford & Mathison.

McGill Guide 9th ed.
J.A. Van Orsdel, Compiler and Editor; Chatterton, Fenimore, Compiler and Editor,
Revised Statutes of Wyoming in Force December 1, 1899 (Laramie, Wyo: Chaplin,
Spafford & Mathison., 1899)

MLA 8th ed.
Van Orsdel, J.A., Compiler and Editor, and Fenimore Chatterton, Compiler and Editor.
Revised Statutes of Wyoming in Force December 1, 1899. Laramie, Wyo, Chaplin,
Spafford & Mathison. HeinOnline.

OSCOLA 4th ed.
Van Orsdel, J.A., Compiler and Editor; Chatterton, Fenimore, Compiler and Editor.
Revised Statutes of Wyoming in Force December 1, 1899. Laramie, Wyo, Chaplin,
Spafford & Mathison.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   [https://heinonline.org/HOL/License](https://heinonline.org/HOL/License)
-- The search text of this PDF is generated from  uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



ADD0098

shall not apply to a person drawing or threatening to use such dangerous or deadly weapons in defense of his person or property, or in defense of those entitled to his protection by law.

[S. L. 1890, Ch. 73, Sec. 95; R. S. Ind., Sec. 1984.]

**CARRYING DANGEROUS WEAPONS.**

Sec. 5051. Every person, not being a traveler, who shall wear or carry any dirk, pistol, bowie knife, dagger, sword-in-cane, or any other dangerous or deadly weapon concealed, or who shall carry or wear any such weapon openly, with the intent, or avowed purpose, of injuring his fellow-man, shall be fined not more than one hundred dollars.

[S. L. 1890, Ch. 73, Sec. 96; R. S. Ind., Sec. 1985.]

**FURNISHING DEADLY WEAPONS TO MINOR.**

Sec. 5052. It shall be unlawful for any person to sell, barter or give to any other person under the age of twenty-one years any pistol, dirk or bowie knife, slung-shot, knucks or other deadly weapon that can be worn or carried concealed upon or about the person, or to sell, barter or give to any person under the age of sixteen years any cartridges manufactured and designed for use in a pistol; and any person who shall violate any of the provisions of this section shall be fined in any sum not more than fifty dollars.

[S. L. 1890, Ch. 73, Sec. 97; R. S. Ind., Sec. 1986.]

**DISTURBING MEETINGS.**

Sec. 5053. Whoever, by any loud or unnecessary talking, hallooing, or by any threatening, abusive, profane or obscene language, or violent actions, or by any other rude behavior, interrupts, molests or disturbs any collection of any inhabitants of this state convened for the purpose of worship, or any agricultural fair or exhibition, or any person present thereat, or going to or returning therefrom; or who, in like manner interrupts, molests or disturbs any meeting of inhabitants of this state, met together for any lawful purpose, shall be fined in any sum not more than fifty dollars. Sextons of churches and officers of fairs or other meetings contemplated in this section are hereby authorized to arrest any person so disturbing such public meetings.

[S. L. 1890, Ch. 73, Sec. 98; R. S. Ind., Sec. 1988.]

# CHAPTER 4.

### CRIMES AGAINST PUBLIC MORALS.

Sec. 5054. Bigamy.
Sec. 5055. Incest.
Sec. 5056. Adultery and fornication.
Sec. 5057. Seduction.
Sec. 5058. Enticing females.
Sec. 5059. House of ill-fame.
Sec. 5060. Public indecency.
Sec. 5061. Selling obscene literature.
Sec. 5062. Mailing obscene literature.

Sec. 5063. Advertising private medicines.
Sec. 5064. Procurer assignation.
Sec. 5065. Pimp.
Sec. 5066. Prostitute.
Sec. 5067. Crime against nature.
Sec. 5068. Sale of liquor to minors and habitual drunkards.
Sec. 5069. Sale or gift of tobacco to minors prohibited.

**BIGAMY.**

Sec. 5054. Whoever, being married, marries again, the former husband or wife being alive, and the bond of matrimony being still undissolved, and no legal presumption of death having arisen, is guilty of bigamy, and shall be imprisoned in the penitentiary not more than five years.

In re Murphy, 5 Wyo. 297.

[S. L. 1890, Ch. 73, Sec. 74; R. S. Ind., Sec. 1989.]

ADD0099

 

DATE DOWNLOADED: Mon Sep 27 12:41:11 2021
SOURCE: Content Downloaded from _HeinOnline_

Citations:

Bluebook 21st ed.
1925 24 .

ALWD 6th ed.
, , 1925 24 .

Chicago 17th ed.
"," West Virginia - Regular and 1st Extraordinary Sessions : 24-32

AGLC 4th ed.
'' West Virginia - Regular and 1st Extraordinary Sessions 24.

OSCOLA 4th ed.
'' 1925 24

Provided by:
Provided by Jenkins Law Library

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   _https://heinonline.org/HOL/License_
-- The search text of this PDF is generated from  uncorrected OCR text.

# CHAPTER 3

**(House Bill No. 7—By Mr. Robinson from the Select Committee)**

AN ACT to amend and re-enact section seven of chapter one hundred and forty-eight of the code of West Virginia, as amended and re-enacted by chapter fifty-one of the acts of the legislature of West Virginia, one thousand nine hundred and nine, regular session, and as further amended and re-enacted by an act of the legislature of West Virginia, regular session, one thousand nine hundred and twenty-five, relating to offenses against the peace; providing for the granting and revoking of licenses and permits respecting the use, transportation and possession of weapons and fire arms; restricting the manner of the sale and display of weapons and fire arms; imposing liability upon certain persons for the accidental or improper, negligent or illegal discharges of weapons and fire arms; defining the powers and duties of certain officers in the granting and revocation of said licenses and permits, and providing penalties for the violation of this act and any part thereof.

[Passed June 5, 1925; in effect 90 days from passage. Approved by the Governor.]

Sec.
7. (a) Penalty for carrying dangerous or deadly weapon without license; second offense; duties of prosecuting attorneys; application for license; what to show; publication; issuance; fee; bond; term of license; territory covered; deputy sheriffs and railway police licenses co-extensive with state; accounting for fees; forms by tax commissioner; certified copy of license to superintendent of department of public safety; list of all licenses to the same; lawful to carry arms on own premises, or from place of purchase and repair, not applicable to employee; permits to express company employees and railway police; bonds; emergency permits; reports of violations, and penalty

Sec.
for failure so to do; certain officers permitted to carry arms; bond; unlawful to carry or use weapon in a manner likely to cause breach of peace; penalty; revocation of license; notice; reinstatement.

7. (b) Permits for possession of machine gun and high-powered rifle; regulations; exception of rifle club members and licensed hunters; granting of permit; fee; revocation; confiscation of arms; alien prohibited from owning or possessing arms; display of arms for sale or rent prohibited; report of sales by dealers to superintendent of department of public safety; unlawful to arm alien; penalty for violations of this sub-section; inconsistent acts repealed.

*Be it enacted by the Legislature of West Virginia:*

That section seven of chapter one hundred and forty-eight of the code of West Virginia, as amended and re-enacted by chapter fifty-one of the acts of the legislature of West Virginia of one thousand nine hundred and nine, regular session, and as further amended and re-enacted by the legislature of West Virginia, one thousand nine hundred and twenty-five, regular session, in House Bill number four hundred six, be amended and re-enacted so as to read as follows:

ADD0101

Section 7 (a). If any person, without a state license therefor,
2 carry about his person any revolver or other pistol, dirk,
3 bowie-knife, slung shot, razor, billy, metallic or other false
4 knuckles, or any other dangerous or deadly weapon of like
5 kind or character, he shall be guilty of a misdemeanor and
7 upon conviction thereof be confined in the county jail for a
8 period of not less than six nor more than twelve months for
9 the first offense; but upon conviction of the same person for
10 the second offense in this state, he shall be guilty of a felony
11 and be confined in the penitentiary not less than one or more
12 than five years, and in either case fined not less than fifty
13 nor more than two hundred dollars, in the discretion of the
14 court; and it shall be the duty of the prosecuting attorney
15 in all cases to ascertain whether or not the charge made by
16 the grand jury is the first or second offense, and if it shall be
17 the second offense, it shall be so stated in the indictment re-
18 turned, and the prosecuting attorney shall introduce the rec-
19 ord evidence before the trial court of said second offense, and
20 shall not be permitted to use his discretion in charging said
21 second offense nor in introducing evidence to prove the same
22 on the trial; *provided,* that boys or girls under the age of
23 eighteen years, upon the second conviction, may, at the dis-
24 cretion of the court, be sent to the industrial homes for boys
25 and girls, respectively, of the state. Any person desiring to
26 obtain a state license to carry any such weapon within one or
27 more counties in this state shall first publish a notice in some
28 newspaper, published in the county in which he resides, setting
29 forth his name, residence and occupation, and that on a cer-
30 tain day he will apply to the circuit court of his county for
31 such state license; and after the publication of such notice for
32 at least ten days before said application is made and at the
33 time stated in said notice upon application to said court, it
34 may grant such person a license in the following manner,
35 to-wit:
36 The applicant shall file with said court his application in
37 writing, duly verified, which said application shall show:
38 *First:* That said applicant is a citizen of the United States
39 of America.
40 *Second:* That such applicant has been a *bona fide* resident
41 of this state for at least one year next prior to the date of
42 such application, and of the county sixty days next prior
43 thereto.

44   *Third:* That such applicant is over twenty-one years of
45 age; that he is a person of good moral character, of temper-
46 ate habits, not addicted to intoxication, and has not been
47 convicted of a felony nor of any offense involving the use on
48 his part of such weapon in an unlawful manner.

49   *Fourth:* The purpose or purposes for which the applicant
50 desires to carry such weapon and the necessity therefor and
51 the county or counties in which said license is desired to be
52 effective.

53   Upon the hearing of such application the court shall hear
54 evidence upon all matters stated in such application and upon
55 any other matter deemed pertinent by the court, and if such
56 court be satisfied from the proof that there is good reason and
57 cause for such person to carry such weapon, and all of the
58. other conditions of this act be complied with, said circuit
59 court or the judge thereof in vacation, may grant
60 said license for such purposes, and no other, as said
60-*a* circuit court may set out in the said license (and the word
60-*b* "court" as used in this act shall include the circuit judge
60-*c* thereof, acting in vacation); but before the said
61 license shall be effective such person shall pay to the
62 sheriff, and the court shall so certify in its order granting the
63 license, the sum of twenty dollars, and shall also file a bond
64 with the clerk of said court, in the penalty of three thousand
65 five hundred dollars, with good security, signed by a respon-
66 sible person or persons, or by some surety company, author-
67 ized to do business in this state, conditioned that such appli-
68 cant will not carry such weapon except in accordance with his
69 said application and as authorized by the court, and that he
70 will pay all costs and damages accruing to any person by the
71 accidental discharge or improper, negligent or illegal use of
72 said weapon or weapons. Any such license granted after this
73 act becomes effective shall be good for one year, unless sooner
74 revoked, as hereinafter provided, and be co-extensive with the
75 county in which granted, and such other county or coun-
76 ties as the court shall designate in the order granting such
77 license; except that regularly appointed deputy sheriffs having
78 license shall be permitted to carry such revolver or other
79 weapons at any place, within the state, while in the perfor-
80 mance of their duties as such deputy sheriffs and except that
81 any such license granted to regularly appointed railway police

82 shall be co-extensive with the state, and all license fees col-
83 lected hereunder shall be paid by the sheriff and accounted for
84 to the auditor as other license taxes are collected and paid, and
85 the state tax commissioner shall prepare all suitable forms for
86 licenses and bonds and certificates showing that such license
87 has been granted and to do anything else in the premises to
88 protect the state and see to the enforcement of this act.

89    The clerk of the court shall immediately after license is
90 granted as aforesaid, furnish the superintendent of the de-
91 partment of public safety a certified copy of the order of the
92 court granting such license, for which service the clerk shall
93 be paid a fee of two dollars which shall be taxed as cost in
94 the proceeding; within thirty days after this act becomes
95 effective it shall be the duty of the clerks of each court in this
96 state having jurisdiction to issue pistol licenses to certify
97 to the superintendent of the department of public safety a
98 list of all such licenses issued in his county.

99    *Provided,* that nothing herein shall prevent any person
100 from carrying any such weapon, in good faith and not for a
101 felonious purpose, upon his own premises, nor shall anything
102 herein prevent a person from carrying any such weapon
103 (unloaded) from the place of purchase to his home
104 or place of residence, or to a place of repair and
105 back to his home or residence; but nothing herein
106 shall be construed to authorize any employee of any person,
107 firm or corporation doing business in this state to carry on
108 or about the premises of such employer any such pistol, or
109 other weapon mentioned in this act for which a license is
110 herein required, without having first obtained the license and
111 given the bond as herein provided; and, *provided, further,*
112 that nothing herein shall prevent agents, messengers and
113 other employees of express companies doing business as com-
114 mon carriers, whose duties require such agents, messengers
115 and other employees to have the care, custody or protection
116 of money, valuables and other property for such express com-
117 panies, from carrying any such weapon while actually en-
118 gaged in such duties, or in doing anything reasonably inci-
119 dent to such duties; *provided,* such express company shall
120 execute a continuing bond in the penalty of thirty thousand
121 dollars, payable unto the state of West Virginia, and with
122 security to be approved by the secretary of state of the state

123 of West Virginia, conditioned that said express company will
124 pay all damages, accruing to anyone by the accidental dis-
125 charge or improper, negligent or illegal discharge or use of such
126 weapon or weapons by such agent, messenger or other employee
127 while actually engaged in such duties for such express com-
128 pany, in doing anything that is reasonably incident to such du-
129 ties; but the amount which may be recovered for breach of
130 such condition shall not exceed the sum of three thousand five
131 hundred dollars in any one case, and such bond shall be filed
132 with and held by the said secretary of state, for the purpose
133 aforesaid, but upon the trial of any cause for the recovery of
134 damages upon said bond, the burden of proof shall be upon
135 such express company to establish that such agent, messenger
136 or other employee was not actually employed in such duties for
137 such express company nor in doing anything that was rea-
138 sonably incident to such duties at the time such damages were
139 sustained; and, *provided further,* that nothing herein shall
139-*a* prevent railroad police officers duly appointed and qualified
139-*b* under authority of section thirty-one of chapter one hun-
139-*c* dred forty-five of Barnes' code or duly qualified under the
139-*d* laws of any other state, from carrying any such weapon
139-*e* while actually engaged in their duties or in doing anything
139-*f* reasonably incident to such duties; *provided,* such railroad
139-*g* company shall execute a continuing bond in the penalty of
139-*h* ten thousand dollars payable unto the state of West Vir-
139-*i* ginia and with security to be approved by the secretary of
139-*j* state of the state of West Virginia conditioned that said
139-*k* railroad company will pay all damages accruing to anyone
139-*l* by the accidental discharge or improper, negligent or illegal
139-*m* discharge or use of such weapon or weapons by such rail-
139-*n* road special police officer whether appointed in this or some
139-*n*-1 other state while actually engaged in such duties for such
139-*o* railroad company, in doing anything that is reasonably inci-
139-*p* dent to such duties, but the amount which may be recovered
139-*q* for breach of such condition shall not exceed the sum of
139-*r* three thousand five hundred dollars in any one case, and
139-*s* such bond shall be filed with and held by the said secretary
139-*t* of state for the purpose aforesaid but upon the trial of any
139-*u* cause for the recovery of damages upon said bond, the bur-
139-*v* den of proof shall be upon such railroad company to estab-
139-*w* lish that such railroad police officer was not actually em-

139-*x* ployed in such duties for such railroad company nor in
139-*y* doing anything that was reasonably incident to such duties
139-*z* at the time such damages were sustained; and *provided, fur-*
140 *ther,* that in case of riot, public danger and emer-
140-*a* gency, a justice of the peace, or other person
141 issuing a warrant, may authorize a special constable and his
142 posse whose names shall be set forth in said warrant,
142-*a* to carry weapons for the purpose of executing a pro-
143 cess, and a sheriff in such cases may authorize a deputy or
144 posse to carry weapons, but the justice shall write in his
145 docket the cause and reasons for such authority and the name
146 of the person, or persons, so authorized, and index the same,
147 and the sheriff or other officer shall write out and file with
148 the clerk of the county court the reasons and causes for such
149 authority and the name, or names of the persons so author-
150 ized, and the same shall always be open to public inspection,
151 and such authority shall authorize such special constable,
152 deputies and posses to carry weapons in good faith only for
153 the specific purposes and times named in such authority, and
154 upon the trial of every indictment the jury shall inquire into
155 the good faith of the person attempting to defend such in-
156 dictment under the authority granted by any such justice,
157 sheriff or other officer, and any such person or persons so
158 authorized shall be personally liable for the injury caused to
159 any person by the negligent or unlawful use of any such
160 weapon or weapons. It shall be the duty of all ministerial of-
161 ficers, consisting of the justices of the peace, notaries public and
162 other conservators of the peace of this state, to report to the
163 prosecuting attorney of the county the names of all persons
164 guilty of violating this section, and any person wilfully failing
165 so to do, shall be guilty of a misdemeanor and shall be fined not
166 exceeding two hundred dollars, and shall, moreover, be liable
167 to removal from office for such wilful failure; and it shall
168 likewise be the duty of every person having knowledge of the
169 violation of this act, to report the same to the prosecuting
170 attorney, and to freely and fully give evidence concerning
171 the same, and any one failing so to do, shall be guilty of a
172 misdemeanor and upon conviction thereof shall be fined not
173 exceeding one hundred dollars; *provided, further,* that noth-
174 ing herein contained shall be so construed as to prohibit sher-
175 iffs, their regularly appointed deputies, who actually collect

176 taxes in each county, and all constables in their respective
177 counties and districts, and all regularly appointed police offi-
178 cers of their respective cities, towns or villages, all jailors and
179 game protectors who have been duly appointed as such, and
179-*a* members of the department of public safety of this
179-*b* state, from carrying such weapons as they are now
180 authorized by law to carry, who shall have given
181 bond in the penalty of not less than three thousand five hun-
182 dred dollars, conditioned for the faithful performance of their
183 respective duties, which said officers shall be liable upon their
184 said official bond, for the damages done by the unlawful or
185 careless use of any such weapon or weapons, whether such
186 bond is so conditioned or not.
187    It shall be unlawful for any person armed with a pistol,
188 gun, or other dangerous or deadly weapon, whether licensed
189 to carry same or not, to carry, expose, brandish, or use, such
190 weapon in a way or manner to cause, or threaten, a breach
191 of the peace. Any person violating this provision of this act
192-4 shall be guilty of a misdemeanor, and upon conviction, shall
195 be fined not less than fifty nor more than three hundred
196 dollars or imprisoned in the county jail not less than thirty
197 nor more than ninety days, or be punished by both fine and
198 imprisonment in the discretion of the court.
199    Any circuit court granting any such license to carry any
200 of the weapons mentioned in this act, the governor, or the su-
201 perintendent of the department of public safety, with the con-
202 sent of the governor, may, for any cause deemed sufficient by
203 said court, or by the governor or by the superintendent of the
204 department of public safety with the approval of the governor
205 aforesaid, as the case may be, revoke any such license to carry
205-*a* a pistol or other weapon mentioned in this act for which a
205-*b* license is required, and immediate notice of such revocation
206 shall be given such licensee in person, by registered mail or in
207 the same manner as provided by law for the service of other
208 notices, and no person whose license has been so revoked shall
209 be re-licensed within one year thereafter; *provided,* that the
210 authority so revoking such license may, after a hearing, sooner
211 reinstate such licensee.
212    (*b*) It shall be unlawful for any person to carry, transport,
213 or to have in his possession any machine gun, sub-machine gun,
214 and what is commonly known as a high powered rifle, or any

215 gun of similar kind or character, or any ammunition therefor,
216 except on his own premises or premises leased to him for a
217 fixed term, until such person shall have first obtained a per-
218 mit from the superintendent of the department of public
219 safety of this state, and approved by the governor, or until a
220 license therefor shall have been obtained from the circuit
221 court as in the case of pistols and all such licenses together
222 with the numbers identifying such rifle shall be certified to
223 the superintendent of the department of public safety. *Pro-*
224 *vided, further,* that nothing herein shall prevent the use of
225 rifles by *bona fide* rifle club members who are freeholders or
226 tenants for a fixed term in this state at their usual or cus-
227 tomary place of practice, or licensed hunters in the actual
228 hunting of game animals. No such permit shall be granted
229 by such superintendent except in cases of riot, public danger,
230 and emergency, until such applicant shall have filed his writ-
231 ten application with said superintendent of the department
232 of public safety, in accordance with such rules and regula-
233 tions as may from time to time be prescribed by said depart-
234 ment of public safety relative thereto, which application shall
235 be accompanied by a fee of two dollars to be used in defraying
236 the expense of issuing such permit, and said application shall
237 contain the same provisions as are required to be shown under
238 the provisions of this act by applicants for pistol license, and
239 shall be duly verified by such applicant, and at least one
240 other reputable citizen of this state. Any such permit as
241 granted under the provisions of this act may be revoked by the
242 governor at his pleasure and upon the revocation of any such
243 permit the department of public safety shall immediately seize
244 and take possession of any such machine gun, sub-machine
245 gun, high powered rifle, or gun of similar kind and character,
246 held by reason of said permit, and any and all ammunition
247 therefor, and the said department of public safety shall also
248 confiscate any such machine gun, sub-machine gun, and what
249 is commonly known as a high powered rifle, or any gun of
250 similar kind and character and any and all ammunition there-
251 for so owned, carried, transported or possessed contrary to the
252 provisions of this act, and shall safely store and keep the same,
253 subject to the order of the governor. No alien shall own, keep
254 or possess any firearm of any kind or character. It shall be
255 unlawful for any person, firm or corporation to place or keep

256 on public display to passersby on the streets, for rent or sale,
257 any revolver, pistol, dirk, bowie knife, slung shot or other
258 dangerous weapon of like kind or character or any machine
259 gun, sub-machine gun or high powered rifle or any gun of
260 similar kind or character, or any ammunition for the same.

261    All dealers licensed to sell any of the foregoing arms or
262 weapons shall take the name, address, age and general appear-
263 ance of the purchaser, as well as the maker of the gun, manu-
264 facturer's serial number and caliber, and report the same at
265 once in writing to the superintendent of the department of
266 public safety.

267    It shall be unlawful for any person to sell, rent, give or
268 lend any of the above mentioned arms to an unnaturalized
269 person.

270    Any person violating the provisions of sub-section (*b*) of
271 this act shall be guilty of a misdemeanor and upon conviction
272 thereof shall be fined not less than fifty dollars, nor more than
273 three hundred dollars, or confined in the county jail not less
274 than thirty days nor more than six months, or both such fine
275 and imprisonment, in the discretion of the court.

276    All acts and parts of acts inconsistent herewith are hereby
277 repealed.

---

# CHAPTER 4

### (Senate Bill No. 4—By Joint Special Committee)

AN ACT making appropriations of public moneys to pay general charges upon the treasury.

[Passed June 6, 1925; in effect from passage.    Approved by the Governor.]

| Sec. | | Sec. | |
|---|---|---|---|
| 1. | Appropriations made from the treasury. | | cost of new capitol; authorizing construction and limiting cost of second office building. |
| 2. | Fiscal years of 1926 and 1927. | | |
| 3. | Appropriations under sub-sections "A," "B" and "C" payable out of the general revenue of the state. | 5. | Appropriations for maintenance and repair of roads; in "state fund general revenue" not otherwise appropriated to be used for road maintenance. |
| | *Sub-Section "A"* | 5-a. | Recodification commission; salary and expenses of the commission, assistants and stenographers; expenses of the legislative committee; this an additional appropriation. |
| 4. | Construction and equipment of second unit of office building of new capitol; Governor to sell all state property on Capitol and Summers streets in Charleston; proceeds to be paid into the treasury as a special capitol building fund; Governor may continue capitol building commission, by re-appointment; limit of total | | *Sub-Section "B"* |
| | | 6. | Appropriations appearing under sub-section "B" payable only on requisition and approval of the state board of control. |

ADD0109





DATE DOWNLOADED: Mon Sep 27 13:07:37 2021
SOURCE: Content Downloaded from *HeinOnline*

Citations:

Bluebook 21st ed.
1895 95 .

ALWD 6th ed.
, , 1895 95 .

Chicago 17th ed.
"," Nebraska - Laws of Nebraska Relating to the City of Lincoln, Revised Ordinances :
95-408

AGLC 4th ed.
'' Nebraska - Laws of Nebraska Relating to the City of Lincoln, Revised Ordinances
95.

OSCOLA 4th ed.
'' 1895 95

Provided by:
Provided by Jenkins Law Library

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.

AN ORDINANCE regulating and prohibiting the use of fire-arms, fire-works, and cannon in the city of Lincoln, prohibiting the sale of fire-arms to minors, prohibiting the discharging, the carrying, owning, or selling of toy pistols or sling shots, prohibiting the use of fire-works or fire-crackers in certain places, prohibiting the discharge of cannon without the written permission of the Mayor, prescribing penalties for violation of the provisions of this ordinance, and repealing ordinances in conflict herewith.

*Be it ordained by the Mayor and Council of the City of Lincoln:*

## ARTICLE XXVI.

### *Fire-arms, Fire-works, and Cannons.*

881.  § 1.  No person, except an officer of the law in the discharge of his duty, shall fire or discharge any gun, pistol, fowling-piece, or other fire-arm, within the corporate limits of the city of Lincoln, under penalty of a fine of ten dollars for each offense.

882.  § 2.  No person shall sell, loan, or furnish, to any minor, any gun, fowling-piece, or other fire-arm, within the limits of the city, under penalty of a fine of fifty dollars for each offense.

883.  § 3.  It shall be unlawful for any person or persons to discharge or cause to be discharged any toy pistol, toy gun, or other toy arm or arms, or sling shot, loaded with leaden or other dangerous missiles, at any time or under any circumstances, within the limits of the said city of Lincoln.  Any person so offending shall, upon conviction thereof, be fined in any sum not exceeding fifty dollars for each offense, and stand committed until such fine and costs are paid or secured.

884.  § 4.  It shall be unlawful for any person within the said city to carry about his or her person any toy pistol, toy gun, or other toy arm or arms, or sling shots, out of or by which any leaden or other dangerous missiles may be discharged.  Any person so offending shall, upon conviction thereof, be fined in any sum not exceeding twenty dollars, and stand committed until such fine and costs are paid or secured.

885.  § 5.  It shall be unlawful for any parent, guardian, or other person having the care and custody of any minor, to purchase for or give to any such minor or knowingly to permit any such minor to have any toy pistol, toy gun, or other toy arm or

238                  GENERAL ORDINANCES OF

arms, or sling shot, out of which any leaden or other dangerous missiles may be discharged. Any such person so offending shall, upon conviction thereof, be fined in any amount not exceeding twenty dollars, and stand committed until such fine and costs are paid or secured.

886.    § 6. It shall be unlawful for any person or persons within said city to ignite or cause to be exploded any fire-crackers, Roman candles, torpedoes, rockets, or any kind of fire-works whatever, or any other combustible substance or thing, upon any sidewalk, bridge, building, or in or upon any building, shed, or outhouse, in said city, or in the vicinity of any such buildings, or in any place where the same may do damage to person or property.

887.    § 7. It shall be unlawful for any person in said city to ignite or cause to be exploded any fire-works or combustible substance mentioned in section 6 of this ordinance, upon any street or alley, or other public ground in said city, at or near any team or teams of horses or other animals, or sufficiently near to frighten the same.

888.    § 8. No cannon or piece of artillery shall be discharged or fired off in any street, avenue, alley, park, or place, within the corporate limits of the city, without a written permission from the Mayor, under penalty of a fine of twenty-five dollars for each offense.

889.    § 9. It shall be the duty of every member of the police force to see that the provisions of this article are strictly complied with and enforced.

§ 10. All ordinances or parts of ordinances in conflict with the provisions of this ordinance are hereby repealed.

§ 11. This ordinance shall take effect and be in force from and after the expiration of one week after its passage, approval, and publication according to law.

Passed August 26, A. D. 1895.

Approved August 26, A. D. 1895.                     F. A. GRAHAM, *Mayor.*

Attest: J. W. BOWEN, *City Clerk.*   [SEAL.]

**Nineteenth Century Second Amendment State Analogues**

| State | Year[1] | Statutory Text | Source |
|---|---|---|---|
| Alabama | 1819 | "Every citizen has a right to bear arms in defence of himself and the state." | Ala. Const. art. I, § 23 (1819). |
| Georgia | 1868 | "A well-regulated militia being necessary to the security of a free people, the right of the people to keep and bear arms shall not be infringed; but the general assembly shall have power to prescribe by law the manner in which arms may be borne." | Ga. Const. art. I, § 663, Sec. 14 (1868). |
| Indiana | 1851 | "The people shall have a right to bear arms, for the defense of themselves and the State." | Ind. Const. art. I, § 32 (1851). |
| Kansas | 1859 | "The people have the right to bear arms for their defense and security; but standing armies, in time of peace, are dangerous to liberty, and shall not be tolerated, and the military shall be in strict subordination to the civil power." | Kan. Const. Bill of Rights, § 4 (1859). |
| Kentucky | 1850 | "That the rights of the citizens to bear arms in defence of themselves and the State shall not be questioned; but the general assembly may pass laws to prevent persons from carrying concealed arms." | Ky. Const. art. XIII, § 25 (1850). |

---

[1] Year of enactment.

| State | Year[1] | Statutory Text | Source |
|---|---|---|---|
| Louisiana | 1879 | "A well regulated militia being necessary to the security of a free State, the right of the people to keep and bear arms shall not be abridged. This shall not prevent the passage of laws to punish those who carry weapons concealed." | La. Const. art. 3 (1879). |
| Mississippi | 1868 | "All persons shall have a right to keep and bear arms for their defence." | Miss. Const. art. I, § 15 (1868). |
| Missouri | 1875 | "That the right of no citizen to keep and bear arms in defense of his home, person and property, or in aid of the civil power, when thereto legally summoned, shall be called in question; but nothing herein contained is intended to justify the practice of wearing concealed weapons." | Mo. Const. art. II, § 17 (1875). |
| North Carolina | 1875 | "A well-regulated militia being necessary to the security of a free State, the right of the people to keep and bear arms shall not be infringed; and as standing armies in time of peace, are dangerous to liberty, they ought not to be kept up, and the military should be kept under strict subordination to, and governed by, the civil power. Nothing herein contained shall justify the practice of carrying concealed weapons, or prevent the Legislature from enacting penal statutes against said practice." | N.C. Const. art. I, § 24 (1875). |
| Tennessee | 1834 | "That the free white men of this State have a right to keep and to bear arms for their common defence." | Tenn. Const. art. I, § 26 (1834). |

| State | Year[1] | Statutory Text | Source |
|---|---|---|---|
| Texas | 1876 | "Every citizen shall have the right to keep and bear arms in the lawful defense of himself or the State; but the Legislature shall have power by law to regulate the wearing of arms with a view to prevent crime." | Texas Const. art. I, § 23 (1876). |
| Wyoming | 1889 | "The right of citizens to bear arms in defense of themselves and of the state shall not be denied." | Wyo. Const. art. I, § 24 (1889). |



Content downloaded/printed from                    *HeinOnline*

Fri Dec 13 15:41:30 2019

Citations:

Bluebook 20th ed.
Original text of the Constitution of 1819. [1] (1819)   Declaration of Rights

ALWD 6th ed.

Chicago 7th ed.
, "Declaration of Rights," Constitution of the State of Alabama. : [1]-[4]

McGill Guide 9th ed.
, "Declaration of Rights" [1].

MLA 8th ed.
"Declaration of Rights." Constitution of the State of Alabama., , , p. [1]-[4].
HeinOnline.

OSCOLA 4th ed.
, 'Declaration of Rights' [1]

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
    Conditions of the license agreement available at
    *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



## CONSTITUTION OF THE STATE OF ALABAMA.

**Preamble.** WE, the people of the Alabama Territory, having the right of admission into the general government, as a member of the union, consistent with the constitution and laws of the United States, by our representatives, assembled in convention at the town of Huntsville, on Monday, the fifth day of July, one thousand eight hundred and nineteen, in pursuance of an Act of congress, entitled " An Act to enable the people of the Alabama Territory to form a Constitution and State Government, and for the admission of such State into the Union, on an equal footing with the original States ;" in order to establish justice, ensure tranquillity, provide for the common defence, promote the general welfare, and secure to ourselves and our posterity the rights of life, liberty, and property, do ordain and establish the following constitution, or form of government ; and do mutually agree with each other to form ourselves into a free and independent state, by the name of " The State of Alabama." And we do hereby recognize, confirm, and establish the boundaries assigned to said state by the act of congress aforesaid, " to wit : beginning at the point where the thirty-first degree of north latitude intersects the Perdido river, thence, east, to the western boundary line of the state of Georgia ; thence, along said line, to the southern boundary line of the state of Tennessee ; thence, west, along said boundary line, to the Tennessee river ; thence, up the same, to the mouth of Bear creek ; thence, by a direct line, to the northwest corner of Washington county ; thence, due south, to the Gulf of Mexico; thence, eastwardly, including all islands within six leagues of the shore, to the Perdido river ; and thence, up the same, to the beginning"—subject to such alteration as is provided in the third section of said act of congress, and subject to such enlargement as may be made by law in consequence of any cession of territory by the United States, or either of them.

### ARTICLE I.

#### *Declaration of Rights.*

That the general, great, and essential principles of liberty and free government may be recognized and established, we declare :

**All freemen are equal.** SEC. 1. That all freemen, when they form a social compact, are equal in rights ; and that no man or set of men are entitled to exclusive, separate public emoluments or privileges, but in consideration of public services.

**Political power is the people.** SEC. 2. All political power is inherent in the people, and all free governments are founded on their authority, and instituted for their benefit : and, therefore, they have at all times an unalienable and indefeasible right to alter, reform, or abolish their form of government, in such manner as they may think expedient.

SEC. 3. No person within this state shall, upon any pretence, *Rights of conscience* be deprived of the inestimable privilege of worshipping God in the manner most agreeable to his own conscience; nor be compelled to attend any place of worship; nor shall any one ever be obliged to pay any tithes, taxes, or other rate, for the building or repairing any place of worship, or for the maintenance of any minister or ministry.

SEC. 4. No human authority ought, in any case whatever, to *not to be interfered with.* control or interfere with the rights of conscience.

SEC. 5. No person shall be hurt, molested, or restrained, in *No person molested.* his religious profession, sentiments, or persuasions, provided he does not disturb others in their religious worship.

SEC. 6. The civil rights, privileges, or capacities of any citi- *Civil rights not affected by religious belief.* zen, shall in no way be diminished, or enlarged, on account of his religious principles.

SEC. 7. There shall be no establishment of religion by law; *No established religion or religious test.* no preference shall ever be given by law to any religious sect, society, denomination, or mode of worship: and no religious test shall ever be required as a qualification to any office or public trust under this state.

SEC. 8. Every citizen may freely speak, write, and publish *Freedom of speech, &c.* his sentiments on all subjects, being responsible for the abuse of that liberty.

SEC. 9. The people shall be secure in their persons, houses, *Searches.* papers, and possessions, from unreasonable seizures or searches; and no warrant to search any place, or to seize any person or thing, shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation.

SEC. 10. In all criminal prosecutions, the accused has a right *Rights of accused in criminal cases.* to be heard by himself and counsel; to demand the nature and cause of the accusation, and have a copy thereof: to be confronted by the witnesses against him: to have compulsory process for obtaining witnesses in his favour; and, in all prosecutions, by indictment or information, a speedy public trial by an impartial jury of the county or district in which the offence shall have been committed: he shall not be compelled to give evidence against himself, nor shall he be deprived of his life, liberty, or property, but by due course of law.

SEC. 11. No person shall be accused, arrested, or detained, *No person accused, &c. except by law.* except in cases ascertained by law, and according to the forms which the same has prescribed; and no person shall be punished; but in virtue of a law, established and promulgated prior to the offence, and legally applied.

SEC. 12. No person shall, for any indictable offence, be pro- *Indictable offences, how proceeded against.* ceeded against criminally, by information; except in cases arising in the land and naval forces, or the militia when in actual service, or, by leave of the court, for oppression or misdemeanor in office.

SEC. 13. No person shall, for the same offence be twice put *No person twice tried for same offence.* in jeopardy of life or limb: nor shall any person's property be taken or applied to public use, unless just compensation be made therefor.

ADD0118

916                                   APPENDIX.

Courts to be open, &c.
SEC. 14. All courts shall be open, and every person, for an injury done him, in his lands, goods, person, or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial, or delay.

Laws not suspended but by general assembly.
SEC. 15. No power of suspending laws shall be exercised, except by the general assembly, or its authority.

Of bail and fines.
SEC. 16. Excessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted.

Bailable offences.
SEC. 17. All persons shall, before conviction, be bailable by sufficient securities, except for capital offences, when the proof is evident, or the presumption great: and the privilege of the writ of "habeas corpus" shall not be suspended, unless when, in cases of rebellion, or invasion, the public safety may require it.

Debtors, when discharged.
SEC. 18. The person of a debtor, where there is not strong presumption of fraud, shall not be detained in prison, after delivering up his estate for the benefit of his creditors, in such manner as shall be prescribed by law.

No ex post facto laws.
SEC. 19. No ex post facto law, nor law impairing the obligation of contracts, shall be made.

No attaints.
SEC. 20. No person shall be attainted of treason or felony by the general assembly. No attainder shall work corruption of blood, nor forfeiture of estate.

No forfeiture from suicide.
SEC. 21. The estates of suicides shall descend or vest as in cases of natural death; if any person shall be killed by casualty, there shall be no forfeiture by reason thereof.

Assembly of citizens.
SEC. 22. The citizens have a right, in a peaceable manner, to assemble together for their common good, and to apply to those invested with the powers of government for redress of grievances, or other proper purposes, by petition, address, or remonstrance.

May bear arms.
SEC. 23. Every citizen has a right to bear arms in defence of himself and the state.

Standing army, &c.
SEC. 24. No standing army shall be kept up without the consent of the general assembly; and, in that case, no appropriation of money for its support shall be for a longer term than one year; and the military shall, in all cases, and at all times, be in strict subordination to the civil power.

Quartering troops.
SEC. 25. No soldier shall, in time of peace, be quartered in any house, without the consent of the owner; nor in time of war, but in a manner to be prescribed by law.

No titles of nobility.
SEC. 26. No title of nobility, or hereditary distinction, privilege, honour, or emolument, shall ever be granted or conferred in this state; nor shall any office be created, the appointment of which shall be for a longer term than during good behaviour.

Emigration.
SEC. 27. Emigration from this state shall not be prohibited, nor shall any citizen be exiled.

Trial by Jury.
SEC. 28. The right of trial by jury shall remain inviolate.

Right of prosecuting, &c.
SEC. 29. No person shall be debarred from prosecuting or defending any civil cause, for or against him or herself, before any tribunal in this state, by him or herself or counsel.

ADD0119

Sec. 30. This enumeration of certain rights shall not be con- Enumera-tion of rights. strued to deny or disparage others retained by the people : and to guard against any encroachments on the rights herein retained, or any transgression of any of the high powers herein delegated, we declare, that every thing in this article is excepted out of the general powers of government, and shall for ever remain inviolate ; and that all laws contrary thereto, or to the following provisions, shall be void.

## ARTICLE II.

### *Distribution of Powers.*

Sec. 1. The powers of the government of the state of Alaba- Three distinct depart-ments. ma shall be divided into three distinct departments ; and each of them confided to a separate body of magistracy, to wit: those which are legislative, to one ; those which are executive, to another ; and those which are judicial, to another.

Sec. 2. No person, or collection of persons, being of one of Persons belonging to one not to in-terfere with the others. those departments, shall exercise any power properly belonging to either of the others, except in the instances herein after expressly directed or permitted.

## ARTICLE III.

### *Legislative Department.*

Sec. 1. The legislative power of this state shall be vested in Two branch-es. two distinct branches: the one to be styled the senate, the other the house of representatives, and both together " The General Style of laws. Assembly of the State of Alabama ;" and the style of their laws shall be, " Be it enacted by the Senate and House of Representatives of the State of Alabama, in General Assembly convened."

Sec. 2. The members of the house of representatives shall be Members, how chosen. chosen by the qualified electors, and shall serve for the term of one year, from the day of the commencement of the general election, and no longer.

Sec. 3. The representatives shall be chosen every year, on Election, when held. the first Monday and the day following in August, until otherwise directed by law.

Sec. 4. No person shall be a representative unless he be a Qualification of members. white man, a citizen of the United States, and shall have been an inhabitant of this state two years next preceding his election, and the last year thereof a resident of the county, city, or town, for which he shall be chosen, and shall have attained the age of twenty-one years.

Sec. 5. Every white male person of the age of twenty-one Of electors. years, or upwards, who shall be a citizen of the United States, and shall have resided in this state one year next preceding an election, and the last three months within the county, city, or town, in which he offers to vote, shall be deemed a qualified elector ; provided, that no soldier, seaman, or marine, in the regular army or navy of the United States, shall be entitled to



Content downloaded/printed from                                    [HeinOnline](HeinOnline)

Fri Dec 13 15:40:19 2019

Citations:

Bluebook 20th ed.
Original text of the Constitution of 1868, with the amendments approved by Act of
Congress on 25 June 1868, and those ratified 1 May 1877, appended. The Section nos.
in bold are part of McElreath's numeration for his entire volume, and not part of the
original document. 318 (1868)   Declaration of Fundamental Principles

ALWD 6th ed.

Chicago 7th ed.
, "Declaration of Fundamental Principles," Constitution of the State of Georgia, As
Adopted by the State Convention at Atlanta, on the 11th Day of March, 1868, and
Ratified by the People at an Election held April 20th, 21st, 22nd, 23d, 1868. :
318-322

McGill Guide 9th ed.
, "Declaration of Fundamental Principles" 318.

MLA 8th ed.
"Declaration of Fundamental Principles." Constitution of the State of Georgia, As
Adopted by the State Convention at Atlanta, on the 11th Day of March, 1868, and
Ratified by the People at an Election held April 20th, 21st, 22nd, 23d, 1868., , , p.
318-322. HeinOnline.

OSCOLA 4th ed.
, 'Declaration of Fundamental Principles' 318

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
    Conditions of the license agreement available at
    [https://heinonline.org/HOL/License](https://heinonline.org/HOL/License)
-- The search text of this PDF is generated from  uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



## CONSTITUTION OF 1868.

### Preamble.

We, the people of Georgia, in order to form a permanent government, establish justice, insure domestic tranquility, and secure the blessings of liberty to ourselves and our posterity, acknowledging and invoking the guidance of Almighty God, the author of all good government, do ordain and establish this constitution for the State of Georgia:

### ARTICLE I.

#### Declaration of Fundamental Principles.

**§ 650.** Section 1. Protection to person and property is the paramount duty of government, and shall be impartial and complete.

**§ 651.** Sec. 2. All persons born or naturalized in the United States, and resident in this State, are hereby declared citizens of this State, and no laws shall be made or enforced which shall abridge the privileges or immunities of citizens of the United States, or of this State, or deny to any person within its jurisdiction the equal protection of its laws. And it shall be the duty of the General Assembly, by appropriate legislation, to protect every person in the due enjoyment of the rights, privileges, and immunities guaranteed in this section.

**§ 652.** Sec. 3. No person shall be deprived of life, liberty, or property, except by due process of law.

**§ 653.** Sec. 4. There shall be within the State of Georgia neither slavery nor involuntary servitude, save as a punishment for crime after legal conviction thereof.

**§ 654.** Sec. 5. The right of the people to appeal to the courts, to petition government on all matters, and peaceably to assemble for the consideration of any matter, shall never be impaired.

**§ 655.** Sec. 6. Perfect freedom of religious sentiment shall be, and the same is hereby secured, and no inhabitant of this State shall ever be molested in person or property, or prohibited from holding any public office or trust, on account of his religious opinions; but the liberty of conscience hereby secured shall not be so construed as to excuse acts of licentiousness or justify practices inconsistent with the peace or safety of the people.

**§ 656.** Sec. 7. Every person charged with an offense against the laws shall have the privilege and benefit of counsel, shall be furnished, on demand, with a copy of the accusation and a list of the witnesses on whose testimony the charge against him is founded, shall have compulsory process to obtain the attendance of his own witnesses, shall be confronted with the witnesses testifying against him, and shall have a public and speedy trial by an impartial jury.

**§ 657.** Sec. 8. No person shall be put in jeopardy of life or liberty more than once for the same offence, save on his or her own motion for a new trial after conviction, or in case of mistrial.

**§ 658.** Sec. 9. Freedom of speech and freedom of the press are inherent elements of political liberty. But while every citizen may freely speak, or write, or print on any subject, he shall be responsible for the abuse of the liberty.

**§ 659.** Sec. 10. The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, particularly describing the place or places to be searched, and the person or things to be seized.

**§ 660.** Sec. 11. The social status of the citizen shall never be the subject of legislation.

**§ 661.** Sec. 12. No person shall be molested for his opinions, or be subject to any civil or political incapacity, or acquire any civil or political advantage in consequence of such opinions.

ADD0123

**§ 662.** Sec. 13. The writ of habeas corpus shall not be suspended unless, in case of rebellion or invasion, the public safety may require it.

**§ 663.** Sec. 14. A well-regulated militia being necessary to the security of a free people, the right of the people to keep and bear arms shall not be infringed; but the general assembly shall have power to prescribe by law the manner in which arms may be borne.

**§ 664.** Sec. 15. The punishment of all frauds shall be provided by law.

**§ 665.** Sec. 16. Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted, nor shall any person be abused in being arrested, whilst under arrest, or in prison.

**§ 666.** Sec. 17. The power of the courts to punish for contempt shall be limited by legislative acts.

**§ 667.** Sec. 18. There shall be no imprisonment for debt.

**§ 668.** Sec. 19. In all prosecutions or indictments for libel the truth may be given in evidence, and the jury shall have the right to determine the law and the facts.

**§ 669.** Sec. 20. Private ways may be granted upon just compensation being paid by the applicant.

**§ 670.** Sec. 21. All penalties shall be proportioned to the nature of the offense.

**§ 671.** Sec. 22. Whipping, as a punishment for crime, is prohibited.

**§ 672.** Sec. 23. No lottery shall be authorized, or sale of lottery-ticket allowed, in this State, and adequate penalties for such sale shall be provided by law.

**§ 673.** Sec. 24. No conviction shall work corruption of blood, and no conviction of treason shall work a general forfeiture of estate longer than during the life of the person attained.

**§ 674.** Sec. 25. Treason against the State of Georgia shall consist only in levying war against the State, or the United States, or adhering to the enemies thereof, giving them aid and comfort; and no person shall be convicted of treason except on the testimony of two witnesses to the same overt act, or his own confession in open court.

**§ 675.** Sec. 26. Laws shall have a general operation, and no general law, affecting private rights, shall be varied, in any particular case, by special legislation, except with the free consent, in writing, of all persons to be affected thereby; and no person under legal disability to contract is capable of such free consent.

**§ 676.** Sec. 27. The power of taxation over the whole State shall be exercised by the general assembly only to raise revenue for the support of government, to pay the public debt, to provide a general school-fund, for common defence and for public improvement; and taxation on property shall be ad valorem only, and uniform on all species of property taxed.

**§ 677.** Sec. 28. The general assembly may grant the power of taxation to county authorities and municipal corporations, to be exercised within their several territorial limits.

**§ 678.** Sec. 29. No poll-tax shall be levied except for educational purposes and such tax shall not exceed one dollar annually on each poll.

**§ 679.** Sec. 30. Mechanics and laborers shall have liens upon the property of their employers for labor performed or material furnished, and the legislature shall provide for the summary enforcement of the same.

**§ 680.** Sec. 31. The legislative, executive, and judicial departments shall be distinct; and each department shall be confided to a separate body of magistracy. No person, or collection of persons, being of one department, shall exercise any power properly attached to either of the others, except in cases herein expressly provided.

**§ 681.** Sec. 32. Legislative acts in violation of this constitu-

—21

tion, or the Constitution of the United States, are void, and the judiciary shall so declare them.

**§ 682.** Sec. 33. The State of Georgia shall ever remain a member of the American Union; the people thereof are a part of the American nation; every citizen thereof owes paramount allegiance to the Constitution and Government of the United States, and no law or ordinance of this State, in contravention or subversion thereof, shall ever have any binding force.

ARTICLE II.

*Franchise and Elections.*

**§ 683.** Section 1. In all elections by the people the electors shall vote by ballot.

**§ 684.** Sec. 2. Every male person born in the United States, and every male person who has been naturalized, or who has legally declared his intention to become a citizen of the United States, twenty-one years old or upward, who shall have resided in this State six months next preceding the election, and shall have resided thirty days in the county in which he offers to vote, and shall have paid all taxes which may have been required of him, and which he may have had an opportunity of paying, agreeably to law, for the year next preceding the election (except as hereinafter provided), shall be deemed an elector; and every male citizen of the United States, of the age aforesaid (except as hereinafter provided), who may be a resident of the State at the time of the adoption of this constitution shall be deemed an elector, and shall have all the rights of an elector, as aforesaid: Provided, That no soldier, sailor, or marine in the military or naval service of the United States shall acquire the rights of an elector by reason of being stationed on duty in this State; and no person shall vote who, if challenged, shall refuse to take the following oath:

"I do swear that I have not given or received, nor do I expect to give or receive, any money, treat, or other thing of value, by which my vote, or any vote, is affected, or expected to be affected at this election, nor have I given or promised any reward, or made any threat, by which to prevent any person from voting at this election."



Content downloaded/printed from                    *HeinOnline*

Thu Jan  2 11:12:29 2020

Citations:

Bluebook 20th ed.
Original text of the Constitution of 1819. [1] (1819)   Declaration of Rights

ALWD 6th ed.

Chicago 7th ed.
, "Declaration of Rights," Constitution of the State of Alabama. : [1]-[4]

McGill Guide 9th ed.
, "Declaration of Rights" [1].

MLA 8th ed.
"Declaration of Rights." Constitution of the State of Alabama., , , p. [1]-[4].
HeinOnline.

OSCOLA 4th ed.
, 'Declaration of Rights' [1]

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
    Conditions of the license agreement available at
    *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



914

## CONSTITUTION OF THE STATE OF ALABAMA.

**Preamble.** WE, the people of the Alabama Territory, having the right of admission into the general government, as a member of the union, consistent with the constitution and laws of the United States, by our representatives, assembled in convention at the town of Huntsville, on Monday, the fifth day of July, one thousand eight hundred and nineteen, in pursuance of an Act of congress, entitled "An Act to enable the people of the Alabama Territory to form a Constitution and State Government, and for the admission of such State into the Union, on an equal footing with the original States;" in order to establish justice, ensure tranquillity, provide for the common defence, promote the general welfare, and secure to ourselves and our posterity the rights of life, liberty, and property, do ordain and establish the following constitution, or form of government ; and do mutually agree with each other to form ourselves into a free and independent state, by the name of "The State of Alabama." And we do hereby recognize, confirm, and establish the boundaries assigned to said state by the act of congress aforesaid, " to wit : beginning at the point where the thirty-first degree of north latitude intersects the Perdido river, thence, east, to the western boundary line of the state of Georgia ; thence, along said line, to the southern boundary line of the state of Tennessee ; thence, west, along said boundary line, to the Tennessee river ; thence, up the same, to the mouth of Bear creek ; thence, by a direct line, to the northwest corner of Washington county ; thence, due south, to the Gulf of Mexico; thence, eastwardly, including all islands within six leagues of the shore, to the Perdido river ; and thence, up the same, to the beginning"—subject to such alteration as is provided in the third section of said act of congress, and subject to such enlargement as may be made by law in consequence of any cession of territory by the United States, or either of them.

### ARTICLE I.

#### *Declaration of Rights.*

That the general, great, and essential principles of liberty and free government may be recognized and established, we declare :

**All freemen are equal.** SEC. 1. That all freemen, when they form a social compact, are equal in rights ; and that no man or set of men are entitled to exclusive, separate public emoluments or privileges, but in consideration of public services.

**Political power is the people.** SEC. 2. All political power is inherent in the people, and all free governments are founded on their authority, and instituted for their benefit : and, therefore, they have at all times an unalienable and indefeasible right to alter, reform, or abolish their form of government, in such manner as they may think expedient.

ADD0128

SEC. 3. No person within this state shall, upon any pretence, be deprived of the inestimable privilege of worshipping God in the manner most agreeable to his own conscience; nor be compelled to attend any place of worship; nor shall any one ever be obliged to pay any tithes, taxes, or other rate, for the building or repairing any place of worship, or for the maintenance of any minister or ministry. *Rights of conscience*

SEC. 4. No human authority ought, in any case whatever, to control or interfere with the rights of conscience. *not to be interfered with.*

SEC. 5. No person shall be hurt, molested, or restrained, in his religious profession, sentiments, or persuasions, provided he does not disturb others in their religious worship. *No person molested.*

SEC. 6. The civil rights, privileges, or capacities of any citizen, shall in no way be diminished, or enlarged, on account of his religious principles. *Civil rights not affected by religious belief.*

SEC. 7. There shall be no establishment of religion by law; no preference shall ever be given by law to any religious sect, society, denomination, or mode of worship: and no religious test shall ever be required as a qualification to any office or public trust under this state. *No established religion or religious test.*

SEC. 8. Every citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of that liberty. *Freedom of speech, &c.*

SEC. 9. The people shall be secure in their persons, houses, papers, and possessions, from unreasonable seizures or searches; and no warrant to search any place, or to seize any person or thing, shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation. *Searches.*

SEC. 10. In all criminal prosecutions, the accused has a right to be heard by himself and counsel; to demand the nature and cause of the accusation, and have a copy thereof: to be confronted by the witnesses against him: to have compulsory process for obtaining witnesses in his favour; and, in all prosecutions, by indictment or information, a speedy public trial by an impartial jury of the county or district in which the offence shall have been committed: he shall not be compelled to give evidence against himself, nor shall he be deprived of his life, liberty, or property, but by due course of law. *Rights of accused in criminal cases.*

SEC. 11. No person shall be accused, arrested, or detained, except in cases ascertained by law, and according to the forms which the same has prescribed; and no person shall be punished; but in virtue of a law, established and promulgated prior to the offence, and legally applied. *No person accused, &c. except by law.*

SEC. 12. No person shall, for any indictable offence, be proceeded against criminally, by information; except in cases arising in the land and naval forces, or the militia when in actual service, or, by leave of the court, for oppression or misdemeanor in office. *Indictable offences, how proceeded against.*

SEC. 13. No person shall, for the same offence be twice put in jeopardy of life or limb: nor shall any person's property be taken or applied to public use, unless just compensation be made therefor. *No person twice tried for same offence.*

Courts to be open, &c.

Sec. 14. All courts shall be open, and every person, for an injury done him, in his lands, goods, person, or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial, or delay.

Laws not suspended but by general assembly. Of bail and fines.

Sec. 15. No power of suspending laws shall be exercised, except by the general assembly, or its authority.

Sec. 16. Excessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted.

Bailable offences.

Sec. 17. All persons shall, before conviction, be bailable by sufficient securities, except for capital offences, when the proof is evident, or the presumption great: and the privilege of the writ of "habeas corpus" shall not be suspended, unless when in cases of rebellion, or invasion, the public safety may require it.

Debtors, when discharged.

Sec. 18. The person of a debtor, where there is not strong presumption of fraud, shall not be detained in prison, after delivering up his estate for the benefit of his creditors, in such manner as shall be prescribed by law.

No ex post facto laws.

Sec. 19. No ex post facto law, nor law impairing the obligation of contracts, shall be made.

No attaints.

Sec. 20. No person shall be attainted of treason or felony by the general assembly. No attainder shall work corruption of blood, nor forfeiture of estate.

No forfeiture from suicide.

Sec. 21. The estates of suicides shall descend or vest as in cases of natural death; if any person shall be killed by casualty, there shall be no forfeiture by reason thereof.

Assembly of citizens.

Sec. 22. The citizens have a right, in a peaceable manner, to assemble together for their common good, and to apply to those invested with the powers of government for redress of grievances, or other proper purposes, by petition, address, or remonstrance.

May bear arms.

Sec. 23. Every citizen has a right to bear arms in defence of himself and the state.

Standing army, &c.

Sec. 24. No standing army shall be kept up without the consent of the general assembly; and, in that case, no appropriation of money for its support shall be for a longer term than one year; and the military shall, in all cases, and at all times, be in strict subordination to the civil power.

Quartering troops.

Sec. 25. No soldier shall, in time of peace, be quartered in any house, without the consent of the owner; nor in time of war, but in a manner to be prescribed by law.

No titles of nobility.

Sec. 26. No title of nobility, or hereditary distinction, privilege, honour, or emolument, shall ever be granted or conferred in this state; nor shall any office be created, the appointment of which shall be for a longer term than during good behaviour.

Emigration.

Sec. 27. Emigration from this state shall not be prohibited, nor shall any citizen be exiled.

Trial by Jury.

Sec. 28. The right of trial by jury shall remain inviolate.

Right of prosecuting, &c.

Sec. 29. No person shall be debarred from prosecuting or defending any civil cause, for or against him or herself, before any tribunal in this state, by him or herself or counsel.

Sec. 30. This enumeration of certain rights shall not be construed to deny or disparage others retained by the people : and to guard against any encroachments on the rights herein retained, or any transgression of any of the high powers herein delegated, we declare, that every thing in this article is excepted out of the general powers of government, and shall for ever remain inviolate; and that all laws contrary thereto, or to the following provisions, shall be void. *Enumeration of rights.*

## ARTICLE II.

### Distribution of Powers.

Sec. 1. The powers of the government of the state of Alabama shall be divided into three distinct departments ; and each of them confided to a separate body of magistracy, to wit: those which are legislative, to one; those which are executive, to another ; and those which are judicial, to another. *Three distinct departments.*

Sec. 2. No person, or collection of persons, being of one of those departments, shall exercise any power properly belonging to either of the others, except in the instances herein after expressly directed or permitted. *Persons belonging to one not to interfere with the others.*

## ARTICLE III.

### Legislative Department.

Sec. 1. The legislative power of this state shall be vested in two distinct branches: the one to be styled the senate, the other the house of representatives, and both together "The General Assembly of the State of Alabama;" and the style of their laws shall be, "Be it enacted by the Senate and House of Representatives of the State of Alabama, in General Assembly convened." *Two branches. Style of laws.*

Sec. 2. The members of the house of representatives shall be chosen by the qualified electors, and shall serve for the term of one year, from the day of the commencement of the general election, and no longer. *Members, how chosen.*

Sec. 3. The representatives shall be chosen every year, on the first Monday and the day following in August, until otherwise directed by law. *Election, when held.*

Sec. 4. No person shall be a representative unless he be a white man, a citizen of the United States, and shall have been an inhabitant of this state two years next preceding his election, and the last year thereof a resident of the county, city, or town, for which he shall be chosen, and shall have attained the age of twenty-one years. *Qualification of members.*

Sec. 5. Every white male person of the age of twenty-one years, or upwards, who shall be a citizen of the United States, and shall have resided in this state one year next preceding an election, and the last three months within the county, city, or town, in which he offers to vote, shall be deemed a qualified elector ; provided, that no soldier, seaman, or marine, in the regular army or navy of the United States, shall be entitled to *Of electors.*



Content downloaded/printed from                                    [HeinOnline](HeinOnline)

Fri Dec 13 15:44:28 2019

Citations:

Bluebook 20th ed.
Original text of the Constitution of 1859/1861. The texts of the seven Resolutions
adopted at the Wyandotte Convention, ratified by the People and presented to
Congress, concerning matters of finance on statehood, are appended to the principal
text. [1] (1861)   Ordinance

ALWD 6th ed.

Chicago 7th ed.
, "," Constitution of the State of Kansas; Adopted at Wyandotte, July 29, '59. :
[1]-[2]

OSCOLA 4th ed.
, " [1]

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
     Conditions of the license agreement available at
     [https://heinonline.org/HOL/License](https://heinonline.org/HOL/License)
-- The search text of this PDF is generated from  uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



# *CONSTITUTION

OF THE

## STATE OF KANSAS;

ADOPTED AT WYANDOT, JULY 29, '59.

---

### ORDINANCE.

WHEREAS, the Government of the United States is the proprietor of a large portion of the Lands included in the limits of the State of Kansas as defined by this Constitution; and whereas the State of Kansas will possess the right to tax said lands for purposes of government, and for other purposes; Now, therefore, be it ordained by the people of Kansas, that the right of the State of Kansas to tax such lands, is relinquished forever, and the State of Kansas will not interfere with the title of the United States to such lands, nor with any regulation of Congress in relation thereto, nor tax non-residents higher than residents; *Provided always,* That the following conditions be agreed to by Congress:

SECTION 1. Sections numbered sixteen and thirty-six in each township in the State, including Indian reservations and Trust lands, shall be granted to the State for the exclusive use of Common Schools; and when either of said sections, or any part thereof, has been disposed of, other lands of equal value, as nearly contiguous thereto as possible, shall be substituted therefor.

SEC. 2. That seventy-two sections of land shall be granted to the State for the erection and maintenance of a State University.

SEC. 3. That thirty-six sections shall be granted to the State for the erection of public buildings.

SEC. 4. That seventy-two sections shall be granted to the State for the erection and maintenance of charitable and benevolent institutions.

SEC. 5. That all salt springs, not exceeding twelve in number, with six sections of land adjacent to each, together with all mines, with the lands necessary for their full use, shall be granted to the State for works of public improvement.

SEC. 6. That five per centum of the proceeds of the public lands in Kansas, disposed of after the admission of the State into the Union, shall be paid to the State for a fund, the income of which shall be used for the support of Common Schools.

SEC. 7. That the Five Hundred Thousand acres of land to which the State is entitled under the Act of Congress entitled "An Act to appropriate the proceeds of the sales of public lands and grant pre-emption rights," approved September 4th, 1841, shall be granted to the State for the support of Common Schools.

---

\* In the edition of 1859 the paging at this point reverts to number one.

Sec. 8. That the lands hereinbefore mentioned shall be selected in such manner as may be prescribed by law; such selections to be subject to the approval of the Commissioner of the General Land Office of the United States.

## PREAMBLE.

We, the people of Kansas, grateful to Almighty God for our civil and religious privileges, in order to insure the full enjoyment of our rights as American citizens, do ordain and establish this constitution of the State of Kansas, with the following boundaries, to-wit: Beginning at a point on the western boundary of the State of Missouri, where the thirty-seventh parallel of north latitude crosses the same; thence running west on said parallel to the twenty-fifth meridian of longitude west from Washington; thence north on said meridian to the fortieth parallel of north latitude: thence east on said parallel to the western boundary of the State of Missouri; thence south with the western boundary of said State to the place of beginning.

[*2]                       *BILL OF RIGHTS.

Section 1. All men are possessed of equal and inalienable natural rights, among which are life, liberty, and the pursuit of happiness.

Sec. 2. All political power is inherent in the people, and all free governments are founded on their authority, and are instituted for their equal protection and benefit. No special privileges or immunities shall ever be granted by the Legislature, which may not be altered, revoked or repealed by the same body; and this power shall be exercised by no other tribunal or agency.

Sec. 3. The people have the right to assemble, in a peaceable manner, to consult for their common good, to instruct their representatives, and to petition the government, or any department thereof, for the redress of grievances.

Sec. 4. The people have the right to bear arms for their defence and security; but standing armies, in time of peace, are dangerous to liberty, and shall not be tolerated, and the military shall be in strict subordination to the civil power.

Sec. 5. The right of trial by jury shall be inviolate.

Sec. 6. There shall be no slavery in this State; and no involuntary servitude, except for the punishment of crime, whereof the party shall have been duly convicted.

Sec. 7. The right to worship God according to the dictates of conscience shall never be infringed; nor shall any person be compelled to attend or support any form of worship; nor shall any control of, or interference with the rights of conscience be permitted, nor any preference be given by law, to any religious establishment or mode of worship. No religious test or property qualification shall be required for any office of public trust, nor for any vote at any election, nor shall any person be incompetent to testify on account of religious belief.

Sec. 8. The right to the writ of habeas corpus shall not be suspended, unless the public safety requires it in case of invasion or rebellion.

Sec. 9. All persons shall be bailable by sufficient sureties except for capital offences, where proof is evident or the presumption great. Excessive bail shall not be required, nor excessive fines imposed, nor cruel **or** unusual punishment inflicted.



Content downloaded/printed from                    [HeinOnline](HeinOnline)

Fri Dec 13 17:55:53 2019

Citations:

Bluebook 20th ed.
C. A.; et al. Wickliffe. Revised Statutes of Kentucky: Approved and Adopted by the
General Assembly, 1851 and 1852. In Force from July 1, 1852 (1852).

ALWD 6th ed.
C. A.; et al. Wickliffe. Revised Statutes of Kentucky: Approved & Adopted by the
General Assembly, 1851 & 1852. In Force from July 1, 1852 (1852).

APA 6th ed.
Wickliffe, C. (1852). Revised Statutes of Kentucky: Approved and Adopted by the
General Assembly, 1851 and 1852. In Force from July 1, 1852. Frankfort, KY, A.G.
Hodges.

Chicago 7th ed.
Wickliffe C. A.; et al. Revised Statutes of Kentucky: Approved and Adopted by the
General Assembly, 1851 and 1852. In Force from July 1, 1852. Frankfort, KY, A.G.
Hodges.

McGill Guide 9th ed.
C. A.; et al. Wickliffe, Revised Statutes of Kentucky: Approved and Adopted by the
General Assembly, 1851 and 1852. In Force from July 1, 1852 (Frankfort, KY: A.G.
Hodges., 1852)

MLA 8th ed.
Wickliffe, C. A., et al. Revised Statutes of Kentucky: Approved and Adopted by the
General Assembly, 1851 and 1852. In Force from July 1, 1852. Frankfort, KY, A.G.
Hodges. HeinOnline.

OSCOLA 4th ed.
Wickliffe, C. A.; et al. Revised Statutes of Kentucky: Approved and Adopted by the
General Assembly, 1851 and 1852. In Force from July 1, 1852. Frankfort, KY, A.G.
Hodges.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
     Conditions of the license agreement available at
     [https://heinonline.org/HOL/License](https://heinonline.org/HOL/License)
-- The search text of this PDF is generated from  uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



ADD0135

**74**    THE NEW CONSTITUTION OF KENTUCKY.

*Number of members of the convention.*

shall, at their next session, pass a law calling a convention, to consist of as many members as there shall be in the house of representatives, and no more; to be chosen on the first Monday in August thereafter, in the same manner and proportion, and at the same places, and possessed of the same qualifications of a qualified elector, by citizens entitled to vote for representatives; and to meet within three months after their election, for the purpose of re-adopting, amending, or changing this constitution; but if it shall appear by the vote of either year, as aforesaid, that a majority of all the citizens entitled to vote for representatives did not vote for calling a convention, a convention shall not then be called. And for the purpose of ascertaining whether a majority of the citizens, entitled to vote for representatives, did or did not vote for calling a convention, as above, the general assembly passing the law authorizing such vote shall provide for ascertaining the number of citizens entitled to vote for representatives within the state.

*Convention to judge of the election of its members.*

SECTION 2. The convention, when assembled, shall judge of the election of its members and decide contested elections, but the general assembly shall, in calling a convention, provide for taking testimony in such cases and for issuing a writ of election in case of a tie.

### ARTICLE XIII.

### *Bill of Rights.*

*Declaration of rights.*

That the general, great, and essential principles of liberty and free government may be recognized and established: WE DECLARE,

*; Equality of men.*

SECTION 1. That all freemen, when they form a social compact, are equal, and that no man, or set of men, are entitled to exclusive, separate public emoluments or privileges from the community, but in consideration of public services.

*Absolute power over life, liberty, & property exists nowhere in a republic, &c.*

SECTION 2. That absolute, arbitrary power over the lives, liberty, and property of freemen exists no where in a republic—not even in the largest majority.

*The right of property.*

SECTION 3. The right of property is before and higher than any constitutional sanction; and the right of the owner of a slave to such slave, and its increase, is the same, and as inviolable as the right of the owner of any property whatever.

*All power in the people.*

SECTION 4. That all power is inherent in the people, and all free governments are founded on their authority, and instituted for their peace, safety, happiness, security, and the protection of property. For the advancement of these ends, they have, at all times, an inalienable and indefeasible right to alter, reform, or abolish their government, in such manner as they may think proper.

*Liberty of conscience.*

SECTION 5. That all men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences; that no man shall be com-

pelled to attend, erect, or support any place of worship, or to maintain any ministry against his consent; that no human authority ought, in any case whatever, to control or interfere with the rights of conscience; and that no preference shall ever be given by law to any religious societies or modes of worship.

SECTION 6. That the civil rights, privileges, or capacities of any citizen shall in no wise be diminished or enlarged on account of his religion.    Religion.

SECTION 7. That all elections shall be free and equal.    Elections.

SECTION 8. That the ancient mode of trial by jury shall be held sacred, and the right thereof remain inviolate, subject to such modifications as may be authorized by this constitution.    Trial by jury.

SECTION 9. That printing presses shall be free to every person who undertakes to examine the proceedings of the general assembly, or any branch of government; and no law shall ever be made to restrain the right thereof. The free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write, and print on any subject, being responsible for the abuse of that liberty.    Freedom of the press and speech.

SECTION 10. In prosecutions for the publication of papers investigating the official conduct of officers, or men in a public capacity, or where the matter published is proper for public information, the truth thereof may be given in evidence; and in all indictments for libels, the jury shall have a right to determine the law and the facts, under the direction of the court, as in other cases.    To give truth in evidence.    Jury to be judges of law and fact in libels.

SECTION 11. That the people shall be secure in their persons, houses, papers, and possessions, from unreasonable seizures and searches, and that no warrant to search any place or to seize any person or thing, shall issue, without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation.    People to be secure from unreasonable seizures and searches.

SECTION 12. That in all criminal prosecutions, the accused hath a right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face; to have compulsory process for obtaining witnesses in his favor; and in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage; that he cannot be compelled to give evidence against himself; nor can he be deprived of his life, liberty, or property, unless by the judgment of his peers, or the law of the land.    Rights of persons prosecuted criminally.

SECTION 13. That no person shall, for any indictable offense, be proceeded against criminally by information, except in cases arising in the land or naval forces, or in the militia when in actual service, in time of war or public danger, or by leave of the court, for oppression or misdemeanor in office.    Information.

SECTION 14. No person shall, for the same offense, be twice put in jeopardy of his life or limb; nor shall any    Twice in jeopardy, and property not to be taken.

man's property be taken or applied to public use, without the consent of his representatives, and without just compensation being previously made to him.

**All courts to be open.**

SECTION 15. That all courts shall be open, and every person, for an injury done him in his lands, goods, person, or reputation, shall have remedy by the due course of law, and right and justice administered, without sale, denial, or delay.

**Suspending laws.**

SECTION 16. That no power of suspending laws shall be exercised, unless by the general assembly, or its authority.

**Excessive bail.**

SECTION 17. That excessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted.

**Prisoners, when bailable.**

**Habeas corpus.**

SECTION 18. That all prisoners shall be bailable by sufficient securities, unless for capital offenses, when the proof is evident or presumption great; and the privilege of the writ of *habeas corpus* shall not be suspended, unless when in cases of rebellion or invasion the public safety may require it.

**Imprisonment of debtors.**

SECTION 19. That the person of a debtor, where there is not strong presumption of fraud, shall not be continued in prison after delivering up his estate for the benefit of his creditors, in such manner as shall be prescribed by law.

**Ex post facto laws**

SECTION 20. That no *ex post facto* law, nor any law impairing contracts, shall be made.

**Attainder.**

SECTION 21. That no person shall be attainted of treason or felony by the general assembly.

SECTION 22. That no attainder shall work corruption of blood, nor, except during the life of the offender, forfeiture of estate to the commonwealth.

**Felos de se and forfeiture.**

SECTION 23. That the estates of such persons as shall destroy their own lives shall descend or vest as in case of natural death; and if any person shall be killed by casualty, there shall be no forfeiture by reason thereof.

**Right of petition.**

SECTION 24. That the citizens have a right, in a peaceable manner, to assemble together for their common good, and to apply to those invested with the powers of government for redress of grievances, or other proper purposes, by petition, address, or remonstrance.

**Right to bear arms**

SECTION 25. That the rights of the citizens to bear arms in defense of themselves and the state, shall not be questioned; but the general assembly may pass laws to prevent persons from carrying concealed arms.

**Standing armies.**

SECTION 26. That no standing army shall, in time of peace, be kept up, without the consent of the general assembly; and the military shall, in all cases and at all times, be in strict subordination to the civil power.

**Soldiers not to be quartered.**

SECTION 27. That no soldier shall, in time of peace, be quartered in any house, without the consent of the owner; nor in time of war, but in a manner to be prescribed by law.

SECTION 28. That the general assembly shall not grant any title of nobility, or hereditary distinction, nor create any office, the appointment to which shall be for a longer time than for a term of years. *Nobility, and limitation of office*

SECTION 29. That emigration from the state shall not be prohibited. *Emigration.*

SECTION 30. To guard against transgressions of the high powers which we have delegated, WE DECLARE, that every thing in this article is excepted out of the general powers of government, and shall forever remain inviolate; and that all laws contrary thereto, or contrary to this constitution, shall be void. *Exception out of the general powers.*

### SCHEDULE.

That no inconvenience may arise from the alterations and amendments made in the constitution of this commonwealth, and in order to carry the same into complete operation, it is hereby declared and ordained:

SECTION 1. That all the laws of this commonwealth, in force at the time of the adoption of this constitution, and not inconsistent therewith, and all rights, actions, prosecutions, claims, and contracts, as well of individuals as of bodies corporate, shall continue as if this constitution had not been adopted. *Laws and rights continued.*

SECTION 2. The oaths of office herein directed to be taken may be administered by any judge or justice of the peace, until the general assembly shall otherwise direct. *Oaths, by whom administered.*

SECTION 3. No office shall be superseded by the adoption of this constitution, but the laws of the state relative to the duties of the several officers, legislative, executive, judicial, and military, shall remain in full force, though the same be contrary to this constitution, and the several duties shall be performed by the respective officers of the state, according to the existing laws, until the organization of the government, as provided for under this constitution, and the entering into office of the officers to be elected or appointed under said government, and no longer. *No office shall be superseded by the adoption of this constitution.*

SECTION 4. It shall be the duty of the general assembly which shall convene in the year 1850, to make an apportionment of the representation of this state, upon the principle set forth in this constitution; and until the first apportionment shall be made as herein directed, the apportionment of senators and representatives among the several districts and counties in this state, shall remain as at present fixed by law: *Provided,* that on the first Monday in August, 1850, all senators shall go out of office, and on that day an election for senators and representatives shall be held throughout the state, and those then elected shall hold their offices for one year, and no longer: *Provided further,* that at the elections to be held in the year 1850, that provision in this constitution which requires voters to vote in the precinct within which they reside, shall not apply. *Duty of general assembly that convenes in 1850.*



Content downloaded/printed from                                    *[HeinOnline](HeinOnline)*

Fri Dec 13 15:48:34 2019

Citations:

Bluebook 20th ed.
Original text of the Constitution of 1879. The "Miscellaneous Ordinances" are
appended to the principal text. An index is provided. [1] (2015)   Bill of Rights

ALWD 6th ed.

Chicago 7th ed.
, "," Appendix. Constitution of Louisiana. Adopted July 23, 1879. : [1]-[2]

OSCOLA 4th ed.
, " [1]

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
    Conditions of the license agreement available at
    *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



# APPENDIX.

—●—

## CONSTITUTION OF LOUISIANA.

ADOPTED JULY 23, 1879.

—●—

### PREAMBLE.

We, the people of the State of Louisiana, in order to establish justice, insure domestic tranquility, promote the general welfare and secure the blessings of liberty to ourselves and our posterity, acknowledging and invoking guidance of Almighty God, the author of all good government, do ordain the and establish this constitution.

### BILL OF RIGHTS.

ART. 1. All government of right originates with the people, is founded on their will alone, and is instituted solely for the good of the whole, deriving its just powers from the consent of the governed. Its only legitimate end is to protect the citizen in the enjoyment of life, liberty and property. When it assumes other functions it is usurpation and oppression.

ART. 2. The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

ART. 3. A well regulated militia being necessary to the security of a free State, the right of the people to keep and bear arms shall not be abridged. This shall not prevent the passage of laws to punish those who carry weapons concealed. D. sec. 915, 2309.

ART. 4. No law shall be passed respecting an establishment of religion or prohibiting the free exercise thereof, or abridging the freedom of speech or of the press, or the right of the people peaceably to assemble and petition the government for a redress of grievances.

ART. 5. There shall be neither slavery nor involuntary servitude in this State otherwise than for the punishment of crime, whereof the party shall have been duly convicted. Prosecutions shall be by indictment or information; provided, that no person shall be held to answer for a capital crime unless on a presentment or indictment by a grand jury, except in cases arising in the militia when in active service in time of war or public danger; nor shall any person be twice put in jeopardy of life or liberty for the same offence, except on his own application for a new trial, or where there is a mistrial, or a motion in arrest of judgment is sustained. D. 977.

ART. 6. No person shall be compelled to give evidence against himself in a criminal case or in any proceeding that may subject him to criminal prosecution, except where otherwise provided in this constitution ; nor be deprived of life, liberty or property without due process of law.

ART. 7. In all criminal prosecutions the accused shall enjoy the right to a speedy public trial by an impartial jury, except that, in cases where the penalty is not necessarily imprisonment at hard labor or death the general assembly may provide for the trial thereof by a jury less than twelve in number; provided, that the accused in every instance shall be tried in the parish wherein the offence shall have been committed, except in cases of change of venue. Act 1880, p. 35, No. 35, sec. 4; D. sec. 1021, 1031.

(a)

ADD0141

ii          *Constitution of the State of Louisiana.*

ART. 8.   In all criminal prosecutions the accused shall enjoy the right to be informed of the nature and cause of the accusation, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and to defend himself and to have the assistance of counsel, and to have the right to challenge jurors peremptorily, the number of challenges to be fixed by statute.   D. sec. 992.

ART. 9.   Excessive bail shall not be required, nor excessive fines be imposed, nor cruel and unusual punishments inflicted   All persons shall be bailable by sufficient sureties, unless for capital offences, where the proof is evident or the presumption great, or unless after conviction for any crime or offence punishable with death or imprisonment at hard labor.   D. sec. 1010, 1011.

ART. 10.   The privilege of the writ of *habeas corpus* shall not be suspended, unless when, in case of rebellion or invasion, the public safety may require it.   C. P., art. 791.

ART. 11.   All courts shall be open, and every person for injury done him in his rights, lands, goods, person or reputation, shall have adequate remedy by due process of law and justice, administered without denial or unreasonable delay.

ART. 12   The military shall be in subordination to the civil power.

ART. 13.   This enumeration of rights shall not be construed to deny or impair other rights of the people not herein expressed.

### DISTRIBUTION OF POWERS.

ART. 14.   The powers of the government of the State of Louisiana shall be divided into three distinct departments, and each of them be confided to a separate body of magistracy, to-wit:   Those which are legislative to one, those which are executive to another, and those which are judicial to another.

ART. 15.   No one of these departments, nor any person or collection of persons holding office in one of them, shall exercise power properly belonging to either of the others, except in the instances hereinafter expressly directed or permitted.

### LEGISLATIVE DEPARTMENT.

#### APPORTIONMENT.

ART. 16.   Representation in the house of representatives shall be equal and uniform, and shall be regulated and ascertained by the total population.   Each parish shall have at least one representative.   The first enumeration to be made by the State authorities under this constitution shall be made in the year eighteen hundred and ninety; and subsequent enumerations shall be made every tenth year thereafter, in such manner as shall be prescribed by law, for the purpose of ascertaining the total population and the number of qualified electors in each parish and election district.   At its first regular session after each enumeration the general assembly shall apportion the representation among the several parishes and election districts on the basis of the total population as aforesaid.   A representative number shall be fixed; and each parish and election district shall have as many representatives as the aggregate number of its population will entitle it to, and an additional representative for any fraction exceeding one-half the representative number.   The number of representatives shall not be more than ninety-eight nor less than seventy.

ART. 17.   The general assembly, in every year in which they shall apportion representation in the house of representatives, shall divide the State into senatorial districts.   No parish shall be divided in the formation of a senatorial district—the parish of Orleans excepted.   Whenever a new parish shall be created it shall be attached to the senatorial district, from which most of its territory was taken, or to another contiguous district, at the discretion of the general assembly, but shall not be attached to more than one district.   The number of senators shall not be more than thirty-six nor less than twenty-four, and they shall be apportioned among the senatorial districts according to the total population contained in the several districts.

ADD0142



Content downloaded/printed from                    *HeinOnline*

Fri Dec 13 15:49:47 2019

Citations:

Bluebook 20th ed.
Original text of the Constitution of 1868/1869 as adopted at the election of 30
November/1 December 1869. [1] (2015)   Bill of Rights

ALWD 6th ed.

Chicago 7th ed.
, "Bill of Rights," Constitution of the State of Mississippi. : [1]-[2]

McGill Guide 9th ed.
, "Bill of Rights" [1].

MLA 8th ed.
"Bill of Rights." Constitution of the State of Mississippi., , , p. [1]-[2].
HeinOnline.

OSCOLA 4th ed.
, 'Bill of Rights' [1]

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
     Conditions of the license agreement available at
     *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



# CONSTITUTION OF THE STATE OF MISSISSIPPI.

Adopted in Convention, Fifteenth Day of May, A. D. 1868, and Ratified by the People, First Day of December, A. D. 1869.

To the end that justice be established, public order maintained, and liberty perpetuated, we, the people of the state of Mississippi, grateful to Almighty God for the free exercise of the right to choose our own form of government, do ordain this constitution:

## ARTICLE I.

### BILL OF RIGHTS.

Section 1. All persons resident in this state, citizens of the United States, are hereby declared citizens of the state of Mississippi.

Sec. 2. No person shall be deprived of life, liberty, or property, except by due process of law.

Sec. 3. The privilege of the writ of *habeas corpus* shall not be suspended, unless when, in case of rebellion or invasion, the public safety may require it.

Sec. 4. The freedom of speech and of the press shall be held sacred, and in all indictments for libel, the jury shall determine the law and the facts, under the direction of the court.

Sec. 5. No person's life or liberty shall be twice placed in jeopardy for the same offence.

Sec. 6. The right of the people peaceably to assemble and petition the government on any subject, shall never be impaired.

Sec. 7. In all criminal prosecutions, the accused shall have a right to be heard by himself, or counsel, or both; to demand the nature and cause of the accusation; to be confronted by the witnesses against him; to have a compulsory process for obtaining witnesses in his favor; and in all prosecutions by indictment or information, a speedy and public trial, by an impartial jury of the county where the offence was committed; and he shall not be compelled to give evidence against himself.

Sec. 8. Cruel or unusual punishment shall not be inflicted, nor shall excessive fines be imposed; excessive bail shall not be required; and all persons shall, before conviction, be bailable by sufficient sureties, except for capital offences, when the proof is evident, or presumption great.

Sec. 9. No *ex post facto* law, or laws impairing the obligation of contracts, shall ever be passed.

Sec. 10. Private property shall not be taken for public use, except upon due compensation first being made to the owner or owners thereof, in a manner to be provided for by law.

Sec. 11. There shall be no imprisonment for debt.

Sec. 12. The right of trial by jury shall remain inviolate.

Sec. 13. No property qualification shall ever be required of any person to become a juror.

SEC. 14. The people shall be secure in their persons, houses and possessions, from un-reasonable seizure or search, and no warrant shall be issued without probable cause, sup-ported by oath or affirmation, specially designating the place to be searched, and the per-son or thing to be seized.

SEC. 15. All persons shall have a right to keep and bear arms for their defense.

SEC. 16. The rights of married women shall be protected by law in property owned previous to marriage; and also in all property acquired in good faith by purchase, gift, devise or bequest after marriage: *provided*, that nothing herein contained shall be so con-strued as to protect said property from being applied to the payment of their lawful debts.

SEC. 17. No property qualification for eligibility to office shall ever be required.

SEC. 18. No property or educational qualification shall ever be required, for any person to become an elector.

SEC. 19. There shall be neither slavery nor involuntary servitude in this state, other-wise than in the punishment of crime, whereof the party shall have been duly convicted.

SEC. 20. The right to withdraw from the federal union, on account of any real or sup-posed grievance, shall never be assumed by this state; nor shall any law be passed in dero-gation of the paramount allegiance of the citizens of this state, to the government of the United States.

SEC. 21. No public money or moneys, shall be appropriated for any charitable or other public institution in this state, making any distinction among the citizens thereof; *pro-vided*, that nothing herein contained shall be so construed as to prevent the legislature from appropriating the school fund, in accordance with the article in this constitution relating to public schools.

SEC. 22. No distinction shall ever be made by law, between citizens and alien friends, in reference to possession, enjoyment, or descent of property.

SEC. 23. No religious test, as a qualification for office, shall ever be required, and no preference shall ever be given, by law, to any religious sect or mode of worship, but the free enjoyment of all religious sentiments, and the different modes of worship shall ever be held sacred; *provided*, the rights hereby secured shall not be construed to justify acts of licentiousness, injurious to morals, or dangerous to the peace and safety of the state.

SEC. 24. The right of all citizens to travel upon all public conveyances, shall not be in-fringed upon, nor in any manner abridged in this state.

SEC. 25. The military shall be in strict subordination to the civil power.

SEC. 26. Treason against the state shall consist only in levying war against the same, or in adhering to its enemies, giving them aid and comfort. No person shall be convicted of treason, unless on the testimony of two witnesses to the same overt act, or on confession in open court.

SEC. 27. No person's life shall be periled by the practice of dueling; and any person who shall hereafter fight a duel, or assist in the same as second, or send, accept, or know-ingly carry a challenge therefor, or go out of the state to fight a duel, shall be disqualified from holding any office under this constitution, and shall forever be disfranchised in this state.

SEC. 28. All courts shall be open, and every person, for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay.

SEC. 29. No person shall ever be elected, or appointed to any office in this state, for life, or during good behavior, but the term of all offices shall be for some specified period.

SEC. 30. No person shall be debarred from prosecuting or defending any civil cause, for or against him or herself, before any tribunal in this state, by him or herself, or counsel, or both.

SEC. 31. No person shall, for any indictable offence, be proceeded against criminally, by information, except in cases arising in the land or naval forces, or the militia, when in ac-tual service, or by leave of the court, for misdemeanor in office; *provided*, that the legisla-ture, in cases of petit larceny, assaults, assault and battery, affray, riot, unlawful assembly, drunkenness, vagrancy, and other misdemeanors of like character, may dispense with an inquest of a grand jury, and may authorize prosecutions before justices of the peace, or such other inferior court or courts, as may be established by the legislature; and the proceedings in such cases shall be regulated by law.

SEC. 32. The enumeration of rights in this constitution shall not be construed to deny or impair others retained by, and inherent in the people.

## ARTICLE II.

### BOUNDARIES OF THE STATE.

The limits and boundaries of the state of Mississippi shall remain as now established by law.

**42**



Content downloaded/printed from                    *HeinOnline*

Thu Jan  2 17:39:32 2020

Citations:

Bluebook 20th ed.
Original text of the Constitution of 1875. [1] (1875)   Table of Contents

ALWD 6th ed.

Chicago 7th ed.
, "," Constitution of the State of Missouri, Adopted by a vote of the People, October
30, 1875. Went into Operation November 30, 1875. : [1]-[3]

OSCOLA 4th ed.
, " [1]

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
    Conditions of the license agreement available at
    *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



# CONSTITUTION

## OF THE

# STATE OF MISSOURI,

ADOPTED BY A VOTE OF THE PEOPLE, OCTOBER 30, 1875. WENT INTO
OPERATION NOVEMBER 30, 1875.

--------

# CONTENTS.

### PREAMBLE.
Constitution established.

### ARTICLE I—BOUNDARIES.
SECTION
1.  Boundaries of the state—jurisdiction.

### ARTICLE II—BILL OF RIGHTS.
SECTION
1.  Origin of political power.
2.  Right to regulate internal affairs, and to abolish existing form of government.
3.  Missouri a free and independent state—right of local self government.
4.  The object of constitutional government.
5.  Religious liberty and freedom of conscience guaranteed.
6.  Religious worship.
7.  No aid or preference given to churches.
8.  Religious corporations established under a general law, may hold certain real estate.
9.  Elections to be free and open.
10.  Courts shall be open to every person.
11.  Security from searches and seizures.
12.  Criminal prosecutions to be by indictment or information.
13.  Treason defined—corruption of blood.
14.  Freedom of speech allowed—truth of publication may be given in evidence.
15.  *Ex post facto* laws, and laws making irrevocable grants of special privileges, forbidden.
16.  No imprisonment for debt, except, when.
17.  Right to keep and bear arms.
18.  Officers must devote their time to the duties of their offices.
19.  Collectors and receivers, not eligible to office, when.
20.  Private property taken for private use—for public use.
21.  Private property taken for public use—compensation.
22.  Criminal prosecutions, right of accused.
23.  No self crimination, nor twice in jeopardy.
24.  Bail allowed, when.
25.  Excessive bail and fines, and cruel punishments, forbidden.
26.  Writ of *habeas corpus* shall not be suspended.
27.  Military subject to civil power.

SECTION
28.  Trial by jury—grand jury to consist of twelve men.
29.  Right of petition and remonstrance guaranteed.
30.  Due process of law.
31.  Slavery and involuntary servitude forbidden.
32.  Reservation of rights.

### ARTICLE III—THE DISTRIBUTION OF POWERS.
SECTION
1.  Powers divided into three departments.

### ARTICLE IV—LEGISLATIVE DEPARTMENT.
SECTION
1.  Vested in general assembly.

#### REPRESENTATION AND APPORTIONMENT.

2.  Time of electing representatives—ratio of apportionment.
3.  Division of counties into representative districts.
4.  Qualifications of representatives.
5.  Thirty-four senators—senatorial districts.
6.  Qualifications of senators—division of counties into senatorial districts.
7.  Rule of apportionment for senators and representatives—to be revised and adjusted on the basis of the United States census.
8.  Number of representatives, how distributed.
9.  Districts may be altered.
10.  First election of senators and representatives.
11.  The present senatorial districts.
12.  Senators and representatives cannot hold another office—certain officers not eligible.
13.  Removal of residence vacates office.
14.  Writs of election to fill vacancies.
15.  Oath of office, refusal to take, penalty for violation of.
16.  Pay of members and expenses of committees.
17.  Organization—punishment of disorderly members and other persons.
18.  Quorum—compelling attendance of absent members.
19.  Doors to be open.
20.  Time of meeting.
21.  Adjournment for more than three days.
22.  Adjournment for three days or less.

ADD0147

# PREAMBLE.

We, the people of Missouri, with profound reverence for the Supreme Ruler of the Universe, and grateful for his goodness, do, for the better government of the State, establish this Constitution.

# ARTICLE I.

## BOUNDARIES.

SECTION 1. The boundaries of the State as heretofore established by law, are hereby ratified and confirmed. The State shall have concurrent jurisdiction on the river Mississippi, and every other river bordering on the State, so far as the said rivers shall form a common boundary to this State and any other State or States; and the river Mississippi and the navigable rivers and waters leading to the same, shall be common highways, and forever free to the citizens of this State and of the United States, without any tax, duty, impost or toll therefor, imposed by this State.

# ARTICLE II.

## BILL OF RIGHTS.

In order to assert our rights, acknowledge our duties, and proclaim the principles on which our government is founded, we declare:

SECTION 1. That all political power is vested in, and derived from the people; that all government of right originates from the people, is founded upon their will only, and is instituted solely for the good of the whole.

SEC. 2. That the people of this State have the inherent, sole and exclusive right to regulate the internal government and police thereof, and to alter and abolish their Constitution and form of government whenever they may deem it necessary to their safety and happiness: *Provided*, Such change be not repugnant to the Constitution of the United States.

SEC. 3. That Missouri is a free and independent State, subject only to the Constitution of the United States; and as the preservation of the States and the maintenance of their governments, are necessary to an indestructible Union, and were intended to co-exist with it, the Legislature is not authorized to adopt, nor will the people of this State ever assent to any amendment or change of the Constitution of the United States which may in any wise impair the right of local self-government belonging to the people of this State.

SEC. 4. That all constitutional government is intended to promote the general welfare of the people; that all persons have a natural right to life, liberty and the enjoyment of the gains of their own industry; that to give security to these things is the principal office of government, and that when government does not confer this security, it fails of its chief design.

SEC. 5. That all men have a natural and indefeasible right to worship Almighty God according to the dictates of their own conscience; that no person can, on account of his religious opinions, be rendered ineligible to any office of trust or profit under this State, nor be disqualified from testifying, or from serving as a juror; that no human authority can control or interfere with the rights of conscience; that no person ought, by any law, to be molested in his person or estate, on account of his religious persuasion or profession; but the liberty of conscience hereby secured, shall not be so construed as to excuse acts of licentiousness, nor to justify practices inconsistent with the good order, peace or safety of this State, or with the rights of others.

SEC. 6. That no person can be compelled to erect, support or attend any place or system of worship, or to maintain or support any priest, minister, preacher or teacher of any sect, church, creed or denomination of re-

ligion; but if any person shall voluntarily make a contract for any such object, he shall be held to the performance of the same.

SEC. 7. That no money shall ever be taken from the public treasury, directly or indirectly, in aid of any church, sect or denomination of religion, or in aid of any priest, preacher, minister or teacher thereof, as such; and that no preference shall be given to, nor any discrimination made against any church, sect or creed of religion, or any form of religious faith or worship.

SEC. 8. That no religious corporation can be established in this State, except such as may be created under a general law for the purpose only of holding the title to such real estate as may be prescribed by law for church edifices, parsonages and cemeteries.

SEC. 9. That all elections shall be free and open; and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage.

SEC. 10. The courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character, and that right and justice should be administered without sale, denial or delay.

SEC. 11. That the people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures; and no warrant to search any place, or seize any person or thing, shall issue without describing the place to be searched, or the person or thing to be seized, as nearly as may be; nor without probable cause, supported by oath or affirmation reduced to writing.

SEC. 12. That no person shall, for felony, be proceeded against criminally otherwise than by indictment, except in cases arising in the land or naval forces, or in the militia when in actual service in time of war or public danger; in all other cases, offenses shall be prosecuted criminally by indictment or information as concurrent remedies.

SEC. 13. That treason against the State can consist only in levying war against it, or in adhering to its enemies, giving them aid and comfort; that no person can be convicted of treason, unless on the testimony of two witnesses to the same overt act, or on his confession in open court; that no person can be attainted of treason or felony by the General Assembly; that no conviction can work corruption of blood or forfeiture of estate; that the estates of such persons as may destroy their own lives shall descend or vest as in cases of natural death; and when any person shall be killed by casualty, there shall be no forfeiture by reason thereof.

SEC. 14. That no law shall be passed impairing the freedom of speech; that every person shall be free to say, write or publish whatever he will on any subject, being responsible for all abuse of that liberty; and that in all suits and prosecutions for libel the truth thereof may be given in evidence, and the jury, under the direction of the court, shall determine the law and the fact.

SEC. 15. That no *ex post facto* law, nor law impairing the obligation of contracts, or retrospective in its operation, or making any irrevocable grant of special privileges or immunities, can be passed by the General Assembly.

SEC. 16. That imprisonment for debt shall not be allowed, except for the nonpayment of fines and penalties imposed for violation of law.

SEC. 17. That the right of no citizen to keep and bear arms in defense of his home, person and property, or in aid of the civil power, when thereto legally summoned, shall be called in question; but nothing herein contained is intended to justify the practice of wearing concealed weapons.

SEC. 18. That no person elected or appointed to any office or employment of trust or profit under the laws of this State, or any ordinance of any municipality in this State, shall hold such office without personally devoting his time to the performance of the duties to the same belonging.

SEC. 19. That no person who is now, or may hereafter become a collector or receiver of public money, or assistant or deputy of such collector or receiver, shall be eligible to any office of trust or profit in the State of



Content downloaded/printed from                    *HeinOnline*

Tue Dec 31 14:55:28 2019

Citations:

Bluebook 20th ed.
1876-1877 3 .

ALWD 6th ed.
1876-1877 3 .

Chicago 7th ed.
, "," North Carolina - Public and Private Laws : 3-50

OSCOLA 4th ed.
, " 1876-1877 3

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
      Conditions of the license agreement available at
      *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



# CONSTITUTION

OF THE

## STATE OF NORTH CAROLINA,

AS AMENDED BY THE

### CONSTITUTIONAL CONVENTION OF 1875.

———

## PREAMBLE.

We, the people of the State of North Carolina, grateful *Preamble.* to Almighty God, the Sovereign Ruler of nations, for the preservation of the American Union, and the existence of our civil, political and religious liberties, and acknowledging our dependence upon Him for the continuance of those blessings to us and our posterity, do, for the more certain security thereof, and for the better government of this State, ordain and establish this Constitution:

## ARTICLE I.

### DECLARATION OF RIGHTS.

That the great, general and essential principles of liberty and free government may be recognized and established, and that the relations of this State to the Union and government of the United States, and those of the people of this State to the rest of the American people, may be defined and affirmed, we do declare:

SECTION 1. That we hold it to be self-evident that all men *The equality and* are created equal; that they are endowed by their Creator *rights of men.*

4                                    AMENDED CONSTITUTION

with certain unalienable rights; that among these are life, liberty, the enjoyment of the fruits of their own labor, and the pursuit of happiness.

**Political power and government.**

SEC. 2. That all political power is vested in, and derived from, the people; all government of right originates from the people, is founded upon their will only, and is instituted solely for the good of the whole.

**Internal government of the State.**

SEC. 3. That the people of this State have the inherent, sole and exclusive right of regulating the internal government and police thereof, and of altering and abolishing their Constitution and form of government whenever it may be necessary to their safety and happiness; but every such right should be exercised in pursuance of law, and consistently with the Constitution of the United States.

**That there is no right to secede.**

SEC. 4. That this State shall ever remain a member of the American Union; that the people thereof are part of the American nation; that there is no right on the part of the State to secede, and that all attempts, from whatever source or upon whatever pretext, to dissolve said Union, or to sever said nation, ought to be resisted with the whole power of the State.

**Of allegiance to the U. S. government.**

SEC. 5. That every citizen of this State owes paramount allegiance to the Constitution and Government of the United States, and that no law or ordinance of the State in contravention or subversion thereof, can have any binding force.

**Public debt.**

SEC. 6. The State shall never assume or pay, or authorize the collection of any debt or obligation, express or implied, incurred in aid of insurrection or rebellion against the United States, or any claim for the loss or emancipation of any slave.

**Exclusive emoluments, &c.**

SEC. 7. No man or set of men are entitled to exclusive or separate emoluments or privileges from the community but in consideration of public services.

**The Legislative, Executive and**

SEC. 8. The legislative, executive and supreme judicial

OF NORTH CAROLINA.                                              5

powers of the government ought to be forever separate and *Judicial powers distinct.*
distinct from each other.

SEC. 9. All power of suspending laws, or the execution *Of the power of suspending laws.*
of laws, by any authority, without the consent of the rep-
resentatives of the people, is injurious to their rights, and
ought not to be exercised.

SEC. 10. All elections ought to be free.    *Elections free.*

SEC. 11. In all criminal prosecutions, every man has the *In criminal prose-cutions.*
right to be informed of the accusation against him and to
confront the accusers and witnesses with other testimony,
and to have counsel for his defence, and not be compelled
to give evidence against himself or to pay costs, jail fees, or
necessary witness fees of the defense, unless found guilty.

SEC. 12. No person shall be put to answer any criminal *Answers to crimi-nal charges.*
charge, except as hereinafter allowed, but by indictment,
presentment or impeachment.

SEC. 13. No person shall be convicted of any crime but *Right of jury.*
by the unanimous verdict of a jury of good and lawful
men in open court.   The Legislature may, however, provide
other means of trial for petty misdemeanors, with the right
of appeal.

SEC. 14. Excessive bail should not be required, nor ex- *Excessive bail.*
cessive fines imposed, nor cruel or unusual punishments in-
flicted.

SEC. 15. General warrants, whereby any officer or mes- *General warrants.*
senger may be commanded to search suspected places, with-
out evidence of the act committed, or to seize any person
or persons not named, whose offence is not particularly de-
scribed and supported by evidence, are dangerous to liberty
and ought not to be granted.

SEC. 16. There shall be no imprisonment for debt in this *Imprisonment for debt.*
State, except in cases of fraud.

SEC. 17. No person ought to be taken, imprisoned or dis- *No person to be taken, &c., but by law of the land.*
seized of his freehold, liberties or privileges, or outlawed or
exiled, or in any manner deprived of his life, liberty, or
property, but by the law of the land.

**Persons restrained of liberty.**

SEC. 18. Every person restrained of his liberty is entitled to a remedy to enquire into the lawfulness thereof, and to remove the same, if unlawful; and such remedy ought not to be denied or delayed.

**Controversies at law respecting property.**

SEC. 19. In all controversies at law respecting property, the ancient mode of trial by jury is one of the best securities of the rights of the people, and ought to remain sacred and inviolable.

**Freedom of the press.**

SEC. 20. The freedom of the press is one of the great bulwarks of liberty, and therefore ought never to be restrained, but every individual shall be held responsible for the abuse of the same.

**Habeas corpus.**

SEC. 21. The privileges of the writ of *habeas corpus* shall not be suspended.

**Property qualification.**

SEC. 22. As political rights and privileges are not dependent upon, or modified by property, therefore no property qualification ought to affect the right to vote or hold office.

**Representation and taxation.**

SEC. 23. The people of the State ought not to be taxed, or made subject to the payment of any impost or duty, without the consent of themselves, or their representatives in General Assembly, freely given.

**Militia and the right to bear arms.**

SEC. 24. A well regulated militia being necessary to the security of a free State, the right of the people to keep and bear arms shall not be infringed; and, as standing armies in time of peace, are dangerous to liberty, they ought not to be kept up, and the military should be kept under strict subordination to, and governed by, the civil power. Nothing herein contained shall justify the practice of carrying concealed weapons, or prevent the Legislature from enacting penal statutes against said practice.

**Right of the people to assemble together.**

SEC. 25. The people have a right to assemble together to consult for their common good, to instruct their representatives, and to apply to the Legislature for redress of grievances. But secret political societies are dangerous to the liberties of a free people, and should not be tolerated.

**Religious liberty.**

SEC. 26. All men have a natural and unalienable right to



Content downloaded/printed from                                        *HeinOnline*

Fri Dec 13 16:57:45 2019

Citations:

Bluebook 20th ed.
Original text of the Constitution of 1834/1835. [1] (2015)   Constitution of the
State of Tennessee

ALWD 6th ed.

Chicago 7th ed.
, "," Constitution of the State of Tennessee : [1]-[18]

OSCOLA 4th ed.
, " [1]

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
     Conditions of the license agreement available at
     *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



# CONSTITUTION

## OF THE STATE OF TENNESSEE.

Whereas, the People of the territory of the United States, south of the river Ohio, having the right of admission into the General Government as a Member State thereof, consistent with the Constitution of the United States, and the act of cession of the State of North Carolina, recognizing the ordinance for the government of the territory of the United States north-west of the river Ohio, by their delegates and representatives in Convention assembled, did, on the sixth day of February, in the year of our Lord one thousand seven hundred and ninety-six, ordain and establish a Constitution or form of government, and mutually agreed with each other to form themselves into a free and independent State, by the name of "The State of Tennessee;" and whereas, the General Assembly of said State of Tennessee, (pursuant to the third section of the tenth article of the Constitution) by an act passed on the twenty-seventh day of November, in the year of our Lord one thousand eight hundred and thirty-three, entitled "An act to provide for the calling of a Convention," did authorize and provide for the election, by the people, of Delegates, and Representatives, to meet at Nashville, in Davidson county, on the third Monday in May, in the year of our Lord one thousand eight hundred and thirty-four, "for the purpose of revising and amending (or changing) the Constitution:"

We, therefore, the Delegates and Representatives of the People of the State of Tennessee, elected and in Convention assembled, in pursuance of the said Act of Assembly, have ordained and established the following amended Constitution and form of Government for this State, which we recommend to the people of Tennessee for their ratification; that is to say:

## ARTICLE I.

### DECLARATION OF RIGHTS.

SECTION 1. That all power is inherent in the people, and all free governments are founded on their authority and instituted for their peace, safety and happiness; for the advancement of those ends, they have, at all times, an unalienable and indefeasible right to alter, reform or abolish the government in such manner as they may think proper.

1

Digitized from Best Copy Available

2

Sec. 2.   That government being instituted for the common benefit, the doctrine of non-resistance against arbitrary power and oppression, is absurd, slavish, and destructive of the good and happiness of mankind.

Sec. 3.   That all men have a natural and indefeasible right to worship Almighty God according to the dictates of their own conscience; that no man can of right be compelled to attend, erect or support any place of worship, or to maintain any Minister against his consent; that no human authority can, in any case whatever, control or interfere with the rights of conscience; and that no preference shall ever be given, by law, to any religious establishment or mode of worship.

Sec. 4.   That no religious test shall ever be required as a qualification to any office or public trust under this State.

Sec. 5.   That Elections shall be free and equal.

Sec. 6.   That the right of trial by jury shall remain inviolate.

Sec. 7.   That the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offences are not particularly described and supported by evidence, are dangerous to liberty and ought not to be granted.

Sec 8.   That no free man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers, or the law of the land.

Sec. 9.   That in all criminal prosecutions, the accused hath a right to be heard by himself and his counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face; to have compulsory process for obtaining witnesses in his favor; and in prosecutions by indictment or presentment, a speedy public trial, by an impartial jury of the county or district in which the crime shall have been committed; and shall not be compelled to give evidence against himself.

Sec. 10.   That no person shall, for the same offence, be twice put in jeopardy of life or limb.

Sec. 11.   That laws made for the punishment of facts committed previous to the existence of such laws, and by them only declared criminal, are contrary to the principles of a free government; wherefore no *ex post facto* law shall be made.

Sec. 12.   That no conviction shall work corruption of blood or forfeiture of estate.   The estate of such persons as shall destroy their own lives, shall descend or vest as in case of natural death.   If any person be killed by casualty, there shall be no forfeiture in consequence thereof.

Sec. 13.   That no person arrested or confined in jail, shall be treated with unnecessary rigor.

Sec. 14.   That no free man shall be put to answer any criminal charge but by presentment, indictment or impeachment.

Sec. 15.   That all prisoners shall be bailable by sufficient sureties unless for capital offences when the proof is evident or the presumption

Digitized from Best Copy Available

3

great. And the privilege of the writ of *habeas corpus* shall not be suspended, unless when in case of rebellion or invasion the public safety may require it.

SEC. 16.    That excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

SEC. 17.    That all courts shall be open; and every man, for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the State in such manner and in such courts, as the Legislature may by law direct.

SEC. 18.    That the person of a debtor, where there is not strong presumption of fraud, shall not be continued in prison after delivering up his estate for the benefit of his creditor or creditors, in such manner as shall be prescribed by law.

SEC. 19.    That the printing presses shall be free to every person who undertakes to examine the proceedings of the Legislature, or of any branch or Officer of Government; and no law shall ever be made to restrain the right thereof. The free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty. But in prosecutions for the publication of papers investigating the official conduct of officers or men in public capacity, the truth thereof may be given in evidence; and in all indictments for libels, the jury shall have a right to determine the law and the facts, under the direction of the Court, as in other criminal cases.

SEC. 20.    That no retrospective law, or law impairing the obligation of contracts, shall be made.

SEC. 21.    That no man's particular services shall be demanded, or property taken or applied to public use, without the consent of his representatives, or without just compensation being made therefor.

SEC. 22.    That perpetuities and monopolies are contrary to the genius of a free State, and shall not be allowed.

SEC. 23.    That the citizens have a right, in a peaceable manner, to assemble together, for their common good, to instruct their representatives, and to apply to those invested with the powers of government for redress of grievances or other proper purposes, by address or remonstrance.

SEC. 24.    That the sure and certain defence of a free people, is a well regulated militia: and, as standing armies in time of peace are dangerous to freedom, they ought to be avoided, as far as the circumstances and safety of the community will admit; and that in all cases the military shall be kept in strict subordination to the civil authority.

SEC. 25.    That no citizen of this State, except such as are employed in the army of the United States, or militia in actual service, shall be subjected to corporeal punishment under the martial law.

SEC. 26.    That the free white men of this State have a right to keep and to bear arms for their common defence.

SEC. 27.    That no soldier shall, in time of peace, be quartered in any house without the consent of the owner, nor in time of war, but in a manner prescribed by law.

Digitized from Best Copy Available

ADD0158

4

Sec. 28. That no citizen of this State shall be compelled to bear arms, provided he will pay an equivalent, to be ascertained by law.

Sec. 29. That an equal participation of the free navigation of the Mississippi, is one of the inherent rights of the citizens of this State: it cannot, therefore, be conceded to any prince, potentate, power, person or persons whatever.

Sec. 30. That no hereditary emoluments, privileges, or honors, shall ever be granted or conferred in this State.

Sec. 31. That the limits and boundaries of this State be ascertained, it is declared they are as hereafter mentioned, that is to say: Beginning on the extreme height of the Stone mountain, at the place where the line of Virginia intersects it, in latitude thirty-six degrees and thirty minutes north; running thence along the extreme height of the said mountain to the place where Watauga river breaks through it; thence a direct course to the top of the Yellow mountain, where Bright's road crosses the same; thence along the ridge of said mountain between the waters of Doe river and the waters of Rock creek, to the place where the road crosses the Iron mountain; from thence along the extreme height of said mountain, to the place where Nolichucky river runs through the same; thence to the top of the Bald mountain; thence along the extreme height of said mountain to the Painted Rock, on French Broad river; thence along the highest ridge of said mountain to the place where it is called the Great Iron or Smoky mountain; thence along the extreme height of said mountain to the place where it is called Unicoi or Unaka mountain, between the Indian towns of Cowee and Old Chota; thence along the main ridge of the said mountain to the southern boundary of this State, as described in the act of cession of North Carolina to the United States of America; and that all the territory, lands and waters, lying west of the said line, as before mentioned, and contained within the chartered limits of the State of North Carolina, are within the boundaries and limits of this State; over which the people have the right of exercising sovereignty and the right of soil, so far as is consistent with the constitution of the United States, recognizing the articles of confederation, the bill of rights, and constitution of North Carolina, the cession act of the said State, and the ordinance of Congress for the government of the territory northwest of the Ohio: *Provided,* nothing herein contained shall extend to affect the claim or claims of individuals, to any part of the soil which is recognized to them by the aforesaid cession act: *And provided, also,* that the limits and jurisdiction of this State shall extend to any other land and territory now acquired, or that may hereafter be acquired by compact or agreement with other States or otherwise, although such land and territory are not included within the boundaries herein before designated.

Sec. 32. The people residing south of French Broad and Holston, between the rivers Tennessee and Big Pigeon, are entitled to the right of pre-emption and occupancy in that tract.

## ARTICLE II.

Sec. 1. The powers of the Government shall be divided into three distinct departments; the Legislative, Executive and Judicial.

ADD0159
Digitized from Best Copy Available



Content downloaded/printed from                    *[HeinOnline](HeinOnline)*

Fri Dec 13 17:09:11 2019

Citations:

Bluebook 20th ed.
Original text of the Constitution of 1875/1876. [3] (1876)   Bill of Rights

ALWD 6th ed.

Chicago 7th ed.
, "Bill of Rights," Constitution. : [3]-[6]

McGill Guide 9th ed.
, "Bill of Rights" [3].

MLA 8th ed.
"Bill of Rights." Constitution., , , p. [3]-[6]. HeinOnline.

OSCOLA 4th ed.
, 'Bill of Rights' [3]

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
    Conditions of the license agreement available at
    *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



# CONSTITUTION.

## PREAMBLE.

Humbly invoking the blessing of Almighty God, the people of the State of Texas do ordain and establish this Constitution.

## ARTICLE I.

### Bill of Rights.

That the general, great and essential principles of liberty and free government may be recognized and established, we declare:

Section 1.  Texas is a free and independent State, subject only to the Constitution of the United States; and the maintenance of our free institutions and the perpetuity of the Union depend upon the preservation of the right of local self-government unimpaired to all the States.

Sec. 2.  All political power is inherent in the people, and all free governments are founded on their authority, and instituted for their benefit.  The faith of the people of Texas stands pledged to the preservation of a republican form of government, and, subject to this limitation only, they have at all times the inalienable right to alter, reform or abolish their government in such manner as they may think expedient.

Sec. 3.  All free men when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services.

Sec. 4.  No religious test shall ever be required as a qualification to any office, or public trust, in this State; nor shall any one be excluded from holding office on account of his religious sentiments, provided he acknowledge the existence of a Supreme Being.

Sec. 5.  No person shall be disqualified to give evidence in any of the courts of this State on account of his religious opinions, or for the want of any religious belief, but all oaths or affirmations shall be administered in the mode most bind-

(781)

4 *Constitution.*

ing upon the conscience, and shall be taken subject to the pains and penalties of perjury.

Sec. 6.   All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences.   No man shall be compelled to attend, erect or support any place of worship, or to maintain any ministry against his consent.   No human authority ought, in any case whatever, to control or interfere with the rights of conscience in matters of religion, and no preference shall ever be given by law to any religious society or mode of worship.   But it shall be the duty of the Legislature to pass such laws as may be necessary to protect equally every religious denomination in the peaceable enjoyment of its own mode of public worship.

Sec. 7.   No money shall be appropriated or drawn from the treasury for the benefit of any sect, or religious society, theological or religious seminary; nor shall property belonging to the State be appropriated for any such purposes.

Sec. 8.   Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of speech or of the press.   In prosecutions for the publication of papers investigating the conduct of officers or men in public capacity, or when the matter published is proper for public information, the truth thereof may be given in evidence.   And in all indictments for libels the jury shall have the right to determine the law and the facts, under the direction of the court, as in other cases.

Sec. 9.   The people shall be secure in their persons, houses, papers and possessions from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause supported by oath or affirmation.

Sec. 10.   In all criminal prosecutions, the accused shall have a speedy public trial by an impartial jury.   He shall have the right to demand the nature and cause of the accusation against him, and have a copy thereof.   He shall not be compelled to give evidence against himself.   He shall have the right of being heard by himself or counsel or both; shall be confronted with the witnesses against him, and shall have compulsory process for obtaining witnesses in his favor. And no person shall be held to answer for a criminal offense, unless on indictment of a grand jury, except in cases in which the punishment is by fine, or imprisonment otherwise than in the penitentiary, in cases of impeachment, and in cases

ADD0162

arising in the army or navy, or in the militia, when in actual service in time of war or public danger.

Sec. 11. All prisoners shall be bailable by sufficient sureties, unless for capital offenses when the proof is evident; but this provision shall not be so construed as to prevent bail after indictment found, upon examination of the evidence in such manner as may be prescribed by law.

Sec. 12. The writ of habeas corpus is a writ of right, and shall never be suspended. The Legislature shall enact laws to render the remedy speedy and effectual.

Sec. 13. Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted. All courts shall be open, and every person for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law.

Sec. 14. No person, for the same offense, shall be twice put in jeopardy of life or liberty; nor shall a person be again put upon trial for the same offense after a verdict of not guilty in a court of competent jurisdiction.

Sec. 15. The right of trial by jury shall remain inviolate. The Legislature shall pass such laws as may be needed to regulate the same, and to maintain its purity and efficiency.

Sec. 16. No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made.

Sec. 17. No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person; and, when taken, except for the use of the state, such compensation shall be first made, or secured by a deposit of money; and no irrevocable or uncontrollable grant of special privileges or immunities shall be made; but all privileges and franchises granted by the Legislature or created under its authority shall be subject to the control thereof.

Sec. 18. No person shall ever be imprisoned for debt.

Sec. 19. No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land.

Sec. 20. No person shall be outlawed; nor shall any person be transported out of the State for any offense committed within the same.

Sec. 21. No conviction shall work corruption of blood, or forfeiture of estate; and the estates of those who destroy their own lives shall descend or vest as in case of natural death.

Sec. 22. Treason against the State shall consist only in

ADD0163

6 *Constitution.*

levying war against it, or adhering to its enemies, giving them aid and comfort; and no person shall be convicted of treason except on the testimony of two witnesses to the same overt act, or on confession in open court.

Sec. 23. Every citizen shall have the right to keep and bear arms in the lawful defense of himself or the State; but the Legislature shall have power by law to regulate the wearing of arms with a view to prevent crime.

Sec. 24. The military shall at all times be subordinate to the civil authority.

Sec. 25. No soldier shall in time of peace be quartered in the house of any citizen without the consent of the owner, nor in time of war but in a manner prescribed by law.

Sec. 26. Perpetuities and monopolies are contrary to the genius of a free government, and shall never be allowed; nor shall the law of primogeniture or entailments ever be in force in this State.

Sec. 27. The citizens shall have the right, in a peaceable manner, to assemble together for their common good, and apply to those invested with the power of government for redress of grievances or other purposes, by petition, address or remonstrance.

Sec. 28. No power of suspending laws in this State shall be exercised except by the Legislature.

Sec. 29. To guard against transgressions of the high powers herein delegated, we declare that everything in this "Bill of Rights" is excepted out of the general powers of government, and shall forever remain inviolate, and all laws contrary thereto, or to the following provisions, shall be void.

## ARTICLE II.

### The Powers of Government.

Section 1. The powers of the government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to-wit: Those which are legislative to one, those which are executive to another, and those which are judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

ADD0164



Content downloaded/printed from                    *HeinOnline*

Fri Dec 13 17:48:53 2019

Citations:

Bluebook 20th ed.
Original text of the Constitution of 1889/1890. [1] (1890)   Declaration of Rights

ALWD 6th ed.

Chicago 7th ed.
, "Declaration of Rights," Constitution of the State of Wyoming : [1]-[4]

McGill Guide 9th ed.
, "Declaration of Rights" [1].

MLA 8th ed.
"Declaration of Rights." Constitution of the State of Wyoming, , , p. [1]-[4].
HeinOnline.

OSCOLA 4th ed.
, 'Declaration of Rights' [1]

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
    Conditions of the license agreement available at
    *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



ADD0165

# CONSTITUTION

——OF——

# THE STATE OF WYOMING.

---

## PREAMBLE.

We, the people of the State of Wyoming, grateful to God for our civil, political and religious liberties, and desiring to secure them to ourselves and perpetuate them to our posterity, do ordain and establish this Constitution.

---

## ARTICLE No. I.

### DECLARATION OF RIGHTS.

· SECTION 1.   All power is inherent in the people, and all free governments are founded on their authority, and instituted for their peace, safety and happiness; for the advancement of these ends they have at all times an inalienable and indefeasible right to alter, reform or abolish the government in such manner as they may think proper. *Power inherent in the people.*

SEC. 2.   In their inherent right to life, liberty and the pursuit of happiness, all members of the human race are equal. *The equality of all.*

SEC. 3.   Since equality in the enjoyment of natural and civil rights is made sure only through political equality, the laws of this State affecting the political rights and privileges of its citizens shall be without distinction of race, color, sex, or any circumstance or condition whatsoever other than individual incompetency, or unworthiness duly ascertained by a court of competent jurisdiction. *Political rights without distinction of race, color or sex.*

36                                    CONSTITUTION.

**Security against searches.** SEC. 4. The right of the people to be secure in their persons, houses papers and effects against unreasonable searches and seizures shall not be violated, and no warrant shall issue but upon probable cause, supported by affidavit, particularly describing the place to be searched or the person or thing to be seized.

**Imprisonment for debt.** SEC. 5. No person shall be imprisoned for debt except in cases of fraud.

**Definition of life, liberty,&c** SEC. 6. No person shall be deprived of life, liberty or property without due process of law.

**Arbitrary power exists nowhere in republics.** SEC. 7. Absolute, arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority.

**Courts open to every person.** SEC. 8. All courts shall be open and every person for an injury done to person, reputation or property shall have justice administered without sale, denial or delay. Suits may be brought against the State in such manner and in such courts as the legislature may by law direct.

**Trial by jury shall remain inviolate in criminal cases** SEC. 9. The right of trial by jury shall remain inviolate in criminal cases, but a jury in civil cases in all courts, or in criminal cases in courts not of record, may consist of less than twelve men, as may be prescribed by law. Hereafter a grand jury may consist of twelve men, any nine of whom concurring may find an indictment, but the legislature may change, regulate or abolish the grand jury system.

**Accused in criminal cases, right to defend.** SEC. 10. In all criminal prosecutions the accused shall have the right to defend in person and by counsel, to demand the nature and cause of the accusation, to have a copy thereof, to be confronted with the witnesses against him, to have compulsory process served for obtaining witnesses, and to a speedy trial by an impartial jury of the county or district in which the offense is alleged to have been committed.

**In criminal cases no person compelled to testify against himself—jeopardy** SEC. 11. No person shall be compelled to testify against himself in any criminal case, nor shall any person be twice put in jeopardy for the same offense. If the jury disagree, or if the judgment be arrested after a verdict, or if the judgment be reversed for error in law, the accused shall not be deemed to have been in jeopardy.

**Detaining witness in criminal case.** SEC. 12. No person shall be detained as a witness in any criminal prosecution longer than may be necessary to take his testimony or deposition, nor be confined in any room where criminals are imprisoned.

**Criminal proceedings.** SEC. 13. Until otherwise provided by law, no person shall, for a felony, be proceeded against criminally, otherwise than by indictment, except in cases arising in the land or naval forces, or in the militia when in actual service in time of war or public danger.

**Bail.** SEC. 14. All persons shall be bailable by sufficient sureties, except for capital offenses when the proof is evident or the presumption great. Excessive bail shall not be required, nor excessive fines imposed, nor shall cruel or unusual punishment be inflicted.

**Penal code.** SEC. 15. The penal code shall be framed on the humane principles of reformation and prevention.

ADD0167

CONSTITUTION. 37

SEC. 16. No person arrested and confined in jail shall be treated with unnecessary rigor. The erection of safe and comfortable prisons, and inspection of prisons, and the humane treatment of prisoners shall be provided for. — *Jails—treatment of prisoners.*

SEC. 17. The privilege of the writ of habeas corpus shall not be suspended unless, when in case of rebellion or invasion, the public safety may require it. — *Habeas corpus.*

SEC. 18. The free exercise and enjoyment of religious profession and worship without discrimination or preference shall be forever guaranteed in this State, and no person shall be rendered incompetent to hold any office of trust or profit, or to serve as a witness or juror, because of his opinion on any matter of religious belief whatever; but the liberty of conscience hereby secured shall not be so construed as to excuse acts of licentiousness or justify practices inconsistent with the peace or safety of the State. — *Religious liberty.*

SEC. 19. No money of the State shall ever be given or appropriated to any sectarian or religious society or institution. — *No money given to religious society.*

SEC. 20. Every person may freely speak, write and publish on all subjects, being responsible for the abuse of that right; and in all trials for libel, both civil and criminal, the truth, when published with good intent and for justifiable ends, shall be a sufficient defense, the jury having the right to determine the facts and the law, under direction of the court. — *Freedom of speech.*

SEC. 21. The right of petition, and of the people peaceably to assemble to consult for the common good, and to make known their opinions, shall never be denied or abridged. — *Right of petition.*

SEC. 22. The rights of labor shall have just protection through laws calculated to secure to the laborer proper rewards for his service and to promote the industrial welfare of the State. — *Rights of labor to be protected.*

SEC. 23. The right of citizens to opportunities for education should have practical recognition. The Legislature shall suitably encourage means and agencies calculated to advance the sciences and liberal arts. — *Education.*

SEC. 24. The right of citizens to bear arms in defense of themselves and of the State shall not be denied. — *Self defense,*

SEC. 25. The military shall ever be in strict subordination to the civil power. No soldier in time of peace shall be quartered in any house without consent of the owner, nor in time of war except in the manner prescribed by law. — *Military subordinate to civil power.*

SEC. 26. Treason against the State shall consist only in levying war against it, or in adhering to its enemies, or in giving them aid and comfort. No person shall be convicted of treason unless on the testimony of two witnesses to the same overt act, or on confession in open court; nor shall any person be attainted of treason by the Legislature. — *Treason.*

SEC. 27. Elections shall be open, free and equal, and no power, civil or military, shall at any time interfere to prevent an untrammeled exercise of the right of suffrage. — *Elections to be free and equal.*

SEC. 28. No tax shall be imposed without the consent of the people or their authorized representatives. All taxation shall be equal and uniform. — *No tax without consent—uniformity.*

SEC. 29 No distinction shall ever be made by law between resident aliens and citizens as to the possession, taxation, enjoyment and descent of property. — *Aliens.*

38                           CONSTITUTION.

Perpetuities
and monopo-
lies not al-
lowed.
SEC. 30. Perpetuities and monopolies are contrary to the genius of a free state, and shall not be allowed. Corporations being creatures of the State, endowed for the public good with a portion of its sovereign powers, must be subject to its control.

Water con-
trol in state.
SEC. 31. Water being essential to industrial prosperity, of limited amount, and easy of diversion from its natural channels, its control must be in the State, which, in providing for its use, shall equally guard all the various interests involved.

When prop-
erty taken for
private use.
SEC. 32. Private property shall not be taken for private use unless by consent of the owner, except for private ways of necessity, and for reservoirs, drains, flumes, or ditches on or across the lands of others for agricultural, mining, milling, domestic or sanitary purposes, nor in any case without due compensation.

Just com-
pensation.
SEC. 33. Private property shall not be taken or damaged for public or private use without just compensation.

General laws
—operation.
SEC. 34. All laws of a general nature shall have a uniform operation.

Ex post facto
law, &c.
SEC. 35. No ex post facto law, nor any law impairing the obligation of contracts, shall ever be made.

Other rights
not enumera-
ted not im-
paired.
SEC. 36. The enumeration in this Constitution of certain rights shall not be construed to deny, impair, or disparage others retained by the people.

State, part of
Union.
SEC. 37. The State of Wyoming is an inseparable part of the Federal Union, and the Constitution of the United States is the supreme law of the land.

---

## ARTICLE No. II.

### DISTRIBUTION OF POWERS.

SECTION 1. The powers of the government of this State are divided into three distinct departments: the legislative, executive and judicial, and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this constitution expressly directed or permitted.

---

## ARTICLE No. III.

### LEGISLATIVE DEPARTMENT.

Name of leg-
islature.
SECTION 1. The legislative power shall be vested in a senate and house of representatives, which shall be designated "The Legislature of the State of Wyoming."

Senators,
their term of
office, qualifi-
cations.
SEC. 2. Senators shall be elected for the term of four (4) years and representatives for the term of two (2) years. The senators elected at the first election shall be divided by lot into two classes as nearly equal as may be. The seats of senators of the first class shall be vacated at the expiration of the first two years, and of the second class at the expiration of four years. No person shall be a senator who has not attained the age of twenty-five years, or a representative who has not attained the age of twenty-



Content downloaded/printed from                                        *[HeinOnline](HeinOnline)*

Thu Jan  2 14:16:58 2020

Citations:

Bluebook 20th ed.
Thomas M. Cooley. Treatise on the Constitutional Limitations Which Rest upon the
Legislative Power of the States of the American Union (5).

ALWD 6th ed.
Thomas M. Cooley. Treatise on the Constitutional Limitations Which Rest upon the
Legislative Power of the States of the American Union (5).

APA 6th ed.
Cooley, T. (5). Treatise on the Constitutional Limitations Which Rest upon the
Legislative Power of the States of the American Union. Boston, Little, Brown, and Co.

Chicago 7th ed.
Cooley Thomas M. Treatise on the Constitutional Limitations Which Rest upon the
Legislative Power of the States of the American Union. Boston, Little, Brown, and Co.

McGill Guide 9th ed.
Thomas M. Cooley, Treatise on the Constitutional Limitations Which Rest upon the
Legislative Power of the States of the American Union (Boston: Little, Brown, and
Co., 5)

MLA 8th ed.
Cooley, Thomas M. Treatise on the Constitutional Limitations Which Rest upon the
Legislative Power of the States of the American Union. Boston, Little, Brown, and Co.
HeinOnline.

OSCOLA 4th ed.
Cooley, Thomas M. Treatise on the Constitutional Limitations Which Rest upon the
Legislative Power of the States of the American Union. Boston, Little, Brown, and Co.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
     Conditions of the license agreement available at
     *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



ADD0170

A

# TREATISE

ON THE

# CONSTITUTIONAL LIMITATIONS

WHICH REST UPON

## THE LEGISLATIVE POWER OF THE STATES OF THE AMERICAN UNION.

BY

### THOMAS M. COOLEY, LL.D.,

ONE OF THE JUSTICES OF THE SUPREME COURT OF MICHIGAN, AND JAY PROFESSOR
OF LAW IN THE UNIVERSITY OF MICHIGAN.

FIFTH EDITION,

WITH CONSIDERABLE ADDITIONS, GIVING THE RESULTS OF
THE RECENT CASES.

BOSTON:

LITTLE, BROWN, AND COMPANY.

1883

ADD0171

Entered according to Act of Congress, in the year 1874, by
LITTLE, BROWN, AND COMPANY,
In the Office of the Librarian of Congress, at Washington.

Entered according to Act of Congress, in the year 1878, by
LITTLE, BROWN, AND COMPANY,
In the Office of the Librarian of Congress, at Washington.

Entered according to Act of Congress, in the year 1883, by
LITTLE, BROWN, AND COMPANY,
In the Office of the Librarian of Congress, at Washington.

UNIVERSITY PRESS:
JOHN WILSON AND SON, CAMBRIDGE.

# TABLE OF CONTENTS.

---

## CHAPTER I.

### DEFINITIONS.

Definition of a state, nation, people, sovereignty, and sovereign state    1
What sovereignty consists in . . . . . . . . . . . .   2
Apportionment of sovereignty in America . . . . . . . . .   2
Definition of constitution and constitutional government . . . .   2, 3
Of unconstitutional law . . . . . . . . . . . . .   4
The will of the people the final law . . . . . . . . . .   5

## CHAPTER II.

### THE CONSTITUTION OF THE UNITED STATES.

What the United States government the successor of; Colonial con-
    federacies . . . . . . . . . . . . . . .   6
The States never in a strict sense sovereign . . . . . . .   7
The Continental Congress . . . . . . . . . . . .   6, 7
Limitations upon its power; the Articles of Confederation, and the
    supersession thereof by the Constitution . . . . . . . .   8
Adoption of the Constitution by North Carolina, Rhode Island, and
    the New States . . . . . . . . . . . . . .   8, 9
United States government one of enumerated powers . . . . .   10
General purpose of this government . . . . . . . . . .   11
Powers conferred upon Congress . . . . . . . . . .   11, 12
Powers under the new amendments . . . . . . . . . .   12–14
Executive and judicial power of the nation . . . . . . . .   15
Constitution, laws, and treaties of United States to be supreme; final
    decision of questions under, to rest with national judiciary . .   15
Removal of causes from State courts; decisions of State courts to be
    followed on points of State law . . . . . . . . . .   16–18
Protection to privileges and immunities of citizens . . . . .   12, 21
Extradition of fugitives from justice . . . . . . . . . .   22
Faith and credit secured to records, &c. . . . . . . . . .   22, 23

ADD0173

viii                    TABLE OF CONTENTS.

Restrictions upon the States . . . . . . . . . . . .    20
Guaranty of republican government . . . . . . . . . .    24
Implied prohibitions on the States . . . . . . . . . .    25
Reservation of powers to States and people . . . . . . .    26
Construction of national bills of rights . . . . . . . . .    26
Statutes necessary to jurisdiction of national courts . . . . . .    26

## CHAPTER III.

### THE FORMATION AND AMENDMENT OF STATE CONSTITUTIONS.

State governments in existence when Constitution of United States
      adopted . . . . . . . . . . . . . . . . . .    29
Common law in force; what it consists in . . . . . . .    29–34
English and Colonial legislation . . . . . . . . . . .    34
Colonial charters and revolutionary constitutions . . . . . .    35, 36
Constitutions of new States . . . . . . . . . . . .    36
Sovereignty of the people . . . . . . . . . . . .    36–39
Who are the people, in a political sense . . . . . . . . .    37
Proceedings in the formation and amendment of constitutions . .    39–48
Restraints imposed thereon by Constitution of United States . . `. .    42
What generally to be looked for in State constitutions . . . .    44–46
Rights are protected by, but do not come from them . . . . . .    47

## CHAPTER IV.

### CONSTRUCTION OF STATE CONSTITUTIONS.

Interpretation and construction . . . . . . . . . . .    49
Who first to construe constitutions . . . . . . . . . .    50–55
Final decision generally with the courts . . . . . . . . .    55–57
The doctrine of *res adjudicata* and *stare decisis* . . . . . .    58–66
Construction to be uniform . . . . . . . . . . . . .    67
The intent to govern . . . . . . . . . . . . . . .    68
The whole instrument to be examined . . . . . . . . .    70
Effect to be given to the whole . . . . . . . . . . .    71
Words to be understood in their ordinary meaning . . . . . .    71
Common law to be kept in view . . . . . . . . . . .    73
Words sometimes employed in different senses . . . . . .    74, 75
Operation of laws to be prospective . . . . . . . . . .    76
Implied powers . . . . . . . . . . . . . . . .    77, 78
Consideration of the mischief to be remedied . . . . . . . .    78
Proceedings of Constitutional Convention may be examined . .    79–81

Force of contemporaneous and practical construction . . . . 81–85
Unjust provisions not invalid . . . . . . . . . . . . 86
Duty in case of doubt on constitutional questions . . . . . . . 88
Directory and mandatory provisions . . . . . . . . . . 88–98
Constitutional provisions are imperative . . . . . . . . 93–98
Self-executing provisions . . . . . . . . . . . . 98–101
Danger of arbitrary rules of construction . . . . . . . . . 101

# CHAPTER V.

## THE POWERS WHICH THE LEGISLATIVE DEPARTMENT MAY EXERCISE.

Power of American legislatures compared to that of British Parliament . . . . . . . . . . . . . . . 103–106
Grant of legislative power is grant of the complete power . . . 106
But not of executive or judicial power . . . . . . . . . 106–109
Definition of legislative and judicial authority . . . . . 109–111
Declaratory statutes . . . . . . . . . . . . 111–114
Statute setting aside judgments, granting new trials, &c. . . . 115, 116
Recitals in statutes do not bind individuals . . . . . . . 116
Statutes conferring power on guardians, &c., to sell lands . . 117–125
Statutes which assume to dispose of disputed rights . . . . 125–129
Statutes validating irregular judicial proceedings . . . . . 128, 129
Legislative divorces . . . . . . . . . . . . . . 130–135
Legislative encroachments upon executive power . . . . . 135–138
Legislative power not to be delegated . . . . . . . . . . 139
Conditional legislation . . . . . . . . . . . . 144–147
Local option laws . . . . . . . . . . . . . 147, 148
Irrepealable laws not to be passed . . . . . . . . . 149, 150
Territorial limitations upon State legislative authority . . . 151–153
Inter-State comity . . . . . . . . . . . . . . . 152
Other limitations by express provisions . . . . . . . . . 153
Limitations springing from nature of free government . . . 154, 155

# CHAPTER VI.

## THE ENACTMENT OF LAWS.

Importance of forms in parliamentary law . . . . . . . 156, 157
The two houses of the legislature . . . . . . . . . . 157
Differences in powers of . . . . . . . . . . . . . 158
Meetings and adjournments . . . . . . . . . . . . 158
Contested elections, rules of proceeding, punishing disorderly behavior . . . . . . . . . . . . . . . . . 159

ADD0175

x TABLE OF CONTENTS.

Contempts . . . . . . . . . . . . . . . . 160, 161
Privileges of members . . . . . . . . . . . . . . 161
Legislative committees . . . . . . . . . . . . . . 162
Journal of proceedings . . . . . . . . . . . . . . 163
Corrupt contracts to influence legislation . . . . . . . . 164
Counsel before legislature ; lobby agents . . . . . . . . 165
The introduction and passage of bills . . . . . . . . 166–169
Evasions of constitutional provisions . . . . . . . . . 167, n.
Three readings of bills . . . . . . . . . . . . . . 168
Yeas and nays . . . . . . . . . . . . . . . . 169
Vote required for the passage of a bill . . . . . . . . . . 169
Title of statutes . . . . . . . . . . . . . . . 170–181
Amendatory statutes . . . . . . . . . . . . . . 181–184
Signing of bills by presiding officers . . . . . . . . . . 184
Approval of bills by the governor . . . . . . . . . . 184–187
Other legislative powers of the governor . . . . . . . . . 187
When acts to take effect . . . . . . . . . . . . . 188–191

## CHAPTER VII.

### THE CIRCUMSTANCES UNDER WHICH A LEGISLATIVE ACT MAY BE DECLARED UNCONSTITUTIONAL.

Authority to declare statutes unconstitutional a delicate one . 192–194
Early cases of such declaration . . . . . . . . . . . 194, n.
Will not be done by bare quorum of court . . . . . . . . 195
Nor unless a decision upon the point is necessary . . . . . . 196
Nor on objection by a party not interested . . . . . . . . 197
Nor solely because of unjust or oppressive provisions . . . . 197–202
Nor because conflicting with fundamental principles . . . . 202–204
Nor because opposed to spirit of the constitution . . . . . 205, 206
Extent of legislative power . . . . . . . . . . . . 206
Difference between State and national governments . . . . . 207
A statute in excess of legislative power void . . . . . . . 208–211
Statutes invalid as encroaching on executive or judicial authority . 209
Or conflicting with the bill of rights . . . . . . . . . 210
Legislative forms are limitations of power . . . . . . . . 211
Statutes unconstitutional in part . . . . . . . . . 211–216
Constitutional objection may be waived . . . . . . . . 216, 217
Judicial doubts on constitutional questions . . . . . . . 218–222
Inquiry into legislative motives not permitted . . . . . . 222–224
Consequences if a statute is void . . . . . . . . . . 224

# CHAPTER VIII.

### THE SEVERAL GRADES OF MUNICIPAL GOVERNMENT.

The American system one of decentralization . . . . . . 225–227
State constitutions framed in reference to it . . . . . . . . 228
Local government may be delegated to citizens of the municipality 228
Legislative control of municipalities . . . . . . . . . 230–232
Powers of public corporations . . . . . . . . . . . . 233
Strict construction of charters . . . . . . . . . . . . . 234
Must act through corporate authorities . . . . . . . 236–238
Contracts *ultra vires* void . . . . . . . . . . . . . . 235
Corporations by prescription and implication . . . . . . 238–240
Municipal by-laws . . . . . . . . . . . . . . . . 240–249
Delegation of powers by municipality not admissible . . . . 249, 250
Irrepealable municipal legislation cannot be adopted . . . . 251, 252
Presumption of correct action . . . . . . . . . . . 254–258
Power to indemnify officers . . . . . . . . . . . . 258–260
Powers to be construed with reference to purposes of their crea-
    tion . . . . . . . . . . . . . . . . . . . . 260–263
Authority confined to corporate limits . . . . . . . . . . 263
Municipal subscriptions to works of internal improvement . . . 263
Negotiable paper of corporations . . . . . . . . . . 269–274
Municipal military bounties . . . . . . . . . . . . 271–282
Legislative control of municipal taxation . . . . . . . . 282–289
Legislative control of corporate property . . . . . . . . 289–295
Towns and counties . . . . . . . . . . . . . . . 295–303
Not liable for neglect of official duty . . . . . . . . . . 302
Different rules govern chartered corporations . . . . . . . 303
In what respect the charter a contract . . . . . . . . . 304–310
Validity of corporate organizations not to be questioned collater-
    ally . . . . . . . . . . . . . . . . . . . . . 311
The State sometimes estopped from questioning . . . . . . 311, *n.*

# CHAPTER IX.

### PROTECTION TO PERSON AND PROPERTY UNDER THE CONSTITUTION OF THE UNITED STATES.

Bill of Rights, importance of . . . . . . . . . . . . 313–315
Addition of, by amendments to national Constitution . . . . . 316
Bills of attainder . . . . . . . . . . . . . . . . 316–321

*Ex post facto* laws . . . . . . . . . . . . . . 321–331
Laws impairing the obligation of contracts . . . . . . . 331–357
What charters are contracts . . . . . . . . . . . . 337, 338
Contracting away powers of sovereignty . . . . . . . . 339–344
Grant of exclusive privileges . . . . . . . . . . . . 344
Changes in the general laws . . . . . . . . . . . . 345
Obligation of a contract, what it is . . . . . . . . . . 346–348
Modification of remedies always admissible . . . . . . . 349–357
Appraisal laws . . . . . . . . . . . . . . . . 353
Stay laws, when void. . . . . . . . . . . . . . . 355
Laws taking away substantial rights . . . . . . . . . 355, 356
Validating imperfect contracts . . . . . . . . . . . 357
State insolvent laws. . . . . . . . . . . . . . . 357
The thirteenth and fourteenth amendments . . . . . . . 358, 359

## CHAPTER X.

### THE CONSTITUTIONAL PROTECTIONS TO PERSONAL LIBERTY.

Villeinage in England . . . . . . . . . . . . . . 360–363
In Scotland . . . . . . . . . . . . . . . . . 363
In America . . . . . . . . . . . . . . . . . 363
Impressment of seamen . . . . . . . . . . . . . . 365
Unreasonable searches and seizures. . . . . . . . . . 365–369
Every man's house his castle . . . . . . . . . . . . 365, 374
Search warrants . . . . . . . . . . . . . . . . 369–374
Inviolability of papers and correspondence . . . . . . . 371–374
Quartering soldiers in private houses . . . . . . . . . 375
Criminal accusations, how made . . . . . . . . . . . 376
Bail to persons accused of crime . . . . . . . . . . . 377–379
Prisoner standing mute . . . . . . . . . . . . . . 379
Trial to be speedy . . . . . . . . . . . . . . . 379
To be public . . . . . . . . . . . . . . . . . 380
Not to be inquisitorial . . . . . . . . . . . . . . 381
Prisoner's statement and confessions . . . . . . . . . 381–388
Confronting prisoner with witnesses . . . . . . . . . 388, 389
Prisoner to be present at trial . . . . . . . . . . . . 390
Trial to be by jury . . . . . . . . . . . . . . . 390
Number of jurors . . . . . . . . . . . . . . . . 391
Right of challenge . . . . . . . . . . . . . . . 392
Jury to be of the vicinage . . . . . . . . . . . . . 392
Verdict to be unanimous and free . . . . . . . . . . 393
Instructions of the judge, how limited . . . . . . . . . 393
Power of jury to judge of law . . . . . . . . . . . . 394–398

Accused not to be twice put in jeopardy . . . . . . . . 399–402
Excessive fines and cruel and unusual punishments . . . . 402–404
Right to counsel . . . . . . . . . . . . . . 405–412
Protection of professional confidence . . . . . . . . 408, 409
Duty of counsel . . . . . . . . . . . . . . 409–412
Whether to address the jury on the law . . . . . . . . . 411
Punishment of misconduct in attorneys . . . . . . . . . 411
Writ of *habeas corpus* . . . . . . . . . . . . . 413–427
Legal restraints upon personal liberty . . . . . . . . 414–418
Necessity of *Habeas Corpus Act* . . . . . . . . . . 418–421
What courts issue the writ . . . . . . . . . . . 421–425
General purpose of writ, and practice upon . . . . . . . 425–427
Right to discussion and petition . . . . . . . . . . . 427
Right to bear arms . . . . . . . . . . . . . . . 428
Jealousy of standing armies . . . . . . . . . . . . 428, 429

## CHAPTER XI.

### OF THE PROTECTION OF PROPERTY BY THE "LAW OF THE LAND."

Magna Charta, chap. 29 . . . . . . . . . . . . . 430
Constitutional provisions insuring protection "by the law of the
    land" . . . . . . . . . . . . . . . . . . 431, *n.*
Meaning of "due process of law" and "law of the land" . . . 432–439
Vested rights not to be disturbed . . . . . . . . . . 439
What are vested rights . . . . . . . . . . . . . 440–447
Interests in expectancy are not . . . . . . . . . . . 440
Legislative modification of estates . . . . . . . . . . 441
Control of rights springing from marriage . . . . . . . . 442
Legislative control of remedies . . . . . . . . . . . 443, 444
Vested rights of action are protected . . . . . . . . . 445
Confiscation of rights and property . . . . . . . . . 446, 447
Statutes of limitation . . . . . . . . . . . . . 448–451
Alteration in the rules of evidence . . . . . . . . . . 452–455
Retrospective laws . . . . . . . . . . . . . . 455–473
Curing irregularities in legal proceedings . . . . . . . . 457–459
Validating imperfect contracts . . . . . . . . . . . 459–471
Pendency of suit does not prevent healing act . . . . . . 470
What the healing statute must be confined to . . . . . . 471–473
Statutory privilege not a vested right . . . . . . . . . 473, 474
Consequential injuries from changes in the laws . . . . . . 475
Betterment laws . . . . . . . . . . . . . . . 477–480
Sumptuary and other like laws . . . . . . . . . . . 476

ADD0179

Unequal and partial legislation . . . . . . . . . .   481–492
Local laws may vary in different localities . . . . . . .   482
Suspension of general laws . . . . . . . . . . .   484
Equality the aim of the law . . . . . . . . . . .   486
Strict construction of special grants . . . . . . . . .   488–490
Privileges and immunities of citizens . . . . . . . .   491, 492
Judicial proceedings void if jurisdiction wanting . . . . .   443
What constitutes jurisdiction . . . . . . . . . . .   493
Consent cannot confer it . . . . . . . . . . .   493, 494
Jurisdiction in divorce cases . . . . . . . . . .   493–499
Necessity for process . . . . . . . . . . . .   498–502
Process by publication . . . . . . . . . . . .   499–502
Courts of general and special jurisdiction . . . . . . .   502, 503
Effect of irregularities in judicial proceedings . . . . .   504, 505
Judicial power not to be delegated . . . . . . . . .   506
Must be exercised under accustomed rules . . . . . .   506, 507
Judge not to sit in his own cause . . . . . . . . .   507–511

## CHAPTER XII.

### LIBERTY OF SPEECH AND OF THE PRESS.

Protection of, by the Constitution of the United States . . . .   512
State constitutional provisions . . . . . . . . . . .   512, n.
Not well protected nor defined at common law . . . . . .   515
Censorship of the press; publication of proceedings in Parliament
    not formerly suffered . . . . . . . . . . . . .   515
Censorship of the press in America . . . . . . . . . .   516
Secret sessions of public bodies in United States . . . . . .   518
What liberty of the press consists in . . . . . . . .   518–521
Common-law rules of liability for injurious publications . . .   521–525
Cases of privileged communications . . . . . . .   525–527, 563, n.
Libels on the government, whether punishable . . . . . .   528–531
Sedition law . . . . . . . . . . . . . . .   529
Further cases of privilege; criticism of officers or candidates for
    office . . . . . . . . . . . . . . . . .   532–544
Petitions and other publications in matters of public concern . .   534
Statements in course of judicial proceedings . . . . . . .   545–547
            by witnesses . . . . . . . . . . . .   545
            by complainant, &c. . . . . . . . . . .   546
            by counsel . . . . . . . . . . . . .   547–549
Privileges of legislators . . . . . . . . . . . . .   550–552
Publication of privileged communications through the press . . .   552

Accounts of judicial proceedings, how far protected   .   .   .   .   552–556
Privilege of publishers of news  .   .   .   .   .   .   .   .   .   556–566
Publication of legislative proceedings .   .   .   .   .   .   .   .   567, 568
The jury as judges of the law in libel cases .   .   .   .   .   .   .   569–573
Mr. Fox's Libel Act   .   .   .   .   .   .   .   .   .   .   .   .       569
" Good motives and justifiable ends," burden of showing is on de-
    fendant  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   573–575
What is not sufficient to show   .   .   .   .   .   .   .   .   .   575, n.

# CHAPTER XIII.

### RELIGIOUS LIBERTY.

Care taken by State constitutions to protect .   .   .   .   .   .   .       576
Distinguished from religious toleration   .   .   .   .   .   .   .   570, 571
What it precludes   .   .   .   .   .   .   .   .   .   .   .   .   .   580–582
Does not preclude recognition of superintending Providence by
    public authorities .   .   .   .   .   .   .   .   .   .   .   .   .   .       582
Nor appointment of chaplains, fast-days, &c. .   .   .   .   .   .   .       583
Nor recognition of fact that the prevailing religion is Chris-
    tian  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .       583
The maxim that Christianity is part of the law of the land   .   .   584–588
Punishment of blasphemy .   .   .   .   .   .   .   .   .   .   .   .       585
And of other profanity .   .   .   .   .   .   .   .   .   .   .   .       589
Sunday laws, how justified .   .   .   .   .   .   .   .   .   .   .       589
Respect for religious scruples .   .   .   .   .   .   .   .   .   .   589–591
Religious belief as affecting the competency or credibility of
    witnesses .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .       591

# CHAPTER XIV.

### THE POWER OF TAXATION.

Unlimited nature of the power  .   .   .   .   .   .   .   .   .   .   593–600
Exemption of national agencies from State taxation  .   .   .   .   597–600
Exemption of State agencies from national taxation  .   .   .   .   .       598
Limitations on State taxation by national Constitution  .   .   .   .       600
Power of States to tax subjects of commerce   .   .   .   .   .   .       601
Discriminations in taxation between citizens of different States   .       602
Elements essential to valid taxation  .   .   .   .   .   .   .   .       603
Purposes must be public .   .   .   .   .   .   .   .   .   .   .   .       604
Legislature to judge of purposes   .   .   .   .   .   .   .   .   604–608
Unlawful exactions .   .   .   .   .   .   .   .   .   .   .   .   .   608–612

ADD0181

xvi                      TABLE OF CONTENTS.

Necessity of apportionment . . . . . . . . . . . .   612
Taxation with reference to benefits in local improvements . .   616–628
Local assessments distinguished from general taxation . . .   618, 619
Apportionment of the burden in local assessments . . . . .   620–636
Taxations must be uniform throughout the taxing districts . .   622–636
Road taxes in labor . . . . . . . . . . . . . . .   635
Inequalities in taxation inevitable . . . . . . . . . .   636
Legislature must select subjects of taxation . . . . . . .   637
Exemptions admissible . . . . . . . . . . . . . .   637–641
Constitutional provisions forbidding exemptions . . . . .   640
Legislative authority requisite for every tax . . . . . . .   641–644
Excessive taxation . . . . . . . . . . . . . . .   644
The maxim *de minimis lex non curat* in tax proceedings . . .   644
What errors and defects render tax sales void . . . . .   645, 646
Remedies for collection of taxes . . . . . . . . . .   645

# CHAPTER XV.

## THE EMINENT DOMAIN.

Ordinary domain of State distinguished from eminent domain . .   647
Definition of eminent domain . . . . . . . . . . .   648
Not to be bargained away; general rights vested in the States . .   649
How far possessed by the general government . . . . . .   650
What property subject to the right . . . . . . . . . .   651
Legislative authority requisite to its exercise . . . . . .   653
Strict compliance with conditions precedent necessary . . .   654–656
Statutes for exercise of, not to be extended by intendment . . .   656
Purpose must be public . . . . . . . . . . . . .   656
What is a public purpose . . . . . . . . . . . . .   657–665
Whether milldams are . . . . . . . . . . . . . .   662–665
Question of, is one of law . . . . . . . . . . . .   666
How property to be taken . . . . . . . . . . . .   666–668
Determining the necessity for . . . . . . . . . . .   668, 669
How much may be taken . . . . . . . . . . . . .   670, 671
What constitutes a taking . . . . . . . . . . . . .   671
Consequential injuries do not . . . . . . . . . . .   671–676
Appropriation of highway to plank road or railroad . . . .   676–691
Whether the fee in the land can be taken . . . . . . .   691–693
Compensation to be made . . . . . . . . . . . . .   693
Time of making . . . . . . . . . . . . . . .   694–697
Tribunal for assessing . . . . . . . . . . . . . .   697
Principle on which it is to be assessed . . . . . . . .   698–705

Allowance of incidental injuries and benefits . . . . . . . 703–705
What the assessment covers . . . . . . . . . . . . 705
Action where work improperly constructed . . . . . . . . 705

## CHAPTER XVI.

### THE POLICE POWER OF THE STATES.

Definition of police power . . . . . . . . . . . . . 706
Pervading nature of . . . . . . . . . . . . . . 706–708
Power where vested . . . . . . . . . . . . . . 708, 709
Exercise of, in respect to charter contracts . . . . . . . 710–718
License or prohibition of sales of intoxicating drinks . . . . 718–722
Payment of license fee to United States gives no right in oppo-
    sition to State law . . . . . . . . . . . . . 721
Quarantine regulations and health laws . . . . . . . . 722
Inspection laws ; harbor regulations . . . . . . . . . 723
Distinction between proper police regulation and an interference
    with commerce . . . . . . . . . . . . . . 724
State taxes upon commerce . . . . . . . . . . . 724–726
Sunday police regulations . . . . . . . . . . . . 726
Regulation of highways by the States . . . . . . . . 727
Control of navigable waters . . . . . . . . . . . 728–733
What are navigable . . . . . . . . . . . . . . 728
Congressional regulations of . . . . . . . . . . . 731
Monopolies of, not to be granted by States . . . . . . . 730
Power in the States to improve and bridge . . . . . . . 731
And to establish ferries and permit dams . . . . . . . . 732
Regulation of speed of vessels . . . . . . . . . . . 733
Destruction of buildings to prevent spread of fire . . . . . 739, 740
Levees and drains . . . . . . . . . . . . . . 733
Regulation of civil rights and privileges . . . . . . . . 734–739
Regulation of business charges . . . . . . . . . . 734–739
Establishment of fire limits and wharf lines ; abatement of nui-
    sances, &c. . . . . . . . . . . . . . . . 740, 741
Other State regulations of police . . . . . . . . . . 740–746
Power of States to make breach thereof a crime . . . . . . 745

## CHAPTER XVII.

### THE EXPRESSION OF THE POPULAR WILL.

People possessed of the sovereignty, but can only exercise it
    under legal forms . . . . . . . . . . . . . 647

ADD0183

Elections the mode . . . . . . . . . . . . . . .  748–750
Qualifications for office . . . . . . . . . . .  748, n, 749, n
Officers *de facto* and *de jure* . . . . . . . . . . . .  750, 751
Who to participate in elections ; conditions of residence, presence
    at the polls, &c. . . . . . . . . . . . . . . .  752–754
Residence, domicile, and habitation defined . . . . . . .  754–756
Registration of voters . . . . . . . . . . . . . .  756, 757
Other regulations . . . . . . . . . . . . . . . . .  758
Preliminary action by authorities, notice, proclamation, &c. . . .  759
Mode of voting ; the ballot . . . . . . . . . . . .  760
Importance of secrecy ; secrecy a personal privilege . . . .  760–763
Ballot must be complete in itself . . . . . . . . . .  763, 764
Parol explanations by voter inadmissible . . . . . . . . .  765
Names on ballot should be full . . . . . . . . . . . .  765
Abbreviations, initials, &c. . . . . . . . . . . .  766, 767
Erroneous additions do not affect . . . . . . . . . .  767
Evidence of surrounding circumstances to explain ballot . . .  768, 769
Boxes for different votes ; errors in depositing . . . . . . .  770
Plurality to elect . . . . . . . . . . . . .  747, n, 770, 771
Freedom of elections ; bribery . . . . . . . . . . . .  771
Treating electors ; service of process . . . . . . . . . .  772
Betting on elections, contracts to influence them, &c. . . . . .  772
Militia not to be called out on election days . . . . . . . .  773
Electors not to be deprived of votes . . . . . . . . . .  774
Liability of officers for refusing votes . . . . . . . . .  775
Elector's oath when conclusive, . . . . . . . . . . .  776
Conduct of election . . . . . . . . . . . . . . .  777
Effect of irregularities . . . . . . . . . . . . .  771–779
Effect if candidate is ineligible . . . . . . . . . . .  779
Admission of illegal votes . . . . . . . . . . . . .  780
Fraud, intimidation, &c. . . . . . . . . . . . . .  780–782
Canvass and return of votes ; canvassers act ministerially . .  782–784
Contesting elections ; final decision upon, rests with the courts .  785–791
Canvasser's certificate conclusive in collateral proceedings ;
    courts may go behind . . . . . . . . . . . . .  787
What proofs admissible . . . . . . . . . . . . . .  788–790
Whether qualification of voter may be inquired into by courts . .  790

INDEX . . . . . . . . . . . . . . . . . . .  793

strument of oppression than a tyrannical monarch or any foreign power.  So impatient did the English people become of the very army that liberated them from the tyranny of James II. that they demanded its reduction even before the liberation became complete; and to this day the British Parliament render a standing army practically impossible by only passing a mutiny act from session to session.  The alternative to a standing army is "a well-regulated militia;" but this cannot exist unless the people are trained to bearing arms.  The federal and State constitutions therefore provide that the right of the people to bear arms shall not be infringed; but how far it may be in the power of the legislature to regulate the right we shall not undertake to say.[1]  Happily there neither has been, nor, we may hope, is likely to be, much occasion for an examination of that question by the courts.[2]

---

[1] See Wilson v. State, 33 Ark. 557.

[2] In Bliss v. Commonwealth, 2 Lit. 90, the statute "to prevent persons wearing concealed arms" was held unconstitutional, as infringing on the right of the people to bear arms in defence of themselves and of the State.  But see Nunn v. State, 1 Kelly, 243; State v. Mitchell, 3 Blackf. 229; Aynette v. State, 2 Humph. 154; State v. Buzzard, 4 Ark. 18; Carroll v. State, 28 Ark. 99; s. c. 18 Am. Rep. 538; State v. Jumel, 13 La. Ann. 399; s. c. 1 Green, Cr. Rep. 481; Owen v. State, 31 Ala. 387; Cockrum v. State, 24 Tex. 394; Andrews v. State, 3 Heisk. 165; s. c. 8 Am. Rep. 8; State v. Wilburn, 7 Bax. 51; State v. Reid, 1 Ala. 612.  A statute prohibiting the open wearing of arms upon the person was held unconstitutional in Stockdale v. State, 32 Ga. 225.  And one forbidding carrying, either publicly or privately, a dirk, sword-cane, Spanish stiletto, belt or pocket pistol or revolver, was sustained, except as to the last-mentioned weapon; and as to that it was held that, if the weapon was suitable for the equipmént of a soldier, the right of carrying it could not be taken away.  As bearing also upon the right of self-defence, see Ely v. Thompson, 3 A. K. Marsh. 73, where it was held that the statute subjecting free persons of color to corporal punishment for "lifting their hands in opposition" to a white person was unconstitutional.  And see, in general, Bishop on Stat. Crimes, c. 36, and cases cited.

to take, use, or destroy the private property of individuals to prevent the spreading of a fire, the ravages of a pestilence, the advance of a hostile army, or any other great public [* 595] calamity.[1] Here the individual is in no degree in * fault, but his interest must yield to that " necessity" which "knows no law." The establishment of limits within the denser portions of cities and villages, within which buildings constructed of inflammable materials shall not be erected or repaired, may also, in some cases, be equivalent to a destruction of private property ; but regulations for this purpose have been sustained notwithstanding this result.[2] Wharf lines may also be established for the general good, even though they prevent the owners of water-fronts from building out on soil which constitutes private property.[3] And, whenever the legislature deem it necessary to the protection of a harbor to forbid the removal of stones, gravel, or sand from the beach, they may establish regulations to that effect under penalties, and make them applicable to the owners of the soil equally with other persons. Such regulations are only " a just restraint of an injurious use of property, which the legislature have authority " to impose.[4]

So a particular use of property may sometimes be forbidden, where, by a change of circumstances, and without the fault of the owner, that which was once lawful, proper, and unobjectionable has now become a public nuisance, endangering the public health or the public safety. Mill-dams are sometimes destroyed upon

---

[1] Saltpetre Case, 12 Coke, 13 ; Mayor, &c. of New York v. Lord, 18 Wend. 126 ; Russell v. Mayor, &c. of New York, 2 Denio, 461 ; Sorocco v. Geary, 3 Cal. 69 ; Hale v. Lawrence, 21 N. J. 714 ; American Print Works v. Lawrence, 21 N. J. 248 ; Meeker v. Van Rensselaer, 15 Wend. 397 ; McDonald v. Redwing, 13 Minn. 38 ; Philadelphia v. Scott, 81 Penn. St. 80 ; Dillon, Mun. Corp. §§ 756–759. And see Jones v. Richmond, 18 Grat. 517, for a case where the municipal authorities purchased and took possession of the liquor of a city about to be occupied by a capturing military force, and destroyed it to prevent the disorders that might be anticipated from free access to intoxicating drinks under the circumstances. And as to appropriation by military authorities, see Harmony

v. Mitchell, 1 Blatch. 549 ; s. c. in error, 13 How. 115.

[2] Respublica v. Duquet, 2 Yeates, 493 ; Wadleigh v. Gilman, 12 Me. 403 ; s. c. 28 Am. Dec. 188 ; Brady v. Northwestern Ins. Co., 11 Mich. 425 ; Monroe v. Hoffman, 29 La. An. 651 ; s. c. 29 Am. Rep. 345 ; King v. Davenport, 98 Ill. 305 ; s. c. 38 Am. Rep. 89.

[3] Commonwealth v. Alger, 7 Cush. 53. See Hart v. Mayor, &c. of Albany, 9 Wend. 571 ; s. c. 24 Am. Dec. 165.

[4] Commonwealth v. Tewksbury, 11 Met. 55. A statute which prohibited the having in possession of game birds after a certain time, though killed within the lawful time, was sustained in Phelps v. Racey, 60 N. Y. 10. That the State may prohibit the sale of arms to minors, see State v. Callicut, 1 Lea, 714.

# THE

# DEBATES AND PROCEEDINGS

IN THE

# CONGRESS OF THE UNITED STATES;

WITH

# AN APPENDIX,

CONTAINING

# IMPORTANT STATE PAPERS AND PUBLIC DOCUMENTS,

AND ALL

# THE LAWS OF A PUBLIC NATURE;

WITH A COPIOUS INDEX.



## VOLUME II,

COMPRISING (WITH VOLUME 1) THE PERIOD FROM MARCH 3, 1789,
TO MARCH 3, 1791, INCLUSIVE.

---

COMPILED FROM AUTHENTIC MATERIALS,

BY JOSEPH GALES, Senior.

---

## WASHINGTON:

PRINTED AND PUBLISHED BY GALES AND SEATON.

——

1834.

ADD0187
Digitized by 

tion against the motion is, that it stops short in the regulation of the business. No provision, it is said, is made for the return of the arms to the public; and it gives a discretionary power to the officers to dispose of the property of the United States; but he conceived these difficulties were not beyond the reach of remedies; the wisdom of the House, he doubted not, would devise such as were adequate to the object. He asked by what means minors were to provide themselves with the requisite articles? Many of them are apprentices. If you put arms into their hands, they will make good soldiers; but how are they to procure them? It is said, if they are supplied by the United States the property will be lost; if this is provided against, every objection may be obviated. He then offered an addition to the motion, providing for the return of the arms to the commanding officer.

The Chairman then stated the motion with the amendment.

Mr. TUCKER observed, that the motion in its present form differed from the original proposed by the gentleman from Virginia. He conceived the gentleman had no right to alter it, nor could it be done without a vote of the committee. He preferred the motion in its original state—for the United States may, without doubt, furnish the arms—but he very much questioned their right to call on the individual States to do it.

Mr. WILLIAMSON was in favor of the question's being taken with the amendment admitted by Mr. PARKER. He wished to know whether Congress meant to tax the individual States in this unusual manner. Perhaps as they had assumed the State debts upon this principle, or rather without any principle, they might think they had a right to call upon them to furnish quotas in proportion, this would be getting something for something; and not like the other measure, losing something for nothing.

Mr. VINING said, he could not understand what was meant by saying that the amendment was dictating to the States. What is the whole bill but dictating; a law that affects every individual, touches the whole community. With respect to the constitutionality of the measure, there can be no doubt; every grant of power to Congress necessarily implies a conveyance of every incidental power requisite to carry the grant into effect.

Mr. WADSWORTH apologized for detaining the attention of the committee a moment, while he asked the gentlemen who favored the motion what was the extent of their wishes? The motion at first appeared to be in favor of poor men, who are unable to purchase a firelock; but now it seems, minors and apprentices are to be provided for. Is there a man in this House who would wish to see so large a proportion of the community, perhaps one-third, armed by the United States, and liable to be disarmed by them? Nothing would tend more to excite suspicion, and rouse a jealousy dangerous to the

Union. With respect to apprentices, every man knew that they were liable to this tax, and they were taken under the idea of being provided for by their masters; as to minors, their parents or guardians would prefer furnishing them with arms themselves, to depending on the United States when they knew they were liable to having them reclaimed.

The question on Mr. PARKER's motion was lost.

On motion of Mr. HEISTER, a proviso was added to the section in the following words:

"That every citizen so enrolled, and providing himself with the arms and accoutrements required as aforesaid, shall hold the same exempt from all executions, or suits for debt, or for the payment of taxes."

Mr. FITZSIMONS moved to strike out the words "provide himself," and insert "shall be provided."

This motion was objected to by Messrs. BOUDINOT, HUNTINGTON, JACKSON, PARTRIDGE, VINING, and MADISON. It was said that it would be destructive of the bill, as it would leave it optional with the States, or individuals, whether the militia should be armed or not.

This motion was lost by a great majority. The second section comprises the characters that are to be exempted from enrolment or militia duty.

Mr. MADISON moved to strike out that part which related to members of Congress, their officers and servants, attending either House—and to insert "members of the Senate and House of Representatives whilst travelling to, attending at, or returning from the sessions of Congress." He saw no reason for a total exemption from militia service; exceptions in favor of the framers of laws ought not to be extended beyond what is evidently necessary. The members of Congress, during the recess, are at liberty to pursue their ordinary avocations, and may participate in the duties and exercises of their fellow-citizens. They ought to bear a part in the burdens they lay on others, which may check an abuse of the powers with which they are vested.

Mr. JACKSON observed, that this alteration might interfere with the public interest; in cases of alarm or invasion, the members might be called to a great distance in the militia at the moment when their presence was required to attend the session of the Legislature. It would be well therefore to consider whether their services in the militia would be of equal importance to the public interest, as their services in Congress.

Mr. BOUDINOT objected to the amendment; not that he would exempt members of Congress from burdens imposed on their fellow-citizens; but the motion he conceived was inconsistent with this very idea. The bill provides that exempts shall pay a certain equivalent; it would be unjust to impose this equivalent, and compel the members of Congress to turn out in the

**Examples of State Laws Requiring Parents to Furnish or Provide Arms to Children in the Militia**

| State | Year[1] | Statutory Text | Source[2] |
|---|---|---|---|
| Delaware | 1785 | "[E]very apprentice, or other person of the age of eighteen and under twenty-one years, who hath an estate of the value of eighty pounds, or whose parent shall pay six pounds annually towards the public taxes, shall by his parent or guardian respectively be provided with a musket or firelock . . . ." | An Act for establishing a Militia, § 7, 2 Military Obligation: The American Tradition 13 (1947) |
| Maine | 1821 | "[A]ll parents, masters or guardians, shall furnish all minors enrolled in the militia, who shall be under their care respectively, with the arms, and equipments, required by this Act . . . ." | An Act to organize, govern, and discipline the Militia of this State, ch. CLXIV, § 34, 1821 Me. Laws 548, 570. |
| Massachusetts | 1793 | "[A]ll parents, masters and guardians shall furnish those of the said Militia who shall be under their care and command, with the arms and equipments aforementioned . . . ." | An Act for regulating and governing the Militia of the Commonwealth of Massachusetts, Massachusetts Acts and Laws, May Session, ch. 1, § XIX (1793). |
| Massachusetts | 1810 | "[A]ll parents, masters or guardians, shall furnish all minors enrolled in the militia, who shall be under their care respectively with the arms and equipments, required by this act . . . ." | An Act for regulating, governing, and training the Militia of this Commonwealth, ch. CVII, § 28, in 1810 Mass. Laws 151, 176. |

---

[1] Year of enactment.

[2] Where the relevant law was published in a larger compendium source, the source date often postdates the year of enactment.

| State | Year[1] | Statutory Text | Source[2] |
|---|---|---|---|
| Missouri | 1825 | "[A]ll parents, masters and guardians, shall furnish all minors, enrolled in the militia, who shall be under their care, respectively, with the arms and equipments required by this act." | An Act to organize, govern and discipline the Militia, ch. I, § 24, in 1825 Mo. Laws 533, 554. |
| New Hampshire | 1776 | "And be it further Enacted by the Authority aforesaid, That each and every Officer and private Soldier of said Militia, not under the control of Parents, Masters, or Guardians, and being of sufficient Ability therefore, in the Judgment of the Select-men of the Town wherein he has his usual place of Abode, shall equip himself and be constantly provided with a good Fire Arm . . . ." | An Act For forming and regulating the Militia within the State of New Hampshire, in New-England, and for repealing all the Laws heretofore made for that Purpose, Acts & Laws of the Colony of N.H., 39 (1776). |
| New Hampshire | 1792 | "That such of the infantry as are under the care of parents, masters or guardians, shall be furnished by them with such arms and accoutrements." | An Act for Forming and Regulating the Militia Within This State, and For Repealing All the Laws Heretofore Made for That Purpose N.H., 447 (1792). |
| New Hampshire | 1820 | "[A]ll parents, masters, and guardians, shall furnish all minors enrolled in the militia, who shall be under their care respectively, with the arms and equipments required by this act . . . ." | An Act for the forming, arranging and regulating the militia, § 46, 2 New Hampshire Laws Enacted Since June 1, 1815, 80 (1824). |
| North Carolina | 1806 | "And all parents and masters shall furnish those of the militia, who shall be under their care or command, with the arms and equipments above mentioned . . ." | 2 William T. Dortch, John Manning, John S. Henderson, The Code Of North Carolina § 3168, at 346-47 (1883). |

| State | Year[1] | Statutory Text | Source[2] |
|---|---|---|---|
| Vermont | 1797 | "And all parents, masters or guardians, shall furnish those of the said militia who shall be under their care and command, with the arms and equipments above mentioned . . . ." | An Act, for regulating and governing the militia of this State, ch. LXXXI, No. 1, § 15, 2 Laws Of The State Of Vermont Digested And Compiled 122, 131-32 (1808). |



Content downloaded/printed from _HeinOnline_

Thu Jan  2 19:54:40 2020

Citations:

Bluebook 20th ed.
Backgrounds of Selective Service (1947).

ALWD 6th ed.
Backgrounds of Selective Service (1947).

APA 6th ed.
(1947). Backgrounds of Selective Service. Washington, U.S. Gvt. Printing Office.

Chicago 7th ed.
Backgrounds of Selective Service. Washington, U.S. Gvt. Printing Office.

McGill Guide 9th ed.
, Backgrounds of Selective Service (Washington: U.S. Gvt. Printing Office., 1947)

MLA 8th ed.
Backgrounds of Selective Service. Washington, U.S. Gvt. Printing Office. HeinOnline.

OSCOLA 4th ed.
Backgrounds of Selective Service. Washington, U.S. Gvt. Printing Office.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   _https://heinonline.org/HOL/License_
-- The search text of this PDF is generated from  uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



# BACKGROUNDS OF SELECTIVE SERVICE

# Military Obligation:

## THE AMERICAN TRADITION

*A Compilation of the Enactments of Compulsion*

*From the Earliest Settlements*

*of the Original Thirteen Colonies in 1607*

*Through the*

*Articles of Confederation 1789*

SPECIAL MONOGRAPH NO. 1

VOLUME II

PART 3.  DELAWARE ENACTMENTS

# THE SELECTIVE SERVICE SYSTEM

# 1947

ADD0193

# CLEARANCE COMMITTEE

Brig. Gen. Carlton S. Dargusch, *Chairman*

| | |
|---|---|
| COL. VICTOR J. O'KELLIHER | LT. COL. ARTHUR BOONE |
| COL. LEWIS F. KOSCH | LT. COL. IRVING HART |
| COL. WILLIAM HART | MR. KENNETH H. McGILL |

## PREPARED AND COMPILED BY
### Lt. Col. Arthur Vollmer

GOVERNMENT PRINTING OFFICE

WASHINGTON : 1947

FOR SALE BY THE SUPERINTENDENT OF DOCUMENTS, U. S. GOVERNMENT
PRINTING OFFICE, WASHINGTON 25, D. C.

ADD0194

*Of the* D E L A W A R E   S T A T E.   **11**

ments, (unless their remaining estate be sufficient to answer what they are then in arrear) are hereby declared fraudulent, and shall not prevent or avoid the seizing and selling the same estates, on any judgment that may be had on suits to be brought for the recovery of the monies so in arrear.

*1785.*

Sect. 15. *And be it enacted,* That the said state treasurer, before the first day of November next, shall become bound unto the Delaware state, with two or more sufficient sureties, to be approved of by the president or commander in chief for the time being, in an obligation of fifteen thousand pounds, conditioned for the true observation of this act and the duty which to the said office doth appertain; and in case of neglect or refusal of the said state treasurer so to do, or of his death in the recess of the general assembly, it shall and may be lawful for the president or commander in chief, with the approbation of the privy-council, to appoint some other fit person to supply his place, who shall give security as aforesaid.

State treasurer to give bond.

His place how supplied in case of delinquency, &c.

Sect. 16. *And be it enacted,* That if any of the days appointed by this act for the performance of any of the duties herein required, shall happen to be on a Sunday, then such duties shall be performed on the day following.

WHEREAS it appears, that sundry collectors of the state taxes directed to be raised for the service of the years seventeen hundred and eighty-one, eighty-two, eighty-three and eighty-four, have through their indulgence, omitted to execute for those taxes within the times limited by law, and this general assembly being willing to give the same summary mode to the said collectors to collect the arrearages of such taxes, as they could have had under the several acts of assembly passed for those purposes.

Sect. 17. *Be it enacted,* That the collectors respectively of the said several state-taxes, heretofore appointed, or hereafter to be appointed for that purpose, be and they hereby are impowered to collect all arrearages and balances due of the said taxes by execution, or otherwise, between the time of passing this act and the first day of November next, in as full and ample manner as heretofore could have been done had the same been done within the time limited by law.

Summary mode for collecting the arrearages of taxes.

*Signed by Order of the House of Assembly,*

T H O M A S   D U F F, *Speaker.*

*Signed by Order of the Council,*

THOMAS M'DONOUGH, *Speaker.*

*Passed at* DOVER, ⎱
*June* 4, 1785. ⎰

An A C T for establishing a Militia.

SECTION I.   **W**HEREAS a well regulated Militia is the proper and natural defence of every free state; and as the laws heretofore made for the regulation thereof within this state are expired, and it is necessary that a militia be established;

Preamble.

ADD0195

Digitized from Best Copy Available

12    *In the Ninth* YEAR *of the* INDEPENDENCE

**1785.**

Returns to be made to the colonels of regiments, of all able-bodied male inhabitants within the districts of companies, &c.

the feveral counties of this ftate, fhall, on or before the firft day of Auguft next, make an exact return to the late colonel or commanding officer of the regiment to which he did formerly belong, of the names and furnames of every able-bodied effective male white inhabitant between the ages of eighteen and fifty years, then refiding in the diftrict of which he was formerly captain or commanding officer; a copy of which return the faid colonel or commanding officer of fuch regiment fhall immediately tranfmit to the prefident or commander in chief of this ftate: And all male white perfons between the ages aforefaid (clergymen and preachers of the gofpel of every denomination, juftices of the fupreme court, keepers of the public gaols, fchool-mafters teaching a Latin-fchool, or having at leaft twenty Englifh fcholars, and indented fervants bona fide purchafed, excepted) who on the faid firft day of Auguft next, fhall refide in any diftrict or fub-divifion heretofore laid off in purfuance of the late militia laws of this ftate fhall be confidered as belonging to the militia company for fuch diftrict or fub-divifion.

Officers in the military line, by whom appointed.

Sect. 3. *And be it enacted,* That the prefident or commander in chief fhall, on or before the firft day of October next, appoint and commiffion one colonel, one lieutenant-colonel and one major to command each of the regiments, and one captain, two lieutenants, and one enfign to command each of the companies within this ftate; and in cafe of the vacancy of a colonel, lieutenant colonel or major, captain, lieutenant or enfign, the prefident or commander in chief fhall appoint and commiffion fuch perfon to fill the faid vacancy as he fhall judge moft fuitable for that purpofe.

Quarter-mafters, &c. by whom appointed.

Sect. 4. *And be it enacted,* That the field officers of each regiment fhall appoint a quarter mafter and adjutant, a drum and a fife major for the regiment, and the commiffioned officers of each company fhall appoint four fergeants, four corporals, one drum and one fife for their refpective companies.

Militia to be divided into claffes.

Sect. 5. *And be it enacted,* That on the tenth day of April next enfuing, the captain or commanding officer of each company fhall call the perfons belonging to the fame together, giving due notice, and fhall divide them into eight claffes, as nearly equal in number to each other, as conveniently may be, allotting a fergeant or a corporal to each clafs, and eight flips of paper numbered refpectively from one to eight being prepared, every private fhall determine, by drawing a ballot, what clafs he is to ferve in; and in cafe any of the perfons belonging to any company fhall neglect to attend at the time and place appointed for claffing the faid company, or if prefent, fhall refufe to draw as aforefaid, then the faid captain or commanding officer thereof fhall appoint one difinterefted freeholder to draw for the abfentees or perfons fo refufing; and when the claffes fhall be fo fettled, the captain or commanding officer of each company fhall form a roll confifting of the eight claffes, and the names and furnames of the men in each clafs, numbered according to the order of ballotting, which he fhall keep for his own ufe and direction, tranfmitting forthwith a copy thereof, with a lift of his commiffioned and non-commiffioned officers prefixed, to the colonel or commanding officer of the regiment, who fhall enter the fame in a book by him to be provided for that purpofe: And the faid captain or commanding officer fhall in the month of April in the year of our Lord one thoufand feven hundred and eighty-feven, and in the month of April in every fucceeding year, add to the faid roll the names and furnames of all fuch male white inhabitants between the ages aforefaid, who on the next preceding twelve months have removed to, and are then refiding in, that

Rolls thereof to be formed, and tranfmitted to the colonel.

ADD0196

Digitized from Best Copy Available

*Of the* D E L A W A R E   S T A T E.    13

Sect. 6. *And be it enacted,* That every company shall be duly exercised and instructed in the months of April and September annually, at such time and place as the captain or commanding officer shall direct, he giving notice thereof by advertisement at three of the most public places in his district, at least five days before the day of muster; and every regiment shall be reviewed on the first Wednesday in June and the second Wednesday in October in every year, and be properly trained and disciplined at such place as the colonel or commanding officer shall direct, and at such other times and places as the president or commander in chief shall think necessary, and shall order.

*[margin: 1785. Militia how often to be exercised.]*

Sect. 7. *And be it enacted,* That every person between the ages of eighteen and fifty, or who may hereafter attain to the age of eighteen years, except as before excepted, whose public taxes may amount to twenty shillings a year, shall at his own expence, provide himself; and every apprentice, or other person of the age of eighteen and under twenty-one years, who hath an estate of the value of eighty pounds, or whose parent shall pay six pounds annually towards the public taxes, shall by his parent or guardian respectively be provided with a musket or firelock, with a bayonet, a cartouch box to contain twenty three cartridges, a priming wire, a brush and six flints, all in good order, on or before the first day of April next, under the penalty of forty shillings, and shall keep the same by him at all times, ready and fit for service, under the penalty of two shillings and six pence for each neglect or default thereof on every muster day, to be paid by such person if of full age, or by the parent or guardian of such as are under twenty-one years, the same arms and accoutrements to be charged by the guardian to his ward, and allowed at settling the accounts of his guardianship.

*[margin: What persons shall provide arms, &c.]*

*[margin: Penalty for neglecting to keep them in repair.]*

Sect. 8. *And be it enacted,* That every male white person within this state, between the ages of eighteen and fifty, or who shall hereafter attain to the age of eighteen years, except as before excepted, shall attend at the times and places appointed in pursuance of this act for the appearance of the company or regiment to which he belongs, and if any non-commissioned officer or private, so as aforesaid required to be armed and accoutred with his firelock and accoutrements aforesaid in good order, or if any male white person between the ages aforesaid although not required to be so armed and accoutred, shall neglect or refuse to appear on the parade and answer to his name when the roll is called over, which the commanding officer is hereby directed to cause to be done at the distance of one hour after the time appointed for meeting, not having a reasonable excuse, to be adjudged by a court-martial to be appointed by the commanding officer of the company, which shall consist of a subaltern and four privates, the subaltern to be president thereof, every such person shall forfeit and pay the sum of four shillings for every such neglect or refusal; and if the said court-martial shall adjudge, that such person had not a reasonable excuse for such neglect or refusal, the justice to whom the captain or commanding officer of the company shall make return of the proceedings of such court martial shall enter judgment and issue execution thereupon, unless it shall appear to him, that the defendant was sick, or out of the county on some necessary business, and had not an opportunity of being heard before the court-martial.

*[margin: Penalty on privates for non-attendance, &c.]*

*[margin: How to be adjudged.]*

Sect. 9. *And be it enacted,* That every person required to attend as aforesaid at the time and place of exercise in company, or in regiment, who shall then and there appear and C . . . . . . . . . . . . . . . . . . . 0

*[margin: For neglect of duty, the penalty.]*

ADD0197

Digitized from Best Copy Available



Content downloaded/printed from                    _HeinOnline_

Thu Nov  7 17:45:58 2019

Citations:

Bluebook 20th ed.
1821 50 .

ALWD 6th ed.
1821 50 .

Chicago 7th ed.
, "," Maine - Public Acts, Revision of 1821, Regular Session : 50-682

OSCOLA 4th ed.
, '' 1821 50

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
    Conditions of the license agreement available at
    _https://heinonline.org/HOL/License_
-- The search text of this PDF is generated from  uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



military parade on the day pointed out by the Constitution of this State for the election of Governor, and Senators, nor on any day which may be appointed for the choice of electors of President and Vice President of the United States, or Representatives to Congress. And it shall not be lawful for any officer to parade his men on either of said days, unless in case of invasion made or threatened, or in obedience to the orders of the Commander in Chief, except as is herein before excepted.

<div style="float:left; width:120px;">State colours, drums, fifes, &c. to be furnished by State.</div>

SEC. 33.   *Be it further enacted,* That each regiment of infantry and each battalion of cavalry or artillery shall be furnished with the State colours; and each company of infantry, artillery. light infantry, grenadiers and riflemen, shall be furnished with a drum and fife, or bugle horn, and each company of cavalry with a trumpet; and each Brigadier General after the first day of August next ensuing, is hereby authorized to draw orders upon the Quarter Master General in favor of the Commanding officers of regiments, battalions, and companies, for the above purposes, that the several regiments, battalions and companies may be supplied as aforesaid.

<div style="float:left;">Commanding officers responsible for safe keeping of colours, &c.</div>

And the Commanding officers of regiments and battalions shall be responsible for the safe keeping of their colours; and the Commanding officers of companies shall be responsible for the safe keeping of the drums, fifes, bugle horns, and trumpets, delivered to them for the use of their companies; and it shall be the duty of the Quarter Master General to furnish such colours and musical instruments, and to present his accounts therefor to the Legislature for allowance.

<div style="float:left;">Adjutant general to furnish blank orders, &c.</div>

And the Adjutant General shall furnish blank orders for the Commanding officers of companies to order their non-commissioned officers and privates to notify their men to attend all the inspections, trainings and reviews, and meetings for the choice of officers, which shall be ordered; also blank notifications or orders, to be left with the men by the non-commissioned officers or privates, ordered to notify as aforesaid; and Clerk's complaints to Justices of the Peace; and it shall not be necessary that seals be affixed to any orders whatever.

<div style="float:left;">Parents, masters, &c. to furnish their minors with arms and equipments.</div>

SEC. 34.   *Be it further enacted,* That all parents, masters or guardians, shall furnish all minors enrolled in the militia, who shall be under their care respectively, with the arms, and equipments, required by this Act; and if any parent, master or guardian, having any minor under his care, enrolled as aforesaid, shall neglect to provide such minor with the arms and equipments, required by this Act; or if said minor shall absent himself from any meeting of the company, to which he belongs, required by law, without sufficient excuse, the said parent, master or guardian is hereby subjected and made liable to the same forfeitures as such minor would be liable to. for a like deficiency. neglect or non-

ADD0199

appearance, if such minor were of age; and all persons lia- <span>Six months allowed for providing arms and equipments.</span>
ble by this Act to military duty, shall be allowed six months,
immediately from and after their arrival at the age of eighteen
years, and not afterwards, within which to furnish themselves
with the arms and equipments required by law: *Provided*
*however,* That such parents, masters, or guardians as shall <span>Proviso respecting those unable to arm and equip.</span>
produce, on or before the first Tuesday of May annually,
certificates from the Overseers of the poor of the town or
district in which they reside, of their inability to provide
arms and equipments as aforesaid, to the Commanding officer
of the company in which the minor under their care is en-
rolled, shall be exempted from the forfeitures aforesaid.

SEC. 35. *Be it further enacted,* That no non-commissioned <span>No invalid exempts allowed without surgeon's certificate.</span>
officer or private of any company shall be exempted from
military duty on account of bodily infirmity, unless he shall
obtain from the Surgeon or Surgeon's mate of the regiment
to which he belongs, if either of those officers are commis-
sioned in such regiments; if not, from some respectable
physician, living within the bounds of the same, a certificate
that he is unable to perform military duty on account of bodi-
ly infirmity, the nature of which infirmity is to be described
in said certificate, and the Commanding officer of the compa-
ny may, on the back of such certificate, discharge the non-
commissioned officer or private, named therein, from per-
forming military duty, for such a term of time, as he shall
judge reasonable, not exceeding one year, which certificate,
if approved and countersigned by the Commanding officer <span>Certificates to be countersigned.</span>
of the regiment, or battalion, to which the disabled non-com-
missioned officer or private belongs, shall entitle him to ex-
emption from military duty for the time specified. And any
non-commissioned officer or private, having obtained a certifi-
cate as aforesaid, and who may be refused a discharge, may
apply to the Commanding officer of the regiment for further
examination of his case, and if on such examination, the
Commanding officer of the regiment shall be well satisfied
that the bodily infirmity of such non-commissioned officer or
private is such that he ought to be discharged, he is hereby
authorized to discharge him from military duty for such time
as he shall judge reasonable, not exceeding one year, which
being certified by the Commanding officer of the regiment
on the back of the certificate, shall discharge the non-commis-
sioned officer, or private, from military duty for the time
specified by the Commanding officer of the regiment.

SEC. 36. *Be it further enacted,* That if any non-commis-
sioned officer or private shall be killed, or die of wounds re- <span>Pensions to be allowed in certain cases of death or wounds, when on duty.</span>
ceived when on any military duty required by this Act, his
widow, child or children, shall receive from the Legislature
such relief as shall be just and reasonable. And if any of-
ficer, non-commissioned officer or private, shall be wounded,

72



Content downloaded/printed from

*HeinOnline*

Thu Nov  7 17:31:52 2019

Citations:

Bluebook 20th ed.
1810 151 .

ALWD 6th ed.
1810 151 .

Chicago 7th ed.
, "," Massachusetts - Laws, January Session : 151-193

OSCOLA 4th ed.
, " 1810 151

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
    Conditions of the license agreement available at
    *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



commiffioned officers on privates, ordered to notify as aforefaid, and it fhall not be neceffary that feals be affixed to any orders whatever.

Parents and mfters to equip minors.

SEC. 28. *Be it further enacted*, That all parents, mafters or guardians, fhall furnifh all minors enrolled in the militia, who fhall be under their care refpectively with the arms and equipments, required by this act ; and if any parent, mafter, or guardian, having any minor under his care, enrolled as aforefaid, fhall neglect to provide fuch minor with the arms and equipments, required by this act, he is hereby fubjected and made liable to the fame forfeitures, as fuch minor would be liable to, for a like deficiency or neglect, if fuch minor were of age : *Provided however*, That fuch p:rents, mafters, or guardians as fhall produce, on or before the firft Tuefday of May, annually, certificates from the overfeers of the poor of the town or diftrict in which they refide, of their inability to provide arms and equipments as aforefaid, to the commanding officer of the company in which the minor under their care is enrolled, fhall be exempted from the forfeitures aforefaid.

No perfon exempted for infirmity, without a certificate.

SEC. 29. *Be it further enacted*, That no non-commiffioned officer or private of any company fhall be exempted from military duty on account of bodily infirmity, unlefs he fhall obtain from the furgeon or furgeon's mate of the regiment to which he belongs, if either of thofe officers are commiffioned in fuch regiments ; if not, from fome refpectable phyfician living within the bounds of the fame, that he is unable to perform military duty on account of bodily infirmity, the nature of which infirmity is to be defcribed in faid certificate, and the commanding officer of the company may, on the back of fuch certificate, difcharge the non-commiffioned officer or private, named therein, from performing military duty, for fuch a term of time as he fhall judge reafonable, not exceeding one year, which certificate, if approved and counterfigned by the commanding officer of the regiment, or battalion, to which the difabled non-commiffioned officer or private belongs, fhall entitle him to exemption from military duty for the time fpecified. And any non-commiffioned officer or private, having obtained a certificate as aforefaid, and who may be refufed a difcharge, or an approval of a difcharge, as aforefaid, may apply to the commanding officer of the brigade for a further



Content downloaded/printed from                    [HeinOnline](HeinOnline)

Tue Dec 31 11:31:40 2019

Citations:

Bluebook 20th ed.
1793 289 .

ALWD 6th ed.
1793 289 .

Chicago 7th ed.
, "," Massachusetts - Acts & Laws, May Session : 289-308

OSCOLA 4th ed.
, " 1793 289

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



Case: 21-1832    Document: 31-2    Page: 207    Date Filed: 09/29/2021



# Acts *and* Laws,

### Paſſed by the GENERAL COURT of *Maſſachuſetts* :

Begun and held at Boston, in the County of Suf-
folk, on Wedneſday the Twenty-ninth Day of
May, Anno Domini, 1793.

#### C H A P.   I.

An Act for regulating and governing the Militia
of the Commonwealth of Maſſachuſetts, and for
repealing all Laws heretofore made for that Pur-
poſe ; excepting an Act, intitled " An Act for
eſtabliſhing Rules and Articles for governing the
Troops ſtationed in Forts and Garriſons, within
this Commonwealth, and alſo the Militia, when
called into actual Service."

*WHEREAS the Laws for regulating and governing the Mili-
tia of this Commonwealth, have become too complicated for* Preamble.
*practical uſe, by reaſon of the ſeveral alterations which have from
time to time been made therein :*                Therefore,

I. BE it enacted by the Senate and House of Represen-
tatives *in General Court aſſembled, and by the authority of the* Laws repealed.
ſame, That the ſeveral Laws heretofore made for governing and
regulating

ADD0204

*In the Year of our LORD,* 1793.

| Militia. | 297 |

XVIII. *And be it further enacted by the authority aforesaid,* That every non-commissioned Officer and Private of the infantry shall constantly keep himself provided with a good musket, with an iron or steel rod, a sufficient bayonet and belt, two spare flints, a priming wire and brush, and a knapsack; a cartridge-box, or pouch with a box therein, to contain not less than twenty-four cartridges, suited to the bore of his musket; each cartridge to contain a proper quantity of powder and ball; or with a good rifle, knapsack, shot-pouch, powder-horn, twenty balls suited to the bore of his rifle, and a quarter of a pound of powder : And shall appear so armed, accoutred and provided, whenever called out, except that when called out to exercise only, he may appear without a knapsack, and without cartridges loaded with ball. *Provided always,* that whenever a man appears armed with a musket, all his equipments shall be suited to his musket; and whenever a man appears armed with a rifle, all his equipments shall be suited to his rifle : And that from and after five years from the passing of this Act, all muskets for arming the Militia, as herein required, shall be of bores sufficient for balls of the eighteenth part of a pound : And every citizen enrolled and providing himself with arms ammunition and accoutrements, required as aforesaid, shall hold the same exempted from all suits, distresses, executions or sales for debt, or for payment of taxes. *(Necessary articles of equipments. Proviso. Arms &c. to be exempted from suits.)*

XIX. *And be it further enacted by the authority aforesaid,* That every non-commissioned Officer or Private of the infantry, who shall neglect to keep himself armed and equipped as aforesaid, or who shall on a muster-day, or at any other time of examination, be destitute of, or appear unprovided with the arms and equipments herein directed (except as before excepted) shall pay a fine not exceeding *twenty shillings,* in proportion to the articles of which he shall be deficient, at the discretion of the Justice of the Peace, before whom trial shall be had : And all parents, masters and guardians shall furnish those of the said Militia who shall be under their care and command, with the arms and equipments aforementioned, under the like penalties for any neglect : And whenever the Selectmen of any town shall judge any inhabitant thereof, belonging to the Militia, unable to arm and equip himself in manner as aforesaid, they shall at the expence of the town provide for and furnish such inhabitant with the aforesaid arms and equipments, which shall remain the property of the town at the expence of which they shall be provided ; and if any soldier shall embezzle or destroy the arms and equipments with which he shall be furnished, he shall, upon conviction before some Justice of the Peace, be adjudged to replace the article or articles, which shall by him be so embezzled or destroyed, and to pay the cost arising from the process against him : And if he shall not perform the same within fourteen days after such adjudication, it shall be in the power of *(Fine for neglect. Parents and masters to equip their children & servants. Persons unable, to be furnished by the town. Penalty, in case.)*

C                                                    the

*In the Year of our LORD*, 1793.

the Selectmen of the town to which he shall belong, to bind him out to service or labour, for such term of time as shall, at the discretion of the said Justice, be sufficient to procure a sum of money equal to the value of the article or articles so embezzled or destroyed, and pay cost arising as aforesaid.

XX. *And be it further enacted by the authority aforesaid,* That every person liable to do military duty, who being duly warned shall refuse or neglect to appear at the time and place appointed, **Penalty for not appearing on muster days.** shall be armed and equipped as by this act is directed, for any muster, training, view of arms, or other military duty, shall pay as a fine for such default, the sum of *ten shillings :* And every person who shall appear at any muster with his arms in an unfit condition, shall pay a fine of *three shillings* for each and every such default : *Provided nevertheless,* It shall be lawful for the Commanding **Proviso.** Officer of a company, at any time within eight days after any muster, training, view of arms or other duty, to excuse any person for non-appearance, on the delinquent's producing to him satisfactory evidence of his inability to appear as aforesaid ; and the Commanding Officer of the company shall certify the same to the Clerk within the time abovementioned, and the Clerk shall not thereafter commence any prosecution against such delinquent for his fine for non-appearance, as aforesaid.

XXI. *And be it further enacted by the authority aforesaid,* That whenever the Commanding Officer shall think proper to call his company together, or shall be ordered by his superior Officer to do it, he shall issue his orders therefor, to one or more of the non-**Clerk to notify.** commissioned Officers, if there be any, if not to one or more of the privates belonging to his company, directing him or them to notify and warn the said company to appear at such time and place as shall be appointed ; and every such person or persons, who shall receive such orders, shall give notice of the time and place appointed for assembling said company, to each and every person he or they shall be so ordered to warn, either by verbal information, or by leaving a written or printed notification thereof, at the usual place of abode of the person thus to be notified and warned ; and **Manner of notification.** no notice shall be deemed legal for musters for the purpose of common and ordinary trainings, unless it shall be given four days at least, previous to the time appointed therefor ; but in case of invasion, insurrection or other emergency, any time specified in the orders shall be considered as legal ; and every non-commissioned Officer, or other person, who shall neglect to give the said notice and warning, when ordered thereto by the Commanding Officer of the company to which he belongs, shall for such offence forfeit and pay as a fine, a sum not exceeding *forty shillings*, nor less than *twelve shillings*, at the discretion of the Justice of the Peace **Penalty.** before whom trial shall be had ; and the testimony of any person under oath, who shall have received orders agreeable to law, for notifying



Content downloaded/printed from          *HeinOnline*

Thu Nov  7 17:52:58 2019

Citations:

Bluebook 20th ed.
Laws of the State of Missouri; Revised and Digested by Authority of the General
Assembly: With an Appendix (1825).

ALWD 6th ed.
Ls of the State of Missouri; Revised & Digested by Authority of the General Assembly:
With an Appendix (1825).

APA 6th ed.
(1825). Laws of the State of Missouri; Revised and Digested by Authority of the
General Assembly: With an Appendix. St. Louis Mo., Printed by E. Charless, for the
State.

Chicago 7th ed.
Laws of the State of Missouri; Revised and Digested by Authority of the General
Assembly: With an Appendix. St. Louis Mo., Printed by E. Charless, for the State.

McGill Guide 9th ed.
, Laws of the State of Missouri; Revised and Digested by Authority of the General
Assembly: With an Appendix (St. Louis Mo.: Printed by E. Charless, for the State.,
1825)

MLA 8th ed.
Laws of the State of Missouri; Revised and Digested by Authority of the General
Assembly: With an Appendix. St. Louis Mo., Printed by E. Charless, for the State.
HeinOnline.

OSCOLA 4th ed.
Laws of the State of Missouri; Revised and Digested by Authority of the General
Assembly: With an Appendix. St. Louis Mo., Printed by E. Charless, for the State.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



554           MILITIA.

manner aforesaid; and such musicians, master and deputy master, shall be exempted from all military duty while he or they continue to belong to any band or company as musicians as aforesaid, excepting such as shall be required of them as musicians by the proper commanding officer.

**Arms and equipments to be provided and kept.**

SEC. 24. *Be it further enacted,* That every officer, non-commissioned officer and private, of infantry, light infantry, cavalry, artillery, grenadiers and riflemen, shall constantly keep himself furnished and provided with arms and equipments as required by the laws of the United States; and every officer, non-commissioned officer and private of light artillery shall be armed and equipped in the same manner as the officers, non-commissioned officers and privates of cavalry, respectively, and shall constantly keep himself furnished and provided with a horse, arms and equipments, as required by the laws of the United States of the officers, non-commissioned officers and privates of cavalry; and each company of light artillery shall do duty as cavalry until proper ordnance or field artillery is provided. And all parents, masters and guardians, shall

**Minors to be furnished with arms, &c by parents, guardians or masters.**

furnish all minors, enrolled in the militia, who shall be under their care, respectively, with the arms and equipments required by this act.

**Arms, public, may be loaned to volunteer companies.**

SEC. 25. *Be it further enacted,* That the commander in chief shall be and is hereby authorized to loan to any volunteer corps, or company organized under the provisions of this act, the necessary arms required by the preceding section, and to each company of field artillery, or light artillery, in addition thereto, two field pieces of such calibre as the commander in chief shall direct, with carriages and apparatus complete, an ammunition cart, tumbrils, harness, implements, laboratory and ordnance stores, which may, from time to time, be necessary for their equipment for the field, to be furnished out of the arms which are or may be appointed to this state by the United States, or which may be purchased or provided by this state for arming the militia; and the commanding officers of companies shall be accountable for the careful preservation of arms, field pieces, and all the apparatus appertaining to

**Commandant of company accountable for arms, &c.**

their equipment, and for the disposition and management thereof according to the provisions of this act; and before any arms, field pieces or apparatus, shall be delivered to

**To give bond**

any officer, he shall enter into bond to the state, with security to be approved of by the governor, in such penalty and condition as shall be required by the governor, who shall so regulate the same as to secure the due accountability of the officer; which bond shall be deposited in the office of the quarter master general, who, in case of a vio-

ADD0208



Content downloaded/printed from                    _HeinOnline_

Wed Oct 23 17:16:03 2019

Citations:

Bluebook 20th ed.
1759-1776 1 .

ALWD 6th ed.
1759-1776 1 .

Chicago 7th ed.
, "," New Hampshire - Temporary Laws, Acts and Laws 1759-1776 : 1-113

OSCOLA 4th ed.
, " 1759-1776 1

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
    Conditions of the license agreement available at
    _https://heinonline.org/HOL/License_
-- The search text of this PDF is generated from  uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



## STATE OF NEW-HAMPSHIRE.

*In the Year of our LORD, One Thousand Seven Hundred and Seventy-six.*

# AN ACT

PaſſedSept. 11, 1776.

To adopt and take the Name, Stile, and Title of STATE, in Lieu of COLONY, in New-Hampſhire.

Preamble.

*WHEREAS by a late Declaration of the Honorable Continental CONGRESS, the United-Colonies of North-America are declared FREE and INDEPENDANT STATES :*

THEREFORE,

This Colony to take the Name and Stile of STATE.

**B**E IT ENACTED BY THE COUNCIL *and* ASSEMBLY, That henceforth this COLONY aſſume and take the Name and Stile of THE STATE OF NEW-HAMPSHIRE : And where any Law hath directed the Name and Stile of the Colony of New-Hampſhire, or the Name and Stile of the Province of New-Hampſhire, to be uſed in any Commiſſions, Proceſſes, or Writings whatever ; in Lieu thereof, ſhall be now uſed the Name and Stile of THE STATE OF NEW-HAMPSHIRE, and not otherwiſe.

# AN ACT

PaſſedSept. 19, 1776.

For forming and regulating the MILITIA within the State of *New-Hampſhire*, in *New-England*, and for repealing all the LAWS heretofore made for that Purpoſe.

Preamble.

*WHEREAS it is not only the Intereſt, but the Duty of all Nations to defend their Lives, Liberties and Properties, in that Land, which the Supreme Ruler of the Univerſe has beſtowed on them, againſt the unlawful Attacks and Depredations of all Enemies whatever ; eſpecially thoſe who are moved by a Spirit of Avarice or Deſpotiſm.* AND WHEREAS, *the Honorable* AMERICAN CONGRESS *have recommended to the United-Colonies, to put the Militia into a proper State for the Defence of* AMERICA :--------- AND WHEREAS, *the Laws now in Force, reſpecting the Regulation of the* MILITIA, *have been found inſufficient for the Purpoſes aforeſaid :*

IT

ADD0210

*Firſt,* IT IS THEREFORE ENACTED BY THE COUNCIL, AND HOUSE OF REPRESENTATIVES *in* GENERAL-COURT *aſſembled, and by the* Authority *of the ſame.* That the ſeveral Laws, and the ſeveral Paragraphs, and Clauſes of all and every the Laws of this State, enforceing, or any ways relating to the Regulation of the MILITIA, be, and hereby are repealed, and declared null and void.

<div style="text-align: right">Repealing clauſe.</div>

*And be it further Enacted by the* AUTHORITY *aforeſaid,* That that part of the Militia of this State, commonly called the Training Band, ſhall be conſtituted of all the able-bodied Male-Perſons therein, from fifteen Years old to fifty, excepting Members of the AMERICAN CONGRESS, Members of the COUNCIL, and of the Houſe of *Repreſentatives* for the time being, the Secretary of the Colony, all Civil Officers that have been or ſhall be appointed by the General-Court, or either Branch of it, Officers and Students of Dartmouth-College, Miniſters of the Goſpel, Elders and Deacons of Churches, Church Wardens, Grammer-School-Maſters, Maſters of Arts, the Denomination of Chriſtians called Quakers, Selectmen for the Time being, thoſe who have by Commiſſion under any Government or Congreſs, or by Election, in Purſuance of the Vote of any Congreſs of the Continent, or of this or any other Colony, held the Poſt of a Subaltern or higher Officer, Perſons while actually employed as Maſters of Veſſels of more then Thirty Tons Burthen, other than Fiſhing Veſſels, and Veſſels coaſting this Colony, and to and from this Colony, to the other New-England Governments, Conſtables, Sheriffs, and Deputy Sheriffs, Negroes, Indians and Mulattoes ; and ſhall be under the Command of ſuchOfficers as ſhall be choſen, impowered, and commiſſionated over them, as is by this Act provided ; and the Selectmen or the major part of them of each Town, ſhall be, and hereby are impowered, by writing under their Hands to excuſe from Time to Time ſuch Phyſicians, Surgeons, Ferrymen, and Millers, in their reſpective Towns, from common and ordinary Trainings as they ſhall judge it neceſſary to excuſe : And the Council, and Houſe of Repreſentatives aforeſaid, ſhall from Time to Time, as may appear to them neceſſary, divide the Militia of each County into Regiments, and alter and divide ſuch Regiments from Time to Time, as they ſhall judge expedient, after having taken the Opinion, during any Seſſion of the General Court, of ſuch Members of the Houſe as belong to the County, where the Diviſion or Alteration is to be made, and as ſhall be preſent at the Time of ſuch Conſultation.

<div style="text-align: right">The training band.<br>Perſons exempted.<br>Militia to be divided.</div>

*Second. And be it further Enacted by the* AUTHORITY *aforeſaid,* That there ſhall be choſen by Ballot of the Council, and Houſe of Repreſentatives for this State, from Time to Time as may be neceſſary, one Major-General over the whole Militia thereof, which Major-General when ſo choſen ſhall be commiſſionated to that Office by the Council and Houſe afore-ſaid,

<div style="text-align: right">One Major General to be choſen by ballot of both Houſes</div>

L

faid, and faid General fhall at all Times have Power to draw forth the faid Militia, or any part thereof, as the faid General may judge expedient and neceffary for the immediate defence of this, or any of the United States of America. And the Officers and Soldiers of faid Militia, fhall pay entire obedience to his Commands accordingly, under the Penalties hereafter provided in this Act.

*His Power.*

*Provided always*, That the faid General and all other Officers of faid Militia, fhall at all Times be under the Command of the Council and Houfe of Reprefentatives, and fhall in drawing forth or retaining in Service the faid Militia or any part thereof be fubject to fuch Orders and Inftructions, as they may receive from Time to Time from the fame COUNCIL and HOUSE of REPRE-SENTATIVES.

*To be under the command of both HOUSES.*

3d. *And be it further Enacted by the* AUTHORITY *aforefaid*, That there fhall be chofen, appointed, and commiffionated, (as is provided and directed by this Act, for the Choice and Appointment of a General Officer) over each Regiment in this State, one Colonel, one Lieutenant-Colonel, and two Majors ; and the faid Field Officers fo appointed and commiffionated, or the major part of them,, fhall forthwith divide and fet off the refpective Regiments into Companies, as they fhall judge expedient, to confift as near as conveniently can be, of fixty-eight Privates, exclufive of thofe of the Alarm Lift, and to determine the Rank of each and every Company.

*Field Officers to be chofen.*

*Provided neverthelefs*, That no Soldier fhall be obliged without his confent, to join a Company belonging to any Town, in which he has not his ufual Place of Abode, unlefs where there fhall not be Privates enough to make a Company of Thirty Soldiers, including Officers ; in which Cafe, as alfo where there are any Perfons belonging to a place not incorporated, they fhall be joined to fuch Company as the Field Officers of the Regiments within which they are fhall fee fit. And the Inhabitants of every Town now in, or that fhall be in the Continental Army, fhall be deem'd to belong to, and be a part of the Companies in their refpective Towns, and excufed from Duty in the Militia, while they continue part of the Army aforefaid ; and each Company when fo formed and fet off, fhall together with thofe of the Alarm Lift, within the Limits of the fame, by Ballot, in the prefence of one of their Field Officers, who fhall caufe them to be duly notified for that purpofe, and fhall prefide as Moderator, chufe one Captain, two Lieutenants, and one Enfign ; which choice, fhall be immediately certified to the Secretary by faid Field Officers ; and the Prefident of the Council thereupon, unlefs fome material Objection againft fuch choice for any corrupt Practice or Irregularity, fhall be made at or before the Time of receiving faid Certificates, fhall commiffionate fuch Perfons purfuant to their Election.

*Perfons in the army to be confidered as part of the Militia.*

*Choice of Subalterns.*

Election. And all the said Officers when so commissionated by the President of the Council, shall in the absence of their Superiors, have the same Power in ordering, directing and marching their Regiments and Companies, as the Major General has over the whole of the said Militia: And the Colonel, or commanding Officer of each Regiment, shall as soon as the Captains in his Regiment are commissionated, give them respectively under his Hand in Writing, the Limits of their respective Companies; their Alarm Posts, and the manner of mustering their Companies on all Occasions.

4th. *And be it further Enacted by the* Authority *aforesaid,* That the Field Officers of each and every Regiment, or the major part of them, shall recommend to the General-Court, a good able and skilful Person for Adjutant of their Regiment; and if either House shall by Ballot, elect such Person for that Office, then the President of the Council shall, when concurred, commissionate him thereto. And in all Cases determinable by Field-Officers of the several Regiments, where there shall be four Field Officers of any particular Regiment present, and they shall be equally divided in their Opinions respecting such Matter, the determination shall be according to the Opinion of the first Colonel.

*Adjutant to be appointed.*

5th. *And be it further Enacted,* That each Company, including the Alarm List, shall be called together by their Captain or commanding Officer, as soon as may be for the purpose of chusing one Clerk, four Serjeants, four Corporals, one Drummer, and one Fifer; and when it shall appear to the Commission Officers of any Company, that either of said non-commissioned Officers shall neglect his Duty, they may remove and dismiss him from his Office, and call upon their Company, including the Alarm List, to chuse another in the Room of such Delinquent; and if the said Company being called together for that Purpose, shall at any Time neglect or refuse immediately to proceed to the choice of one, or more non-commissioned Officer or Officers, so ordered to be chosen; the Commission Officers of such Company, or the major Part of them, shall by Warrant under their Hands in Writing, appoint such Non-commissioned Officer or Officers, which the said Company shall have refused to choose as aforesaid.

*Non-commissioned Officers to be chose by the company.*

6th. *And be it further Enacted by the* Authority *aforesaid,* That each and every Officer and private Soldier of said Militia, not under the controul of Parents, Masters, or Guardians, and being of sufficient Ability therefor, in the Judgment of the Selectmen of the Town wherein he has his usual place of Abode, shall equip himself, and be constantly provided with a good Fire Arm, good Ramrod, a Worm, Priming-Wire and Brush, and a Bayonet fitted to his Gun, a Scabbard and Belt therefor, and a cutting Sword or a Tomahawk, or Hatchet, a Pouch containing a Cartridge-Box that will hold fifteen Rounds of Cartridges at least, a hundred Buck

*Equippage.*

ADD0213

Buck Shot, a Jack Knife and Tow for Wadding, fix Flints, one pound of Powder, forty leaden Balls, fitted to his Gun, a Knap-fack and Blanket, a Canteen or Wooden Bottle, fufficient to hold one Quart. And all Parents, Mafters, and Guardians, fhall furnifh and equip thofe of the Militia, which are under their care and command, with the Arms, Equipments and Accoutrements aforefaid: And where the Selectmen of any Town fhall adjudge

Poor per-fons to be equip't at the ex-pence of the Town. any Perfons belonging to the Militia of their Town unable to equip and arm himfelf as aforefaid, fuch Selectmen fhall in Writing, under their Hands certify the fame to the Captain, or command-ing Officer in whofe Company fuch Perfon may be, and fhall at the Expence of fuch Town provide for, furnifh, arm and equip fuch Perfons with Arms and Equipments ; which Arms fo pro-vided by fuch Selectmen, fhall be the Property of the Town at whofe Expence they fhall be provided ; and if any Non-com-miffioned Officer or Soldier, fhall embezzle or deftroy the fame, he fhall be punifhed at the Difcretion of the Juftice, or Court be-

Penalty for embezzle-ment. fore whom he may be convicted thereof, paying double the Value of the Arms, or Accoutrements fo wilfully deftroyed or em-bezzled, and on Default thereof, to be publickly whipped not exceeding twenty Stripes : And the Selectmen of each and every Town fhall provide at the Expence of the Colony and depofit and keep in fome fafe Place for the ufe of the Militia upon an Alarm, one fixteenth Part fo many Spades, or Iron Shovels with Handles and fitted for Service, as there are Rateable Polls in their Town ; one half as many narrow Axes, as Spades and Iron Shovels, and as many Pick Axes, as narrow Axes, all fitted for Service ; And at the coft and charge of their refpective Towns, one Drum and one Fife for each company therein. And the Freeholders and Inhabitants of each and every Town in this Colony, qualified by Law to vote in Town Meetings, are hereby impowered at a Meet ing regularly warned for that Purpofe, to raife Money by Tax on the Polls and Eftates of the Inhabitants of their Towns to defray all charges arifing on faid Towns in confequence of this Act.

Penalty on commiffion officers ne-glecting to equip themfelves. 7th. *And be it further enacted by the* Authority *aforefaid,* That each and every commiffion Officer of faid Militia, who fhall not within one Month next after receiving his Commiffion, provide for, arm and equip himfelf, with fuch Arms and Accou-trements, as is by this Act directed, fhall by order of a Court Martial appointed, as by this Act is provided, be removed from his Office. And every commiffioned Officer, who fhall be depo-fed from his Office in the Militia for neglect of Duty, or other Mifdemeanor, as by this Act is provided, fhall receive no Benefit from any Commiffion, which he fhall be thus incapacitated to execute to exempt him from Military Duty.

Eighth. *And be it further Enacted,* That the Clerk of each and every Company of faid Militia, fhall once every fix Months after the Time of his Choice or Appointment, take an exact Lift of



Content downloaded/printed from               *[HeinOnline](HeinOnline)*

Thu Nov  7 17:36:41 2019

Citations:

Bluebook 20th ed.
Laws of the State of New-Hampshire, Enacted since June 1, 1815 (1824).

ALWD 6th ed.
Ls of the State of New-Hampshire, Enacted since June 1, 1815 (1824).

APA 6th ed.
(1824). Laws of the State of New-Hampshire, Enacted since June 1, 1815. Concord,
Printed by Isaac Hill.

Chicago 7th ed.
Laws of the State of New-Hampshire, Enacted since June 1, 1815. Concord, Printed by
Isaac Hill.

McGill Guide 9th ed.
, Laws of the State of New-Hampshire, Enacted since June 1, 1815 (Concord: Printed by
Isaac Hill., 1824)

MLA 8th ed.
Laws of the State of New-Hampshire, Enacted since June 1, 1815. Concord, Printed by
Isaac Hill. HeinOnline.

OSCOLA 4th ed.
Laws of the State of New-Hampshire, Enacted since June 1, 1815. Concord, Printed by
Isaac Hill.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
    Conditions of the license agreement available at
    *[https://heinonline.org/HOL/License](https://heinonline.org/HOL/License)*
-- The search text of this PDF is generated from  uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



jutant general of this state with the rules and regulations for the field exercise and discipline of infantry, compiled and adopted for the army of the United States, agreeably to a resolve of congress, passed December, 1814, and the plates therewith connected.—And the adjutant-general is hereby required, under the direction of his excellency the Governor, to purchase or procure the printing of the books and engraved plates in such a manner as his excellency may deem most expedient.

And the said adjutant-general shall, at the expence of this state, deliver to the commanding officer of each regiment in this state, one book, with a plate annexed, for each and every commissioned officer belonging to his regiment, taking his receipt for the same; and whenever any such officer, having received of the commanding officer of the regiment a book and plate as aforesaid, shall resign his commission, he shall immediately deliver to the commanding officer of said regiment, for the time being, such book and plate to be by him furnished to the successor in said office. *Approved June 28, 1816.*

---

*AN ACT to constitute two companies of cavalry in the sixth regiment of militia in said state.*

Passed Dec. 18, 1816.

---

*AN ACT for forming, arranging and regulating the militia.*

Passed Dec. 22, 1820.

SECT. 1. **B**E *it enacted by the senate and house of representatives, in general court convened,* That the several laws heretofore made for arranging, forming and regulating the militia, be and hereby are repealed: *Provided,* that all officers actually in commission agreeably to the laws hereby repealed, shall be continued in their command; and the clerks of companies now in office shall be continued in office, and all actions or processes depending in any court, or before any magistrate, by force of said laws, and all arrests for offences committed under said laws, and all forfeitures incurred by virtue of said laws, shall and may be carried on, tried and prosecuted to final judgment, sentence and execution, in the same manner they would have been, had said laws not been repealed.

Repealing clause.

Proviso.

SECT. 2. *And be it further anacted,*

1. That the companies in the town of Portsmouth shall constitute the first regiment.

1st regiment.

2. That the companies in the towns of Dover, Somers-

2d regiment.

ADD0216

ments required as aforesaid, and they shall deposit the same in some safe and convenient place, and shall permit the commanding officer of the company to which such private unable to provide himself as aforesaid belongs, to deliver such arms and equipments to such private whenever his company shall be ordered out for any military duty; and the said commanding officer shall be responsible for the safe return of such arms and equipments to the place of deposit.

**Parents, &c. to furnish arms, &c.**

SECT. 46. *And be it further enacted,* That all parents, masters, and guardians, shall furnish all minors enrolled in the militia, who shall be under their care respectively, with the arms and equipments required by this act; and if any parent, master or guardian, having any minor under his care enrolled as aforesaid, shall neglect to provide such minor with the arms and equipments required as aforesaid, he is hereby subjected and made liable to the same forfeitures as such minor would be liable to for a like deficiency or neglect, if such minor were of age: *Provided however,* that such parents, masters or guardians, as shall produce on or before the first Tuesday of May annually, certificates from the overseers of the poor of the town or district in which they reside, of their inability to provide arms and equipments as aforesaid to the commanding officer of the company in which the minor under their care is enrolled, shall be exempted from the forfeitures aforesaid.

**Towns to provide.**

**Parents, &c. liable.**

SECT. 47. *And be it further enacted,* That parents, masters and guardians shall be liable for the non-appearance and neglect of such persons as are under their care (and are liable by law to train) and are to be proceeded against for the penalty in the same manner as by this act is provided against other delinquents.

**Fines for deficiency.**

SECT. 48. *And be it further enacted,* That each non-commissioned officer or private who shall appear on parade not completely equipt according to law, shall for each article with which he shall neglect to appear, pay the following sums as fines for the equipments with which he shall not be provided, to wit: a gun, eighty cents; steel or iron ramrod, twenty cents; bayonet, scabbard and belt, twenty-five cents; for neglecting to have his musket and bayonet clean and in good order, fifty cents; pistol, forty cents; sword, forty cents; two spare flints, ten cents; priming wire and brush, ten cents; cartridge box capable of containing twenty-four rounds, twenty-five cents; knapsack, twenty cents; and canteen, ten cents; to be recovered as hereinafter pointed out.

**Penalty for firing a gun without leave.**

SECT. 49. *And be it further enacted,* That no non-commissioned officer or private soldier shall, upon any muster day, or evening of the same day, discharge or fire off a musket

ADD0217



Content downloaded/printed from                    _HeinOnline_

Tue Dec 31 11:04:20 2019

Citations:

Bluebook 20th ed.
1792 423 .

ALWD 6th ed.
1792 423 .

Chicago 7th ed.
, "," New Hampshire - General Court, November Session : 423-451

OSCOLA 4th ed.
, '' 1792 423

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   _https://heinonline.org/HOL/License_
-- The search text of this PDF is generated from  uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



Amherſt, in the county of Hillſborough, in ſaid State, on the ſecond Tueſday of May, ſhall forever hereafter be holden at Hopkinton in ſaid county, on the ſecond Tueſday of May annually. And the courts of common-pleas, which by law are to be holden at ſaid Amherſt, on the firſt Tueſday of September, and on the ſecond Tueſday of December, ſhall forever hereafter be holden at ſaid Hopkinton, on ſaid days annually. And the courts of general-ſeſſions of the peace, which by law are to be holden at ſaid Amherſt, on the Thurſday next following the firſt Tueſday of September, ſhall forever hereafter be holden at ſaid Hopkinton, on the Thurſdays next following the firſt Tueſday of September annually.

*At Hopkinton.*

*And be it further enacted,* That the act entitled, "An act for eſtabliſhing courts of law for the adminiſtration of Juſtice within this State, and deſignating their powers, and regulating their proceedings in certain caſes," ſo far as the ſaid act relates to holding ſuch of the aforeſaid courts at Amherſt, which by this act are directed in future to be holden at ſaid Hopkinton, be, and hereby is repealed.

*Repealing clauſe.*

*And be it further enacted,* That all writs, venires, recognizances, appeals, actions, indictments, warrants and proceſs of every kind, which by law were returnable to ſaid courts at Amherſt, which by this act are to be holden at ſaid Hopkinton, ſhall be returned to, and ſuſtained by ſaid courts at ſaid Hopkinton.

*Writs, &c. to be ſuſtained by ſaid courts at Hopkinton.*

*And be it further enacted,* That the ſeveral courts aforeſaid, which are to be holden at ſaid Hopkinton, ſhall be holden in, or as near the meeting-houſe in ſaid town as conveniently may be.

*Courts where to be holden.*

*And be it further enacted,* That this act, at the expiration of two years from the paſſing thereof, ſhall be null and void, unleſs a ſuitable houſe for holding ſaid courts, be erected at ſaid Hopkinton within that time, without being a county charge.

This act paſſed December *25, 1792.*

———————

*Paſſed Dec. 27, 1792.*

An ACT for arranging the militia into diviſions.

BE it enacted by the Senate and Houſe of Repreſentatives in General-Court convened, That the militia of this State be arranged into diviſions, brigades and regiments,

ADD0219.

Digitized from Best Copy Available

*And be it further enacted,* That each non-commissioned officer and soldier belonging to the regiments of foot, shall within one year from and after the passing this act, furnish himself with a good fire-lock, bayonet and belt, a cartouch box that will contain twenty-four cartridges, two good flints, a knapsack and canteen—and that the commissioned belonging to companies of foot, shall be severally armed with a sword or hanger, and an espontoon, and that the field officers be armed with a sword or hanger.

*How to be armed and accoutred.*

*And be it further enacted,* That such of the infantry as are under the care of parents, masters or guardians, shall be furnished by them with such arms and accoutrements. And such as are unable to furnish themselves, shall make application to the selectmen of the town, who are to certify to their captain or commanding officer, that they are unable to equip themselves, and the said selectmen shall, at the expence of the town, provide for, and furnish such persons with arms and equipments ; which arms and equipments shall be the property of the town, at whose expence they were provided : And if any person so furnished, shall embezzle or wilfully destroy the same, he shall be punished by any court proper to try the same, upon complaint made by the selectmen of said town, by being publicly whipped not exceeding twenty stripes, or fined not exceeding forty shillings. And that all fines recovered for embezzling or destroying of arms and accoutrements as provided in this act, shall be paid into the hands of the selectmen to be appropriated in purchasing arms and accoutrements for such soldiers as are unable to purchase for themselves.

*Those unable &c. to be equipped at the expence of the town.*

*Fines how to be appropriated.*

*And be it further enacted,* That parents, masters and guardians shall be liable for the neglect and non-appearance of such persons as are under their care (and are liable by law to train) and are to be proceeded against for the penalty in the same manner, as by this act is provided against other delinquents.

*Parents, &c. liable to a penalty.*

*And be it further enacted,* That the commander in chief, the officers commanding divisions, brigades or regiments, may appoint military watches or guards when an invasion of the State is apprehended, in such place and under such regulations as they may judge necessary ; and all officers and soldiers under their command

*Military watches, by whom to be appointed.*

ADD0220

Digitized from Best Copy Available



Content downloaded/printed from                          _HeinOnline_

Thu Nov  7 17:29:00 2019

Citations:

Bluebook 20th ed.
William T.; et al. Dortch. Code of North Carolina, Enacted March 2, 1883 (1883).

ALWD 6th ed.
William T.; et al. Dortch. Code of North Carolina, Enacted March 2, 1883 (1883).

APA 6th ed.
Dortch, W. (1883). Code of North Carolina, Enacted March 2, 1883. New York, Banks.

Chicago 7th ed.
Dortch William T.; et al. Code of North Carolina, Enacted March 2, 1883. New York, Banks.

McGill Guide 9th ed.
William T.; et al. Dortch, Code of North Carolina, Enacted March 2, 1883 (New York: Banks., 1883)

MLA 8th ed.
Dortch, William T., et al. Code of North Carolina, Enacted March 2, 1883. New York, Banks. HeinOnline.

OSCOLA 4th ed.
Dortch, William T.; et al. Code of North Carolina, Enacted March 2, 1883. New York, Banks.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   _https://heinonline.org/HOL/License_
-- The search text of this PDF is generated from  uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



# CHAPTER THIRTY-FIVE.

## MILITIA, STATE GUARD AND MILITARY SCHOOLS.

### MILITIA.

[See CONSTITUTION, ART. XII.]

SECTION.

3157. Of whom composed; exemption.

3158. How divided.

3159. How governed.

3160. Adjutant general to be appointed; term of office, and bond.

3161. Officers, by whom appointed and commissioned.

3162. Officers to take oath.

3163. White and colored militia in distinct companies.

3164. Who exempt from militia duty.

3165. Members of fire companies exempted; also persons of conscientious scruples.

3166. Further exemptions from militia duty.

3167. Officers to enroll and make return of exempts.

3168. Persons enrolled to equip themselves; forfeitures for neglect to do so.

3169. How infantry shall be divided.

3170. Regiments, brigades and divisions, how distinguished.

3171. Officers of infantry, their grade and how appointed.

3172. Governor may appoint four *aids-de-camp.*

3173. Uniform of officers.

3174. Officers to hold commissions three years and equip within twelve months; penalty.

3175. Officers to give notice of their absence.

SECTION.

3176. To deliver to their successors in office money and papers.

3177. Rules of discipline; adjutant general to distribute Upton's tactics, and how.

3178. Captain's district, how laid off; boundary lines in regiments in same county, how altered.

3179. Regulations as to company musters.

3180. Company courts-martial; how to proceed; appeal allowed; executions from courts-martial, how and to whom issued; penalty on sheriff or constable for neglect.

3181. Company musicians, how appointed; their privileges.

3182. Road hands not to be ordered out on muster day.

3183. Captains to make returns, when.

3184. Regimental or battalion musters, when held; duty of colonel; penalty for neglect of duty.

3185. Penalty on officers failing to attend reviews or musters.

3186. Commandants of regiments, &c., to give notice of reviews, &c.

3187. Commissioned officers of regiments, &c., to exercise day before review; penalty for failure.

3188. Penalties on officers and privates for misbehavior.

which such service was rendered shall be sufficient to entitle the holder thereof to such exemption.

### Sec. 3167. Officers to enroll and make return of exempts. R. C., c. 70, s. 4.  1832, c. 7.

The captain or commandants of companies shall enroll and keep enrolled all within the limits of their respective districts who are exempt from performing militia duty except in time of invasion or insurrection, and shall return the number of exempts in their annual returns to the commandants of regiments, who shall make a like return of all exempts in their respective regiments in their annual returns to the brigadier and adjutant-generals, regulations for which annual reports are hereinafter prescribed.

### Sec. 3168. Persons enrolled to equip themselves; forfeitures for neglect to do so.  R. C., c. 70, s. 6.  1806, c. 708, ss. 1, 3, 9.

Every citizen enrolled and notified, as is directed in this chapter, shall, within six months thereafter, provide himself with a good musket, smooth-bored gun or good rifle, shot-pouch and powder-horn, and shall appear so armed and accoutered when called out to exercise or in actual service; the commissioned officers shall severally be armed with a sword, or hanger, or an espontoon; and every citizen so enrolled and providing himself with arms and accouterments as herein directed, shall hold the same exempt from all suits, executions or sales for debts, or for the payment of taxes; and if he shall fail to provide himself with arms and accouterments, as herein directed, and if the commissioned officers of his company shall deem him in sufficient circumstances to equip himself he shall forfeit and pay for the want of a good, serviceable musket, gun or rifle fifty cents. And all parents and masters shall furnish those of the militia, who shall be under their care or command, with the arms and equipments above mentioned, under the like penalty for each neglect. If the company court-martial, after examination on oath, shall adjudge any person enrolled to be incapable of providing himself with arms and accouterments, as herein required, they shall make report thereof to the next regimental or battalion court-martial, as the case may be, who may, if it shall appear necessary, exempt such person from the fines here imposed until such arms and accouterments shall be provided and delivered to him by the court-martial, who shall take

ADD0223

security for the safe keeping of such arms and accouterments to be returned when required.

### Sec. 3169. How infantry shall be divided. R. C., c. 70, s. 7. 1806, c. 708, s. 3. 1848, c. 58, s. 12.

The infantry shall be divided into divisions, brigades, regiments, battalions and companies; each division shall consist of at least two brigades; each brigade of at least four regiments, each county forming at least one regiment; each regiment, when convenient, shall consist of at least two battalions, each battalion of five companies, and each company of forty-five privates.

### Sec. 3170. Regiments, brigades and divisions, how distinguished. 1866, c. 23, s. 1.

The following are declared to be the regiments, brigades and divisions of the infantry, to be known and distinguished as here designated, namely:

| Brigades. | Counties. | No. Regiment. | How Distinguished in Counties where more than one Regiment. |
|---|---|---|---|
| 1st........ | Currituck.......... | 1 | |
| | Camden ............ | 2 | |
| | Perquimans ........ | 3 | |
| | Pasquotank........ | 4 | |
| 2nd...... .. | Chowan .......... | 5 | |
| | Hertford........... | 6 | |
| | Gates ............. | 7 | |
| | Bertie ............. | 8 | |
| | " ............. | 9 | |
| 3rd...... ... | Martin............. | 10 | |
| | Washington........ | 11 | |
| | Tyrrell............. | 12 | |
| | Hyde and Dare..... | 13 | |
| 4th........ | Beaufort.......... | 14 | |
| | Craven............. | 15 | |
| | Pamlico............ | 16 | |
| | Pitt............... | 17 | |
| 5th........ | Carteret....... .... | 18 | |
| | Jones.............. | 19 | |
| | Lenoir............. | 20 | |
| | Onslow............ | 21 | |
| 6th........ | New Hanover....... | 22 | |
| | Pender ............. | 23 | |
| | Sampson.......... | 24 | East of Big Coharrie. |
| | " ............. | 25 | West of " " |
| 7th........ | Duplin............. | 26 | |
| | Wayne.............. | 27 | Upper. |
| | " ............. | 28 | Lower. |
| | Greene.... ........ | 29 | |

ADD0224



Content downloaded/printed from                    *HeinOnline*

Thu Nov  7 17:27:29 2019

Citations:

Bluebook 20th ed.
Laws of the State of Vermont, Digested and Compiled: Including the Declaration of
Independence, the Constitution of the United States, and of this State (1808).

ALWD 6th ed.
Ls of the State of Vermont, Digested & Compiled: Including the Declaration of
Independence, the Constitution of the United States, & of this State (1808).

APA 6th ed.
(1808). Laws of the State of Vermont, Digested and Compiled: Including the
Declaration of Independence, the Constitution of the United States, and of this
State. Randolph Vt., Printed by Sereno Wright.

Chicago 7th ed.
Laws of the State of Vermont, Digested and Compiled: Including the Declaration of
Independence, the Constitution of the United States, and of this State. Randolph Vt.,
Printed by Sereno Wright.

McGill Guide 9th ed.
, Laws of the State of Vermont, Digested and Compiled: Including the Declaration of
Independence, the Constitution of the United States, and of this State (Randolph Vt.:
Printed by Sereno Wright., 1808)

MLA 8th ed.
Laws of the State of Vermont, Digested and Compiled: Including the Declaration of
Independence, the Constitution of the United States, and of this State. Randolph Vt.,
Printed by Sereno Wright. HeinOnline.

OSCOLA 4th ed.
Laws of the State of Vermont, Digested and Compiled: Including the Declaration of
Independence, the Constitution of the United States, and of this State. Randolph Vt.,
Printed by Sereno Wright.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
    Conditions of the license agreement available at
    *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



# CHAPTER LXXXI.

## OF THE MILITIA.

## N° 1.

Paffed March
20, 1797.

AN ACT, for regulating and governing the militia of this ftate.

SECT. 1.  IT is hereby enacted by the General Af-fembly of the State of Vermont, That

**Militia, how and by whom to be enrolled.**

each and every free, able-bodied white male citi-zen of this ftate, or of any other of the United States refiding within this ftate, who is or fhall be of the age of eighteen years, and under the age of forty-five years (excepting as is herein after ex-cepted) fhall feverally and refpectively be fubject to the requifitions of this act, and fhall be enroll-ed in the militia, by the captain or commanding officer of the company, within whofe bounds fuch citizen fhall refide, within three months from and after the paffing of this act. And it fhall be at all times hereafter the duty of the commanding of-ficer of every fuch company, to enrol every fuch citizen as aforefaid, and alfo thofe who fhall from time to time arrive at the age of eighteen years, or being of the age of eighteen years and under the age of forty-five years, and not herein after excepted, fhall come to refide within his bounds ; and fhall without delay notify fuch citizen of the enrolment, by a non-commiffioned officer or other perfon duly authorized for that purpofe, by whom fuch notice may be proved. And in all cafes of doubt refpecting the age of any perfon enrolled or intended to be enrolled ; the party queftioned fhall prove his age, to the fatisfaction of the com-manding officer of the company within whofe bounds he may refide.

ADD0226

act, shall be such as the brigadier generals, within their respective brigades, shall direct.

SECT. 14.——That every non-commissioned officer and private of the infantry, shall constantly keep himself provided with a good musket, with an iron or steel rod, a sufficient bayonet and belt, two spare flints, a priming wire and brush, and a knapsack, a cartridge box and pouch with a box therein sufficient to contain at least, twenty-four cartridges, suited to the bore of his musket ; and shall appear so armed, accoutred and provided, whenever called out : *excepting,* that when called out to exercise only, he may appear without a knapsack.

<span style="float:right">Non-comm.<br>and privates,<br>how armed &<br>accoutred.</span>

*Provided always,* That every citizen enrolled, and providing himself with arms, ammunition and accoutrements, required, as aforesaid, shall hold the same exempted from all suits, distresses, executions or sales, for debt, or for payment of taxes.

<span style="float:right">Arms and ac-<br>coutrements<br>exempt from<br>execution.</span>

SECT. 15.——That every non-commissioned officer or private of the infantry, who shall neglect to keep himself armed and equipped, as aforesaid, or who shall on a muster day, or at any other time of examination, be destitute of, or appear unprovided with, the arms and equipments herein directed (excepting as before excepted ;) shall pay a fine, not exceeding *seventeen cents* for a gun, and *eight cents* for every other article, in which he shall be deficient : at the discretion of the court, before whom trial shall be had.   And all parents, masters or guardians, shall furnish those of the said militia who shall be under their care and command, with the arms and equipments above mentioned, under the like penalties for any neglect. And when the selectmen of any town shall judge any inhabitant thereof belonging to the militia, unable to arm and equip himself, in manner aforesaid ; they shall, at the expense of the town, provide for and furnish such inhabitant with the aforesaid arms, and equipments : which shall remain the property of the town, at the expense of which they shall be provided.   And if any sol-

<span style="float:right">Non-commis-<br>sioned officers<br>and soldiers<br>fined, for not<br>being equip'd.</span>

<span style="float:right">Parents and<br>guardians to<br>furnish arms.</span>

<span style="float:right">Selectmen to<br>furnish, for<br>poor soldiers.</span>

ADD0227

132                          *Militia.*

**Penalty for embezzlement.**

dier fhall embezzle or deftroy the arms, and equipments, with which he fhall be furnifhed; he fhall, upon conviction as aforefaid, be judged to replace the articles which fhall be by him fo embezzled or deftroyed, and to pay the cofts arifing from the procefs againft him. And if he fhall not perform the fame, within fourteen days after fuch adjudication, it fhall be in the power of the felectmen of the town, to which he fhall belong; to bind him out to fervice or labor, for fuch term of time, as, in the difcretion of the faid felectmen, fhall be fufficient to procure a fum of money, equal to the value of the article or articles fo embezzled or deftroyed ; and pay cofts, arifing as aforefaid.

**Fines for fundry delinquencies.**

SECT. 16.——That every perfon liable to do military duty, who being duly warned, fhall refufe or neglect to appear, at the time and place appointed, armed and equipped as by this act is directed, for any mufter, training, view of arms or other military duty ; fhall pay as a fine for fuch default, the fum of *two dollars*. And every perfon who fhall appear at any mufter, with his arms in an unfit condition, fhall pay a fine of *twelve cents*, for each and every fuch default.

**Provifo.**

*Provided neverthelefs*, That it fhall be lawful for the commanding officer of a company, at any time, within eight days after any mufter, training, view of arms, or other duty, to excufe any perfon for non-appearance, or for any deficiency of equipments, on the delinquent's producing to him fatisfactory evidence of his inability to appear, or equip, as aforefaid.

**2d provifo.**

*Provided*, That if fuch delinquent had fufficient caufe of abfence, and fhould neglect to make his excufe within the eight days aforefaid ; upon a profecution, he fhall be liable to pay cofts, at the difcretion of the court before whom the caufe is tried.

[☞ *The two provifos of this fection, repealed :* *See prefent chap.—Act. N°. 8.*]

**Companies how warned.**

SECT. 17.——That when the commanding officer of a company fhall think proper to call his

ADD0228

**Examples of State Laws Mandating the Distribution of Public Arms**

| State | Year[1] | Statutory Text | Source[2] |
|---|---|---|---|
| Connecticut | 1792 | "That if any soldier shall in the judgment of the select-men of the town to which he belongs, be unable to arm and accouter himself . . . it shall be the duty of such select-men to certify the same to the commissioned officers of the company . . . and also, at the expense of such town to provide such soldier with arms . . . and all arms and accoutrements thus provided, shall be the property of such town . . . ." | An Act for forming and conducting the military force of this state, conformable to the act of Congress, passed the eight day of May, A.D. 1792, § XI, 1792 Conn. Acts & Laws 428-29 (Oct. Sess. 1792). |
| Massachusetts | 1793 | "[A]nd whenever the Selectmen of any town shall judge any inhabitant thereof, belonging to the Militia, unable to arm and equip himself in manner as aforesaid, they shall at the expense of the town provide for and furnish such inhabitant with the aforesaid arms and equipments, which shall remain the property of the town at the expen[s]e of which they shall be provided . . . ." | An Act for regulating and governing the Militia of the Commonwealth of Massachusetts, ch. 1 Mass. Acts & Laws, § XIX, at 297 (May Sess. 1793). |

---

[1] Year of enactment.

[2] Where the relevant law was published in a larger compendium source, the source date often postdates the year of enactment.

| State | Year[1] | Statutory Text | Source[2] |
|-------|------|----------------|-----------|
| New Hampshire | 1776 | "And where the Selectmen of any Town shall adjudge any Persons belonging to the Militia of their Town unable to equip and arm himself as aforesaid, such Selectmen shall . . . at the Expen[s]e of such Town provide for, furnish, arm and equip such Persons with Arms and Equipments; which Arms so provided by such Selectmen, shall be the Property of the Town at whose Expense they shall be provided . . . ." | An Act for forming and regulating the Militia within the State of New Hampshire, in New-England, and for repealing all the Laws heretofore made for that Purpose, 1776 N.H. Acts & Laws 40 (1776). |
| New Hampshire | 1792 | "And such as are unable to furnish themselves shall make application to the selectmen of the town . . . and the said selectmen shall, at the expen[s]e of the town, provide for, and furnish such persons with arms and equipments; which arms and equipments shall be the property of the town, at whose expense they were provided . . . ." | An Act for forming and regulating the militia within this state, and for repealing all the laws heretofore made for that purpose, 1792 N.H. Acts & Laws 447. |
| Ohio | 1837 | "That when a part of the militia of this State shall be called into actual service, and arms shall be wanted for their use, the commander-in-chief of the division or brigade may call from any volunteer company . . . any or all the public arms in possession of such company, and place or cause the same to be placed in the hands of those who volunteer or are drafted for actual service." | An Act to organize and discipline the Militia, § 76, 1837 Ohio Gen. Laws 47. |

| State | Year[1] | Statutory Text | Source[2] |
|---|---|---|---|
| Vermont | 1797 | "And when the selectmen of any town shall judge any inhabitant thereof belonging to the militia, unable to arm and equip himself, in manner aforesaid; they shall, at the expense of the town, provide for and furnish such inhabitant with the aforesaid arms, and equipments: which shall remain the property of the town, at the expense of which they shall be provided." | An Act, for regulating and governing the militia of this state, ch. LXXXI, No. 1, § 15, 2 Laws Of The State Of Vermont Digested And Compiled 131-32 (1808). |



Content downloaded/printed from                    _HeinOnline_

Tue Dec 31 14:12:41 2019

Citations:

Bluebook 20th ed.
1792 423 .

ALWD 6th ed.
1792 423 .

Chicago 7th ed.
, "," Connecticut - October Session : 423-434

OSCOLA 4th ed.
, " 1792 423

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
     Conditions of the license agreement available at
     _https://heinonline.org/HOL/License_
-- The search text of this PDF is generated from  uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



*ACTS AND LAWS.*

---

## Militia.

---



# ACTS AND LAWS,

Made and paſſed by the General Court or Aſſembly of the State of Connecticut, in America, holden at New-Haven, (in ſaid State) on the ſecond Thurſday of October, Anno Dom. 1792.

An Act for forming and conducting the military force of this ſtate, conformable to the act of Congreſs, paſſed the eight day of May, A. D. 1792, which is as follows:—" An Act more effectually to provide for the national defence, by eſtabliſhing an uniform militia throughout the United States."

" SECTION I. BE it enacted by the Senate, and houſe of Repreſentatives, of the United States of America, in Congreſs aſſembled, That each and every free able bodied white male citizen, of the reſpective ſtates, reſident therein, who is, or ſhall be of the age of eighteen years, and under the age of forty-five years (except as is herein after excepted) ſhall ſeverally and reſpectively be enrolled in the militia, by the captain or commanding officer of the company, within whoſe bounds ſuch citizen ſhall reſide ; and that within twelve months after the paſſing this act, it ſhall at all times hereafter be the duty of every ſuch captain, or commanding officer of a company, to enrol every ſuch citizen, as aforeſaid ; and alſo thoſe who ſhall, from time to time, arrive at the age of eighteen years, and under the age of forty-five years (except as before excepted) ſhall come to reſide within his bounds ; and ſhall without delay, notify each citizen of the ſaid enrolment, by a proper non-commiſſioned officer of the company, by whom ſuch notice may be proved. That every ſuch citizen ſo enrolled and notified, ſhall within ſix months thereafter, provide himſelf with a good muſket or firelock, a ſufficient bayonet and belt, two ſpare flints and knapſack, a pouch with a box therein to contain twenty-four cartridges, ſuited to the bore of his muſket or firelock, each cartridge to contain a proper quantity of powder and ball ; or with a good rifle, knapſack, ſhot-pouch and powder-horn, twenty balls ſuited to the bore of his rifle, and a quarter of a pound of powder ; and ſhall appear ſo armed, accoutred and provided, when called out to exerciſe, or into ſervice, except that when called out on company days to exerciſe only, he may appear without a knapſack. That the commiſſion officers ſhall ſeverally be armed with a ſword or hanger, and eſpontoon ; and that from and after five years from the paſſing this act, all muſkets for arming the militia, as herein required, ſhall be of bores ſufficient for balls of the eighteenth part of a pound : And every citizen ſo enrolled, and providing himſelf with the arms, ammunition and accoutrements, required as aforeſaid, ſhall hold the ſame exempt from all ſuits, diſtreſſes, executions, or ſales for debt, or for the payment of taxes."

" SEC. II. And be it further enacted, That the vice-preſident of the United States, the officers, judicial and executive, of the United States, the members of both houſes of Congreſs, and the reſpective officers, all cuſtom-houſe officers, with their clerks, all poſt-officers, and ſtage drivers, who are employed in the care and conveyance of the mail of the poſt-office of the United States, all ferrymen employed at any ferry on the poſt-road, all inſpectors of exports, all pilots, all mariners actually employed in the ſea ſervice of any citizen or merchant within the United States, and all perſons who are, or may hereafter be exempted by the laws of the reſpective ſtates, ſhall be, and are hereby exempted from military duty, notwithſtanding their being above eighteen, and under the age of forty-five years."

*Militia how & by whom to be enrolled.*

*How to be armed and accoutred.*

*Executive officers, &c. exempt.*

Y y y                                                          SEC. III.

*A C T S   A N D   L A W S.*

*vates to furnish themselves with arms, &c. on penalty of 12s.*

tia of this state, shall furnish himself with the arms, ammunition and accoutrements, required by the act of congress, and by this act, upon the penalty of forfeiting and paying a fine of *twelve shillings* lawful money, and the like penalty for every four weeks he shall be unprovided ; to be levied and collected by warrant of distress, as hereafter directed ; and that a horseman, or dragoon, who shall not furnish and provide himself with a horse and furniture, as required by the said act, shall be returned to, enrolled, and do duty in the infantry company in the limits of which he resides :—That the field and commissioned officers in each regiment,

*Officers to be uniformly clothed in regimentals.*
*Field officers to furnish colours.*

shall be uniformly cloathed in regimentals, at their own expence, and to be agreed upon by such officers ; that the field officers of each regiment shall furnish state and regimental colours for their regiment and battalions, at the state expence, not exceeding the sum of four pounds ten shillings lawful money, to each regiment.

*Companies to be out three days in each year, to be instructed, &c.*

*Arms to be inspected.*
*Regiments to be reviewed once in each year.*
*Privates who do not appear equipt to pay 9s.*

*and drummers, &c. 12s.*

*Punishment inflicted.*

*And be it further enacted,* That every commanding officer of a company of militia, shall order out his company or troop, three days in each year, and instruct them in the use of arms and discipline of war ; and the days appointed, shall be in the month of March, April, May, September, October or November, and that on the first Monday of May and October annually, such commanding officer shall cause the arms, ammunition and accoutrements, of all under his command, to be reviewed and inspected :—That the commanding officer of each regiment, shall order out his regiment by battalion or regiment, once in each year for regimental exercise, inspection and review. And if any of the privates belonging to any company of horse, artillery or infantry, shall neglect to appear compleatly armed and equipped on the place of parade, appointed by the commanding officer of his company, being duly warned, he shall forfeit and pay a fine of *nine shillings* for each day : and if any non-commissioned officer, drummer, fifer, or trumpeter, shall neglect to appear as aforesaid, he shall forfeit and pay the fine of *twelve shillings* for each day—unless any such person shall appear before the commanding officer of such company, within twelve days after such day of exercise or review, and make satisfactory excuse for his non appearance on said day ; and the commanding officer of each company, battalion or regiment, shall order the correcting and punishing disorders and contempts, on days of company, battalion, or regimental exercise, inspection or review ; the punishment not being greater than riding a wooden horse, for a time not exceeding one hour, or a fine not exceeding *forty shillings* lawful money :—That each commanding officer of a company, battalion, regiment, brigade or division, shall have power and authority, and full power is here-

*Officers to fix limits & bounds to their parades.*

by given to ascertain and fix certain necessary limits and bounds to their respective parades, within which no spectator shall have right to enter, without liberty from said commanding officer ; and in case any person shall so intrude or offend, he shall be subjected to be confined in such way and manner as the commanding officer shall direct, during the continuance of the exercise.

*Warrants by whom granted & to whom directed.*

*And be it further enacted,* That all warrants granted by the commanding officer, of any company, battalion or regiment, for any time or times incurred by virtue of this act, or any breach thereof, shall be directed by the officer commanding a company, to the orderly sergeant of his company ; which orderly sergeant he shall from time to time appoint, from the serjeants of his company ; and the officer commanding a battalion or regiment, to the adjutant or sergeant-major ; and to be by them levied on the goods or chattles of the respective delinquents, if upwards of twenty-one years of age—And for the want of such goods or chattles, against the body of such delinquent, and against the goods and chattles of the pa-

*On whom & on what levied.*

rents, master or guardians, of such delinquents as have not arrived to the age of twenty-one years ; and for want of such goods and chattles, against the body of parent, master or guardian, and them commit and hold in goal, until such fine or fines shall be paid and satisfied, together with lawful fees for service, as in cases of execution for debt ; which fines and forfeitures shall be appropriated for the use of the companies to which such delinquents respectively belong, for purchasing and

*Fines how appropriated.*

maintaining colours, trumpets, drums and fifes ; and should there be any overplus of fines remaining in the hands of the commanding officers of companies, they shall pay it over to the commanding officer of their regiment to which they belong ; which together with the fines collected by virtue of warrants issued by the field officers, shall be applied to keeping colours in repair, and for band-music for the re-

*Officers imposing fines, to give notice to the person fined, who shall have liberty within ten days to apply to, &c. for redress.*

giment. That whenever any commanding officer of a company shall impose any fine in any of the cases before mentioned in this act, he shall give notice to the person fined, who shall have liberty within ten days to apply to the commanding officer of the regiment, who on giving notice, and hearing the parties, may abate such fines, or any part thereof ; and if such commanding officer of the regiment, thinks not proper to abate such fine, the officer imposing the same may proceed to a collection thereof.

*Soldiers unable to furnish themselves, &c.*

*Provided nevertheless,* That if any soldier shall in the judgment of the select-men of the town to which he belongs, be unable to arm and accoutre himself agreeable to the directions of this act, it shall be the duty of such select-men to certify the same to the commissioned officers of the company to which such soldier belongs, in

order

order that execution may not iſſue againſt him for deficiency in ſuch arms and accoutrements ; and alſo, at the expence of ſuch town to provide ſuch ſoldier with arms, and the whole or any part of ſuch accoutrements as may be neceſſary, within forty days from the time of granting ſuch certificate, under penalty of the value of ſuch arms and accoutrements, to be recovered of any, or all of ſaid ſelect-men, by warrant from an aſſiſtant or juſtice of the peace, upon proper information, and proof of ſuch neglect, by ſaid commiſſioned officers ; which warrant ſhall be directed to any ſheriff or conſtable proper to ſerve the ſame, returnable in ſixty days, and the fine payable into the treaſury of ſuch town ; and all arms and accoutrements thus provided, ſhall be the property of ſuch town, and ſhall by the commanding officer of the company, be depoſited in ſuch places as he ſhall think proper, to be ready for ſuch ſoldier, as occaſion ſhall require ; and ſuch officer ſhall ſtand accountable for ſuch arms and accoutrements, and ſhall be liable to pay for the ſame, if loſt through his neglect or default. {.sidenote: Warrant to whom directed. Fines to be paid into the town treaſury. Arms, &c. to be depoſited in, &c.}

*Provided alſo,* That any of the people called *Quakers,* who ſhall produce to the commanding officer of the company in which he reſides, a certificate from the clerk of the ſociety of Quakers to which he belongs, certifying that ſuch perſon is a Quaker, he ſhall be exempt from equipping himſelf or doing military duty as required by this act, on his paying the ſum of twenty ſhillings to ſuch officer, at the expiration of each year during ſuch exemption : and in caſe ſuch Quaker refuſe to pay ſaid ſum of twenty ſhillings, the ſame ſhall be collected and diſpoſed of in the ſame manner as is heretofore provided for fines incurred by a breach of this act. {.sidenote: Quakers exempt on paying 20s.}

*And be it further enacted,* That each rank and grade of officers, ſhall furniſh themſelves with the rules of diſcipline approved and eſtabliſhed by Congreſs, in their reſolution of the 29th of March, 1779, and ſhall ſubmit themſelves to the orders and directions of their ſuperior officers, or their ſenior officers, of the ſame grade ; and all officers in the ſtaff and orderly departments, ſhall be vigilant and active in executing and diſpatching orders in their reſpective ſtations. {.sidenote: Officers to furniſh themſelves with the rules of diſcipline.}

That general, field, commiſſioned, and ſtaff officers, of all grades and ranks, ſhall be amenable to, and ſubject to trial by courts martial, according to the uſage and practice of war, for all neglects of duty, for contempts or diſreſpects to a ſuperior officer, for diſobedience of orders, and for all un-officer-like conduct ; which court martial ſhall conſiſt of not leſs than nine, or more than thirteen members—the ſenior officer of the higheſt grade to preſide—that another officer of the line or ſtaff, to do the duty of judge advocate to the court—that the members compoſing the court, ſhall take the following oath, before they proceed on the trial of an officer, viz. {.sidenote: Officers to be tried by courts martial. Who to preſide. Judge advocate to be of the ſtaff.}

*You ſwear that you will well and truly try and determine according to evidence, the matter depending between the ſtate of Connecticut and the priſoner, or priſoners, now to be tried, that you will not divulge the ſentence of the court until the ſame ſhall be approved, or diſapproved, purſuant to law ; neither will you upon any account at any time whatſoever, diſcloſe or diſcover, the vote or opinion of any particular member of the court martial, unleſs required by a due courſe of law.* So help you GOD. {.sidenote: Form of oath.}

The preſident of the ſaid court martial, is hereby authorized and required to adminiſter an oath to the officer acting as judge advocate, who is hereby required to take the ſame before he proceeds further on buſineſs, viz.—*You do ſwear that you will not divulge the ſentence of this court at any time whatſoever, diſcloſe or diſcover the vote or opinion of any particular member of the court martial, unleſs required in a due courſe of law ; and that you will not divulge the ſentence of this court, till the ſame ſhall be approved or diſapproved according to law ; and that you will well and truly do the duty of judge advocate, in this court, impartially and uprightly, according to the beſt of your abilities.*———So help you GOD. {.sidenote: Preſident of c. martial to adminiſter an oath to the judge advocate. The form.}

And no other perſon whatever, ſhall be admitted to ſolicit, proſecute or defend the officer arreſted ; which officer arreſted, if under the grade or rank of a field officer, ſhall have twelve days notice of the articles of charge made againſt him, by leaving a true and atteſted copy of the original articles of arreſt, under the hand of a ſuperior officer arreſting him, and the names of the witneſſes to be uſed againſt him minuted thereon, lodged with him at his uſual place of abode by the officer arreſting, or the proper orderly officer ; and of the grade and rank of a field officer twenty days notice ; and of the rank of a general officer thirty days notice in like manner ; which court martial, for the tryal of an officer under the rank and grade of a field officer, ſhall be appointed by the commanding officer of the brigade to which he belongs, and the ſentence approved or diſapproved by the captain-general of the ſtate—for the trial of an officer of the rank and grade of a field officer, by the commanding officer of the diviſion to which he belongs ; and of a general officer by the captain-general of the ſtate, and their ſentence approved or diſapproved by the legiſlature of the ſtate. That no ſentence of a court martial ſhall inflict other puniſhment than a reprimand, ſuſpenſion from office for a certain term of time, caſhiering, and caſhiering with a diſability of holding any military office in this ſtate ; two thirds of the members of any ſuch court agreeing in ſuch ſentence. {.sidenote: No perſon admitted to ſolicit &c. Officers under the grade of field officers to have 12 days notice, &c. Field officer to have 20, & gen. officer 30 days. Court martials by whom appointed. What puniſhment may be inflicted.}

*And*

ADD0235



Content downloaded/printed from          *HeinOnline*

Tue Dec 31 11:31:40 2019

Citations:

Bluebook 20th ed.
1793 289 .

ALWD 6th ed.
1793 289 .

Chicago 7th ed.
, "," Massachusetts - Acts & Laws, May Session : 289-308

OSCOLA 4th ed.
, '' 1793 289

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
    Conditions of the license agreement available at
    *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



Case: 21-1832    Document: 31-2    Page: 240    Date Filed: 09/29/2021



# Acts *and* Laws,

## Passed by the GENERAL COURT of *Massachusetts* :

Begun and held at BOSTON, in the County of SUF-
FOLK, on Wednesday the Twenty-ninth Day of
MAY, ANNO DOMINI, 1793.

### C H A P.  I.

An Act for regulating and governing the Militia
of the Commonwealth of Massachusetts, and for
repealing all Laws heretofore made for that Pur-
pose ; excepting an Act, intitled " An Act for
establishing Rules and Articles for governing the
Troops stationed in Forts and Garrisons, within
this Commonwealth, and also the Militia, when
called into actual Service."

*W*HEREAS *the Laws for regulating and governing the Mili-
tia of this Commonwealth, have become too complicated for* Preamble.
*practical use, by reason of the several alterations which have from
time to time been made therein :*                Therefore,

   I. BE it *enacted by the* SENATE *and* HOUSE *of* REPRESEN-
TATIVES *in General Court assembled, and by the authority of the* Laws repealed.
*same,* That the several Laws heretofore made for governing and
regulating

ADD0237

*In the Year of our LORD,* 1793.

XVIII. *And be it further enacted by the authority aforesaid,* That every non-commiffioned Officer and Private of the infantry fhall conftantly keep himfelf provided with a good mufket, with an iron or fteel rod, a fufficient bayonet and belt, two fpare flints, a priming wire and brufh, and a knapfack; a cartridge-box, or pouch with a box therein, to contain not lefs than twenty-four cartridges, fuited to the bore of his mufket ; each cartridge to contain a proper quantity of powder and ball ; or with a good rifle, knapfack, fhot-pouch, powder-horn, twenty balls fuited to the bore of his rifle, and a quarter of a pound of powder : And fhall appear fo armed, accoutred and provided, whenever called out, except that when called out to exercife only, he may appear without a knapfack, and without cartridges loaded with ball. *Provided always,* that when-ever a man appears armed with a mufket, all his equipments fhall be fuited to his mufket ; and whenever a man appears armed with a rifle, all his equipments fhall be fuited to his rifle : And that from and after five years from the paffing of this Act, all mufkets for arming the Militia, as herein required, fhall be of bores fuffici-ent for balls of the eighteenth part of a pound : And every citizen enrolled and providing himfelf with arms ammunition and accou-trements, required as aforefaid, fhall hold the fame exempted from all fuits, diftreffes, executions or fales for debt, or for payment of taxes. *[margin: Neceffary arti-cles of equip-ments.]* *[margin: Provifo.]* *[margin: Arms &c. to be exempted from fuits.]*

XIX. *And be it further enacted by the authority aforefaid,* That every non-commiffioned Officer or Private of the infantry, who fhall neglect to keep himfelf armed and equipped as aforefaid, or who fhall on a mufter-day, or at any other time of examination, be deftitute of, or appear unprovided with the arms and equip-ments herein directed (except as before excepted) fhall pay a fine not exceeding *twenty fhillings,* in proportion to the articles of which he fhall be deficient, at the difcretion of the Juftice of the Peace, before whom trial fhall be had : And all parents, mafters and guardians fhall furnifh thofe of the faid Militia who fhall be under their care and command, with the arms and equipments afore-mentioned, under the like penalties for any neglect : And when-ever the Selectmen of any town fhall judge any inhabitant thereof, belonging to the Militia, unable to arm and equip himfelf in man-ner as aforefaid, they fhall at the expence of the town provide for and furnifh fuch inhabitant with the aforefaid arms and equipments, which fhall remain the property of the town at the expence of which they fhall be provided ; and if any foldier fhall embezzle or deftroy the arms and equipments with which he fhall be furnifh-ed, he fhall, upon conviction before fome Juftice of the Peace, be adjudged to replace the article or articles, which fhall by him be fo embezzled or deftroyed, and to pay the coft arifing from the pro-cefs againft him : And if he fhall not perform the fame within fourteen days after fuch adjudication, it fhall be in the power of *[margin: Fine for ne-glect.]* *[margin: Parents and mafters to equip their children & fervants.]* *[margin: Perfons unable, to be furnifhed by the town.]* *[margin: Penalty, in cafe.]*

C                                    the

ADD0238

*In the Year of our LORD*, 1793.

298                                    Militia.

the Selectmen of the town to which he shall belong, to bind him out to service or labour, for such term of time as shall, at the discretion of the said Justice, be sufficient to procure a sum of money equal to the value of the article or articles so embezzled or destroyed, and pay cost arising as aforesaid.

XX. *And be it further enacted by the authority aforesaid*, That every person liable to do military duty, who being duly warned shall refuse or neglect to appear at the time and place appointed, shall armed and equipped as by this act is directed, for any muster, training, view of arms, or other military duty, shall pay as a fine for such default, the sum of *ten shillings* : And every person who shall appear at any muster with his arms in an unfit condition, shall pay a fine of *three shillings* for each and every such default : *Provided nevertheless*, It shall be lawful for the Commanding Officer of a company, at any time within eight days after any muster, training, view of arms or other duty, to excuse any person for non-appearance, on the delinquent's producing to him satisfactory evidence of his inability to appear as aforesaid ; and the Commanding Officer of the company shall certify the same to the Clerk within the time abovementioned, and the Clerk shall not thereafter commence any prosecution against such delinquent for his fine for non-appearance, as aforesaid.

<div style="float:left; font-size:small;">Penalty for not appearing on muster days.</div>

<div style="float:left; font-size:small;">Proviso.</div>

XXI. *And be it further enacted by the authority aforesaid*, That whenever the Commanding Officer shall think proper to call his company together, or shall be ordered by his superior Officer to do it, he shall issue his orders therefor, to one or more of the non-commissioned Officers, if there be any, if not to one or more of the privates belonging to his company, directing him or them to notify and warn the said company to appear at such time and place as shall be appointed ; and every such person or persons, who shall receive such orders, shall give notice of the time and place appointed for assembling said company, to each and every person he or they shall be so ordered to warn, either by verbal information, or by leaving a written or printed notification thereof, at the usual place of abode of the person thus to be notified and warned ; and no notice shall be deemed legal for musters for the purpose of common and ordinary trainings, unless it shall be given four days at least, previous to the time appointed therefor ; but in case of invasion, insurrection or other emergency, any time specified in the orders shall be considered as legal ; and every non-commissioned Officer, or other person, who shall neglect to give the said notice and warning, when ordered thereto by the Commanding Officer of the company to which he belongs, shall for such offence forfeit and pay as a fine, a sum not exceeding *forty shillings*, nor less than *twelve shillings*, at the discretion of the Justice of the Peace before whom trial shall be had ; and the testimony of any person under oath, who shall have received orders agreeable to law, for notifying

<div style="float:left; font-size:small;">Clerk to notify.</div>

<div style="float:left; font-size:small;">Manner of notification.</div>

<div style="float:left; font-size:small;">Penalty.</div>



Content downloaded/printed from                    *HeinOnline*

Wed Oct 23 17:16:03 2019

Citations:

Bluebook 20th ed.
1759-1776 1 .

ALWD 6th ed.
1759-1776 1 .

Chicago 7th ed.
, "," New Hampshire - Temporary Laws, Acts and Laws 1759-1776 : 1-113

OSCOLA 4th ed.
, " 1759-1776 1

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
    Conditions of the license agreement available at
    *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



## STATE OF NEW-HAMPSHIRE.

*In the Year of our LORD, One Thousand Seven Hundred and Seventy-six.*

# AN ACT

To adopt and take the Name, Stile, and Title of STATE, in Lieu of COLONY, in New-Hampshire.

PassedSept. 11, 1776.

Preamble. *WHEREAS by a late Declaration of the Honorable Continental CONGRESS, the United-Colonies of North-America are declared FREE and INDEPENDANT STATES ;*

THEREFORE,

This Colony to take the Name and Stile of STATE.

BE IT ENACTED BY THE COUNCIL *and* ASSEMBLY, That henceforth this COLONY assume and take the Name and Stile of THE STATE OF NEW-HAMPSHIRE : And where any Law hath directed the Name and Stile of the Colony of New-Hampshire, or the Name and Stile of the Province of New-Hampshire, to be used in any Commissions, Processes, or Writings whatever ; in Lieu thereof, shall be now used the Name and Stile of THE STATE OF NEW-HAMPSHIRE, and not otherwise.

# AN ACT

PassedSept. 19, 1776.

For forming and regulating the MILITIA within the State of *New-Hampshire*, in *New-England*, and for repealing all the LAWS heretofore made for that Purpose.

Preamble. *WHEREAS it is not only the Interest, but the Duty of all Nations to defend their Lives, Liberties and Properties, in that Land, which the Supreme Ruler of the Universe has bestowed on them, against the unlawful Attacks and Depredations of all Enemies whatever ; especially those who are moved by a Spirit of Avarice or Despotism.* AND WHEREAS, *the Honorable* AMERICAN CONGRESS *have recommended to the United-Colonies, to put the Militia into a proper State for the Defence of* AMERICA :------- AND WHEREAS, *the Laws now in Force, respecting the Regulation of the* MILITIA, *have been found insufficient for the Purposes aforesaid :*

IT

*Firſt,* IT IS THEREFORE ENACTED BY THE COUNCIL, AND HOUSE OF REPRESENTATIVES *in* GENERAL-COURT *aſſembled, and by the* Authority *of the ſame.* That the ſeveral Laws, and the ſeveral Paragraphs, and Clauſes of all and every the Laws of this State, enforceing, or any ways relating to the Regulation of the MILITIA, be, and hereby are repealed, and declared null and void.

<span style="float:right">Repealing clauſe.</span>

*And be it further Enacted by the* AUTHORITY *aforeſaid,* That that part of the Militia of this State, commonly called the Training Band, ſhall be conſtituted of all the able-bodied Male-Perſons therein, from fifteen Years old to fifty, excepting Members of the AMERICAN CONGRESS, Members of the COUNCIL, and of the Houſe of *Repreſentatives* for the time being, the Secretary of the Colony, all Civil Officers that have been or ſhall be appointed by the General-Court, or either Branch of it, Officers and Students of Dartmouth-College, Miniſters of the Goſpel, Elders and Deacons of Churches, Church Wardens, Grammer-School-Maſters, Maſters of Arts, the Denomination of Chriſtians called Quakers, Selectmen for the Time being, thoſe who have by Commiſſion under any Government or Congreſs, or by Election, in Purſuance of the Vote of any Congreſs of the Continent, or of this or any other Colony, held the Poſt of a Subaltern or higher Officer, Perſons while actually employed as Maſters of Veſſels of more then Thirty Tons Burthen, other than Fiſhing Veſſels, and Veſſels coaſting this Colony, and to and from this Colony, to the other New-England Governments, Conſtables, Sheriffs, and Deputy Sheriffs, Negroes, Indians and Mulattoes ; and ſhall be under the Command of ſuch Officers as ſhall be choſen, impowered, and commiſſionated over them, as is by this Act provided ; and the Selectmen or the major part of them of each Town, ſhall be, and hereby are impowered, by writing under their Hands to excuſe from Time to Time ſuch Phyſicians, Surgeons, Ferrymen, and Millers, in their reſpective Towns, from common and ordinary Trainings as they ſhall judge it neceſſary to excuſe : And the Council, and Houſe of Repreſentatives aforeſaid, ſhall from Time to Time, as may appear to them neceſſary, divide the Militia of each County into Regiments, and alter and divide ſuch Regiments from Time to Time, as they ſhall judge expedient, after having taken the Opinion, during any Seſſion of the General Court, of ſuch Members of the Houſe as belong to the County, where the Diviſion or Alteration is to be made, and as ſhall be preſent at the Time of ſuch Conſultation.

<span style="float:right">The train-ing band.</span>

<span style="float:right">Perſons exempted.</span>

<span style="float:right">Militia to be divided.</span>

Second. *And be it further Enacted by the* AUTHORITY *aforeſaid,* That there ſhall be choſen by Ballot of the Council, and Houſe of Repreſentatives for this State, from Time to Time as may be neceſſary, one Major-General over the whole Militia thereof, which Major-General when ſo choſen ſhall be commiſſionated to that Office by the Council and Houſe aforeſaid,

<span style="float:right">One Major General to be choſen by ballot of both Houſes</span>

L

faid,

faid, and faid General fhall at all Times have Power to draw forth the faid Militia, or any part thereof, as the faid General may judge expedient and neceffary for the immediate defence of this, or any of the United States of America.    And the Officers and Soldiers of faid Militia, fhall pay entire obedience to his Commands accordingly, under the Penalties hereafter provided in this Act.

His Power.

*Provided always,* That the faid General and all other Officers of faid Militia, fhall at all Times be under the Command of the Council and Houfe of Reprefentatives, and fhall in drawing forth or retaining in Service the faid Militia or any part thereof be fubject to fuch Orders and Inftructions, as they may receive from Time to Time from the fame COUNCIL and HOUSE of REPRE-SENTATIVES.

To be under the command of both HOUSES.

3d.    *And be it further Enacted by the* AUTHORITY *aforefaid,* That there fhall be chofen, appointed, and commiffionated, ( as is provided and directed by this Act, for the Choice and Appointment of a General Officer) over each Regiment in this S ate, one Colonel, one Lieutenant-Colonel, and two Majors ; and the faid Field Officers fo appointed and commiffionated, or the major part of them,, fhall forthwith divide and fet off the refpective Regiments into Companies, as they fhall judge expedient, to confift as near as conveniently can be, of fixty-eight Privates, exclufive of thofe of the Alarm Lift, and to determine the Rank of each and every Company.

Field Officers to be chofen.

*Provided neverthelefs,* That no Soldier fhall be obliged without his confent, to join a Company belonging to any Town, in which he has not his ufual Place of Abode, unlefs where there fhall not be Privates enough to make a Company of Thirty Soldiers, including Officers ; in which Cafe, as alfo where there are any Perfons belonging to a place not incorporated, they fhall be joined to fuch Company as the Field Officers of the Regiments within which they are fhall fee fit.    And the Inhabitants of every Town now in, or that fhall be in the Continental Army, fhall be deem d to belong to, and be a part of the Companies in their refpective Towns, and excufed from Duty in the Militia, while they continue part of the Army aforefaid ; and each Company when fo formed and fet off, fhall together with thofe of the Alarm Lift, within the Limits of the fame, by Ballot, in the prefence of one of their Field Officers, who fhall caufe them to be duly notified for that purpofe, and fhall prefide as M derator, chufe one Captain, two Lieutenants, and one Enfign ; which choice, fhall be immediately certified to the Secretary by faid Field Officers ; and the Prefident of the Council thereupon, unlefs fome material Objection againft fuch choice for any corrupt Practice or Irregularity, fhall be made at or before the Time of receiving faid Certificates, fhall commiffionate fuch Perfons purfuant to their Election,

Perfons in the army to be confidered as part of the Militia.

Choice of Subalterns.

Election. And all the said Officers when so commissionated by the President of the Council, shall in the absence of their Superiors, have the same Power in ordering, directing and marching their Regiments and Companies, as the Major General has over the whole of the said Militia: And the Colonel, or commanding Officer of each Regiment, shall as soon as the Captains in his Regiment are commissionated, give them respectively under his Hand in Writing, the Limits of their respective Companies; their Alarm Posts, and the manner of mustering their Companies on all Occasions.

4th. *And be it further Enacted by the* AUTHORITY *aforesaid,* That the Field Officers of each and every Regiment, or the major part of them, shall recommend to the General-Court, a good able and skilful Person for Adjutant of their Regiment; and if either House shall by Ballot, elect such Person for that Office, then the President of the Council shall, when concurred, commissionate him thereto. And in all Cases determinable by Field-Officers of the several Regiments, where there shall be four Field Officers of any particular Regiment present, and they shall be equally divided in their Opinions respecting such Matter, the determination shall be according to the Opinion of the first Colonel. *Adjutant to be appointed.*

5th. *And be it further Enacted,* That each Company, including the Alarm List, shall be called together by their Captain or commanding Officer, as soon as may be for the purpose of chusing one Clerk, four Serjeants, four Corporals, one Drummer, and one Fifer; and when it shall appear to the Commission Officers of any Company, that either of said non-commissioned Officers shall neglect his Duty, they may remove and dismiss him from his Office, and call upon their Company, including the Alarm List, to chuse another in the Room of such Delinquent; and if the said Company being called together for that Purpose, shall at any Time neglect or refuse immediately to proceed to the choice of one, or more non-commissioned Officer or Officers, so ordered to be chosen; the Commission Officers of such Company, or the major Part of them, shall by Warrant under their Hands in Writing, appoint such Non-commissioned Officer or Officers, which the said Company shall have refused to choose as aforesaid. *Non-commissioned Officers to be chose by the company.*

6th. *And be it further Enacted by the* AUTHORITY *aforesaid,* That each and every Officer and private Soldier of said Militia, not under the controul of Parents, Masters, or Guardians, and being of sufficient Ability therefor, in the Judgment of the Selectmen of the Town wherein he has his usual place of Abode, shall equip himself, and be constantly provided with a good Fire Arm, good Ramrod, a Worm, Priming-Wire and Brush, and a Bayonet fitted to his Gun, a Scabbard and Belt therefor, and a cutting Sword or a Tomahawk, or Hatchet, a Pouch containing a Cartridge-Box that will hold fifteen Rounds of Cartridges at least, a hundred Buck *Equippage.*

Buck Shot, a Jack Knife and Tow for Wadding, fix Flints, one pound of Powder, forty leaden Balls, fitted to his Gun, a Knapfack and Blanket, a Canteen or Wooden Bottle, fufficient to hold one Quart. And all Parents, Mafters, and Guardians, fhall furnifh and equip thofe of the Militia, which are under their care and command, with the Arms, Equipments and Accoutrements aforefaid : And where the Selectmen of any Town fhall adjudge

**Poor perfons to be equip't at the expence of the Town.** any Perfons belonging to the Militia of their Town unable to equip and arm himfelf as aforefaid, fuch Selectmen fhall in Writing, under their Hands certify the fame to the Captain, or commanding Officer in whofe Company fuch Perfon may be, and fhall at the Expence of fuch Town provide for, furnifh, arm and equip fuch Perfons with Arms and Equipments ; which Arms fo provided by fuch Selectmen, fhall be the Property of the Town at whofe Expence they fhall be provided ; and if any Non-commiffioned Officer or Soldier, fhall embezzle or deftroy the fame, he fhall be punifhed at the Difcretion of the Juftice, or Court be-

**Penalty for embezzlement.** fore whom he may be convicted thereof, paying double the Value of the Arms, or Accoutrements fo wilfully deftroyed or embezzled, and on Default thereof, to be publickly whipped not exceeding twenty Stripes : And the Selectmen of each and every Town fhall provide at the Expence of the Colony and depofit and keep in fome fafe Place for the ufe of the Militia upon an Alarm, one fixteenth Part fo many Spades, or Iron Shovels with Handles and fitted for Service, as there are Rateable Polls in their Town ; one half as many narrow Axes, as Spades and Iron Shovels, and as many Pick Axes, as narrow Axes, all fitted for Service ; And at the coft and charge of their refpective Towns, one Drum and one Fife for each company therein. And the Freeholders and Inhabitants of each and every Town in this Colony, qualified by Law to vote in Town Meetings, are hereby impowered at a Meeting regularly warned for that Purpofe, to raife Money by Tax on the Polls and Eftates of the Inhabitants of their Towns to defray all charges arifing on faid Towns in confequence of this Act.

**Penalty on commiffion officers neglecting to equip themfelves.** 7th. *And be it further enacted by the* AUTHORITY *aforefaid,* That each and every commiffion Officer of faid Militia, who fhall not within one Month next after receiving his Commiffion, provide for, arm and equip himfelf, with fuch Arms and Accoutrements, as is by this Act directed, fhall by order of a Court Martial appointed, as by this Act is provided, be removed from his Office. And every commiffioned Officer, who fhall be depofed from his Office in the Militia for neglect of Duty, or other Mifdemeanor, as by this Act is provided, fhall receive no Benefit from any Commiffion, which he fhall be thus incapacitated to execute to exempt him from Military Duty.

Eighth. *And be it further Enacted,* That the Clerk of each and every Company of faid Militia, fhall once every fix Months after the Time of his Choice or Appointment, take an exact Lift of

ADD0245



Content downloaded/printed from

[HeinOnline](HeinOnline)

Tue Dec 31 11:04:20 2019

Citations:

Bluebook 20th ed.
1792 423 .

ALWD 6th ed.
1792 423 .

Chicago 7th ed.
, "," New Hampshire - General Court, November Session : 423-451

OSCOLA 4th ed.
, " 1792 423

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



Amherſt, in the county of Hillſborough, in ſaid State, on the ſecond Tueſday of May, ſhall forever hereafter be holden at Hopkinton in ſaid county, on the ſecond **At Hopkinton.** Tueſday of May annually. And the courts of common-pleas, which by law are to be holden at ſaid Amherſt, on the firſt Tueſday of September, and on the ſecond Tueſday of December, ſhall forever hereafter be holden at ſaid Hopkinton, on ſaid days annually. And the courts of general-ſeſſions of the peace, which by law are to be holden at ſaid Amherſt, on the Thurſday next following the firſt Tueſday of September, ſhall forever hereafter be holden at ſaid Hopkinton, on the Thurſdays next following the firſt Tueſday of September annually.

*And be it further enacted,* That the act entitled, **Repealing claufe.** " An act for eſtabliſhing courts of law for the adminiſtration of Juſtice within this State, and deſignating their powers, and regulating their proceedings in certain caſes," ſo far as the ſaid act relates to holding ſuch of the aforeſaid courts at Amherſt, which by this act are directed in future to be holden at ſaid Hopkinton, be, and hereby is repealed.

*And be it further enacted,* That all writs, venires, **Writs, &c. to be ſuſtained by ſaid courts at Hopkinton.** recognizances, appeals, actions, indictments, warrants and proceſs of every kind, which by law were returnable to ſaid courts at Amherſt, which by this act are to be holden at ſaid Hopkinton, ſhall be returned to, and ſuſtained by ſaid courts at ſaid Hopkinton.

*And be it further enacted,* That the ſeveral courts **Courts where to be holden.** aforeſaid, which are to be holden at ſaid Hopkinton, ſhall be holden in, or as near the meeting-houſe in ſaid town as conveniently may be.

*And be it further enacted,* That this act, at the expiration of two years from the paſſing thereof, ſhall be null and void, unleſs a ſuitable houſe for holding ſaid courts, be erected at ſaid Hopkinton within that time, without being a county charge.

This act paſſed December 25, 1792.

---

**Paſſed Dec. 27, 1792.** An ACT for arranging the militia into diviſions.

**B**E *it enacted by the Senate and Houſe of Repreſentatives in General-Court convened,* That the militia of this State be arranged into diviſions, brigades and regiments,

ADD0247.

Digitized from Best Copy Available

*And be it further enacted,* That each non-commission-
ed officer and soldier belonging to the regiments of
foot, shall within one year from and after the passing
this act, furnish himself with a good fire-lock, bayonet
and belt, a cartouch box that will contain twenty-four
cartridges, two good flints, a knapsack and canteen—
and that the commissioned belonging to companies of
foot, shall be severally armed with a sword or hanger,
and an espontoon, and that the field officers be armed
with a sword or hanger.

*How to be armed and accoutred.*

*And be it further enacted,* That such of the infantry
as are under the care of parents, masters or guardians,
shall be furnished by them with such arms and accou-
trements. And such as are unable to furnish themselves,
shall make application to the selectmen of the town,
who are to certify to their captain or commanding of-
ficer, that they are unable to equip themselves, and
the said selectmen shall, at the expence of the town,
provide for, and furnish such persons with arms and
equipments; which arms and equipments shall be the
property of the town, at whose expence they were
provided: And if any person so furnished, shall em-
bezzle or wilfully destroy the same, he shall be punish-
ed by any court proper to try the same, upon com-
plaint made by the selectmen of said town, by being
publicly whipped not exceeding twenty stripes, or fi-
ned not exceeding forty shillings. And that all fines
recovered for embezzling or destroying of arms and
accoutrements as provided in this act, shall be paid in-
to the hands of the selectmen to be appropriated in
purchasing arms and accoutrements for such soldiers
as are unable to purchase for themselves.

*Those unable &c. to be e-quipped at the expence of the town.*

*Fines how to be appropri-ated.*

*And be it further enacted,* That parents, masters and
guardians shall be liable for the neglect and non-ap-
pearance of such persons as are under their care (and
are liable by law to train) and are to be proceeded
against for the penalty in the same manner, as by this
act is provided against other delinquents.

*Parents, &c. liable to a penalty.*

*And be it further enacted,* That the commander in
chief, the officers commanding divisions, brigades or
regiments, may appoint military watches or guards
when an invasion of the State is apprehended, in such
place and under such regulations as they may judge
necessary; and all officers and soldiers under their com-
mand

*Military watches, by whom to be appointed.*

ADD0248

Digitized from Best Copy Available



Content downloaded/printed from                    [HeinOnline](HeinOnline)

Tue Oct 29 17:02:05 2019

Citations:

Bluebook 20th ed.
1836 vol. 35 3 .

ALWD 6th ed.
1836 vol. 35 3 .

Chicago 7th ed.
, "," Ohio - 35th General Assembly, General Acts : 3-122

OSCOLA 4th ed.
, '' 1836 vol 35 3

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
    Conditions of the license agreement available at
    *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



## 18

Every able bodied white male citizen to be enrolled in the militia, and equip themselves.
Sec. 1. *Be it enacted by the General Assembly of the* State *of Ohio,* That each and every able bodied white male citizen of the United States, who resides in this State; who now is or hereafter shall be, of the age of eighteen years and under forty-five years of age, except as hereinafter excepted, shall be enrolled in the militia of this State for the purpose of performing military duty, and be equiped as hereinafter provided.

Captain or commandant of company to enroll; to notify new members of the time and place of muster, unless herein exempted.
Sec. 2. That it is hereby made the duty of the captain or commandant of each company, within the bounds of whose company each person may reside, within ten days next after he shall be informed of such residence, and at all times hereafter, such commanding officers shall enroll each person aforesaid, and cause him to be notified of the same, and of the time and place of muster, and also of those who may from time to time, arrive at the age of eighteen years, and being under the age of forty-five years, excepting as hereinafter excepted, who shall come to reside within the bounds of said company.

The State organized into 23 Divisions.

What counties compose each Division.
Sec. 3. That the militia of this State shall be organized into divisions as follows, viz: The county of Hamilton shall form the first division; the counties of Pike, Jackson, Lawrence and Scioto, shall form the second division; the counties of Coshocton, Knox, Holmes and Tuscarawas, shall form the third division; the counties of Perry, Licking and Morgan, shall form the fourth division; the counties of Clark, Champaign and Greene, shall form the fifth division; the counties of Columbiana, Stark and Carroll, shall form the sixth division; the counties of Fairfield, Hocking, Franklin and Pickaway, shall form the seventh division; the counties of Adams, Brown and Clermont, shall form the eighth division; the counties of Cuyahoga, Lorain, Medina and Wayne, shall form the ninth division; the counties of Montgomery, Dark of Miami and Shelby, shall form tenth division; the counties of Richland, Huron and Crawford, shall form the eleventh division; the counties of Logan, Hardin, Allen, Mercer and Vanwert. shall form the twelfth division; the counties of Madison, Union, Delaware and Marion, shall form the thirteenth division; the counties of Jefferson and Harrison, shall form the fourteenth division; the counties of Muskingum and Guernsey, shall form the fifteenth division; the counties of Ross, Highland, Clinton and Fayette, shall form the sixteenth division; the counties of Sandusky, Seneca, Hancock and Putnam, shall form the seventeenth division; the counties of Lucas, Wood, Henry, Williams and Paulding, shall form the eighteenth division; the counties of Butler, Preble and Warren, shall form the nineteenth division; the counties of Portage and Trumbull, shall form the twentieth division; the counties of Ashtabula, and Geauga, shall form the twenty-

ADD0250

superceded by a regular contractor or purchasing commissary, shall deliver over to such contractor or commissary, all supplies he may have on hand, and the contractors and commissaries shall be bound to receive the same and receipt therefor to such special commissary at the prices given for such articles, with the additional expense incurred thereon at the time of delivery, which receipt shall be deposited with the Auditor of State, and the amount thereof charged to such regular contractor or commissary.

Sec. 73. That if any suit or suits shall be brought or commenced against any person or persons for any thing done in pursuance of this act, the defendant may plead the general issue, and give this act and the special matter in evidence. *Suits bro't for any thing done in pursuance of this act, &c*

Sec. 74. That all the public arms, ammunition, accoutrements, camp equippage and military stores belonging to any division of the militia of this State, shall be under the care and superintendence of the assistant quarter master general of such division, who shall have power to employ suitable persons to clean and repair any arms or articles which may require it, and certify any reasonable and just account which may be rendered for cleaning and repairing, and for transporting such arms and military stores to any place where they may be ordered by the commander-in-chief of divisions, which account thus certified shall be allowed by the Auditor of State, and paid as other accounts against the State are paid; and such assistant quarter master general shall receipt for all articles delivered to his charge, and account for the same at any time when called on so to do, by the commandant of division or quarter master general of this State. *Quar. master of div. to take charge of and superintend all public ar's, ammunition, military stores and property of his division His further duty.*

Sec. 75. That if any person shall sell or dispose of any of the public arms or any other camp equippage, or other property belonging to the State, every person so offending, shall forfeit and pay for every musket, sabre or pistol, or other article, double the value of the cost of such arms or other property, to be recovered by action of debt before any justice of the peace or other court having jurisdiction of the amount, in the name of the quarter masters of the proper regiment, squadron or battalion, on complaint of any person who may prosecute for the same; and all fines and forfeitures collected by virtue of the provisions of this section, shall be paid by the justice to the proper quarter master, and be by him transmitted to the paymaster general of the militia of this State. *Any person selling public arms or other property belonging to the State, shall forfeit, &c. How collected How fines are disposed of.*

Sec. 76. That when a part of the militia of this State shall be called into actual service, and arms shall be wanted for their use, the commander-in-chief of division or brigade may call from any volunteer company which does not volunteer their services, any or all the public arms in possession of such company, and place or cause the same to be placed in the hands of those who volunteer or are drafted for actual service. *When arms are wanted for service, they may be recalled from volunteer corps, who do not volunteer.*

Sec. 77. That the militia of this State, when in actual ser-



Content downloaded/printed from          *HeinOnline*

Thu Nov  7 17:27:29 2019

Citations:

Bluebook 20th ed.
Laws of the State of Vermont, Digested and Compiled: Including the Declaration of
Independence, the Constitution of the United States, and of this State (1808).

ALWD 6th ed.
Ls of the State of Vermont, Digested & Compiled: Including the Declaration of
Independence, the Constitution of the United States, & of this State (1808).

APA 6th ed.
(1808). Laws of the State of Vermont, Digested and Compiled: Including the
Declaration of Independence, the Constitution of the United States, and of this
State. Randolph Vt., Printed by Sereno Wright.

Chicago 7th ed.
Laws of the State of Vermont, Digested and Compiled: Including the Declaration of
Independence, the Constitution of the United States, and of this State. Randolph Vt.,
Printed by Sereno Wright.

McGill Guide 9th ed.
, Laws of the State of Vermont, Digested and Compiled: Including the Declaration of
Independence, the Constitution of the United States, and of this State (Randolph Vt.:
Printed by Sereno Wright., 1808)

MLA 8th ed.
Laws of the State of Vermont, Digested and Compiled: Including the Declaration of
Independence, the Constitution of the United States, and of this State. Randolph Vt.,
Printed by Sereno Wright. HeinOnline.

OSCOLA 4th ed.
Laws of the State of Vermont, Digested and Compiled: Including the Declaration of
Independence, the Constitution of the United States, and of this State. Randolph Vt.,
Printed by Sereno Wright.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
    Conditions of the license agreement available at
    *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.
Use QR Code reader to send PDF to your smartphone or tablet device



ADD0252

# CHAPTER LXXXI.

### OF THE MILITIA.

### Nº 1.

Paffed March 20, 1797.

*AN ACT, for regulating and governing the militia of this ftate.*

SECT. 1. I T *is hereby enacted by the General Af-*
*fembly of the State of Vermont,* That
each and every free, able-bodied white male citi-
zen of this ftate, or of any other of the United
States refiding within this ftate, who is or fhall be
of the age of eighteen years, and under the age
of forty-five years (excepting as is herein after ex-
cepted) fhall feverally and refpectively be fubject
to the requifitions of this act, and fhall be enroll-
ed in the militia, by the captain or commanding
officer of the company, within whofe bounds fuch
citizen fhall refide, within three months from and
after the paffing of this act. And it fhall be at all
times hereafter the duty of the commanding of-
ficer of every fuch company, to enrol every fuch
citizen as aforefaid, and alfo thofe who fhall from
time to time arrive at the age of eighteen years,
of being of the age of eighteen years and under
the age of forty-five years, and not herein after
excepted, fhall come to refide within his bounds ;
and fhall without delay notify fuch citizen of the
enrolment, by a non-commiffioned officer or other
perfon duly authorized for that purpofe, by whom
fuch notice may be proved. And in all cafes of
doubt refpecting the age of any perfon enrolled
or intended to be enrolled ; the party queftioned
fhall prove his age, to the fatisfaction of the com-
manding officer of the company within whofe
bounds he may refide.

*Militia, how and by whom to be enrolled.*

ADD0253

*Militia.*

act, shall be such as the brigadier generals, within their respective brigades, shall direct.

SECT. 14.——That every non-commissioned officer and private of the infantry, shall constantly keep himself provided with a good musket, with an iron or steel rod, a sufficient bayonet and belt, two spare flints, a priming wire and brush, and a knapsack, a cartridge box and pouch with a box therein sufficient to contain at least, twenty-four cartridges, suited to the bore of his musket ; and shall appear so armed, accoutred and provided, whenever called out : *excepting*, that when called out to exercise only, he may appear without a knapsack.

*Non-comm. and privates, how armed & accoutred.*

*Provided always*, That every citizen enrolled, and providing himself with arms, ammunition and accoutrements, required, as aforesaid, shall hold the same exempted from all suits, distresses, executions or sales, for debt, or for payment of taxes.

*Arms and accoutrements exempt from execution.*

SECT. 15.——That every non-commissioned officer or private of the infantry, who shall neglect to keep himself armed and equipped, as aforesaid, or who shall on a muster day, or at any other time of examination, be destitute of, or appear unprovided with, the arms and equipments herein directed (excepting as before excepted ;) shall pay a fine, not exceeding *seventeen cents* for a gun, and *eight cents* for every other article, in which he shall be deficient : at the discretion of the court, before whom trial shall be had. And all parents, masters or guardians, shall furnish those of the said militia who shall be under their care and command, with the arms and equipments above mentioned, under the like penalties for any neglect. And when the selectmen of any town shall judge any inhabitant thereof belonging to the militia, unable to arm and equip himself, in manner aforesaid ; they shall, at the expense of the town, provide for and furnish such inhabitant with the aforesaid arms, and equipments : which shall remain the property of the town, at the expense of which they shall be provided. And if any sol-

*Non-commissioned officers and soldiers fined, for not being equip'd.*

*Parents and guardians to furnish arms.*

*Selectmen to furnish, for poor soldiers.*

ADD0254

**Penalty for embezzlement.**

dier shall embezzle or destroy the arms, and equipments, with which he shall be furnished; he shall, upon conviction as aforesaid, be judged to replace the articles which shall be by him so embezzled or destroyed, and to pay the costs arising from the process against him. And if he shall not perform the same, within fourteen days after such adjudication, it shall be in the power of the selectmen of the town, to which he shall belong, to bind him out to service or labor, for such term of time, as, in the discretion of the said selectmen, shall be sufficient to procure a sum of money, equal to the value of the article or articles so embezzled or destroyed ; and pay costs, arising as aforesaid.

**Fines for sundry delinquencies.**

SECT. 16.——That every person liable to do military duty, who being duly warned, shall refuse or neglect to appear, at the time and place appointed, armed and equipped as by this act is directed, for any muster, training, view of arms or other military duty ; shall pay as a fine for such default, the sum of *two dollars.* And every person who shall appear at any muster, with his arms in an unfit condition, shall pay a fine of *twelve cents*, for each and every such default.

**Proviso.**

*Provided nevertheless,* That it shall be lawful for the commanding officer of a company, at any time, within eight days after any muster, training, view of arms, or other duty, to excuse any person for non-appearance, or for any deficiency of equipments, on the delinquent's producing to him satisfactory evidence of his inability to appear, or equip, as aforesaid.

**2d proviso.**

*Provided,* That if such delinquent had sufficient cause of absence, and should neglect to make his excuse within the eight days aforesaid ; upon a prosecution, he shall be liable to pay costs, at the discretion of the court before whom the cause is tried.

[☞ *The two provisos of this section, repealed : See present chap.—Act* N°. 8.]

**Companies how warned.**

SECT. 17.——That when the commanding officer of a company shall think proper to call his

ADD0255

BACKGROUNDS OF SELECTIVE SERVICE

# Military Obligation:

# THE AMERICAN TRADITION

*A Compilation of the Enactments of Compulsion*

*From the Earliest Settlements*

*of the Original Thirteen Colonies in 1607*

*Through the*

*Articles of Confederation 1789*

SPECIAL MONOGRAPH NO. 1

VOLUME II

PART 11.  PENNSYLVANIA ENACTMENTS

THE U.S. SELECTIVE SERVICE SYSTEM

1947

Generated on 2021-09-29 14:07 GMT / https://hdl.handle.net/2027/hvd.32044032422685
Public Domain, Google-digitized / http://www.hathitrust.org/access_use#pd-google

Digitized by Google

Original from
HARVARD UNIVERSITY





See also original
pp. 23, 24                    ( 22 )

1777. Affeſſors required, in the ſame manner, and under the ſame penalties, as ſet forth in the Act
to which this is a Supplement, and the Freeholders of the ſeveral Diſtricts in the ſaid Coun-
ty are, on the day which the ſaid Commiſſioners and Affeſſors ſhall appoint, for the purpoſe
of electing, to proceed to the election of the Juſtices of the Peace in their reſpective Dif-
tricts, in the ſame manner as is by the ſaid Act directed for electing Juſtices, who, when
choſen, ſhall be held and deemed as legally elected, as if the ſame had been done on the
day appointed by the ſaid Act, any thing therein contained to the contrary notwithſtanding.

A N D   W H E R E A S  many of the Militia of Northampton and other Counties, are
now, and ſome others may be in actual ſervice, whereby ſeveral of the Diſtricts in the ſaid
County have been, or may be deprived of their right in the choice of their Juſtices of the
Peace, according to the intention of the ſaid Act.  *Be it therefore further enacted by the au-
thority aforeſaid,* That it ſhall and may be lawful for the Commiſſioners and Affeſſors, or
any five of them of the ſaid County of Northampton, or ſuch other Counties as aforeſaid, to
advertize the Freeholders of ſuch Diſtrict or Diſtricts to meet together on the third Tueſday
in April next, at ſome convenient place within the ſaid Diſtricts reſpectively, in order to
chooſe their Juſtices of the Peace, that they may be commiſſioned accordingly, and if the
Freeholders of any Townſhip or Townſhips in this State, which by the ſaid Act is made a
Diſtrict, ſhall neglect to elect Juſtices on the day therein mentioned, the Freeholders of
every ſuch Diſtrict, are hereby authorized to appoint ſuch time and place as may ſuit their
conveniency, within three months hereafter, and elect Juſtices as by the ſaid Act is directed.

A N D   W H E R E A S  the Freeholders of ſeveral of the Wards in the City of Philadel-
phia, have neglected to elect Juſtices of the Peace, as by the ſaid Act was directed, and it may
happen that ſome other parts of the State may alſo neglect to elect Juſtices, at the time in
the ſaid Act and by this Act directed.  *Be it enacted by the authority aforeſaid,* That where
any ſuch neglect has been or may be, at the time by the above recited Act, or by this Act
directed for the election of Juſtices, for any Diſtrict in any or either of the ſaid Counties, the
Commiſſioners and Affeſſors of ſuch County or Counties, or any five of them (in ſuch
County or Counties where they are directed ſo to do by the ſaid Act) are hereby enjoined and
required to appoint a time and place for election of Juſtices of the Peace for ſuch Diſtrict,
and give notice thereof to the Freeholders, who ſhall hold the ſaid election, and in all things
relating thereto, act and do agreeable to the directions of the Act, to which this Act is a
Supplement, and when they ſhall have elected Juſtices, they ſhall be deemed and taken to
be Juſtices of the Peace, as is in and by the ſaid Act declared.

A N D   W H E R E A S  it has been repreſented to this Aſſembly, that the inhabitants
of the Borough of Cheſter expreſs a diſſatisfaction that they have but one Juſtice of the Peace
allotted to them, inaſmuch as other Boroughs have more,  A N D   W H E R E A S  it may
happen that ſome Diſtrict or Diſtricts may yet neglect to elect Juſtices notwithſtanding this
Act.  *Be it therefore enacted by the authority aforeſaid,* That in any or either of the ſaid caſes, on
application being made in writing, by twenty or more of the Freeholders of the Borough of
Cheſter, or of any ſuch other Diſtrict, to the Preſident of this State, it ſhall be lawful for
the Preſident in Council, to appoint and commiſſionate one or more Juſtice or Juſtices of the
Peace as the caſe may require, for the ſaid Borough or Diſtrict reſpectively, any thing in this,
or the Act to which this is a Supplement, to the contrary notwithſtanding.

                                    J O H N   J A C O B S,  Speaker.

Passed  March 15th, 1777.

    J O H N   M O R R I S, Junior, Clerk of the General Aſſembly.

_____

*An*  A C T  *to regulate the Militia of the Common-Wealth of Pennſylvania.*

W H E R E A S  a Militia Law upon juſt and equitable principles, hath ever been re-
garded as the beſt ſecurity of Liberty, and the moſt effectual means of drawing
forth and exerting the natural ſtrength of a State :  A N D   W H E R E A S  it is the in-
diſpenſible duty of the Freemen of this Common-Wealth, to be at all times prepared to re-
ſiſt the hoſtile attempts of it's enemies, and more eſpecially now, when America is invaded
by a powerful army of Britiſh and Foreign Mercenaries, and the freedom handed down by
our virtuous anceſtors, may be in danger of being wreſted from us, unleſs the ſtrongeſt and
moſt immediate efforts are made for it's ſupport.                                              Be

131.  Pa.—*General Assembly, Philadelphia; Acts, Mar. 1777, Dunlap; Act,*
*Mar. 17, 1777, pp. 22–30.*                                                          31

733972 O - 47 - 3

Generated on 2021-09-29 14:10 GMT / https://hdl.handle.net/2027/hvd.32044032422685
Public Domain, Google-digitized / http://www.hathitrust.org/access_use#pd-google

Digitized by Google                    Original from
                                      HARVARD UNIVERSITY

ADD0257

( 23 )

*Be it enacted,* and it is hereby enacted by the Reprefentatives of the Freemen of the 1777. Common-Wealth of Pennfylvania in General Affembly met, and by the authority of the fame, That the Prefident, or, in his abfence the Vice-Prefident of the Supreme Executive Council of this Common-Wealth, fhall commiffionate one reputable Freeholder in the City of Philadelphia, and one in each County within this State, to ferve as Lieutenant of the Militia for the faid City and Counties refpectively, who, befides the powers which are given him by this Act, fhall have the title and rank which the Prefident and Council fhall confer; and alfo any number of perfons not exceeding five for the faid City and each County, qualified as aforefaid, to ferve as Sub-Lieutenants in the faid City and Counties refpectively, which faid Lieutenant and Sub-Lieutenants fhall be refpectively nominated by this Houfe ; and which Lieutenant, or in his abfence or incapacity, two or more Sub-Lieutenants, fhall have full power and authority to do and perform, all and fingular the duties required of them by this Act, except in cafes where a greater number is hereby directed to join together to perform any fervice.

*And be it further enacted by the authority aforefaid,* That the faid Lieutenants or Sub-Lieutenants, as aforefaid, fhall iffue his or their warrant to the Conftable of each Town-fhip, Borough, Ward or Diftrict in the faid City and Counties refpectively, or to fome other fuitable perfon, commanding him in the name of this Common-Wealth to deliver to him or them the faid Lieutenant or Sub-Lieutenants, within ten days from and after the date of the faid warrants (unlefs the Lieutenant or Sub-Lieutenants fhall judge a longer time to be neceffary, which he is hereby impowered to grant) on oath or affirmation, which they are alfo hereby impowered to adminifter, a true and exact lift of the names and fir-names of each and every male white perfon, ufually inhabiting or refiding within his Townfhip, Borough, Ward or Diftrict, between the ages of eighteen and fifty-three years, capable of bearing arms, Delegates in Congrefs, Members of the Executive Council, Judges of the Supreme Court, Mafters and Faculty of Colleges, Minifters of the Gofpel (or Clergy) of every denomination, and fervants purchafed bona fide, and for a valuable confideration, only excepted.

*And be it further enacted by the authority aforefaid,* That the Lieutenant or Sub-Lieutenants as aforefaid, within five days after they fhall become poffeffed of the lifts aforefaid, fhall divide the City and Counties refpectively into Diftricts, each Diftrict to contain not lefs than four hundred and forty, nor more than fix hundred and eighty privates, at the difcretion of the Lieutenant, and fub-divide the faid Diftricts into eight parts as nearly equal as may be, paying due regard in each divifion to the convenience of the inhabitants. *Provided always,* that nothing in this Act contained fhall be conftrued to include any of the Artillery Companies or Troops of Light Horfe, already formed within this State, nor fhall prevent or reftrain the faid Lieutenants refpectively from forming a fuitable number of other companies of Artillery and Troops of Light Horfe in convenient places throughout the fame : And the faid Lieutenants fhall give public notice by advertifements at ten or more of the moft public places in the faid Diftricts refpectively, of the faid divifions being made, and appointing a certain day for each Diftrict, not lefs than five days after the faid notice, and requiring the male white inhabitants between the ages aforefaid, refiding in the faid divifions refpectively to meet at a certain place as near the center of the faid divifion as may be, and then and there, between the hours of ten in the morning and fix in the afternoon of the faid day, to elect by ballot, three Field Officers (that is to fay, one Colonel, one Lieutenant-Colonel, and one Major) each of whom fhall be a Freeholder, and the inhabitants of the faid fub-divifions refpectively fhall elect by ballot as aforefaid, on the fame or fome other convenient day as foon as poffible afterward to be appointed by the Lieutenant, one Captain, two Lieutenants, one Enfign, and two perfons to be ftiled Court-Martial Men, who fhall refpectively be fuch perfons as are intitled to vote for members to ferve in the General Affembly ; and each of the faid Captains fhall appoint a fuitable perfon for a Clerk in his company. And the faid Lieutenant, or in his abfence two or more of the faid Sub-Lieutenants, fhall attend and fuperintend each and every of the faid battalion elections, and fhall caufe the Colonels fo elected in the City and Counties refpectively to meet together as foon as may be, and caft lots for rank of their battalions, and the rank of the officers in each battalion fhall be determined by the lot drawn by their refpective Colonels : And the Captains fo elected in the fub-divifions, fhall meet and caft lots for their rank in the battalion to which they belong ; and the rank of the Subaltern Officers of each company fhall be determined by the lot drawn by their refpective Captains ; and the faid Lieutenants fhall, within ten days, or as foon as may be, having regard to their local fituations, tranfmit proper certificates to the Prefident of the Executive Council, of the names of the perfons fo as aforefaid elected, and their rank, both of battalion and com-

G
panies

32

Generated on 2021-09-29 14:13 GMT / https://hdl.handle.net/2027/hvd.32044032422685
Public Domain, Google-digitized / http://www.hathitrust.org/access_use#pd-google

Digitized by Google          Original from
HARVARD UNIVERSITY

ADD0258

( 24 )

Generated on 2021-09-29 14:13 GMT  /  https://hdl.handle.net/2027/hvd.32044032422685
Public Domain, Google-digitized  /  http://www.hathitrust.org/access_use#pd-google

**1777.** panies in the several battalions, in order that commissions may forthwith be granted to them, agreeable to the said certificates. And no Militia Officer shall be required to take and subscribe any oath or affirmation at this time, to qualify him to receive a commission to act in the character to which he shall be elected.

*And be it further enacted by the authority aforesaid,* That if any battalion or battalions, company or companies, shall neglect or refuse to elect their officers as aforesaid, it shall be lawful for the Lieutenant, with the advice and consent of two or more of the Sub-Lieutenants of such County where such neglect or refusal shall be, to appoint such officers so neglected to be chosen, and certify the same to the President of the Council as aforesaid, which shall be as effectual to all intents and purposes, as if the said officers had been elected as first before directed ; and the said Lieutenant shall, as soon as may be, acquaint the parties so neglecting or refusing, with the appointments so as aforesaid made, and the said several and respective officers elected or appointed as aforesaid, shall respectively serve as officers of the Militia for the space of three years, at the end of which time, the Lieutenant of the City and Counties respectively, in the manner herein before directed, shall cause a new election to be held in the said City and Counties respectively. But nothing herein contained, shall be construed to render any of the former officer or officers incapable of being re-elected.

*And be it further enacted by the authority aforesaid,* That the rank or precedence of the officers of the City of Philadelphia, and of the several Counties in this Common-Wealth, shall be determined as follows, that is to say, Officers of the City of Philadelphia, the District of Southwark, the Townships of the Northern Liberties, Moyamensing, and Passyunk, to take rank or precedence of all other officers of equal dignity in this State, and next to them the officers of the County of Philadelphia, and so on according to the seniority of the Counties respectively.

*And be it further enacted by the authority aforesaid,* That the several Lieutenants aforesaid, shall, within three days after the respective elections aforesaid, cause the several companies of Militia in their respective precincts, to be divided by lot into eight parts, to be called Classes, as nearly equal as may be, and numbered from one to eight in numerical order, and the said Captains shall cause the names and first names of the persons in the respective companies, with the Class to which each belongeth, to be returned to the said Lieutenants respectively, at such time as they shall appoint, within six days after such divisions are made.

*And be it further enacted by the authority aforesaid,* That the whole of the Militia so enrolled as aforesaid, shall be subject to be exercised in companies under their respective officers as followeth, that is to say, on the two last Mondays in the month of April, and the three first Mondays in the month of May ; and in battalion on the fourth Monday in May ; and in companies on the two last Mondays in the month of August, and the two last Mondays in the month of September, and the third Monday in the month of October ; and in battalion on the fourth Monday in October ; and on each of which days every Militia-Man so enrolled, shall duly attend with his arms and accoutrements in good order, and a Serjeant or Clerk of each company is required at the end of one hour after the time appointed for the meeting of the company or battalion, to call over the muster roll of the company, noting those who are absent, and on that day shall make return in writing to the Captain or Commanding Officer then present, of such absentees, and all persons so absent at the time of calling over the roll, or shall depart from the parade before duly discharged, shall be liable to the fines hereafter mentioned.

*And be it further enacted by the authority aforesaid,* That if any Commissioned Officer shall neglect or refuse to attend on any of the days appointed for exercise, in companies as aforesaid, (unless prevented by sickness or some other unavoidable accident) such Commissioned Officer shall forfeit and pay the sum of Ten Shillings per day, and any Non-Commissioned Officer or Private, and all enrolled persons, so refusing or neglecting, (excepting as before excepted) shall forfeit and pay the sum of Five Shillings per day ; and if on a field day, or meeting in battalion, then, if a Field Officer, he shall forfeit and pay the sum of Five Pounds per day, and a Commissioned Officer, under that rank, the sum of Fifteen Shillings per day ; and if a Non-Commissioned Officer or Private, and enrolled person, refusing to meet and exercise, the sum of Seven Shillings and Six Pence, per day, (excepting as before excepted) the names and surnames of all which persons, so incurring the said fines and penalties ; except such as may have paid the same into the hands of the Captain or Commanding Officer of the company) shall be duly returned by the Captain or Commanding Officer of each company, under his hand, together with such fines as he has received to the Colonels of the battalions respectively on each field day, which said Colonel or Commanding Officers of battalions, shall, on receipt of such fines and returns, forthwith transmit the same to the Lieutenant of the County, and the said Lieutenant shall, immediately after the said returns are respectively made to him, cause the same to be respectively recovered, before one Justice of the Peace, nearest the place where the delinquents do respectively reside, as debts under Forty Shillings are by Law directed to be recovered ; and the said Lieutenant shall, twice in each year, transmit the said fines, when collected, into the hands of the County Treasurer, who shall pay the same into the hands of the State Treasurer, for the use of the State.

*And be it further enacted by the authority aforesaid,* That the master or mistress of any apprentice, and the father or mother of any minor, who shall refuse or neglect to attend as aforesaid, being in the service of his father or mother, master or mistress, shall be accountable for the fine or fines so incurred by such minor or apprentice.

*And*

**33**

Digitized by 

Original from
HARVARD UNIVERSITY

ADD0259

( 25 )

*And be it further enacted by the authority aforesaid,* That it shall and may be lawful for the Executive Council, in case of invasion or rebellion within this State, or in case the affistance of the Militia of this State shall be requested by Congrefs to affist the Continental Army in this or any of the adjoining States, to call into actual fervice fuch part of the Militia by Claffes as aforefaid, as to them shall feem neceffary, the first draft to be compofed of the Clafs number One of each company, and in case the first draft shall not be fufficient for the exigency, then the Clafs number Two fhall be drawn, and fo on by Claffes from time to time as occafion may require: And to the end that each particular draft may be fuitably officered, the following order is hereby directed and enjoined, that is to fay.—For the first draft. The Captain of the first company, the First Lieutenant of the fecond company, the Second Lieutenant of the third company, and the Enfign of the fourth company.    For the fecond draft.    The Captain of the fecond company, the First Lieutenant of the first company, the fecond Lieutenant of the fourth company, and the Enfign of the third company.    For the third draft.    The Captain of the third company, the First Lieutenant of the fourth company, the Second Lieutenant of the first company, and the Enfign of the fecond company.    For the fourth draft.    The fourth Captain, the First Lieutenant of the third company, the Second Lieutenant of the fecond company, and the Enfign of the first company.    For the fifth draft.    The fifth Captain, the First Lieutenant of the fixth company, the Second Lieutenant of the feventh company, and the Enfign of the eighth company.    For the fixth draft. The fixth Captain, the First Lieutenant of the fifth company, the Second Lieutenant of the eighth company, and the Enfign of the feventh company.    For the feventh draft.    The Captain of the feventh company, the First Lieutenant of the eighth company, the Second Lieutenant of the fifth company, and the Enfign of the fixth company.    For the eighth draft.    The Captain of the eighth company, the First Lieutenant of the feventh company, the Second Lieutenant of the fixth company, and the Enfign of the fifth company.    Non-commiffioned Officers to take their rour of duty with the Commiffioned Officers.    And the Field Officers of battalions in the City of Philadelphia, and in each County of the State, fhall be divided in like manner, and each Clafs to be confidered as detachments from different corps, liable to ferve two months, and to be relieved by the Clafs next in numerical order, the relief to arrive at leaft two days before the expiration of the term of the Clafs to be relieved, but nothing herein contained fhall prevent the Supreme Executive Council from employing, or calling out one half of any battalion, where it may be convenient, or one half of any company, without refpect to this rule, whenever the exigency is too fudden to allow the affembling the fcattered Militia, which compofe the particular Claffes :  And the Militia in actual fervice fhall receive the fame pay and rations as Continental troops, their pay to commence two days before their marching,  and receive pay and rations at the rate of twenty miles per day, till they return home.

*Provided always, and be it further enacted by the authority aforefaid,* That if after the regulation aforefaid, it fhould fo happen, that fubftitutes cannot be found for all the enrolled Militia upon the faid limitted drafts, then and in fuch cafe each and every of the perfons who cannot yield their perfonal fervice as aforefaid, nor find fubftitutes, fhall pay fuch fum or fums of money as each of the fubftitutes included in the faid drafts will amount unto upon an average, within each refpective battalion.    *Provided alfo,* That no Militia-Man having perfonally, or by fubftitute, ferved in the Militia, fhall be obliged to ferve again until by rotation it comes to his turn.

*Provided always, and be it further enacted by the authority aforefaid,* That no officer ferving in the Militia, when called out into actual fervice, fhall fit in any Court-Martial upon the trial of any officer or foldier ferving in any of the Continental forces ; nor fhall any officer ferving in any of the Continental forces or other troops, in any other of the United States, fit in any Court-Martial upon the trial of any officer or private man ferving in the Militia of this State.

*And be it further enacted by the authority aforefaid,* That when any part or parts of the Militia fhall be called into actual fervice, every perfon enrolled as aforefaid, who is not an officer, fhall have it in his choice either to ferve in perfon or to find a fufficient perfon for a fubftitute, which faid fubftitute fhall be approved of by the Lieutenant, Sub-Lieutenant, or by one of the Field Officers of the battalion to which he belongs ; and if an officer, he fhall find as a fubftitute an officer of equal rank to be approved of by the Lieutenant of the County :  But if any perfon fhall neglect or refufe to ferve, or find fuch fufficient fubftitute in his place, within three days after notice given to him, the Lieutenant or Sub-Lieutenant of the County neareft to where fuch delinquent refides, fhall, and he is hereby required to provide, hire or procure, on as reafonable terms as may be, a fubftitute for fuch perfon fo refufing or neglecting,  and to charge fuch fum or fums, together with reafonable expences for procuring the fame, to fuch delinquent, to be recovered by diftrefs and fale of his goods and chattels, lands and tenements, by warrant under the hands and feals of any two Juftices of the Peace of the County where fuch perfon refides ; and if fuch delinquent be unmarried,  then the faid money to be recovered againft him in the fame manner as is directed by the Laws of this State in cafes of debts under Five Pounds.

*Provided always,* That if any perfon or perfons fhall think him, her or themfelves aggrieved in the feizure of his, her or their lands and tenements,  he, fhe or they may enter an appeal before the Juftices to the next Court of Common Pleas for the County, and on the party's giving fufficient fecurity within fix days next after any lands and tenements fhall be feized or diftrained as aforefaid, to profecute fuch appeal with effect, the Juftices fhall receive the fame and ftay further procefs :  And the faid Juftices fhall return every fuch appeal on the first day of the next term, and the Court fhall direct a trial by a jury of the County as in other cafes of debt, whofe verdict fhall be final and conclufive ; and except in extraordinary cafes, of which the Court fhall be judge, all fuch appeals fhall be tried at the term to which fuch returns fhall be made ; any law, cuftom or ufage to the contrary notwithftanding.                    *And*

34

Generated on 2021-09-29 14:13 GMT / https://hdl.handle.net/2027/hvd.32044032422685
Public Domain, Google-digitized / http://www.hathitrust.org/access_use#pd-google

Digitized by Google

Original from
HARVARD UNIVERSITY

ADD0260

( 26 )

1777. *And be it further enacted by the authority aforesaid,* That arms and accoutrements sufficient for two Classes in each company shall be provided, at the expence of the State, as soon as convenient, by the Lieutenant of the City of Philadelphia, and of the several Counties of this State ; and shall be in the care, and under the direction of the said Lieutenants respectively ; and marked with the name of the County and the number of the battalion to which they belong.

*And be it further enacted by the authority aforesaid,* That if any person or persons shall sell, or knowingly buy, take in exchange, conceal, or otherwise receive, contrary to the true intent and meaning of this Act, any arms or accoutrements belonging to this State, on any account or pretence whatsoever, the person so offending, being convicted thereof, before one or more Justice or Justices of the Peace of the City or County where such offence shall be committed, shall forfeit and pay for every such offence treble the value of such arms or accoutrements, to be ascertained by the said Justice or Justices, and levied by distress and sale of the offender's goods and chattels, by the Justice or Justices before whom such offender shall be convicted, returning the overplus (if any) on demand, to such offender, and for want of such distress, shall commit such offender to the common gaol of the County, there to remain without bail or main-prize for any term not exceeding three months, unless such money is sooner paid.

*And be it further enacted by the authority aforesaid,* That the Commissioned Officers of each company shall appoint four Serjeants, four Corporals, one Drummer and one Fifer, for their respective companies. And all persons who have heretofore been officers in the Militia under the late Association, if not re-elected, shall deliver up their arms, accoutrements, drums, fifes and colours, if paid for by the Public, to the Lieutenant of the County aforesaid, or unto the nearest Sub-Lieutenant ; and the Lieutenant of the City of Philadelphia, and the Lieutenants of the several Counties respectively, are hereby authorized to draw on the State Treasury for the purchase of such drums, fifes and colours, as may afterwards be wanting to supply the companies in the City and Counties respectively.

*And be it further enacted by the authority aforesaid,* That the Field Officers of each battalion in this State, shall constitute and appoint to their respective battalion, one Quarter-Master, one Adjutant, one Serjeant-Major, and one Drum and one Fife-Major, which Serjeant-Major, and Drum and Fife-Major, shall be persons experienced in the duties of their respective offices.

*And be it further enacted by the authority aforesaid,* That no Militia-Man shall leave the company to which he belongs, or join any other, under the penalty of Three Pounds, to be recovered before the Justice of the Peace of the County, unless in case of removing to some other District within this or any other State, and in such case he shall apply to the Commander of such company, who shall give him a certificate of his being discharged, and if the said Militia-Man had been in actual service shall also certify the time thereof, and how long he had continued therein.

*And be it further enacted by the authority aforesaid,* That the Lieutenant, or in his absence, the nearest two Sub-Lieutenants in the City and Counties respectively, shall cause the Constable or some other suitable person of the several Townships, Boroughs, Wards or Districts, within their respective jurisdictions, to make true lists annually of all male white persons between the ages aforesaid, usually residing in their respective Townships, Boroughs, Wards or Districts, in order that such as shall then be above the age of fifty-three years, or otherwise disqualified, may be discharged, and that such as are arrived to proper age, or may have within the said year become residenters, may be enrolled ; and the Constable shall be allowed Five Shillings only for each day he shall be faithfully employed in obtaining and returning a list of the persons of his Township, to be paid by the County Treasurer respectively, out of the monies in his hands belonging to the State.

*And be it further enacted by the authority aforesaid,* That no person serving as a substitute for another shall thereby be excused from serving in his own turn.

*And be it further enacted by the authority aforesaid,* That if any Militia-Man when called into actual service shall absent himself or desert from the company, battalion or troop to which he belongs, the person or persons so offending shall forfeit and pay a sum equal to two months pay, and if an officer shall be cashiered.

*And*

35

Digitized by Google

Original from
HARVARD UNIVERSITY

ADD0261

Generated on 2021-09-29 14:13 GMT / https://hdl.handle.net/2027/hvd.32044032422685
Public Domain, Google-digitized / http://www.hathitrust.org/access_use#pd-google

( 27 )

*And be it further enacted by the authority aforesaid,* That the Lieutenant, with one or 1777. more of the said Sub-Lieutenants, together with any one Justice of the Peace, or any two or more Sub-Lieutenants, together with any two Justices of the Peace, shall meet in the City and the several Counties from time to time, as often as they shall find necessary, for the due execution of this Act, and one of the said meetings in every year shall be on the last Monday in the month of July, and one other of the said meetings shall be on the third Monday in the month of December.

*And be it further enacted by the authority aforesaid,* That the said Lieutenant of the City, and the said Lieutenants for the Counties respectively, shall have and receive the sum of Fifteen Shillings per day each for their trouble, and the Sub-Lieutenants of the said City and Counties respectively, shall have and receive the sum of Twelve Shillings per day each for their trouble, for every day in which they shall be employed, in doing and performing the respective duties required of them by this Act, which said sum or sums of money shall be respectively paid unto them out of the State Treasury.

And upon any draft of part of the Militia for actual service, it should happen to fall to the lot of any minor or apprentice, to be so drafted, and the said minor or apprentice should neglect or refuse to go, and also the parent, or master or mistress, refuse or neglect to find a substitute in his stead, and a substitute or substitutes having been found agreeable to the directions of this Act, it is hereby enacted and declared, That the father or mother of such minor, and the master or mistress of such apprentice, shall be liable to the payment of such sum or sums of money as it shall cost to procure such substitute or substitutes : And also in case such substitute or substitutes cannot be obtained, then to pay all such fines or sums of money as are imposed by this Act on such minor or apprentice.

*And be it further enacted by the authority aforesaid,* That if any parent, guardian, master or mistress, of any person between the ages of eighteen and twenty-one years, or of any other person made liable to serve in the Militia by this Act, shall think him or herself aggrieved, by any of the rates, fines, or sum or sums of money agreed for in the procuring of substitutes (and for the redress of which, no express provision is already made by this Act) he, she, or they may appeal to the Lieutenants and Justices aforesaid, on the days and times before-mentioned, who are hereby required and enjoined to give attendance from day to day, as long as may be necessary, at such convenient place or places as they shall appoint, of which days and places of meeting, they shall cause due notice to be given to the inhabitants, and then and there, the said Lieutenants and Justices shall hear all such appeals as may be made to them, and shall moderate or remit the said rates and fines as to them shall appear just and necessary, in consideration of inability of body or estate only.

*And be it further enacted by the authority aforesaid,* That on the death, removal, or other incapacity of any of the Lieutenants of the City and Counties respectively, the Sub-Lieutenants shall continue to act, and exercise all the authorities by this Act committed to them, until the General Assembly and the Supreme Executive Council shall have appointed and commissioned another Lieutenant or Lieutenants in his or their room or stead.

*And be it further enacted by the authority aforesaid,* That all the Lieutenants and Sub-Lieutenants to be appointed by virtue of this Act, shall regularly once in every six months lay their accounts of the money received and expended by them before the General Assembly, or any Committee appointed by them for that purpose.

*And be it further enacted by the authority aforesaid,* That if any Commissioned Officer, Non-commissioned Officer or Private Militia-Man of this State, who has, or hereafter may lose a limb in any engagement, in the service of this State, or in the service of the United States of America, or be so disabled as to render him incapable of getting a livelihood, shall receive during life, or the continuation of such disability, a pension, not more than one half of the monthly pay, from and after the pay as an officer or private Militia-Man ceases; still subject to be lowered, so as to be made adequate to the necessity of such disabled officer or private Militia-Man, by the judgment of the Orphans Court of the County where such disabled officer or private Militia-Man shall dwell or reside. And every officer or private, disabled as aforesaid, shall, before he be legally entitled to the pension above-mentioned, produce a certificate from the Commanding Officer, who was in the same engagement in which he was wounded, or from some other officer of the same corps, or the Surgeon that attended him : And upon such disabled officer, non-commissioned officer or private Militia-Man's producing such certificate as aforesaid to the Orphans Court of the

H                                                                                        County

36

Generated on 2021-09-29 14:14 GMT / https://hdl.handle.net/2027/hvd.32044032422685
Public Domain, Google-digitized / http://www.hathitrust.org/access_use#pd-google

Digitized by Google

Original from
HARVARD UNIVERSITY

( 28 )

1777. County where fuch difabled officer, or private Militia-Man fhall dwell or refide, the faid Court is hereby enjoined and required to give every fuch officer or private an order on the Lieutenant of the faid County for fuch fum or fums of money from time to time as to them fhall appear juft and neceffary: And the faid Lieutenant is hereby enjoined and required to accept and pay the faid order, to fuch officer or private; and the faid Lieutenant fhall draw on the State Treafurer as often as he fhall have occafion for fuch fum or fums of money as he fhall make appear to the Prefident and Council to be neceffary for carrying this Law into execution.

*And be it further enacted by the authority aforefaid,* That if any officer, Non-commiffioned officer or private Militia-Man refiding in this State, having a family, fhall be killed or die of his wounds received in the fervice of this, or the United States, a certificate from fome officer, (who was in the fame engagement in which he was fo killed or wounded, and died of his wounds) being produced to the Orphans Court, and alfo a certificate from the Overfeers of the Poor, and two other reputable Freeholders of the Townfhip, Borough, Ward or Diftrict, where the family of fuch deceafed officer, Non-commiffioned officer or private Militia-Man fhall dwell or refide at that time, fetting forth the particular circumftances of fuch family, the age or ages of the child or children and the neceffity of granting them fome fupport, the faid Orphans Court when poffeffed of the certificates aforefaid, are hereby authorifed to give an order in favour of fuch family, upon the Lieutenant of the County, for fuch fum of money as they may think juft and neceffary for the fupport of fuch family from time to time. Provided always, that the fupport granted do not exceed half the pay that fuch officer, Non-commiffioned officer or private Militia-Man was entitled to at the time of fuch killing or wounding.

*Be it enacted by the authority aforefaid,* That if any Lieutenant, Sub-Lieutenant, Officer of the Militia or Conftable, fhall be found guilty of any fraud, or willful partiality to any perfon, in the carrying this Act into execution, or fhall refufe or neglect to do and perform, all and fingular the duties (other than military duties) required of him or them refpectively by this Act, and fhall be duly convicted thereof, by a Jury of his Country, before any Court of Record in this State, fuch Lieutenant, Sub-Lieutenant, Militia Officer, or Conftable, fhall for every fuch offence be fined at the difcretion of fuch Court, in any fum not exceeding fifty pounds.

*And be it further enacted by the authority aforefaid,* That if any fuit or fuits fhall be brought or commenced againft any perfon, or perfons, for any thing done in purfuance of this Act, the action fhall be laid in the County where the caufes of fuch action did arife, and not elfewhere. And the defendant or defendants in fuch action or actions to be brought, may plead the general iffue, and give this Act and the fpecial matter in evidence; and if the Jury fhall find for the defendant or defendants in fuch action or actions, or if the plaintiff or plaintiffs fhall be non-fuited or difcontinue his or their action or actions, after the defendant or defendants fhall have appeared, or if upon demurrer, judgment fhall be given againft the plaintiff or plaintiffs, the defendant or defendants fhall have treble cofts, and have the like remedy for the fame, as any defendant or defendants hath or have in other cafes to recover cofts by Law.

*And be it further enacted by the authority aforefaid,* That the following Rules and Regulations fhall be the Rules and Regulations by which the Militia fhall be governed.

I. If any Commiffioned Officer make ufe of any profane oath or execration when on duty, he fhall forfeit and pay for each and every fuch offence, the fum of Five Shillings, and if a Non-commiffioned Officer or Private man be thus guilty of curfing or fwearing, he fhall forfeit and pay for each and every fuch offence the fum of One Shilling.

II. Every Militia-Man, who, on any of the days of exercife, fhall refufe to obey the lawful commands of his fuperior officer, may be fufpended from doing duty on that day; and upon conviction before a Court-Martial, fhall be fined, if a Commiffioned Officer, in a fum not exceeding Three Pounds, and if a Non-commiffioned Officer or Private, in any fum not exceeding Twenty Shillings.

III. Any officer or private man, who fhall begin, excite, caufe, join in, or promote any mutiny or difturbance in the battalion, troop or company to which he belongs, or in any other battalion, troop or company, fhall be fined or cenfured according to the nature of the offence, by a General or Regimental Court-Martial.

IV. Any officer or private man, who fhall ftrike his fuperior officer, or draw, or offer to draw, or fhall lift up any weapon, or offer any violence againft him, being in the execution of his office, fhall upon a conviction before a General or Regimental Court-Martial, be fined in a fum not exceeding Five Pounds.

V. Any commanding or other officer, who fhall ftrike his inferior officer or private man, when on duty, upon conviction before a General Court-Martial, fhall be fined in any fum not lefs than Five Pounds, and not exceeding Ten Pounds.

VI. Any officer or private man, who fhall make ufe of infolent, provoking, or indecent language while on duty, fhall fuffer fuch cenfure or fine as fhall be inflicted by a General or Regimental Court-Martial, according to the nature of the offence.

VII.

37

Generated on 2021-09-29 14:04 GMT / https://hdl.handle.net/2027/hvd.32044032422685
Public Domain, Google-digitized / http://www.hathitrust.org/access_use#pd-google

Digitized by 

Original from
HARVARD UNIVERSITY

ADD0263

( 29 )

VII. If any officer or private man shall think himself injured by his Colonel or the commanding officer of the battalion, and shall, upon due application made to him be refused redress, he may complain to the Lieutenant of the County, who shall summon a General Court-Martial that justice may be done. 1777.

VIII. If any inferior officer or private man, shall think himself injured by his Captain, or other superior officer in the battalion, troop or company to which he belongs, he may complain to the Commanding Officer of the battalion, who shall summon a Regimental Court-Martial for the doing justice, according to the nature of the case.

IX. Any officer or private man found drunk when under arms, shall be suspended from doing duty in the battalion, company or troop on that day, and be fined at the discretion of a General or Regimental Court-Martial.

X. Whatever centinel shall be found sleeping or drunk on his post, or shall leave it before he is regularly relieved, shall be fined at the discretion of a Court-Martial.

XI. Whatever commissioned officer shall be convicted before a General Court-Martial of behaving in a scandalous or infamous manner, unbecoming the character of an officer and a gentleman, shall be cashiered or fined at the discretion of a Court-Martial.

XII. All disorders and neglects which officers or private men may be guilty of, to the prejudice of the good order and military discipline of the Militia of this State, are to be taken cognizance of by a General or Regimental Court-Martial, according to the nature and degree of the offence, and such officers or private men shall be fined or censured at the discretion of a Court-Martial.

XIII. Every General Court-Martial shall consist of thirteen members, six of whom shall be Commissioned Officers under the rank of a Field Officer, and six Court-Martial Men, who shall be drawn by lot out of the whole number of the battalion, and these twelve are to choose a President, who shall be a Field Officer.

XIV. Every Regimental Court-Martial shall be composed of seven members, three officers, three Court Martial Men, and a President, who is to be a Captain, and to be chosen by the six.

XV. In all Courts-Martial not less than two thirds of the members must agree in every sentence for inflicting any punishment, or otherwise he shall be acquitted.

XVI. The President of each and every Court-Martial, whether General or Regimental, shall require all witnesses, in order to the trial of offenders, to declare on oath or affirmation, that the evidence they shall give is the truth, the whole truth, and nothing but the truth; and the members of all such Courts shall take an oath or affirmation, which the President is required to administer to the other members, and the next in rank is required to administer to him, that they will give judgment with impartiality.

XVII. All members of the Militia, called as witnesses in any case before a Court-Martial, who shall refuse to attend and give evidence, shall be censured or fined at the discretion of the Court.

XVIII. No Officer or Private Man being charged with transgressing these Rules, shall be suffered to do duty in the battalion, company or troop to which he belongs, until he has had his trial before a Court-Martial; and every person so charged shall be tried as soon as a Court-Martial can be conveniently assembled.

XIX. The Officers and Private Men of every company of Artillery, or other company, troop or party that is or shall be annexed to any battalion, shall be subject to the command of the Colonel or Commanding Officer of said battalion, and the Officers shall sit as members of Courts-Martial in the same manner as the Officers of any other company.

XX. No penalty shall be inflicted at the discretion of a Court-Martial, other than degrading, cashiering or fining; the fines for the Officers not to exceed Ten Pounds, and the fines for a non-commissioned Officer or Private Man not to exceed Five Pounds for one fault.

XXI. No company or battalion shall meet at a tavern on any of the days of exercise, nor shall march to any tavern before they are discharged.

XXII. The Militia on days of exercise may be detained under arms, on duty in the field, any time not exceeding six hours, provided they are not kept above three hours under arms at any one time, without allowing them a proper time to refresh themselves.

XXIII.

38

Digitized by Google

Original from
HARVARD UNIVERSITY

Generated on 2021-09-29 14:04 GMT  /  https://hdl.handle.net/2027/hvd.32044032422685
Public Domain, Google-digitized  /  http://www.hathitrust.org/access_use#pd-google

( 30 )

**1777.** XXIII. Adjutants, Drummers and Fifers shall receive the following pay for every day of service they attend their respective battalions or companies, by order of the Commanding Officer.

An Adjutant, Ten Shillings, a Drummer, Three Shillings, a Fifer Three Shillings. The Drum-Major and Fife-Major of every battalion, shall receive each a sum not exceeding Twenty Shillings per week, and to be continued in pay as long as the Colonels of the several battalions shall think necessary; and it is required, that such Drum-Majors and Fife-Majors, when not in service on days of exercise, shall be diligently employed in instructing a proper number of persons for Drummers and Fifers of the several battalions.

XXIV. The Lieutenant of the County for the time being, shall have full power of pardoning or mitigating any censures or penalties ordered to be inflicted for the breach of any of these articles by any General Court-Martial, and every offender convicted as aforesaid by any Regimental Court-Martial, may be pardoned, or have his penalties mitigated by the Colonel or Commanding Officer of the battalion, excepting only where such censures or penalties are directed as satisfaction for injuries received by one officer or private man from another.

XXV. Upon the determination of any point by a Regimental Court-Martial, if the officer or private man concerned on either side, thinks himself still aggrieved, he may appeal to a General Court-Martial, but if upon a second hearing the appeal appears groundless and vexatious, the person so appealing shall be censured at the discretion of the said General Court.

XXVI. Upon the death, resignation, promotion, or other removal of a Field Officer, or any other officer or Court-Martial Man from a battalion, troop or company, such vacancy is to be filled by the person such battalion troop or company shall elect.

XXVII. No officer or private man shall be tried a second time for the same offence, except in case of appeal.

XXVIII. All fines that shall be collected according to this Act, by direction of any Court-Martial, and not otherwise appropriated, shall be paid into the hands of the Clerk of the company to which the offenders belong, who shall account for the same to the Captain, to be applied to the purchasing powder and ball, to exercise the men at proper times at shooting at marks, and for prizes to the best marksmen.

The fines that shall be incurred in consequence of the breach of any of the above Regulations shall be paid (if incurred by a Field Officer) to the Clerk of that company whose Captain has the first rank in the battalion, or (if incurred by any other Officer or Private) to the Clerk of the company to which they respectively belong, within three weeks after they become due, but in case of neglect or refusal to pay any of the said fines, then in such case, upon application made by the Clerk to whom such fine or fines ought to have been paid, it shall and may be lawful for any one Justice of the Peace of the County (if the fine does not exceed Five Pounds) or two Justices (if above Five Pounds) by warrant under his or their hands and seals, to levy such fine or fines respectively on the offender's goods and chattels, and otherwise proceed in recovering the same as is by Law directed in case of debts not exceeding Five Pounds, and when recovered the said Justice or Justices are required to pay such fines into the hands of the Clerk who applied for the recovery. The fines so recovered from the Field Officers to be disposed of as the Officers of the battalion shall think proper, and those recovered from the other Officers and Privates to be disposed of as is herein before directed.

JOHN BAYARD, Speaker.

Passed in General Assembly, March 17, 1777.

JOHN MORRIS, Junior, Clerk of the General Assembly.

---

*An* ACT *to increase the Wages of Assembly-Men.*

WHEREAS in and by a certain Act of the General Assembly of the Province of Pennsylvania, passed in the fourth year of the reign of the late Queen Ann, intitled "An Act to ascertain the number of Members of Assembly, and to regulate the Elections," it was declared and enacted, That every Member chosen or to be chosen to serve in Assembly should be

39

Generated on 2021-09-29 14:15 GMT / https://hdl.handle.net/2027/hvd.32044032422685
Public Domain, Google-digitized / http://www.hathitrust.org/access_use#pd-google

Digitized by Google

Original from
HARVARD UNIVERSITY

ADD0265