No. 21-1832

# In the United States Court of Appeals for the Third Circuit

MADISON M. LARA, SOPHIA KNEPLEY, LOGAN D. MILLER, SECOND AMENDMENT FOUNDATION, INC., AND FIREARMS POLICY COALITION, INC.,

*Plaintiffs-Appellants*,

v.

COMMISSIONER PENNSYLVANIA STATE POLICE,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA (20-cv-1582)
(Hon. William S. Stickman, IV, Presiding)

## OPENING LETTER BRIEF OF PLAINTIFFS-APPELLANTS

Joshua Prince, Esq.
CIVIL RIGHTS DEFENSE FIRM, P.C.
646 Lenape Road
Bechtelsville, PA 19505
Joshua@CivilRightsDefenseFirm.com
(888) 202-9297
(610) 400-8439 (fax)

David H. Thompson
Peter A. Patterson
John D. Ohlendorf
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601 (fax)
dthompson@cooperkirk.com

*Counsel for Plaintiffs-Appellants*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................................ii

INTRODUCTION ........................................................................................................ 1

ARGUMENT .............................................................................................................. 3

I.     Under *Bruen*, the Commissioner Must Establish That Pennsylvania's Age
Restrictions Are Closely Analogous to Founding-Era Historical Restrictions. ........ 3

II.    Under *Bruen*, the Commissioner Has Failed To Justify the Age Restrictions. ......... 5

III.   *Bruen* Requires Judgment in Plaintiffs' Favor. ...................................................... 13

CONCLUSION ......................................................................................................... 14

i

## TABLE OF AUTHORITIES

**Cases**                                                                                              **Page**

*District of Columbia v. Heller*, 554 U.S. 570 (2008) .................................................. 2, 4, 9

*Gamble v. United States*, 139 S. Ct. 1960 (2019).......................................................... 5, 10

*Hirschfeld v. BATFE*, 5 F.4th 407 (4th Cir. 2021) ............................................................. 4

*Jones v. Bonta*, 34 F.4th 704 (9th Cir. 2022) ................................................................. 7, 8

*Malloy v. Hogan*, 378 U.S. 1 (1964) ................................................................................ 10

*Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012) ............................................................ 14

*Nat'l Rifle Ass'n v. BATFE*, 714 F.3d 334 (5th Cir. 2013) .................................................. 8

*New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022) .....................*passim*

*United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010) ................................................. 3

*Wright v. Commonwealth*, 77 Pa. 470 (1875) ..................................................................... 6

**Statutes**

16 Del. Laws 716 (1881) ................................................................................................... 12

1856 Ala. Acts 17 (1856) .................................................................................................. 11

1856 Tenn. Pub. Acts 92 (1856).......................................................................................... 11

1875 Ind. Acts 86 (1875) .................................................................................................. 12

1876 Ga. Laws 112 (1876) ................................................................................................ 12

1878 Miss. Laws 175 (1878) ............................................................................................. 12

1880 Ky. Gen. Stat. 742-43, ch. 36, §§ 1309, 1313 (1880) ............................................. 12

1881 Ill. Laws 73 (1881) ................................................................................................... 12

1882 Md. Laws 656 (1882) ............................................................................................... 12

1882 W.Va. Acts 421-22 (1882) ....................................................................................... 12

1883 Kan. Sess. Laws 159 (1883) .................................................................................... 12

1883 Mo. Laws 76 (1883) ................................................................................................. 12

1883 Wis. Sess. Laws 290 ........................................................................................... 12, 13

1884 Iowa Acts 86 (1884) ................................................................................................. 12

1885 Nev. Stat. 51 (1885).................................................................................................. 12

1890 La. Acts 39 (1890) .................................................................................................... 12

1890 Wyo. Sess. Laws 1253 (1890).................................................................................. 12

27 Stat. 116 (1892) .................................................................................................... 12

1893 N.C. Sess. Laws 468–69 (1893) ....................................................................... 12

1897 Tex. Gen. Laws 221–22 (1897)......................................................................... 12

Okla. Stat. ch. 25, art. 47 §§ 1–3 (1907) .................................................................. 12

