IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

| | | |
|---|---|---|
| MADISON M. LARA, *et al.*, | : | CIVIL ACTION |
| Appellants | : | |
| v. | : | |
| COMMISSIONER PENNSYLVANIA STATE POLICE, | : | |
| Appellee | : | No. 21-1832 |

## COMMISSIONER'S REPLY IN SUPPORT OF MOTION TO REMAND TO THE DISTRICT COURT FOR FURTHER PROCEEDINGS

Unable or unwilling to reckon with the fact that the last time this case was in a district court was the pre-*Bruen* era, Appellants feign confusion at the Commissioner's request. *See* Response at 1 (3d Cir. ECF 94) ("It is hard to understand why the Commissioner would seek a remand at this juncture[.]"). But this case is unrecognizable—both legally and factually—from the case the District Court decided in *2021* at the *motion to dismiss phase*. Since then, the Supreme Court has upended the analysis for Second Amendment challenges. *United States v. Rahimi*, 144 S. Ct. 1889 (2024); *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). And this is hardly the only significant change relevant to this case.

For example, all of the individual plaintiffs' claims have become moot because they are all at least 21 years old now. That leaves the organizational

plaintiffs—the Firearms Policy Coalition and the Second Amendment Foundation (collectively, "Organizational Plaintiffs")—alone to litigate these claims. But the only known member of these organizations who is currently affected by Pennsylvania's law will himself turn 21 this December. Pershall Decl. ¶ 2 (3d Cir. ECF 71-1). Accordingly, the Organizational Plaintiffs will be able to claim no more than a purported setback to their "abstract social interests" and Pennsylvania's "regulation *of others*." *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 385, 394 (2024) (emphasis in original). The same month it decided *Rahimi*, the High Court clarified that this is insufficient to confer organizational standing. *Ibid.*

The Organizational Plaintiffs would have the Court ignore all this. It should not. None of their unsound arguments defeat the Commissioner's reasonable remand request.

1. The Organizational Plaintiffs begin their response in opposition to the Commissioner's motion by attempting to downplay the impact of *Rahimi*, arguing that it did not meaningfully alter the *Bruen* test. Response at 2. The Commissioner does not want to get ahead of his supplemental brief on this issue. But, for now, the Commissioner notes that the Organizational Plaintiffs already presented this precise argument to the High Court, which rejected it. *See Paris v. Lara, et al.*, Cert. Opp. at 1-2 (U.S. Aug. 29, 2024). If the Organizational Plaintiffs were correct that *Rahimi* changed nothing, the Supreme Court would not have vacated this Court's earlier

2

order and remanded the case. The *Rahimi* decision is significant, and the Organizational Plaintiffs' suggestion to the contrary ignores the High Court's recent order.

The Organizational Plaintiffs' citation to *Antonyuk v. James*, 2023 WL 11963034 (2d Cir. Oct. 24, 2024), for the proposition that *Rahimi* did not "importantly alter" *Bruen* is especially perplexing. Response at 4. Not only was the Second Circuit dealing with district court cases that had all been decided *after Bruen*—in direct contrast to the instant circumstance—but that court specifically held that *Rahimi* "clarified to some degree the meaning and effect of its prior decision in [*Bruen*]," implicating both "methodology" and the "role of history." *James*, 2023 WL 11963034, at *2. Indeed, the Second Circuit "reconsidered all of [its] conclusions in light of *Rahimi*." *Ibid.* The Second Circuit then remanded the case to the district court for further proceedings consistent with this "latest guidance." *Ibid.*

In any event, this Court's decision regarding remand must be supported by the particular facts and record before it. One size does not fit all. Here, the Commissioner was not given the opportunity to tailor his arguments in the District Court to the *Bruen* standard (let alone *Rahimi*), trapping him in a point in time before courts had honed and reasoned through the historical inquiry it mandates. That sets the

3

Commissioner apart from any litigant in the cases the Organizational Plaintiffs identify.

