IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 21-1832

———

**MADISON M. LARA; SOPHIA KNEPLEY; LOGAN D. MILLER; SECOND AMENDMENT FOUNDATION, INC.; FIREARMS POLICY COALITION,**

**Appellants**

v.

**COMMISSIONER PENNSYLVANIA STATE POLICE,**

**Appellee**

———

**APPELLEE'S POST-REMAND SUPPLEMENTAL CROSS-RESPONSE BRIEF ADDRESSING *UNITED STATES v. RAHIMI***

———

APPEAL FROM THE JUDGMENT OF THE UNITED STATES
DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ENTERED APRIL 16, 2021 D.C. NO. 2-20-CV-01582 (HON. W. STICKMAN IV, PRESIDING)

MICHELLE A. HENRY
*Attorney General*

BY:  DANIEL B. MULLEN
*Deputy Attorney General*

Office of Attorney General
1251 Waterfront Place
Pittsburgh, PA 15222
Phone: (412) 235-9067
FAX:   (412) 565-3028

BRETT GRAHAM
*Deputy Attorney General*

SEAN A. KIRKPATRICK
*Chief Deputy Attorney General
Chief, Appellate Litigation Section*

DATE: December 2, 2024

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION .....................................................................................................1

ARGUMENT .............................................................................................................3

I. *Rahimi* is binding precedent, not a meaningless suggestion. ........................3

II. Common law sources, Founding-era principles, and 19th-century history are not "thin air." ...........................................................................5

III. The historical timeframe debate is not implicated. ........................................8

IV. The Eighth Circuit's opinion in *Worth v. Jacobson* is not "identical" to this Court's original opinion. ..................................................................10

CONCLUSION ........................................................................................................13

CERTIFICATE OF COUNSEL .............................................................................14

CERTIFICATE OF SERVICE ...............................................................................15

# TABLE OF AUTHORITIES

Page

**Cases**

*Brown v. Ent. Merchants Ass'n*, 564 U.S. 786 (2011) ..............................................6

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ................................................6

*Kanter v. Barr*, 919 F.3d 437 (7th Cir. 2019) ...........................................................6

*Lara v. Comm'r Pennsylvania State Police*, 91 F.4th 122 (3d Cir. 2024), *reh'g en banc denied*, 97 F.4th 156 (3d Cir. 2024), *vacated sub nom*, *Paris v. Lara*, 24-93 (U.S. 2024) ................................................................................................ 4, 6, 7, 8

*McDonald v. City of Chicago*, 561 U.S. 742 (2010) .................................................6

*New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022) .......................7, 12

*United States v. Rahimi*, 144 S.Ct. 1889 (2024) ............................ 1, 3, 4, 5, 6, 9, 12

*United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023) .............................................9

*Worth v. Jacobson*, 108 F.4th 677 (8th Cir. 2024) ..................................... 10, 11, 12

## INTRODUCTION

This Court's supplemental briefing order directed the parties to address the impact of *United States v. Rahimi*, 144 S.Ct. 1889 (2024) on this case. Appellants responded with a perfunctory, eleven-page brief that fails to meaningfully engage with any of the seven opinions the Justices issued in *Rahimi* and simplifies *Rahimi* to the point of ignorance. As the Commissioner predicted, Appellants encourage this Court to thumb its nose at the High Court and simply "reissue its prior opinion unchanged[.]" Appellants' Supp. Br. at 7 (3d Cir. ECF 106); *see also* Commissioner's Supp. Br. at 2 (3d Cir. ECF 107) ("Appellants will no doubt urge this Court to simply re-adopt its prior analysis"). There is good reason why Appellants are both unwilling and unable to meaningfully grapple with how *Rahimi* clarified Second Amendment methodology: *Rahimi*'s clarifications are exclusively to their detriment.

Instead of taking the time and opportunity to understand *Rahimi*, Appellants produced a copy-and-paste rehash of the arguments they already presented in their failed brief opposing the Commissioner's petition for *certiorari*. As in the Supreme Court, Appellants contend that *Rahimi* is insignificant.[1] As in the Supreme Court,

---

[1] *Compare* Cert. Opp. at 2, 31, Dkt. 24-93 (U.S. Aug. 29, 2024) (arguing that the Supreme Court should not issue a GVR order because "*Rahimi* would not have made the slightest difference" and that *Rahimi* did not "alter[] the historical test laid out in *Bruen*"), *with* Appellants' Supp. Br. at 2, 7 (3d Cir. ECF 106) (arguing that

