No. 21-1832

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

MADISON M. LARA, *et al.*,

*Plaintiffs-Appellants*,

v.

COMMISSIONER PENNSYLVANIA STATE POLICE,

*Defendant-Appellee*.

On Appeal from the United States District Court
for the Western District of Pennsylvania
(No. 2:20-cv-01582) (Hon. William S. Stickman)

**AMICUS BRIEF OF EVERYTOWN FOR GUN SAFETY
IN SUPPORT OF DEFENDANT-APPELLEE'S PETITION FOR
PANEL REHEARING OR REHEARING EN BANC**

Sana S. Mesiya
Everytown Law
P.O. Box 14780
Washington, DC 20044

Janet Carter
William J. Taylor, Jr.
Priyanka Gupta Sen
Everytown Law
450 Lexington Ave., P.O. Box 4184
New York, NY 10163
(646) 324-8174
jcarter@everytown.org

# CORPORATE DISCLOSURE STATEMENT

Everytown for Gun Safety (formally, Everytown for Gun Safety Action Fund) has no parent corporations. It has no stock and hence no publicly held company owns 10% or more of its stock.

# TABLE OF CONTENTS

INTEREST OF AMICUS CURIAE ............................................................. 1
INTRODUCTION AND SUMMARY OF ARGUMENT ............................ 1
ARGUMENT ............................................................................................. 3
CONCLUSION ........................................................................................ 12

# TABLE OF AUTHORITIES

**Cases**

*Antonyuk v. James*,
  120 F.4th 941 (2d Cir. 2024), *petition for cert. filed*, No. 24-795
  (U.S. Jan. 27, 2025) .................................................................. 5, 7, 11

*Crawford v. Washington*,
  541 U.S. 36 (2004) ............................................................................. 11

*District of Columbia v. Heller*,
  554 U.S. 570 (2008) .............................................................................. 4

*Kipke v. Moore*,
  No. 1:23-cv-01293, 2024 WL 3638025 (D. Md. Aug. 2, 2024), *appeals docketed*, Nos. 24-1799, 24-1827, 24-1834, 24-1836 (4th Cir. Aug. 22, 2024) ................................................................................................. 12

*LaFave v. County of Fairfax*,
  No. 1:23-cv-01605, 2024 WL 3928883 (E.D. Va. Aug. 23, 2024), *appeal docketed*, No. 24-1886 (4th Cir. Sept. 16, 2024) ........................ 6

*Mahanoy Area Sch. Dist. v. B. L.*,
  594 U.S. 180 (2021) .............................................................................. 8

*McDonald v. City of Chicago*,
  561 U.S. 742 (2010) .............................................................................. 5

*McIntyre v. Ohio Elections Comm'n*,
  514 U.S. 334 (1995) .............................................................................. 8

*Md. Shall Issue, Inc. v. Montgomery County*,
  680 F. Supp. 3d 567 (D. Md. 2023), *appeal docketed*, No. 23-1719
  (4th Cir. July 10, 2023) ........................................................................ 7

*Nat'l Rifle Ass'n v. Bondi*,
  61 F.4th 1317 (11th Cir. 2023), *vacated on grant of reh'g en banc*,
  72 F.4th 1346 (11th Cir. 2023) .......................................................... 6, 8

*Nev. Comm'n on Ethics v. Carrigan*,
  564 U.S. 117 (2011) ............................................................................ 11

*New York State Rifle & Pistol Ass'n v. Bruen*,
  597 U.S. 1 (2022) ......................................................................... *passim*

*Pinales v. Lopez*,
   No. 1:24-cv-00496, slip op. (D. Haw. Feb. 7, 2025) .............................. 11

*Range v. Att'y Gen. U.S.*,
   124 F.4th 218 (3d Cir. 2024) (en banc) ................................................ 4

*Reese v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
   --- F.4th ----, 2025 WL 340799 (5th Cir. Jan. 30, 2025) ...................... 12

*Rupp v. Bonta*,
   723 F. Supp. 3d 837 (C.D. Cal. 2024), *appeal docketed*, No. 24-2583
   (9th Cir. Apr. 24, 2024) ................................................................ 6, 11

*United States v. Rahimi*,
   602 U.S. 680 (2024) ......................................................................... 2, 4

*Virginia v. Moore*,
   553 U.S. 164 (2008) ............................................................................ 11

*We the Patriots, Inc. v. Lujan Grisham*,
   697 F. Supp. 3d 1222 (D.N.M. 2023), *appeal dismissed*, 119 F.4th
   1253 (10th Cir. 2024) ........................................................................... 7