1923 N.H. Laws 138, 139 (1923).............................................................................. 12

1923 S.C. Acts 207, 221 (1923) ................................................................................ 12

**INTRODUCTION**

In *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), the United States Supreme Court fundamentally rejected the Commissioner's interpretation of the Second Amendment and any circuit court precedent supporting it. Just as in this case, the plaintiffs in *Bruen* challenged state public-carry laws under the Second Amendment; and just like the defendant in this case, the Commissioner of the Pennsylvania State Police (the "Commissioner"), the defendant in *Bruen* argued both that the challenged carry restriction was outside the historical scope of the right to keep and bear arms and that it passed means-end scrutiny. The Supreme Court repudiated that argument on both scores, and the resulting decision dictates the outcome in this case.

*Bruen* emphatically affirmed that the Second Amendment protects the carrying of firearms outside the home, based on an analysis that completely vitiates the Commissioner's previous claims in this case that its carry restrictions are justified by " 'the longstanding tradition of regulating the public carrying of weapons for self-defense.' " Br. for Appellee ("Comm'r Br.") at 28 (Sept. 22, 2021), Doc. 23 (quoting *Drake v. Filko*, 724 F.3d 426, 433 (3d Cir. 2013), *abrogated by Bruen*, 142 S. Ct. 2111). Many of the historical restrictions the Commissioner has cited as purportedly justifying the age ban challenged here were *specifically addressed* by the Supreme Court in *Bruen* and *specifically rejected* as unsupportive of limits preventing law-abiding citizens from carrying firearms in public. And for those pieces of historical evidence that *Bruen* did not specifically address, the Court's opinion provides clear rules for how this Court's analysis must proceed: the burden is on the State to "affirmatively prove that its firearms regulation

1

is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms," by identifying Founding-era "historical regulations [that] impose a comparable burden on the right of armed self-defense . . . that [was] comparably justified." *Bruen*, 142 S. Ct. at 2127, 2133. The Commissioner cannot clear that hurdle here.

*Bruen* also unequivocally rejected means-end scrutiny in the Second Amendment context, holding instead that public-carry regulations that the government cannot prove to be closely analogous to Founding-era historical restrictions are unconstitutional categorically. In truth, as Plaintiffs have maintained throughout this litigation, application of a means-ends balancing scrutiny test to the Second Amendment was already foreclosed by *District of Columbia v. Heller*'s directions that "[t]he very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is *really worth* insisting upon." 554 U.S. 570, 634 (2008). But the Court's decision in *Bruen* removes any conceivable doubt: the "two-step approach" previously applied by many lower courts, including this Court, "is one step too many," "applying means-end scrutiny in the Second Amendment context" is not appropriate, and if the government cannot affirmatively prove that a challenged restriction is consistent with the text and history of the Second Amendment, the restriction must fall. 142 S. Ct. at 2127; *see also id.* at 2129–30.

The impact of *Bruen* on this case is plain: it establishes that the Second Amendment protects the right to publicly carry and transport firearms, it forecloses the Commissioner's argument that 18-to-20-year-old adult Pennsylvanians may be excluded from the enjoyment of that right, and it precludes the application of means-end scrutiny to the

Pennsylvania age restrictions, which are instead invalid *per se*. The Court should reverse the decision below and order entry of judgment in Plaintiffs' favor.

## ARGUMENT

### I. Under *Bruen*, the Commissioner Must Establish That Pennsylvania's Age Restrictions Are Closely Analogous to Founding-Era Historical Restrictions.

Since the beginning of this case, Plaintiffs have maintained that "the text and history of the Second Amendment" are dispositive of whether the age restrictions that the Commissioner enforces are unconstitutional. *See* Br. of Pls.-Appellants' ("Opening Br.") at 21, 37–38 (June 23, 2021), Doc. 14; Br. in Supp. of Pls.' Mot. for Prelim. Inj. at 14, 19, *Lara v. Evanchik*, 2:20-cv-01582-WS (W.D. Pa. Dec. 1, 2020), Doc. 11-8. The Commissioner has disputed this point and pressed instead for application of the two-step inquiry applied in previous Third Circuit cases. That two-step test asked (1) whether the conduct regulated by the challenged law falls within the scope of the Second Amendment, and (2) if so, whether the law passes some level of means-end scrutiny. *See United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010).