Sister Courts of Appeals have recognized the need to remand cases, like this one, that were litigated pre-*Bruen*. *See, e.g.*, *Atkinson v. Garland*, 70 F.4th 1018, 1020, 1022 (7th Cir. 2023) (remanding for district court to apply *Bruen* "in the first instance" and to allow "proper, fulsome analysis of the historical tradition"); *Palmer v. Lombardo*, No. 22-15645, 2023 WL 11952669 (9th Cir. May 26, 2023) (remanding with instructions that the District Court allow the parties to engage in discovery and "develop the historical and factual record"); *Duncan v. Bonta*, 49 F.4th 1228, 1231 (9th Cir. 2022). As in those cases, a remand here would permit the Commissioner to develop a historical and factual record, potentially with the aid of a historical expert as states have done in other similar cases. *See, e.g.*, *Oregon Firearms Fed'n v. Kotek*, 682 F.Supp.3d 874, 885, 899-901 (D. Or. 2023); *Vermont Fed'n of Sportsmen's Clubs v. Birmingham*, No. 2:23-CV-710, 2024 WL 3466482, *2, 8-13, 15-16 (D. Vt. July 18, 2024); *Capen v. Campbell*, 708 F.Supp.3d 65, 70, 82-83, 89-90 (D. Mass. 2023).

2. The Organizational Plaintiffs cherry-pick a sentence from a two-year-old filing to suggest that "the Commissioner was content to litigate the application of *Bruen* to this case" without a remand in July of 2022. *Id.* at 2 (citing 3d Cir. ECF No. 57). But the Organizational Plaintiffs' argument ignores that the Commissioner

prevailed below. Accordingly, it is unclear what would have motivated him to request a remand and supplement a record that he—and the District Court—considered sufficient to uphold the relevant portions of the Pennsylvania's Uniform Firearms Act. More importantly, the Commissioner's suggestion in his post-*Bruen* letter brief that *Bruen* did not necessarily disturb the District Court's ruling must be understood in context, and in light of other significant factual and legal developments since the parties' post-*Bruen* letter briefs.

Critically, the Commissioner's letter brief argued that "this Court need not reach the issue of whether the District Court's analysis coheres with the *Bruen* framework," because the Organizational Plaintiffs' facial challenge became moot upon the expiration of all gubernatorial emergencies. Commissioner's Letter Br. at 2, 13-15 (3d Cir. ECF No. 57); *see also* Commissioner's Supp. Br. at 4-6. (3d Cir. ECF No. 43). In this Court, the Organizational Plaintiffs' forcefully—and successfully—argued in response that this case was not moot. Appellants' Letter Br. at 9-10 (3d Cir. ECF 63); *see also* Appellants' Supp. Br. (3d Cir. ECF 44).

Believing it was not even a close call, the Organizational Plaintiffs asserted that the expiration of all emergency declarations "represent[ted], at best, a temporary abatement of a permanent problem[.]" Appellants' Supp. Br. at 3 (3d Cir. ECF 44). And they asserted that even if the case was moot, it was nonetheless "a considerably strong[] case" for the capable of repetition exception under this Court's caselaw, as

it was a "near certainty" that the conduct would recur and the presence of organizational plaintiffs "essentially elimina[ted] whatever guesswork remain[ed]." *Id.* at 5-6.

In the High Court, however, the Organizational Plaintiffs retreated from this position. There, the Organizational Plaintiffs argued that the Supreme Court should deny certiorari because the question of mootness might have prevented the Court from reaching the question presented, and they emphasized the temporary nature of gubernatorial emergencies. *Paris v. Lara, et al.*, Cert. Opp. at 27-29 (U.S. Aug. 29, 2024); *id.* at 12 (stating that the case has a "potential mootness issue"). The Organizational Plaintiffs' concession that the mootness issue presents a closer call than they originally argued is, by itself, grounds to remand to the District Court so that it can consider this fact-bound issue. Importantly, however, that is not the only mootness issue in this case.

3. Nearly a year after the parties' post-*Bruen* letter briefs—and right before oral argument—all three of the individual plaintiffs' claims became moot when the last individual plaintiff turned 21. To preserve their standing, and thus prevent this appeal from being dismissed as moot, the Organizational Plaintiffs moved to enlarge the record on appeal with a declaration from a non-plaintiff who purported to be member of the Firearms Policy Coalition and the Second Amendment Foundation, George Pershall. Motion (3d Cir. ECF 71).