1

Appellants continue to fault the Commissioner for not producing a Founding-era twin, notwithstanding *Rahimi*.[2] And as in the Supreme Court, Appellants argue that the Eighth Circuit's ruling in *Worth v. Jacobson* somehow vindicates this Court's previous opinion.[3]

If any one of these arguments were remotely persuasive, the Supreme Court would not have vacated this Court's prior ruling in the first place. But the High Court *did* vacate this Court's prior ruling. Appellants bend over backwards to frame that vacatur as a meaningless act. And they attempt to reduce *Rahimi*'s mandate that courts consider historical principles to a hollow formality. Their efforts are unpersuasive. *Rahimi* provided important and much-needed guidance about the applicable test for Second Amendment challenges, and the vacatur order in this case

---

"*Rahimi* did not meaningfully alter or limit the *Bruen* analysis" and that this Court should therefore reissue its prior opinion "unchanged").

[2] *Compare* Cert. Opp. at 26, Dkt. 24-93 (U.S. Aug. 29, 2024) ("the Commissioner failed to cite a *single* Founding era law that singled out 18-to-20-year-olds (or any other age group, for that matter) for any form of infringement of the right to keep and bear arms on account of their age") (emphasis in original), *with* Appellants' Supp. Br. at 10 (3d Cir. ECF 106) (the Commissioner "fail[ed] to come forward with a *single* Founding era law that singled out 18-to-20-year-olds (or any other group, for that matter) for any form of infringement of the right to keep and bear arms on account of their age") (emphasis in original).

[3] *Compare* Cert. Opp. at 30, Dkt. 24-93 (U.S. Aug. 29, 2024) ("the *Worth* court reached the same conclusion on nearly the same reasoning"), *with* Appellants' Supp. Br. at 11 (3d Cir. ECF 106) (in *Worth*, the Eighth Circuit "reached the same result on almost identical reasoning").

reflects the Supreme Court's conclusion that this Court's prior opinion may have been inconsistent with *Rahimi*. Against this backdrop, simply readopting this Court's prior opinion "unchanged" would be an extraordinary act of defiance.

## ARGUMENT

### I.   *Rahimi* is binding precedent, not a meaningless suggestion.

Appellants spend much of their brief straining to downplay, or even outright deny, *Rahimi*'s importance. *See, e.g.*, Appellants' Supp. Br. at 1 (3d Cir. ECF 106) ("*Rahimi* does not require changing anything"); *id.* at 2 ("*Rahimi* did not … change any element of [*Bruen*'s] application" and was of "limited scope"); *id.* at 3 (*Rahimi* is "not groundbreaking"); *id.* at 11 ("[t]he appropriate response . . . is simply to reissue the panel's prior opinion"). This framing would come as a surprise to the eight-Justice majority who used that case to correct how "some courts have misunderstood [the Court's] methodology" in Second Amendment cases. *Rahimi*, 144 S.Ct. at 1897. And it would stun Justice Thomas—the author of *Bruen*—who vigorously dissented from the majority's clarification of that methodology in *Rahimi*. *Id.* at 1944 (Thomas, J., dissenting) (criticizing the majority's "approach of mixing and matching historical laws" as opposed to identifying a "single historical regulation").

Appellants blithely observe that "*Rahimi* Applied *Bruen*" and "Did Not Change It[.]"Appellants' Supp. Br. at 1 (3d Cir. ECF 106). But an irrelevant

3

semantic debate about whether *Rahimi* "applied," "clarified," "changed," or "modified" *Bruen*'s test obscures the reason *Rahimi* was necessary in the first place: some court's misunderstood *Bruen*'s methodology at the outset. *Rahimi*, 144 S.Ct. at 1897. Respectfully, this Court was one of them. *See* Commissioner's Supp. Br. at 20-28 (3d Cir. ECF 107).

In perhaps their least credible characterization of this Court's prior opinion, Appellants assert that this Court "did not come close to requiring a 'historical twin.'" *Compare* Appellants' Supp. Br. at 10. That characterization is difficult to square with the panel majority's summary of its own analysis. *See, e.g.*, *Lara v. Comm'r Pennsylvania State Police*, 91 F.4th 122, 140-48 (3d Cir. 2024) ("the Commissioner cannot point us to a single founding-era statute imposing restrictions on the freedom of 18-to-20-year-olds to carry guns").

Moreover, Appellants' claim deflates in light of the very next sentence of their brief: "the panel's conclusion was based largely on the State's failure to come forward with a *single* Founding era law that singled out 18-to-20-year-olds (or any other age group, for that matter) for *any* form of infringement of the right to keep and bear arms." Supp. Br. at 10 (3d Cir. ECF 106) (emphases in original). In other words, while paying lip service to the holding that twins are not required, Appellants nonetheless fault the Commissioner for failing to produce siblings that resemble one another, as if there is a rhetorical difference.