*Wolford v. Lopez*,
   116 F.4th 959 (9th Cir. 2024) .............................................................. 7

*Worth v. Jacobson*,
   108 F.4th 677 (8th Cir. 2024), *petition for cert. filed*, No. 24-782
   (U.S. Jan. 17, 2025) ............................................................................ 12

**Statutes and Rules**

Fed. R. App. P. 40(b) .................................................................................. 2

**Other Authorities**

Akhil Reed Amar, *The Bill of Rights: Creation and Reconstruction*
   (1998) .................................................................................................. 9

Evan D. Bernick, *Fourteenth Amendment Confrontation*, 51 Hofstra
   L. Rev. 1 (2022) .................................................................................. 8

Kurt T. Lash, *Re-Speaking the Bill of Rights: A New Doctrine of Incorporation* (Jan. 15, 2021), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3766917 (now published at 97 Ind. L.J. 1439) ....................................................... 9

Michael B. Rappaport, *Originalism and Regulatory Takings: Why the Fifth Amendment May Not Protect Against Regulatory Takings, But the Fourteenth Amendment May*, 45 San Diego L. Rev. 729 (2008) ...... 8

Stephen A. Siegel, *Injunctions for Defamation, Juries, and the Clarifying Lens of 1868*, 56 Buff. L. Rev. 655 (2008) ............................. 8

Transcript of Oral Argument, *New York State Pistol & Rifle Ass'n v. Bruen* (No. 20-843) (U.S. Nov. 3, 2021) .................................................. 7

## INTEREST OF AMICUS CURIAE

Everytown for Gun Safety ("Everytown") is the nation's largest gun-violence-prevention organization, with almost eleven million supporters across the country. Everytown was founded in 2014 as the combined effort of Mayors Against Illegal Guns, a national, bipartisan coalition of mayors combating illegal guns and gun trafficking, and Moms Demand Action for Gun Sense in America, an organization formed after a twenty-year-old gunman murdered twenty children and six adults at an elementary school in Newtown, Connecticut. Everytown also includes a large network of gun-violence survivors who are empowered to share their stories and advocate for responsible gun laws, as well as a national movement of high school and college students working to end gun violence.[1]

## INTRODUCTION AND SUMMARY OF ARGUMENT

The panel erroneously held that Pennsylvania's restrictions on 18- to 20-year-olds publicly carrying firearms during declared states of emergency violates the Second Amendment. Dkt. 118 ("Op.") 4-5, 39. As

---

[1] No party's counsel authored this brief in whole or part and, apart from Everytown, no person contributed money to fund its preparation or submission. All parties consent to this brief's submission.

the Commissioner explains, the panel opinion is inconsistent with the approach to Second Amendment cases in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), and *United States v. Rahimi*, 602 U.S. 680 (2024), and, if allowed to stand, it "will inevitably confuse and complicate future cases." Dkt. 122 ("Pet.") 1-2. Thus, panel rehearing or rehearing en banc is warranted.

Everytown submits this amicus brief to expand on one of the reasons why rehearing is appropriate: to correct the panel's methodological error in focusing its historical inquiry exclusively on the founding. *See* Pet. 1-2, 4 & n.1. That error provides compelling grounds for granting the petition. *See* Fed. R. App. P. 40(b).

To be clear, the panel correctly acknowledged that "laws 'through the end of the nineteenth century' … can be 'a critical tool of constitutional interpretation' because they can be evidence of a historical tradition and shed important light on the meaning of the Amendment as it was originally understood," Op. 26 (quoting *Bruen*, 597 U.S. at 35 (cleaned up))—when those laws do not "contradict[] earlier evidence," *id.* at 27 (quoting *Bruen*, 597 U.S. at 66 (cleaned up)). But the panel determined that, in cases where a conflict between the

founding and Reconstruction eras exists, the focus should be only on the founding. *See id.* at 22-26. And because the panel found an "irreconcilable conflict with Founding-era laws," it gave no weight to "the Commissioner's catalogue of statutes from the mid-to-late nineteenth century." *Id.* at 28.

That was doubly wrong. First, as the Commissioner explains, there is no conflict between the founding and Reconstruction eras here. *See* Pet. 6-10. Second, as this brief explains, the panel was mistaken about the time period to look to in cases where there is a conflict. Its conclusion that the founding is all that matters in such cases flies in the face of originalist principles. Under a correct understanding of those principles and Supreme Court precedent, courts should instead prioritize the Reconstruction era.