*Bruen* resolves this dispute. The Supreme Court explicitly rejected the Commissioner's two-step inquiry and expressly overruled all circuit precedent supporting it as "inconsistent with *Heller*'s historical approach and its rejection of means-end scrutiny." 142 S. Ct. at 2129; *accord id.* at 2127–31. The *Bruen* Court instead held—just as Plaintiffs have maintained throughout this case—that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.* at 2126. The burden then falls squarely on the government to "affirmatively

prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2127.

In this case, the plain text of the Second Amendment undeniably covers Plaintiffs' conduct. Both *Heller* and *Bruen* make clear that the protections of the Second Amendment extend to "ordinary, law-abiding, adult citizens." *Bruen*, 142 S. Ct. at 2134. And the Commissioner has nowhere contested that Plaintiffs are ordinary, law-abiding, adult citizens, *see* Opening Br. at 6–7, 48, or that the Second Amendment's protection of the rights of "the people" presumptively refers to "all Americans," *Heller*, 554 U.S. at 581; *see* Opening Br. 21–22. Indeed, *every other constitutional right* applies *at least* to those 18 and older, *Hirschfeld v. BATFE*, 5 F.4th 407, 423 (4th Cir. 2021), *vacated as moot*, 14 F.4th 322, 328 (4th Cir. 2021), and the other provisions in the Bill of Rights recognizing rights belonging to "the people"—the First and Fourth, *see Heller*, 554 U.S. at 579—also apply to all citizens regardless of age, *Hirschfeld*, 5 F.4th at 421. Likewise, after *Bruen* there can no longer be any dispute that the text of the Second Amendment covers Plaintiffs' "proposed course of conduct—carrying handguns publicly for self-defense," 142 S. Ct. at 2134, either on one's person or in one's vehicle.

It necessarily follows that Plaintiffs' conduct is presumptively protected by the Second Amendment. Thus, under *Bruen*, the burden falls to the Commissioner to affirmatively prove that Pennsylvania's restrictions are part of the historical tradition delimiting the outer bounds of the right to keep and bear arms—and that they thus fall within some established historical exception to the general "right to carry a handgun for self-defense outside the home." *Id.* at 2122. That is a burden the Commissioner did not

4

establish before the District Court nor can he establish, as there exists no support for a historical tradition of banning the carrying of arms for self-defense by those law-abiding citizens who are ages 18 to 20.

## II. Under *Bruen*, the Commissioner Has Failed To Justify the Age Restrictions.

The Commissioner has focused on three sets of historical laws as purportedly justifying Pennsylvania's age-based restrictions on carrying firearms: (A) a handful of state laws enacted long after the Founding that regulated the carrying of firearms; (B) the general legal principles at the time of the Founding that set 21 as the age of majority; and (C) a collection of laws that, between 1856 and 1923,[1] placed some sort of restriction on the rights of those under 21 to keep and bear arms. None of these historical laws comes close to "demonstrating that [the challenged Pennsylvania law] is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2130.

A.      *Bruen* plainly forecloses any continuing reliance on the Commissioner's handful of general public-carry laws from the nineteenth century. *Bruen* squarely held that that the "concealed-carrying laws in Ohio, Tennessee, Virginia, and Georgia" raised by the Commissioner, Comm'r Br. at 29, do not support a ban on all public carry because they "restricted only concealed carry, not all public carry." *Bruen*, 142 S. Ct. at 2143; *see also id.* at 2146–47 & n.16. *Bruen*'s disposal of these laws also establishes *a fortiori* that the

---

[1] *Bruen* deemed "mid- to late-19th-century" evidence essentially irrelevant to the original meaning of the Second Amendment, except to the extent that it provided "mere confirmation of what … had already been established" by the Amendment's text and Founding-era history. *Id*. at 2137 (cleaned up); *accord Gamble v. United States*, 139 S. Ct. 1960, 1975–76 (2019).