The Commissioner opposed that effort, disputing the contentions in the declaration and pointing out that this Court's typical practice is to remand to the district court to assess mootness rather than simply take judicial notice of disputed averments. Commissioner's Response at 7-8 (3d Cir. ECF 72) (citing, *inter alia*, *Sutton v. Rasheed*, 323 F.3d 236, 245 (3d Cir. 2003) (noting that this Court remanded to the district court to decide whether the case was moot in light of contested post-appeal evidence)). This Court nonetheless permitted the Organizational Plaintiffs to enlarge the record on appeal with this untested evidence. Respectfully, this deprived the Commissioner of any opportunity to depose Pershall and challenge the veracity of his claims.

Nonetheless, as Pershall acknowledged in his declaration, he will turn 21 this December. Pershall Decl. ¶ 2 (3d Cir. ECF 71-1). That will leave the Organizational Plaintiffs without any identified members affected by Pennsylvania's law.

The Supreme Court's recent decision in *Alliance for Hippocratic Medicine* bears on the question of whether the Organizational Plaintiffs will continue to have standing here. There, the Court emphasized that "Article III standing screens out plaintiffs who might only have a general legal, moral, ideological, or policy objection to a particular government action." *Id.* at 381. And the "injury in fact requirement prevents federal courts from becoming 'a vehicle for the vindication of the value interests of concerned bystanders.'" *Id.* at 382. The Supreme Court rejected

medical associations' organizational standing based on the alleged "setback to the organization's abstract social interests." *Id.* at 394 (citation omitted). And the Court held that the costs the medical associations incurred were insufficient to confer standing because an organization cannot "manufacture its own standing" "simply by expending money to gather information and advocate against the defendant's action." *Ibid.*

Without any evidence of other members impacted by the law here, the Organizational Plaintiffs' allegations of injury are equally thin. Like the medical associations in *Alliance for Hippocratic Medicine*, the Organizational Plaintiffs here broadly alleged that they were injured because they "expended and diverted resources because of the [Commissioner's] enforcement and resultant policies, practices, and customs challenged[.]" JA43 (Complaint ¶ 24); *see also* JA 59 (Complaint ¶ 78); JA 60 (Complaint ¶ 87). Thus, much like the medical associations that lacked standing in *Alliance for Hippocratic Medicine*, the Organizational Plaintiffs here seek to challenge Pennsylvania's "regulation *of others*." 602 U.S. at 385 (emphasis in original).

If the Organizational Plaintiffs attempt to enlarge the record on appeal for a second time with new, untested evidence about their membership, this only proves that the record is deficient on this point and that further proceedings in the District Court are necessary.

4. The Organizational Plaintiffs' ever-changing request for relief also warrants remand. The requested remedy has shifted considerably since this case was last in the District Court. Below, the Organizational Plaintiffs primarily sought concealed-carry licenses for 18-to-20-year-olds. JA21-22 (dist. ct. op.). Now, however, they seek only an injunction permitting 18-to-20-year-olds to open-carry during declared emergencies. Reply Br. at 4, 24-25 (3d Cir. ECF 38); *see also* 18 Pa.C.S. § 6107. This shift took place because the Commissioner pointed out that he lacks any legal authority issue concealed-carry licenses and, therefore, any order directing him to issue licenses to 18-to-20-year-olds would violate the Eleventh Amendment. Response Br. at 14-20.

Both the Organizational Plaintiffs and this Court believed that by challenging the request for licenses on Eleventh Amendment grounds, the Commissioner "implicitly" conceded that an injunction preventing the State Police arresting 18-to-20-year-olds during emergencies—the only relief currently sought—would be viable. Majority Op. at 34 n.27 (3d Cir. ECF 77); Reply Br. at 7 n.2 (3d Cir. ECF 38). Not so.

It is true that the Commissioner acknowledged that such an injunction would not violate the *Eleventh Amendment* because, unlike the request for licenses, he actually has the authority to stop the State Police from arresting people. Response Br. at 49-50 (3d Cir. ECF 23). But, as the Commissioner has always maintained, this

9

proposed injunction suffers from a different defect: it gives 18-to-20-year-olds *more rights* than those who are older than 21-years-of-age.