4

*Rahimi* could not be clearer: "the Second Amendment permits more than just those regulations identical to ones that could be found in 1791" and does not require a "law trapped in amber." *Rahimi*, 144 S.Ct. at 1897-98. Thus, "the appropriate analysis involves considering whether the challenged regulation is consistent with the *principles* that underpin our regulatory tradition." *Id.* at 1898.

Appellants' supplemental filing adopts a posture of denialism about these essential holdings. Their response is understandable; *Rahimi*'s "application" of *Bruen*'s test is devastating to their case. But this Court should neither condone nor mimic Appellants' incorrigibility in the face of clear guidance from the Supreme Court. And it must disregard Appellants' efforts to unmoor Second Amendment jurisprudence in this Circuit from binding authority.

II. **Common law sources, Founding-era principles, and 19th-century history are not "thin air."**

Appellants suggest that this Court would have to "pull a relevant historical 'principle' out of thin air" to uphold Pennsylvania's law. Appellants' Supp. Br. at 10 (3d Cir. ECF 107). Not so. To find relevant principles here, this Court need only look to *Rahimi*, the dissenting opinions by Judges Restrepo and Krause, the Commissioner's briefs, and more than two-hundred years of historical practice.

In distilling principles to conduct a *Rahimi* analysis, courts and litigants may draw "from a variety of historical evidence." *Rahimi*, 144 S.Ct. at 1905 (Sotomayor, J., joined by Kagan, J., concurring); *id.* at 1922 (Kavanaugh, J., concurring) ("The

5

historical approach 'depends upon a body of evidence susceptible of reasoned analysis rather than a variety of vague ethico-political First Principles whose combined conclusion can be found to point in any direction the judges favor.'") (quoting *McDonald v. City of Chicago*, 561 U.S. 742, 804 (2010) (Scalia, J., concurring)). The Commissioner has done precisely that, establishing the following Founding-era principles: (1) consistent with common sense, Founding-era legislatures banned firearm possession to those who posed a danger;[4] (2) "founding-era legislatures categorically disarmed groups whom they judged to be a threat to the public safety,"[5] and (3) the Founding generation "imposed age limits on all manner of activities that required judgment and reason," typically drawing the line at age 21 and deferring to democratically-enacted policy judgments.[6]

Post-ratification history from the 19th century—a "critical tool of constitutional interpretation," see *Rahimi*, 144 S.Ct. at 1917-18 (Kavanaugh, J., concurring) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 605 (2008))—

---

[4] *See* Commissioner's Supp. Br. at 11-14; *Rahimi*, 144 S.Ct. at 1896, 1901-02.

[5] *See Lara v. Comm'r Pennsylvania State Police*, 97 F.4th 156, 163-65 (3d Cir. 2024) (Krause, J., dissenting from the denial of en banc) (quoting *Kanter v. Barr*, 919 F.3d 437, 458 (7th Cir. 2019) (Barrett, J., dissenting)).

[6] *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 834 (2011) (Thomas, J., dissenting); *see also Lara*, 91 F.4th at 140-48 (Restrepo, J., dissenting); Commissioner's Supp. Br. at 12-13.

demonstrates that these Founding-era principles support restrictions on 18-to-20-year-olds. When technological and societal changes in the 19th century required legislatures to address the problem of gun violence by under-21-year-olds—a specific problem the Founding-generation did not confront—those legislatures' solution was to impose a minimum age of 21 to acquire, possess, and use firearms. Commissioner's Supp. Br. at 14-19 (3d Cir. ECF 107); *see also New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 27-28 (2022) (courts must take a "nuanced approach" to cases "implicating societal concerns or dramatic technological changes" not present at the Founding).

Historical principles abound in this case. *Rahimi* confirms both the relevance of these principles and the propriety of the sources from which the Commissioner has derived them. Appellants' willful blindness to the existence of these principles does not render them irrelevant. It now falls to this Court to recognize and uphold these principles in applying them to Pennsylvania's particular scheme and Appellants' particular challenge.