## ARGUMENT

The panel wrongly concluded that the founding-era understanding of the Second Amendment should prevail over the Reconstruction-era understanding when there is an irreconcilable conflict between the two.

Along with the other grounds the Commissioner set out, *see* Pet. 2-18, rehearing is warranted here to correct that methodological error.[2]

The Supreme Court has left open the question "whether courts should primarily rely on the prevailing understanding of … [the] right when the Fourteenth Amendment was ratified in 1868" or when the Bill of Rights was ratified in 1791 in deciding Second Amendment challenges. *Bruen*, 597 U.S. at 37; *Rahimi*, 602 U.S. at 692 n.1; *see Range v. Att'y Gen. U.S.*, 124 F.4th 218, 229 (3d Cir. 2024) (en banc). Both principles of originalism and the strong weight of authority are on the side of the Reconstruction era and 1868.

The centrality of the Reconstruction era in a case involving a state law follows directly from the principle that "[c]onstitutional rights are enshrined with the scope they were understood to have *when the people adopted them*." *Bruen*, 597 U.S. at 34 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 634-35 (2008)). The Constitution's protection of the right to keep and bear arms did not constrain the states until 1868; a

---

[2] The panel believed it was "obligated to confront the choice of time frame" because it had found that a conflict existed between the two periods. Op. 22. If, however, this Court rehears the case and finds no conflict, it need not resolve the time-period issue.

4

state "is bound to respect the right to keep and bear arms because of the Fourteenth Amendment, not the Second." *Id.* at 37. Accordingly, focusing on 1868 in a case challenging a state law is the only way to answer the originalist question: How did the people understand the right at the time of its adoption?

The Supreme Court's decision in *McDonald v. City of Chicago*, 561 U.S. 742 (2010), reinforces this conclusion. *McDonald* analyzed at length the public understanding around 1868 before holding that the Second Amendment constrains the states. *See id.* at 770-78. That approach is hard to square with a belief that only the 1791 understanding informs the content of the right: "It would be incongruous to deem the right to keep and bear arms fully applicable to the States by Reconstruction standards but then define its scope and limitations exclusively by 1791 standards." *Antonyuk v. James*, 120 F.4th 941, 973 (2d Cir. 2024), *petition for cert. filed*, No. 24-795 (U.S. Jan. 27, 2025).

Courts found the logic in this Reconstruction-era focus even before *Bruen*. *See* Dkt. 61 at 2 n.1 (citing cases).[3] And that has not changed since. Courts have recently seen a notable "trend … of recognizing the Reconstruction Era as more probative of the Second Amendment's scope than the Founding Era," in cases involving state or local laws. *LaFave v. County of Fairfax*, No. 1:23-cv-01605, 2024 WL 3928883, at *8 (E.D. Va. Aug. 23, 2024), *appeal docketed*, No. 24-1886 (4th Cir. Sept. 16, 2024); *see Nat'l Rifle Ass'n v. Bondi*, 61 F.4th 1317, 1323 (11th Cir. 2023) ("[H]istorical sources from the Reconstruction Era are more probative of the Second Amendment's scope than those from the Founding Era."), *vacated on grant of reh'g en banc*, 72 F.4th 1346 (11th Cir. 2023);[4] *Rupp v. Bonta*, 723 F. Supp. 3d 837, 851, 876-78 (C.D. Cal. 2024) (reaching same conclusion), *appeal docketed*, No. 24-2583 (9th Cir. Apr. 24, 2024); *Md. Shall Issue, Inc. v. Montgomery County*, 680 F.

---

[3] These courts reached this conclusion at the first, historical step of the pre-*Bruen* Second Amendment framework used by lower federal courts. Those analyses generally remain good law. *Bruen* rejected the second step (means-end scrutiny), but explained that the first "is broadly consistent with *Heller*." 597 U.S. at 19.

[4] Despite being vacated for rehearing en banc, *Bondi*'s robust reasoning and authorities remain persuasive. *See Antonyuk*, 120 F.4th at 973-74 (finding *Bondi* persuasive on this point).