1834 Pennsylvania carry restriction cited by the Commissioner cannot suffice,[2] since that law (as the Commissioner admits, at 29) was *less restrictive* than the laws discussed by *Bruen*—and only clearly prohibited "unlawfully and maliciously carrying upon the person . . . a concealed deadly weapon, to wit, a pistol, with an intent, unlawfully and maliciously, to do bodily harm to another," *Wright v. Commonwealth*, 77 Pa. 470, 470–71 (1875). And the other Pennsylvania law relied upon by the Commissioner—a 1721 law barring hunting without permission on someone else's land, *see* Comm'r Br. at 28—is even further afield.

Bruen thus explicitly addressed the Commissioner's historical evidence purportedly showing a "longstanding tradition of regulating the public carrying of weapons for self-defense," *id.* (quoting *Drake*, 724 F.3d at 433, *abrogated by Bruen*, 142 S. Ct. 2111), and squarely held that "the history reveals a consensus that States could not ban public carry altogether," *Bruen*, 143 S. Ct. at 2146. The smattering of state laws "regulating the public carrying of concealable firearms in the decades after the ratification of the Constitution," Comm'r Br. at 29, thus cannot, in light of *Bruen*, even conceivably justify Pennsylvania's restrictions barring 18-to-20-year-olds from carrying operable firearms in public on their person (or transporting them in their vehicles) for lawful purposes such as self-defense.

B.    *Bruen* likewise disposes of the Commissioner's reliance on the fact that the age of majority for certain purposes at the Founding was 21, rather than the modern standard of 18. As explained in our previous briefing, the fact that 18-to-20-year-olds lacked certain rights at the Founding does not mean they were outside the scope of the

---

[2] *See supra* note 1.

Second Amendment. *See* Opening Br. at 32–33. Indeed, as noted above, many other constitutional rights have always been understood to apply to people under 21—despite the general Founding-era age of majority—so excluding 18-to-20-year-olds from the scope of the Second Amendment would render "the constitutional right to bear arms in public for self-defense . . . 'a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees,' " in direct contravention of Supreme Court precedent. *Bruen*, 142 S. Ct. at 2156 (quoting *McDonald v. Chicago*, 561 U.S. 742, 780 (2010)).

Moreover, *Bruen* requires a *specific* analysis of whether widely accepted historical restrictions are *directly analogous* to the law being challenged—not an amorphous inquiry that "uphold[s] every modern law that remotely resembles a historical analogue." *Id.* at 2133. For example, while the Court recognized the existence of certain " 'longstanding' 'laws forbidding the carrying of firearms in sensitive places' " such as "legislative assemblies, polling places, and courthouses," it repudiated any attempt to abstract from this historical limitation a broad rule allowing "the government [to] lawfully disarm law-abiding citizens [in] all 'places where people typically congregate and where law-enforcement and other public-safety professionals are presumptively available.' " *Id.* Instead, a court must conduct a granular inquiry into "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id.*

The general age of majority at the Founding fails both prongs of this test. First, the burden of the historical age of majority did not impose a "burden on the right of armed self-defense," *id.*, that is even remotely analogous to Pennsylvania's carry ban because the

age of majority *did not apply to the right of armed self-defense at all. See, e.g.*, *Jones v. Bonta*, 34 F.4th 704, 719 (9th Cir. 2022); *Nat'l Rifle Ass'n, Inc. v. BATFE*, 714 F.3d 334, 342 (5th Cir. 2013) (Jones, J., dissenting from the denial of rehearing) ("[T]hose minors were in the militia *and, as such*, they were required to own their own weapons. What is *inconceivable* is any argument that 18-to-20-year-olds were not considered, at the time of the founding, to have full rights regarding firearms.").