Under Section 6107 of Pennsylvania's Uniform Firearms Act, public carry of any kind (open or concealed) during proclaimed emergencies is limited to those with valid licenses under Section 6109. 18 Pa.C.S. § 6107(a)(2). The rationale for this policy choice is obvious: the General Assembly wanted to limit public carry during proclaimed emergencies—which could include civil unrest, *see*, *e.g.*, 50 Pa.B. 2835 (civil disturbance emergency declared during May 2020 protests)—to those who have undergone the *investigations and background checks* that are required before obtaining licenses under Section 6109. *See* 18 Pa.C.S. § 6109(d).

But an 18-to-20-year-old who is publicly carrying a firearm during a proclaimed emergency will not have undergone *any* investigation or background check before doing so. In fact, 18-to-20-year-olds do not even undergo background checks before *acquiring* handguns, as federal law prohibits them from purchasing handguns from federally-licensed dealers. 18 U.S.C. § 922(b)(1). Thus, a rule that permits 18-to-20-year-olds—and only them—to engage in *unlicensed* publicly carry during proclaimed emergencies without having undergone *any background check* does considerable violence to the delicate statutory scheme that Pennsylvania's legislature enacted. And it threatens public safety, taking the precise age group about

whom Pennsylvania's General Assembly was most concerned and giving them *more rights* and subjects them to *less oversight* than older adults.

Further proceedings in the District Court are thus necessary to determine whether the Organizational Plaintiffs' requested injunction satisfies the traditional considerations for permanent injunctions. *See, e.g.*, *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001) ("In deciding whether to grant a permanent injunction, the district court must consider whether: (1) the moving party has shown actual success on the merits; (2) the moving party will be irreparably injured by the denial of injunctive relief; (3) the granting of the permanent injunction will result in even greater harm to the defendant; and (4) the injunction would be in the public interest.") (citation omitted).

* * *

Every conceivable facet of this case has changed since the District Court's decision: (1) the Supreme Court fundamentally altered the legal standard for Second Amendment cases; (2) all of the individual plaintiffs' claims were mooted when they turned 21, leaving it to the Organizational Plaintiffs alone to continue litigating the claims; (3) the Supreme Court clarified the standard for organizational standing; and (4) Appellants' shifted their request for relief from licensing for 18-to-20-year-olds, to a narrow injunction involving open-carry during proclaimed emergencies. These

myriad legal and factual developments make a remand to the District Court the logical next step in this case.

                                  Respectfully submitted,

                                  MICHELLE A. HENRY
                                  Attorney General

                  By:    /s/ Daniel B. Mullen
                                  _____

                                  DANIEL B. MULLEN
                                  Deputy Attorney General
                                  Bar No. 321525 (Pa.)

                                  SEAN A. KIRKPATRICK
                                  Chief Deputy Attorney General
                                  Chief, Appellate Litigation Section

Office of Attorney General
1251 Waterfront Place
Pittsburgh, PA 15222
Phone: (412) 235-9067
FAX:  (412) 565-3028

DATE: November 4, 2024

# CERTIFICATE OF SERVICE

I, Daniel B. Mullen, Deputy Attorney General, certify that I have served the foregoing Motion via electronic service on the following:

David H. Thompson
Peter A. Patterson
John D. Ohlendorf
Cooper Kirk, PLLC
(*Counsel for Appellants*)

Joshua Prince
Civil Rights Defense Firm, P.C.
(*Counsel for Appellants*)

Lisa Ebersole
Everytown for Gun Safety
(*Counsel for Amicus Curiae*)

Alex Hemmer
State of Illinois
Office of Attorney General
(*Counsel for Amicus Curiae*)

James P. Davy
Giffords Center to Prevent Gun Violence
Ceasefire Pennsylvania Education Fund
(*Counsel for Amicus Curiae*)

By:　*/s/ Daniel B. Mullen*

　　　DANIEL B. MULLEN
　　　Deputy Attorney General

DATE: November 4, 2024