Refusing to acknowledge these principles here would have devastating consequences for age restrictions in general. As Judge Restrepo highlighted, "there is no dispute that there is some age threshold before which the protection of the Second Amendment does not apply." *Lara*, 91 F.4th at 141 (Restrepo, J., dissenting). Yet, as Appellants gleefully point out, there were no Founding-era laws specifically

singling out *any* age group with respect to acquiring, possessing, or using firearms. Supp. Br. at 10 (3d Cir. ECF 106). The explanation for this is simple: "Legislatures tend not to enact laws to address problems that do not exist." *Lara*, 91 F.4th at 147 (Restrepo, J., dissenting); *see also* Commissioner's Supp. Br. at 11-20 (3d Cir. ECF 107). But under Appellants' interpretation of *Rahimi* and *Bruen*, the absence of minimum age laws at the Founding means that the Founding generation disapproved of such laws. If this Court adopted that flawed understanding, it would leave Pennsylvania defenseless in a Second Amendment challenge brought by a group of one-to-seventeen-year-olds. Indeed, if presented with such a challenge, the Commissioner would point to all of the same historical sources and principles he is relying on in the present case. The logical extension of a holding that no relevant principles may be gleaned from this history would require the invalidation of *all* age restrictions for states within this Circuit. Such reasoning would defy common sense, threaten public safety, and contravene Supreme Court precedent.

### III. The historical timeframe debate is not implicated.

Appellants argue that because *Rahimi* "formally reserved judgment on the 1791 vs. 1868 question, it cannot possibly be read to abrogate this Court's holding that 1791 is the proper date." Appellants' Supp. Br. at 9 (3d Cir. ECF 106). There is little discernable logic in this argument. As the Commissioner explained in his supplemental brief, this Court incorrectly believed that *Bruen* resolved the historical

timeframe debate with a "strong hint." *See* Commissioner's Supp. Br. at 20-23. By reiterating that the question is still unresolved—meaning the Court could still decide that 1868 controls—*Rahimi* necessarily abrogates this Court's misreading of *Bruen*.

It is true, as Appellants point out, that *Rahimi* focused on Founding-era principles to uphold the challenged law. But that was a function of the historical regulations the parties presented to the Court. *See United States v. Rahimi*, 61 F.4th 443, 456-60 (5th Cir. 2023) (noting the federal government's reliance upon English tradition, ratification debates, and statutes from 1692, 1701, 1741 and 1786), *rev'd* 144 S.Ct. at 1903. That focus in a particular case does nothing to disturb *Heller*, *Bruen*, or *McDonald*'s reliance on mid-to-late 19th-century history. *See, e.g.*, *Rahimi*, 144 S.Ct. at 1924 (Barrett, J., concurring) ("In *Bruen*, the Court took history beyond the founding era, considering gun regulations that spanned the 19th century."); *id.* at 1917 (Kavanaugh, J., concurring) ("The U.S. Reports are well stocked with Scalia opinions looking to post-ratification history and tradition."). If the Supreme Court wanted to signal that judges should confine their analyses to the Founding and stop considering any historical evidence from the mid-to-late-1800s, it would have said so. Instead, it said the opposite, making clear that the specific historical timeframe debate—*i.e.*, which time period predominates when there is a conflict—remains unresolved.

For the reasons the Commissioner detailed in his supplemental brief, this Court need not enter this thorny thicket in this particular case because there is no conflict between the 1791 and 1868 understanding of the rights of 18-to-20-year-olds. Supp. Br. at 11-22 (3d Cir. ECF 107); *see also* Letter Br. at 5 n.1 (3d Cir. ECF 57) (it is unnecessary to resolve this issue because "both in 1791 and 1868 those younger than 21 were considered [minors] not covered by the right").

**IV.   The Eighth Circuit's opinion in *Worth v. Jacobson* is not "identical" to this Court's original opinion.**

Appellants lean heavily on the Eight Circuit's recent decision in *Worth v. Jacobson*, 108 F.4th 677 (8th Cir. 2024), arguing that it somehow validates this Court's original opinion. Appellants' Supp. Br. at 10-11 (3d Cir. ECF 106). They claim that the Eighth Circuit "reached the same result on almost identical reasoning" as this Court's prior opinion. *Id.* at 11. As noted, Appellants made this argument, almost verbatim, in the Supreme Court, urging the Justices not to issue a GVR in the first place because "*Worth* reached the same conclusion on nearly the same reasoning[.]" Cert. Opp. at 30, Dkt. 24-93 (U.S. Aug. 29, 2024). But the Supreme Court did not buy it, and neither should this Court.