Supp. 3d 567, 582-83 (D. Md. 2023) (agreeing with *Bondi*), *appeal docketed*, No. 23-1719 (4th Cir. July 10, 2023); *We the Patriots, Inc. v. Lujan Grisham*, 697 F. Supp. 3d 1222, 1234 (D.N.M. 2023) (agreeing with *Bondi* and *Maryland Shall Issue*), *appeal dismissed*, 119 F.4th 1253 (10th Cir. 2024). Still more courts have concluded that Reconstruction-era evidence is at least as important as founding-era evidence. *See e.g.*, *Antonyuk*, 120 F.4th at 973-74, 988 n.36 (concluding that "1791 and 1868 are both fertile ground" even when there is "discrepancy" between the two periods); *Wolford v. Lopez*, 116 F.4th 959, 980 (9th Cir. 2024) (considering history from both periods).[5]

The conclusion that the 1868 understanding should govern in a case against a state is far from radical. It is the answer former Solicitor General Paul Clement, as counsel for New York's NRA affiliate, gave when asked by Justice Thomas during oral argument in *Bruen*.[6] It is also the position of prominent originalist scholars "across the political

---

[5] As explained below, this Court should not follow the erroneous contrary approach adopted by the panel, as well as the Fifth and Eighth Circuits. *See infra* pp. 10-12 & n.10.

[6] *See* Tr. of Oral Arg. at 8:2-17, *Bruen* (No. 20-843) ("[If] the case arose in the states, I would think there would be a decent argument for looking at the history at the time of Reconstruction … and giving preference to that over the founding.").

7

spectrum." *Bondi*, 61 F.4th at 1322 n.9 (citing, among others, Josh Blackman, Ilya Shapiro, Steven Calabresi, and Sarah Agudo).[7] Both Justice Thomas and Justice Scalia have expressed similar views. *See Mahanoy Area Sch. Dist. v. B. L.*, 594 U.S. 180, 212 (2021) (Thomas, J., dissenting) ("While the majority entirely ignores the relevant history, I would begin the assessment of the scope of free-speech rights incorporated against the States by looking to what ordinary citizens at the time of the Fourteenth Amendment's ratification would have understood the right to encompass." (cleaned up)); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 375 (1995) (Scalia, J., dissenting) (calling for "further evidence of common practice in 1868, since I doubt that the Fourteenth Amendment time-warped the post-Civil War States back to the Revolution"). Simply put, a faithful originalist analysis

---

[7] *See also, e.g.*, Evan D. Bernick, *Fourteenth Amendment Confrontation*, 51 Hofstra L. Rev. 1, 23 (2022) (calling 1868 view "ascendant among originalists"); Michael B. Rappaport, *Originalism and Regulatory Takings: Why the Fifth Amendment May Not Protect Against Regulatory Takings, But the Fourteenth Amendment May*, 45 San Diego L. Rev. 729, 748 (2008); Stephen A. Siegel, *Injunctions for Defamation, Juries, and the Clarifying Lens of 1868*, 56 Buff. L. Rev. 655, 662 n.32 (2008) ("I am unable to conceive of a persuasive originalist argument asserting the view that, with regard to the states, the meaning of the Bill in 1789 is to be preferred to its meaning in 1868.").

8

compels applying the 1868 understanding of the right to keep and bear arms in a case challenging a state law.

This conclusion raises the additional question, not directly presented in this case, as to the correct temporal focus in challenges to *federal* laws. The originalist answer to that question is more complex, because the Second Amendment has bound the federal government since 1791, and yet *Bruen* stated that individual rights applicable against the states and against the federal government "have the same scope." 597 U.S. at 37. But *Bruen* itself charted the path through this complexity. After identifying the issue, it cited scholars Akhil Amar and Kurt Lash, who have explained that the 1868 understanding should apply to both levels of government. *See id.* at 37-38 (citing Akhil Reed Amar, *The Bill of Rights: Creation and Reconstruction* xiv, 223, 243 (1998), and Kurt T. Lash, *Re-Speaking the Bill of Rights: A New Doctrine of Incorporation* (Jan. 15, 2021) (manuscript, at 2), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3766917 (now published at 97 Ind. L.J. 1439)). As Professor Lash wrote (and as quoted in *Bruen*), adoption of the Fourteenth Amendment "'invested those original 1791 texts [of the Bill of Rights] with new 1868 meanings.'" *Id.*

at 37-38 (citation omitted). The Court's choice to highlight only these two scholars is compelling evidence that it considered these scholars to be correct, and thus that Reconstruction should be the central focus of the historical inquiry in challenges to both state and federal laws.[8]

The panel nevertheless concluded that founding-era history should control over Reconstruction-era history when there is a conflict between the two. Op. 24-27. That was error.