As discussed at length in our Opening Brief, the Militia Act of 1792, enacted by Congress just months after the ratification of the Second Amendment, "commanded that every able-bodied male citizen between the ages of 18 and 45 be enrolled in the militia and equip himself with appropriate weaponry." *Jones*, 34 F.4th at 719 (quoting *Perpich v. Dep't of Def.*, 496 U.S. 334, 341 (1990) (alterations omitted)). Indeed, "[a]t the time of the Second Amendment's passage, or shortly thereafter, the minimum age for militia service *in every state*"—including Pennsylvania, Reply Br. of Pls.-Appellants' ("Reply") at 16 (Oct. 13, 2021), Doc. 38—"became eighteen." *Nat'l Rifle Ass'n*, 714 F.3d at 340 (Jones, J., dissenting from the denial of rehearing). Nor did the common law distinguish 18-to-20-year-olds in the muster of those required to pursue fleeing criminals, keep the peace, and suppress riots. Opening Br. at 27. In response, the Commissioner has provided *no* historical evidence *at all* that 18-to-20-year-olds at the Founding lacked full public-carry rights under the Second Amendment. Reply at 15–17. It is surely not viable, after *Bruen*, for the Government to justify a restriction on the right to keep and bear arms by pointing to a historical law *that did not apply to keeping and bearing arms*.

8

Nor is justification for the historical age of majority comparable: any burden under the historical age of majority was, by definition, justified by minority status, whereas the modern restrictions apply to 18-to-20-year-olds, who are not minors in modern law, as the Commissioner admits, *see* Comm'r Br. at 30. Failing to meet *either* of *Bruen*'s independently necessary requirements for a historical analogue, the historical age of majority cannot justify the modern restrictions that the Commissioner enforces.

C.    Finally, *Bruen* precludes Pennsylvania's attempt to justify its age ban by analogy to the handful of other age-based restrictions that the Commissioner has culled from 1856 to 1923. As a threshold matter, the Commissioner's sources come far too late in time, "giving postenactment history more weight than it can rightly bear." *Bruen*, 142 S. Ct. at 2136. While *Bruen* acknowledged "ongoing scholarly debate" on whether the Fourteenth Amendment's ratification in 1868 imbued the Second Amendment with a new and different meaning as to the States than it had as to the Federal Government in 1791, the Court indicated that it did not view things that way, explaining that "post-Civil war discussions of the right to bear arms [which] 'took place 75 years after the ratification of the Second Amendment . . . do not provide as much insight into its original meaning as earlier sources.'" *Id.* at 2137–38 (quoting *Heller*, 554 U.S. at 614); *see also id.* at 2163 ("[T]oday's decision should not be understood to endorse freewheeling reliance on historical practice from the mid-to-late 19th century to establish the original meaning of the Bill of Rights.") (Barrett, J., concurring). The Court thus repeatedly pointed to the Founding—not 1856 and not 1923—as the proper historical context to establish the meaning of the Second Amendment. *E.g.*, *id.* at 2131 ("[W]hen a challenged regulation addresses a general societal

problem that has persisted *since the 18th century*, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." (emphasis added)).

Indeed, relying on later history to justify restrictions at the state level that could not be justified at the federal level based on Founding-era sources violates the longstanding rule, reaffirmed by *Bruen*, that the "individual rights enumerated in the Bill of Rights and made applicable against the States through the Fourteenth Amendment have the same scope as against the Federal Government." *Id.* at 2137; *see also Malloy v. Hogan*, 378 U.S. 1, 10 (1964) (collecting cases). Based on this principle, the Supreme Court has "generally assumed that the scope of the protection applicable to the Federal Government and the States is pegged to the public understanding of the right when the Bill of Rights was adopted in 1791." *Bruen*, 142 S. Ct. at 2137; *see also Gamble*, 139 S. Ct. at 1975–76 (noting that the relevant inquiry is "the public understanding in 1791 of the right codified by the Second Amendment"). Interpreting the scope of the Second Amendment's application to the States based on restrictions that only began to emerge in the late nineteenth century would contradict this rule, settled since the advent of modern "incorporation" doctrine.

In all events, even if late-nineteenth-century history is *relevant* to the scope of the Second Amendment, "to the extent later history contradicts what the text says, the text controls." *Bruen*, 142 S. Ct. at 2137. And as noted above, the Second Amendment's text clearly protects 18-to-20-year-olds.