Even though the Eighth Circuit struck down a restriction on 18-to-20-year-olds, its analysis bears little resemblance to this Court's prior opinion. Unlike Pennsylvania's modest restriction on the ability of 18-to-20-year-olds to publicly-carry during declared emergencies, the Minnesota statute the Eighth Circuit

10

addressed was significantly more restrictive, and prohibited 18-to-20-year-olds from *ever* carrying in public in *any manner* without a permit. *Worth*, 108 F.4th at 683 (discussing Minn. Stat. § 624.714). This case does not present that same problem because, as Appellants have acknowledged, Pennsylvania's restriction on 18-to-20-year-olds is considerably more modest than other states' in that the Commonwealth generally "permits open-carry by 18-to-20-year-olds." *See* Cert. Opp. at 28, Dkt. 24-93 (U.S. Aug. 29, 2024) (arguing that the certiorari should be denied because, unlike other states, Pennsylvania "permits open-carry by 18-to-20-year-olds under most circumstances"). And unlike this Court, the Eighth Circuit did not foreclose all reliance on analogous firearms restrictions from the mid-to-late-1800s. Instead, that court specifically considered those laws, but determined that none of them approached the heavy burden imposed by Minnesota's contemporary statute. *Worth*, 108 F.4th at 697-698.

The Eighth Circuit's discussion of status-based categorical bans from the Founding-era also undermines Appellants' arguments here. In *Worth*, Minnesota argued that those Founding-era laws establish that modern legislatures may disarm other groups that pose a danger if armed, such as 18-to-20-year-olds. 108 F.4th at 693-94. Critically, the Eighth Circuit accepted Minnesota's premise that those laws could reveal a relevant principle under *Rahimi*. *Ibid.* But, the Eight Circuit concluded, Minnesota failed to demonstrate "with enough evidence" that "18-to-20-

year-olds present a danger to the public." *Id.* at 694. Ironically, *Worth* represents a relapse into the very means-ends scrutiny analysis that *Bruen* and *Rahimi* so adamantly disclaim. *Bruen*, 597 U.S. at 22-23 ("*Heller* and *McDonald* expressly rejected the application of any 'judge-empowering interest-balancing inquiry'") (cleaned up); *Rahimi*, 144 S.Ct. at 1921 (Kavanaugh, J., concurring) ("the balancing approach requires judges to weigh the benefits of a law against its burdens—a value-laden and political task that is usually reserved for the political branches").

Appellants' claims that the Eighth Circuit's flawed analysis in *Worth* is "identical" to this Court's prior analysis is belied by a cursory comparison of the two opinions, as well as Minnesota's and Pennsylvania's distinct regulatory schemes. As with the litany of other spurious characterizations of the law, Appellants' particular challenge, and the record, this Court should disregard Appellants' claims.

## CONCLUSION

This Court should affirm the judgment of the District Court.

        Respectfully submitted,

        MICHELLE A. HENRY
        Attorney General

By:   /s/ Daniel B. Mullen
        ―――――――――――――――

        DANIEL B. MULLEN
        Deputy Attorney General
        Bar No. 321525 (Pa.)

        BRETT GRAHAM
        Deputy Attorney General

        SEAN A. KIRKPATRICK
        Chief Deputy Attorney General
        Chief, Appellate Litigation Section

Office of Attorney General
1251 Waterfront Place
Pittsburgh, PA 15222
Phone: (412) 235-9067
FAX:  (412) 565-3028

DATE: December 2, 2024


## CERTIFICATE OF COUNSEL

I, Daniel B. Mullen, Deputy Attorney General, hereby certify as follows:

1. That I am a member of the bar of this Court.

2. That the text of the electronic version of this brief is identical to the text of the paper copies.

3. That a virus detection program was run on the file and no virus was detected.

4. That this brief contains 2,798 words within the meaning of Fed.R.App.P. 32(a)(7)(B). In making this certificate, I have relied on the word count of the word-processing system used to prepare the brief.

/s/ Daniel B. Mullen

DANIEL B. MULLEN
Deputy Attorney General

# CERTIFICATE OF SERVICE

I, Daniel B. Mullen, Deputy Attorney General, certify that I have served the foregoing document, via electronic service, on the following:

David H. Thompson
Peter A. Patterson
John D. Ohlendorf
Cooper Kirk, PLLC
(*Counsel for Appellants*)

Joshua Prince
Civil Rights Defense Firm, P.C.
(*Counsel for Appellants*)

Lisa Ebersole
Everytown for Gun Safety
(*Counsel for Amicus Curiae*)

Alex Hemmer
State of Illinois
Office of Attorney General
(*Counsel for Amicus Curiae*)

James P. Davy
Giffords Center to Prevent Gun Violence
Ceasefire Pennsylvania Education Fund
(*Counsel for Amicus Curiae*)

/s/ Daniel B. Mullen
───────────────────────
DANIEL B. MULLEN
Deputy Attorney General

DATE: December 2, 2024