The panel based its decision to prioritize the founding on a "general assumption" in several Supreme Court cases cited in *Bruen*. *Id.* at 24 (citing *Bruen*, 597 U.S. at 37). But that general assumption cannot possibly resolve the time-period issue, because *Bruen* itself noted the assumption and then left the time-period issue open. *See* 597 U.S. at 37-38. Nor is it sensible to read *Bruen*, like the panel did, as providing a "strong hint" that the founding era is the proper focus, *see* Op. 24, given

---

[8] *Bruen* identified no scholarship or other authority explaining how an originalist could accept the contrary position—inflicting upon the states an understanding of the Second Amendment different from the one the Reconstruction generation believed it was extending to them. All *Bruen* did was note some prior decisions that had "*assumed*" that the scope for both state and federal governments "is pegged to the public understanding … in 1791." 597 U.S. at 37 (emphasis added). But if the Court had believed the assumption made in those decisions controlled the issue, it would have said so.

its reliance on two scholars who support the 1868 view. And, furthermore, far from supporting an exclusive focus on 1791, the cases cited in *Bruen* that the panel pointed to, *see* Op. 24, expressly considered later history in their analyses.[9]

In sum, the panel's conclusion that it should look only to the founding in cases where there is a conflict between founding-era history and Reconstruction-era history is inconsistent with originalist principles, difficult to square with Supreme Court decisions, and against the weight of persuasive authority. *See, e.g.*, *Antonyuk*, 120 F.4th at 974 (declining to follow similar reasoning in earlier panel opinion in *Lara*); *Pinales v. Lopez*, No. 1:24-cv-00496, slip op. at 29-30 (D. Haw. Feb. 7, 2025) (disagreeing with panel opinion); *Rupp*, 723 F. Supp. 3d at 877-78 (declining to follow earlier panel opinion); *Kipke v. Moore*, No. 1:23-cv-01293, 2024 WL 3638025, at *5 (D. Md. Aug. 2, 2024) (same), *appeals docketed*, Nos. 24-1799, 24-1827, 24-1834, 24-

---

[9] *See Nev. Comm'n on Ethics v. Carrigan*, 564 U.S. 117, 122-25 (2011) (citing consistent tradition from founding era through twentieth century in interpreting First Amendment); *Virginia v. Moore*, 553 U.S. 164, 169-70 & n.4 (2008) (examining late-nineteenth century history when discerning scope of Fourth Amendment); *Crawford v. Washington*, 541 U.S. 36, 42-50 (2004) (looking to sources from sixteenth through nineteenth centuries to determine meaning of Confrontation Clause).

1836 (4th Cir. Aug. 22, 2024).[10] Addressing and correcting this error strongly supports rehearing.

## CONCLUSION

The Court should grant rehearing.

February 18, 2025

Respectfully submitted,

/s/ Janet Carter

Janet Carter
William J. Taylor, Jr.
Priyanka Gupta Sen
Everytown Law
450 Lexington Avenue, P.O. Box 4184
New York, NY 10163
(646) 324-8174
jcarter@everytown.org

Sana S. Mesiya
Everytown Law
P.O. Box 14780
Washington, DC 20044

---

[10] For these same reasons, the Eighth Circuit erred in *Worth v. Jacobson*, 108 F.4th 677, 693, 697 (8th Cir. 2024), *petition for cert. filed*, No. 24-782 (U.S. Jan. 17, 2025), when it pointed to the same assumption in prior cases to conclude that Reconstruction-era laws "carry less weight than Founding-era evidence." And the Fifth Circuit likewise erred in *Reese v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, --- F.4th ----, 2025 WL 340799, at *13 (5th Cir. Jan. 30, 2025), which improperly relied on this assumption to discount Reconstruction-era laws, without even acknowledging that it was just an assumption. Neither decision provides good reason to deny rehearing on this question.

12

# CERTIFICATIONS

I certify that:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 29(b)(4) because this brief contains 2,460 words, excluding the portions exempted by Fed. R. App. P. 32(f), and complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

2. I am a member of the bar of the U.S. Court of Appeals for the Third Circuit. My date of admission was August 11, 2021.

3. A virus detection program, SentinelOne, was run on the electronic version of this brief, and no virus was detected.

4. The text of the electronic version of the brief is identical to the text of the paper copies.

5. On February 18, 2025, I electronically filed this amicus brief with the Clerk of the Court for the United States Court of Appeals for the Third Circuit using the CM/ECF system, which will send notice to all registered CM/ECF users.

 February 18, 2025                    /s/ Janet Carter
                                       *Counsel for amicus curiae*
                                       *Everytown for Gun Safety*