Nevertheless, just as in *Bruen*, relying on historical evidence from around the time of the Fourteenth Amendment's ratification in 1868 would change nothing in this case, for

10

the unanimous practice at the Founding of permitting 18-to-20-year-olds to exercise their Second Amendment rights on equal footing with other adults was still the overwhelming majority practice in the States in 1868. The Commissioner identifies only two state laws enacted prior to 1868, from Alabama and Tennessee, and neither is remotely analogous to the age ban here: both laws applied to legal minors, both barred only the sale of certain weapons presumably considered especially dangerous at the time—including bowie-knives and pistols, but *not* including long guns—and Tennessee's law expressly *exempted* the sale of arms to minors "for defense in traveling." 1856 Tenn. Pub. Acts 92 (1856); *see also* 1856 Ala. Acts 17 (1856). Neither statute regulated the public carrying of firearms by legal adults, so neither statute even remotely "impose[d] a comparable burden on the right of armed self-defense" as the law challenged here. *Bruen*, 142 S. Ct. at 2133. And even if they did, two outlier laws obviously tell us little about the general public understanding of the Second Amendment when it was ratified in 1868. *See id.* at 2153 (two "outlier[ ]" nineteenth-century cases "provide little insight into how postbellum courts viewed the right to carry protected arms in public").

The Commissioner also cites a laundry list of later state laws regulating minors, but those fail to support the challenged law for numerous reasons. As an initial matter, almost all of these laws come more than a decade after the Fourteenth Amendment's ratification, so under *Bruen* they shed little light on the meaning of the right to keep and bear arms under *any* theory of what historical period is relevant. *See* 142 S. Ct. at 2153 (deeming authorities up to 1875 "postbellum"); *id.* at 2154 ("late-19th-century evidence cannot provide much insight into the meaning of the Second Amendment when it contradicts

11

earlier evidence"). And in any event, none of these late-breaking restrictions is analogous to the Pennsylvania law here, for by-now familiar reasons.

All but two of the late-nineteenth-century-to-early-twentieth-century state laws identified by the Commissioner may be sorted into three categories: (1) laws (like the 1856 Alabama and Tennessee laws discussed above) regulating the *transfer* of some, but not all, firearms to minors;[3] (2) laws regulating the carrying of *concealed* firearms (which, as *Bruen* held, did not "prevent law-abiding citizens with ordinary self-defense needs from carrying arms in public for that purpose," 142 S. Ct. at 2150);[4] and (3) laws regulating the carrying, at any age, of pistols and revolvers (a prohibition directly rejected by *Bruen* as contrary to the Second Amendment, *see* 142 S. Ct. at 2153).[5] That leaves an 1883 Kansas law that regulated both the sale to and possession by minors of "any pistol, revolver or toy pistol, . . . or any dirk, bowie-knife, brass knuckles, slung shot, or other dangerous weapons," 1883 Kan. Sess. Laws 159 (1883), and a Wisconsin law from the same year

---

[3] 1875 Ind. Acts 86 (1875); 1876 Ga. Laws 112 (1876); 1878 Miss. Laws 175–76 (1878); 1880 Ky. Gen. Stat. 742–43, ch. 36, §§ 1309, 1313 (1880), https://bit.ly/3z57W9N (cited in Resp. Br. as 1873 Ky. Stat. art. 29, at 359 (1873)); 16 Del. Laws 716 (1881); 1881 Ill. Laws 73 (1881); 1882 W.Va. Acts 421–22 (1882); 1882 Md. Laws 656 (1882); 1883 Mo. Laws 76 (1883); 1884 Iowa Acts 86 (1884); 1890 La. Acts 39 (1890); 1890 Wyo. Sess. Laws 1253 (1890); 27 Stat. 116 (1892); 1893 N.C. Sess. Laws 468–69 (1893); 1897 Tex. Gen. Laws 221–22 (1897); Okla. Stat. ch. 25, art. 47 §§ 1–3 (1907); 1923 N.H. Laws 138, 139 (1923); 1923 S.C. Acts 207, 221 (1923).

[4] 1878 Miss. Laws 175 (1878); 1880 Ky. Gen. Stat. 742–43, ch. 36, §§ 1309, 1313 (1880), https://bit.ly/3z57W9N (cited in Resp. Br. as 1873 Ky. Stat. art. 29, at 359 (1873)); 16 Del. Laws 716 (1881); 1883 Mo. Laws 76 (1883); 1885 Nev. Stat. 51 (1885); 27 Stat. 116 (1892).

[5] 1882 W.Va. Acts 421–22 (1882); Okla. Stat. ch. 25, art. 47 §§ 1–3 (1907).

12

barring the sale to and carrying by minors of "any pistol or revolver," 1883 Wis. Sess. Laws 290 (1883). The Kansas law did not clearly extend to ordinary long guns, and the Wisconsin law *clearly did not* so extend. Taken together, *none* of these statutes restricted 18-to-20-year-olds from all carrying of any firearm in any manner whatsoever. They thus did not impose "a comparable burden on the right of armed self-defense" as the age ban challenged here, *Bruen*, 142 S. Ct. at 2133—and so cannot justify it.

## III.   *Bruen* Requires Judgment in Plaintiffs' Favor.

For the reasons explained above, *Bruen* is dispositive of this appeal, and the Court should remand for entry of judgment in Plaintiffs' favor. While the Commissioner has raised objections based on Article III standing and the Eleventh Amendment, and has argued that injunctive relief is improper, Plaintiffs have refuted each of these objections in previous briefing. *See* Reply 3–7, 24–26. Likewise, Plaintiffs have shown that the case is not moot, Suppl. Resp. Br. of Pls.-Appellants' (Nov. 18, 2021), Doc. 44, both because the age restriction on transporting firearms remains in effect outside of emergency periods, *id.* at 3–4, and because emergency periods triggering the rest of the public-carry restrictions are capable of repetition yet evade review, *id.* at 4–6. The Commissioner also previously argued for remand to the district court for means-end scrutiny, Comm'r Br. at 50, but *Bruen* makes plain that there should be no such remand. Under *Bruen*, if the Commissioner fails to "prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms," that is the end of the matter. 142 S. Ct. at 2127. As demonstrated above, that is the case here. Plaintiffs are entitled to reversal of the district court's opinion and remand to the district court with instructions to enter judgment in their

favor and grant them declaratory and injunctive relief. *See Moore v. Madigan*, 702 F.3d 933, 942 (7th Cir. 2012) (ordering entry of judgment for plaintiffs on appeal of order dismissing case).

## CONCLUSION

For the foregoing reasons and those set forth in Plaintiffs' prior briefing, the Court should reverse the decision of the district court and remand with instructions to enter an injunction forbidding the Commissioner from continuing to enforce the challenged ban.

Dated: July 25, 2022                                        Respectfully submitted,

                                                           /s/ *David H. Thompson*
Joshua Prince, Esq.                                        David H. Thompson
CIVIL RIGHTS DEFENSE FIRM, P.C.                            Peter A. Patterson
646 Lenape Road                                           John D. Ohlendorf
Bechtelsville, PA 19505                                   COOPER & KIRK, PLLC
joshua@civilrightsdefensefirm.com                         1523 New Hampshire Avenue, NW
(888) 202-9297                                             Washington, DC 20036
(610) 400-8439 (fax)                                      (202) 220-9600
                                                           (202) 220-9601 (fax)
                                                           dthompson@cooperkirk.com

*Counsel for Plaintiffs-Appellants*

14

**CERTIFICATE OF BAR MEMBERSHIP**

I hereby certify that I am a member of the bar of this Court.

Dated: July 25, 2022                              /s/ *David H. Thompson*
                                                 David H. Thompson
                                                 *Counsel for Plaintiffs-Appellants*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume and type-style limitations of this Court's order, Doc. 55 (July 5, 2022), because this brief contains fourteen pages, double-spaced, in 13-point font , excluding the parts of the brief exempted by FED. R. APP. P. 32(f). This brief otherwise complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft Office 365 in Times New Roman font.

As required by L.A.R. 31.1(c), the text of the electronic brief is identical to the text in the paper copies.

The Portable Document Format version of the attached document has been scanned for viruses using VirusTotal Antivirus Software, and according to that program, the document is free of viruses.

Dated: July 25, 2022                              s/ David H. Thompson
                                                 David H. Thompson
                                                 *Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system on July 25, 2022. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: July 25, 2022

s/ David H. Thompson
David H. Thompson

*Counsel for Plaintiffs-Appellants*